**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Michel Sharritt; *et al*, | |
| Plaintiffs, | |
| v. | |
| Gwen Henry in her capacity as Treasurer of DuPage County, Illinois, *et al*, | Case No.: 1:23-cv-15838 |
| Defendants. | Judge Sara L. Ellis |

**DEFENDANTS' SUSAN J. GORAL IN HER CAPACITY AS TREASURER OF WINNEBAGO COUNTY, ILLINOIS, LORI GUMMOW IN HER CAPACITY AS CLERK OF WINNEBAGO COUNTY, ILLINOIS, WINNEBAGO COUNTY, ILLINOIS, LYDIA HUTCHCRAFT, IN HER CAPACITY AS TREASURER OF CARROLL COUNTY, ILLINOIS, AMY BUSS, IN HER CAPACITY AS CLERK OF CARROLL COUNTY, ILLINOIS, CARROLL COUNTY, ILLINOIS; TIM BROPHY, IN HIS CAPACITY AS TREASURER OF WILL COUNTY, ILLINOIS, ANDREA LINN IN HER CAPACITY AS CLERK OF WILL COUNTY, ILLINOIS, WILL COUNTY, ILLINOIS, NICOLE BJERKE, IN HER CAPACITY AS TREASURER OF PEORIA COUNTY, ILLINOIS, RACHAEL PARKER IN HER CAPACITY AS CLERK OF PEORIA COUNTY, ILLINOIS, PEORIA COUNTY, ILLINOIS AND CURT NEWPORT, IN HIS CAPACITY AS TREASURER OF BOONE COUNTY, ILLINOIS, JULIE BLISS IN HER CAPACITY AS CLERK OF BOONE COUNTY, ILLINOIS, AND BOONE COUNTY, ILLINOIS JOINT MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT UNDER 12(B)(1) AND 12(B)(6) AND <u>MOTION TO STRIKE CLASS ALLEGATIONS UNDER 12(F)</u>**

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION**......................................................................................................... 1

**STATEMENT OF FACTS** ........................................................................................... 1

**LEGAL STANDARD** ................................................................................................... 3

**ARGUMENT** .................................................................................................................. 4

**I.    THE COURT LACKS SUBJECT MATTER JURISDICTION
under THE *ROOKER-FELDMAN* DOCTRINE.** ...................................... 4

**II.   PLAINTIFFS LACK STANDING TO SUE WINNEBAGO AND WILL
COUNTIES AND THEIR RESPECTIVE OFFICIALS.** ............................... 4**

     A.    No Named Plaintiff Can Trace His or Her Injury to Will County
or Winnebago County. ........................................................................ 5

     B.    The Shortcut Plaintiffs Invoke is in Derogation of Supreme
Court Precedent................................................................................... 6

     C.    Even if the Court Accepts the Juridical Link, Rule 23 Criteria
are not Satisfied................................................................................... 8

     D.    Plaintiffs Cannot Satisfy Rule 23 Criteria to Justify Invocation
of the Juridical Link Doctrine. ......................................................... 9

          1.    The Rule 23(a) Requirements Are Not Met............................... 10

          2.    Individual Issues Predominate ................................................... 12

**III.  THE CLAIMS ASSERTED ARE SUBJECT TO A TWO-YEAR
STATUTE OF LIMITATIONS.** ................................................................... 14

**IV.   PLAINTIFFS FAIL TO STATE A LEGALLY COGNIZABLE
CLAIM.** .......................................................................................................... 14

     A.    There is No Taking Under the PTC. .................................................. 14

     B.    Plaintiffs Do Not State a Due Process Violation. ............................. 19

     C.    The Excessive Penalty Claim Fails.................................................... 20

     D.    Plaintiffs Fail to State a Claim Under *Monell*................................. 20

**V.    THE CLASS ALLEGATIONS SHOULD BE STRICKEN.** ...................... 21

**CONCLUSION** ............................................................................................................ 22

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Albrecht v. United States*,
  329 U.S. 599 (1947)........................................................................................ 16

*Allee v. Medrano*,
  416 U.S. 802, 828-29, 94 S.Ct. 2191, 40 L.E.2d 566 (1974)............................................. 8

*Armstrong v. United States,*
  364 U.S. 40, 41-42 (1960) ................................................................................ 18

*Ashcroft v. Iqbal*,
  556 U.S. 662, 678 (2009)................................................................................... 3

*Barbosa v. Sanchez Vilella*,
  293 F. Supp. 831, 833 (D.P.R. 1967)....................................................................... 17

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*,
  520 U.S. 397, 404, 117 S. Ct. 1382, 1388, 137 L. Ed. 2d 626 (1997).............................. 21

*Bell Atlantic v. Twombly*,
  550 U.S. 544, 570 (2007)................................................................................... 3

*Bethesda Lutheran Homes & Services, Inc. v. Leean*,
  154 F.3d 716, 718 (7th Cir. 1998) ..................................................................... 21

*Brown v. Legal Found. of Wash.*,
  538 U.S. 216-17 (2003) ................................................................................. 18

*Califano v. Yamasaki*,
  442 US 682, 700-701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979).......................................... 9

*CE Design, Ltd. v. King Architectural Metals, Inc.*,
  637 F.3d 721, 726 (7th Cir. 2011) ................................................................... 11

*Citadel Group Ltd. v. Washington Regional Medical Ctr.*,
  692 F.3d 580, 591 (7th Cir. 2012) .................................................................... 3

*Comcast Corp. v. Behrend*,
  133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013) ........................................................ 9, 13

*Conrad v. Boiron, Inc.*,
  869 F.3d 536, 539 (7th Cir. 2017) .................................................................... 11

*DaimlerChrysler Corp. v. Cuno,*
  547 U.S. 332, 342, 126 S. Ct. 1854, 164 L. Ed. 2d 589 (2006)......................................... 5

*Dancel v. Groupon,*
    949 F.3d 999, 1004 (7th Cir. 2019) .................................................................... 9

*Devbrow v. Kalu,*
    705 F.3d 765, 767 (7th Cir. 2013) ...................................................................... 14

*Elward v. Electrolux Home Products*, No. 15-cv-9882,
    2020 U.S. Dist. LEXIS 96000, *65 (N.D. Ill. June 1, 2020) ............................ 12

*Excalibur Energy Co. v. Rochman,*
    2014 IL App (5th) 130524, ¶ 17 ........................................................................ 15

Fox v. Saginaw County, Michigan,
    67 F.4th 284 (6th Cir. 2023) ...................................................................... 6, 7, 13

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
    528 U.S. 167, 180, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) ........................... 7

*Fuentes v. Shevin,*
    407 U.S. 67, 80 (1972) ....................................................................................... 19

*Gen. Tel. Co. of Sw. v. Falcon,*
    457 U.S. 147, 160 (1982) .................................................................................... 22

*Graham v. Connor,*
    490 U.S. 386, 395, 109 S.Ct. 1865 (1989) ........................................................ 20

*Hall, et al v. Oakland County*, No. 20-12230,
    2024 WL 209702, *6-12 (E.D. Mich. Jan. 19, 2024) ....................................... 22

*In re Cnty. Treasurer & ex officio Cnty. Collector of Will Cnty.,*
    2024 IL App (3d) 220134, ¶¶ 6-12 ...................................................................... 2

*In re LaMont,*
    740 F.3d 397, 400–01 (7th Cir. 2014) ................................................................. 2

*Int'l Coll. of Surgeons v. City of Chicago,*
    153 F.3d 356, 363 (7th Cir. 1998) ...................................................................... 19

*Jacobs v. United States,*
    290 U.S. 13 (1933) .............................................................................................. 16

*Karmel Al Haj v. Pfizer, Inc.*, No. 17-C-6730,
    2020 U.S. Dist. LEXIS 51658, *9 (N.D. Ill. March 23, 2020) ......................... 11

*Kasalo v. Harris & Harris, Ltd.,*
    656 F.3d 557, 563 (7th Cir. 2011) ...................................................................... 21

*Kelo v. City of New London*,
    545 U.S. 469 (2005)................................................................................................... 18

*Knick v. Twp. of Scott, Pennsylvania*,
    588 U.S. 180 (2019)................................................................................................... 16

*Kujawski v. Bd. of Comm'rs*,
    183 F.3d 734, 737 (7th Cir. 1999) ........................................................................... 20

La Mar v. H & B Novelty & Loan Co.,
    489 F.2d 461 (9th Cir. 1973) .................................................................................. 6, 7

*Lewis E. v. Spagnolo*,
    186 Ill. 2d 198, 227 (1999) ...................................................................................... 19

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)...................................... 5

Mahon v. Ticor Title Ins. Co.,
    683 F.3d 59, 62–63, 65–66 (2d Cir. 2012)............................................................... 6

*Mann v. Vogel*,
    707 F.3d 872, 877 (7th Cir. 2013) ........................................................................... 3

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802, 824-25 (7th Cir. 2011) ..................................................................... 12

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654, 659 (7th Cir. 2015) ........................................................................... 11

*Murdock-Alexander v. Tempsnow Empl.*, No. 16-CV-5182,
    2016 WL 6833961 at *3 (N.D. Ill. Nov. 21, 2016)................................................. 22

*New Medium Technologies LLC v. Barco N.V.*,
    2007 WL 2020169 at *5 (N.D. Ill. July 5, 2007).................................................... 3

*O'Shea v. Littleton*,
    414 U.S. 488, 494, 94. S. Ct. 669, 38 L.Ed.2d 674 (1974)..................................... 5

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)................................................................................................... 8

*Oshana*,
    472 F.3d at 513 .................................................................................................. 11, 12

*Payton v. Cnty. of Kane*,
    308 F.3d 673 (7th Cir. 2002) .......................................................................... 5, 6, 8

*Phillips v. Washington Legal Found.*,
    524 U.S. 156, 157 (1998) ............................................................................... 15

*Prezzi v. Berzak*,
    57 F.R.D. 149, 151 (S.D.N.Y. 1972) ............................................................ 17

*Pruitt v. Personnel Staffing Grp., LLC*,
    No. 16-cv-5079, 2020 U.S. Dist. LEXIS 99774, *25-*26 (N.D. Ill. June 8, 2020) ........ 11

*Rendina v. Falco/Rendina/Erickson*, No. 05 C 7528,
    2006 WL 2578926, at*2 (N.D. Ill. Sept. 5, 2006) ........................................... 3

*Robles v. Corporate Receivables, Inc.*,
    220 F.R.D. 306, 309 (N.D. Ill. 2004) ............................................................ 10

*Simpson v. Brown Cnty.*,
    860 F.3d 1001, 1006 (7th Cir. 2017) ............................................................ 19

*Smith v. Bayer Corp.*,
    564 U.S. 299, 313, 131 S. Ct. 2368, 180 L. Ed. 2d 341 (2011) ......................... 7

*Stein v. Bhd. of Painters, Decorators & Paper Hangers of Am.*,
    11 F.R.D. 153, 155 (D.N.J. 1950) ................................................................ 17

*Surplus Store & Exchange, Inc. v. City of Delphi*,
    928 F.2d 788 (7th Cir. 1991) ....................................................................... 21

*Szabo v. Bridgeport Machines, Inc.*,
    249 F.3d 672, 674–75 (7th Cir. 2001) ........................................................ 3, 9

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*,
    535 U.S. 302, 324 (2002) ............................................................................ 15

*Tarrify Properties, LLC v. Cuyahoga County*,
    2020 WL 7490096 .................................................................................... 13

*Tyler v. Hennepin Cnty., Minnesota*,
    598 U.S. 631, 143 S. Ct. 1369 (2023) ..................................................... 14, 15

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036, 1045 (2016) ...................................................................... 12

*United States ex rel. TVA v. Powelson*,
    319 U.S. 266, 269-69 (1943) ....................................................................... 18

*United States v. Malewicka*,
    664 F.3d 1099, 1104 (7th Cir. 2011) ............................................................ 20

*United States v. Miller*,
    317 U.S. 369, 370-71 (1943) ................................................................ 18

*Vandeveld v. Christoph*,
    877 F. Supp. 1160, 1166 (N.D. Ill. 1995) ........................................... 19

*Wal-Mart Stores, Inc. v. Dukes*,
    564 US 338, 131 S.Ct. 2541, 2552, 180 L.Ed.2d 374 (2011) ............ 9

*Washington v. Glucksberg*,
    521 U.S. 702, 703 (1997) ......................................................... 3, 14, 19

*Whole Woman's Health v. Jackson*,
    142 S. Ct. 522, 538, 211 L. Ed. 2d 316 (2021) .................................. 7

*Wong v. Wells Fargo Bank*,
    789 F.3d 889, 896 (8th Cir. 2015) ..................................................... 7

**<u>Statutes</u>**

35 ILCS 200/21-305 ................................................................... 15, 16

35 ILCS 200/21-305(a) ................................................................... 15

35 ILCS 200/21-345 *et seq* .......................................................... 15

35 ILCS 200/21–350 ........................................................................ 20

35 ILCS 200/22–10, 22–30 ............................................................. 20

35 ILCS 200/22–30, 22–40, 22–85 ............................................... 20

**<u>Other Authorities</u>**

Illinois Property Tax Code, 35 ILCS 200/19-5 *et seq.* .................... 2

**<u>Rules</u>**

Fed. R. Civ. P. 8(a) ............................................................... 4, 17, 18

Fed. R. Civ. P. 8(a)(2) ....................................................................... 4

Rule 12(b)(1) ............................................................................ 1, 3, 4

Rule 12(b)(6) ................................................................................ 1, 3

Rule 12(f) .................................................................................... 1, 21

Rule 23(b) ........................................................................................ 9

Rule 23(b)(3)............................................................................................................. 10, 11

Rule 23(c)(1)(A) ............................................................................................................. 21

## INTRODUCTION

Plaintiffs Michel Sharritt, Melody Cannon, Maurice Cross, Christopher Meyer, Dareios Little and Karl Lee each failed to pay their respective property taxes for years. The counties in which the properties are located then attempted to collect the delinquent taxes through statutorily authorized tax sales. Some, but not all of plaintiffs' property taxes were purchased by tax buyers who paid some or all of the delinquent taxes due to the respective county. The tax buyers sought and were then issued tax deeds once the statutory redemption period expired. Rather than address the merits of the arguments asserted in defendants' motions to dismiss (DE 65, 67, 69-73), plaintiffs elected to file an amended complaint. DE 78. But the amended putative class complaint does not cure a single defect that plagued the original.

Plaintiffs instead now allege that certain defendants (DuPage, Carroll, Boone and Peoria Counties) sold the delinquent taxes to tax buyers who were issued tax deeds when the applicable redemption periods expired. Plaintiffs assert that issuance of the tax deed conveyed to the tax buyer any surplus value of the property in excess of the tax amount due. DE 78, ¶7-9; 20-22; 28-30; 40-43; 50-52. Plaintiffs, filing for themselves and on behalf of themselves and all others similarly situated, still allege that the various counties' tax collection efforts that result in depriving plaintiffs of surplus value of their property in excess of the tax amount due constitutes an unconstitutional taking of their equity interest, violates due process and imposes an excessive penalty in violation of the 8th Amendment. DE 78. Defendants now move to dismiss the amended putative class complaint.

## STATEMENT OF FACTS

Plaintiffs' putative class action amended complaint alleges that the defendant counties' and their officials' application of the Property Tax Code ("PTC") effects a "taking" of real property

1

for public use without just compensation in violation of the Fifth Amendment and Section 1983; violates of the right to due process; and violates the Eighth Amendment.

Defendants Boone, Carroll, Peoria, Will and Winnebago Counties and their respective officials join, adopt and incorporate by reference the recitation of Illinois Property Tax Code, 35 ILCS 200/19-5 *et seq.,* set forth by the Lake County Defendants at Section II of its separately filed memorandum at pages 2-7. Defendants further request this Court take judicial notice of Illinois' statutory scheme for property tax collection and tax sales, and the summaries of same cited in *In re LaMont*, 740 F.3d 397, 400–01 (7th Cir. 2014) and *In re Cnty. Treasurer & ex officio Cnty. Collector of Will Cnty.*, 2024 IL App (3d) 220134, ¶¶ 6-12.

Plaintiff Chris Meyer acquired property in Boone County, Illinois in 2012. Public records[1] show that not all taxes were paid for tax years 2012 through 2015. In 2022, title to the property vested in a corporation.

Plaintiffs Melody Cannon and Maurice Cross owned property in Carroll County, Illinois.[2] Public records show that Cannon and Cross's past due taxes were sold to a tax buyer in 2019. A tax deed issued on July 10, 2023.

Public records show that Plaintiff Karl Lee owned property in Peoria County from tax years 2017 through 2020.[3] The property was subject to a tax sale for tax year 2017 and a tax deed was issued on February 8, 2022.

---

[1] For the publicly available information cited in this paragraph, see the Boone County Property Tax Inquiry, https://booneil.devnetwedge.com/parcel/view/0535452017/2022#PaymentHistory1.
[2] For the publicly available information cited in this paragraph, see the Carroll County Property Tax Inquiry, https://carrollil.devnetwedge.com/parcel/view/010619300013/2022.
[3] For the publicly available information cited in this paragraph, see the Peoria County Property Tax Inquiry, https://propertytax.peoriacounty.gov/parcel/view/0520258014/2023.

The amended putative class complaint does not name a plaintiff in either Will or Winnebago Counties who owns or owned real property with delinquent taxes sold to a tax buyer who was then issued a tax deed.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *Rendina v. Falco/Rendina/Erickson*, No. 05 C 7528, 2006 WL 2578926, at*2 (N.D. Ill. Sept. 5, 2006). District courts look beyond the pleadings and consider all competent evidence when considering a Rule 12(b)(1) motion challenging the factual basis for subject matter jurisdiction. *New Medium Technologies LLC v. Barco N.V.*, 2007 WL 2020169 at *5 (N.D. Ill. July 5, 2007). While this Court must accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiffs' favor in ruling on the motion, they nonetheless bear the burden of establishing that the necessary jurisdictional conditions precedent were alleged. *Id*.

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a pleading by accepting all the complaint's factual allegations as true. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 674–75 (7th Cir. 2001). When considering a Rule 12(b)(6) motion to dismiss, courts construe the allegations in a plaintiff's complaint "in the light most favorable to [the plaintiff], accepting all well-pleaded facts as true, and drawing all reasonable inferences in favor of [the plaintiff]." *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (*citing Citadel Group Ltd. v. Washington Regional Medical Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012)).

Dismissal is proper whenever the complaint fails to set forth a "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[W]here the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## ARGUMENT

As a threshold matter, this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine. The named plaintiffs also lack standing to sue either Will or Winnebago Counties and their respective officials because despite availing themselves of the opportunity to amend, none of the named plaintiffs can trace their injury to Will or Winnebago Counties as is required for Article III standing. Plaintiffs' invocation of the "juridical link" doctrine is in derogation of Supreme Court precedent on standing. Lack of standing aside, the takings, due process and excessive fine claims each fail to state a legally cognizable cause of action. Plaintiffs also fail to state a claim under *Monell*. Finally, the class allegations should be stricken. Each issue is addressed in turn.

## I. THE COURT LACKS SUBJECT MATTER JURISDICTION UNDER THE *ROOKER-FELDMAN* DOCTRINE.

Defendants Boone, Carroll, Peoria, Will and Winnebago Counties and their respective officials join, adopt and incorporate by reference DuPage County's argument on the application of *Rooker-Feldman* as if fully set forth herein as the basis for dismissal under Rule 12(b)(1). *See* DuPage Brief at p. 12-13.

## II. PLAINTIFFS LACK STANDING TO SUE WINNEBAGO AND WILL COUNTIES AND THEIR RESPECTIVE OFFICIALS.

Plaintiffs continue to invoke the "juridical link" doctrine in their amended complaint to justify naming certain defendant counties that did not injure them. DE 78, ¶ 128-131. Plaintiffs made no effort to plead additional facts to justify application of this doctrine. They instead reassert the same conclusory allegation that "[i]t is reasonable to hold all named Defendant Counties,

Treasurers and Clerks accountable in one suit." DE 78, ¶ 130. Plaintiffs cite *Payton v. Cnty. of Kane*, 308 F.3d 673 (7th Cir. 2002), where the Seventh Circuit said that class plaintiffs may sue "all similarly situated counties in a single case if they can show that their injuries arise out of a common legal rule . . . that is binding on, and followed to various degrees by, all the named counties." *Payton*, 308 F.3d at 678. Plaintiffs overlook that *Payton* further articulated that whether plaintiffs may bring such "juridically linked" claims turns on an analysis of Rule 23 certification criteria. *Id.* at 680. The amended complaint should be dismissed as to Will and Winnebago Counties (as well all other counties where no named plaintiff resides) because just as with the original complaint, no plaintiff can directly satisfy Article III standing criteria, and the juridical link doctrine on which plaintiffs rely otherwise defies well-established Supreme Court precedent.

**A. No Named Plaintiff Can Trace His or Her Injury to Will County or Winnebago County.**

Class plaintiffs are required to establish their own case and controversy with the named defendants to be able to seek relief for putative class members. *O'Shea v. Littleton*, 414 U.S. 488, 494, 94. S. Ct. 669, 38 L.Ed.2d 674 (1974). *See also*, *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Plaintiffs here do not allege that a single plaintiff has a direct cognizable nexus with either Will or Winnebago Counties, and the amended complaint is devoid of any allegations that Will County's or Winnebago County's respective procedures under the PTC harmed any named plaintiff. The named plaintiffs lack standing to sue these two counties (as well as any other named county in which they do not reside) because no injury is traceable to those defendants. *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 342, 126 S. Ct. 1854, 164 L. Ed. 2d 589 (2006). Acknowledging as much, plaintiffs invoke the "juridical link" doctrine to overcome the absence of an actual case or controversy against those defendants. This Court should decline to apply that doctrine here.

**B.      The Shortcut Plaintiffs Invoke is in Derogation of Supreme Court Precedent.**

The "juridical link" doctrine evolved from *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973), where the class representative sued several pawn brokers in Oregon alleging violations of the Truth-in-Lending Act.  *La Mar*, 489 F.2d at 462.  The court suggested that plaintiffs—whether named or unnamed—may proceed against defendants who did not harm a particular plaintiff so long as those defendants were "juridically related in a manner that suggests a single resolution of the dispute would be expeditious."  *Id*. at 296 (quoting *La Mar*, 489 F.2d at 466).  The Seventh Circuit in *Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002) accepted this doctrine.

The putative class in *Payton* sued seventeen defendant counties with which no named plaintiff had a legal nexus.  *Payton*, 308 F.3d 677-78.  The *Payton* court expressed concern about those cases in which "appropriate relief may only be obtained through one broad suit," where it is "impossible to find a named plaintiff to match each defendant."  *Id.* 681.  The court found it "reasonable for the putative plaintiff class to try to hold all counties accountable within one suit." *Id.* at 680.  But the court concluded that it could not answer this question absent an analysis of Rule 23 criteria. *Id.* at 680-82.  The district court did not undertake this analysis, so the case was remanded.  *Id*.  The "juridical link" doctrine creates an exception to cornerstone principles of standing in a manner that is irreconcilable with binding Supreme Court precedent.  The Sixth Circuit in *Fox v. Saginaw County, Michigan*, 67 F.4th 284 (6th Cir. 2023), recently recognized as much.

In *Fox*, the Sixth Circuit declined to apply the juridical link doctrine as antithetical to Supreme Court precedent regarding standing, while noting the circuit split that developed in the wake of *La Mar* and *Payton*.  S*ee e.g., Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62–63, 65–66 (2d Cir. 2012) (holding that a plaintiff must have Article III standing at the time the complaint is

filed, even if the complaint alleges a putative class action.); and *Wong v. Wells Fargo Bank*, 789 F.3d 889, 896 (8th Cir. 2015).

The plaintiff in *Fox* sued the Michigan county in which he resided and 26 other counties that did not injure him, alleging unconstitutional taking claims under Michigan's property tax foreclosure scheme. *Fox*, 67 F.4th at 288. Noting that the Supreme Court "had yet to clearly identify standing's constitutional floor" at the time the Ninth Circuit decided *La Mar*, the *Fox* court held that the "juridical link" doctrine conflicts with Supreme Court precedent because it: (1) excuses the rule that a class plaintiff must establish a case and controversy as to each defendant; (2) alters the time when standing matters; and (3) replaces the strict compliance requirement for establishing a case or controversy with an "efficiency exception." *Id*. at 294-95. *Fox* is particularly instructive here, where plaintiffs also purport to challenge several Illinois counties' application of the PTC with alleged constitutional violations. The same concerns identified by the *Fox* court remain present in the amended complaint.

There is still no case or controversy with those counties in which no named plaintiff owns property. The putative class members—which the named plaintiffs *assume* includes property owners in Will and Winnebago Counties—are not plaintiffs with standing unless and until this Court certifies the class. *See Smith v. Bayer Corp.,* 564 U.S. 299, 313, 131 S. Ct. 2368, 180 L. Ed. 2d 341 (2011). The "juridical link" doctrine results in "manufactured standing" pending class certification and creates an exception to the standing analysis, which the Supreme Court is loathe to do. *See Whole Woman's Health v. Jackson,* 142 S. Ct. 522, 538, 211 L. Ed. 2d 316 (2021) and *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 180, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000).

Plaintiffs overlook the fact that the Seventh Circuit did not hold that merely alleging a "juridical link" disposes of the requirement to plead a case and controversy. The *Payton* court identified the quandary between the juridical link doctrine and Article III standing considerations. *Payton*, 308 F.3d at 678; 682, quoting *Allee v. Medrano*, 416 U.S. 802, 828-29, 94 S.Ct. 2191, 40 L.E.2d 566 (1974) ("Standing cannot be acquired through the back door of a class action."). *Payton* does not dispense with the traditional standing analysis the Supreme Court requires of district courts in the class action context. Plaintiffs' invocation of the doctrine here overlooks this reality.

    **C.    Even if the Court Accepts the Juridical Link, Rule 23 Criteria are not Satisfied.**

*Payton* limited its holding to the observation that plaintiffs ***may*** use a class action device to sue defendants with whom no named plaintiff has an actual case or controversy. But *Payton* does not mandate it. The above discussion illustrates the significant deviations from Supreme Court precedent the "juridical link" doctrine creates. Even if the Court applies the doctrine, *Payton* still compels dismissal of Will and Winnebago Counties and any county in which no named plaintiff owns or owned real property.

*Payton* held that the putative class plaintiffs' standing to sue the other seventeen counties required consideration of Rule 23 class certification criteria, as the Supreme Court directed in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999). *Payton*, 308 F.3d at 680-81; *citing Ortiz*, 527 U.S. at 816 ("[A] Rule 23 question should be treated first because class certification issues are 'logically antecedent' to Article III concerns [citation omitted] and pertain to statutory standing, which may properly be treated before Article III standing."). The district court concluded on remand that the juridical link did not apply because the plaintiffs did not satisfy Rule 23 criteria. *Payton v. County*

*of Kane*, 2005 WL 1500884, No. 99 C 8514 (N.D. Ill. June 10, 2005). The Court should reach the same conclusion here.

### D. Plaintiffs Cannot Satisfy Rule 23 Criteria to Justify Invocation of the Juridical Link Doctrine.

A class action is the exception to the customary rule that litigation is conducted by and between the named parties only. *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013), *citing Califano v. Yamasaki*, 442 US 682, 700-701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). Rule 23 is not a pleading standard that putative class representatives need to meet. *Wal-Mart Stores, Inc. v. Dukes*, 564 US 338, 131 S.Ct. 2541, 2552, 180 L.Ed.2d 374 (2011). A putative class representative seeking certification bears the affirmative burden of demonstrating compliance with the Rule, which means proving that there are sufficiently numerous parties, common questions of law, the putative representative's claims are typical and adequately represent the class in addition to the requirement that common issues predominate over individual issues as required by Rule 23(b). *Id*. Certification is proper only if, after a ***rigorous analysis***, a court is satisfied that the Rule 23 requirements are met. *Comcast*, 133 S.Ct. at 1432.

A plaintiff seeking class certification bears the burden of proving by a preponderance of the evidence that his proposed class meets all four requirements of Fed. R. Civ. P. 23(a) and at least one of the prongs of Rule 23(b). *Dancel v. Groupon*, 949 F.3d 999, 1004 (7th Cir. 2019). He must "affirmatively demonstrate" that "there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart,* 564 U.S. at 350. On issues affecting class certification, a court "may not simply assume the truth of the matters as asserted by the plaintiff." *Szabo v. Bridgeport Machines, Inc*., 249 F.3d 672, 676 (7th Cir. 2001). If the defendant identifies material factual disputes, the court should "receive evidence . . . and resolve the disputes before deciding whether to certify the class." *Id*. Where the merits of the underlying claim overlap with the class

certification analysis, the court considers the merits to the extent necessary to rule on certification. *Dancel*, 949 F.3d at 1005.

Fed. R. Civ. P. 23(a) requires a class plaintiff to prove that: (1) the proposed class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Rule 23(b)(3) requires proof that (1) common questions of law or fact predominate over any individualized questions; and (2) the class action mechanism is superior to other available methods of resolving the controversy.

### 1. The Rule 23(a) Requirements Are Not Met.

Here, defendants acknowledge, for purposes of their argument only, that the numerosity element is likely satisfied given the purported claims which extend to numerous Illinois counties across the state. But plaintiffs cannot satisfy the remaining elements. The issues plaintiffs identify as common to the class are not provable on a class wide basis. Because these same issues are also central to the "predominance" inquiry under Rule 23(b)(3), defendant counties incorporate by reference their discussion of those issues in that section.

The typicality requirement overlaps significantly with adequacy, so to avoid repetition, defendant counties will address these together. *Robles v. Corporate Receivables, Inc*., 220 F.R.D. 306, 309 (N.D. Ill. 2004). In assessing both requirements, the Court is to compare the named plaintiffs as proposed class representative to the other class members. The Court considers whether the named plaintiffs' respective positions are typical of other class members and whether they would be an adequate representative of their interests.

To satisfy typicality, a named plaintiff must be a member of the putative class and have the same interest and injury as the other members. *Conrad v. Boiron, Inc*., 869 F.3d 536, 539 (7th Cir.

2017). A proposed class representative may not be adequate if he is subject to a substantial defense unique to him. *CE Design, Ltd. v. King Architectural Metals, Inc*., 637 F.3d 721, 726 (7th Cir. 2011). "The fear is that the named plaintiff will become distracted by the presence of a possible defense applicable only to [him] so that the representation of the rest of the class will suffer." *Id.* The defense need only be "arguable" to defeat adequacy, so long as it is not applicable to every other member of the class. *Pruitt v. Personnel Staffing Grp*., *LLC*, No. 16-cv-5079, 2020 U.S. Dist. LEXIS 99774, *25-*26 (N.D. Ill. June 8, 2020); *Karmel Al Haj v. Pfizer, Inc*., No. 17-C-6730, 2020 U.S. Dist. LEXIS 51658, *9 (N.D. Ill. March 23, 2020). Plaintiffs here are neither typical nor adequate representatives.

This case is about the alleged surplus value of the real property that plaintiffs claim is deprived them as a result of a tax sale to collect delinquent taxes. Plaintiffs' measure of damages will vary based on their respective and unique property values. Some named plaintiffs' claims could be time barred. Even where the property was sold for more than the delinquent tax amount due, those claims are subject to substantive defenses as discussed in greater detail below.

In addition, although not explicitly included in Rule 23(a), the party seeking certification must establish that the class is ascertainable and the class members identifiable. *Oshana*, 472 F.3d at 513. Ascertainability in the Seventh Circuit focuses on the "adequacy of the class definition itself" rather than the difficulty of identifying particular class members. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). Administrative problems with identifying class members are to be addressed under the superiority prong of Rule 23(b)(3). *Id*. at 663.

To satisfy ascertainability, a class must be clear, precise, and based on objective rather than subjective criteria. *Id*. at 659-60. It must not be defined so narrowly as to create a "fail-safe" class, *i.e.*, either a class member either wins, or by virtue of losing is defined out of the class. *Id*. at 660.

On the other hand, a class must not be defined so broadly as to include a great number of members to whom the defendant could not be liable. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 824-25 (7th Cir. 2011); *Oshana*, 472 F.3d at 514. This is unfair to defendants because the sheer number of class members and the potential payout could force defendants to settle even when the class includes "many members who could not bring a valid claim even under the best of circumstances." *Messner,* 669 F.3d at 825. Courts instead assess the proposed class definition to ensure it is clear, objective, and neither too narrow nor too broad. Where a plaintiff's class definitions make it impossible for the court to determine the true class membership, class certification should be denied. *Elward v. Electrolux Home Products*, No. 15-cv-9882, 2020 U.S. Dist. LEXIS 96000, *65 (N.D. Ill. June 1, 2020).

The proposed class definition in the amended complaint here is unascertainable because it is unduly broad and wildly overinclusive. The proposed definition establishes an impermissible fail-safe class; in defining the class in terms of property owners deprived of surplus funds under procedures established in the PTC, the class would include members with actual and viable claims, which requires the Court to conduct a threshold determination to confirm class membership. These deficiencies are underscored by the predominance of individual issues.

## 2. Individual Issues Predominate

The predominance inquiry asks whether "the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). If the members of the proposed class would have to present evidence "that varies from member to member, then it is an individual question." *Messner*, 669 F.3d at 815. "While similar to Rule 23(a)'s requirements for typicality and commonality, the predominance criterion is far more demanding." *Id.* at 814. Plaintiffs satisfy the predominance requirement only if they can show that "common questions

represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication." *Id*. at 815. Plaintiffs fall well short of this standard and their amended complaint did not address this defect.

Plaintiffs purport to plead a common issue—the retention of surplus proceeds from tax sales. However, the existence of a common issue is not proof that the common issue predominates. *Comcast*, 569 U.S. at 34.

There are numerous individual issues here. The plaintiffs' respective claims turn on fact specific damages that each plaintiff must prove for each individual claim. For instance, each plaintiff's property must have actually been sold or otherwise valued to assess each plaintiff's alleged damages. An assessment of the fair market value is required to calculate whether a surplus was generated. Each plaintiff must establish the tax amount due for their properties, and any other statutorily imposed fees and costs imposed. Where the tax buyer sold the property to a third party, a fair market value on the date of sale is needed. Each plaintiff must also demonstrate whether any liens attached to their property—*i.e.* mortgages—which will impact the amount of any alleged surplus. These individually oriented questions prompted the federal district court for the Northern District of Ohio to decline certification, and the Sixth Circuit to vacate a certified class seeking similar relief as that sought here. *See Tarrify Properties, LLC v. Cuyahoga County*, 2020 WL 7490096 (finding that ascertainability, predominance and superiority requirements unsatisfied in proposed class of plaintiffs whose properties were sold to collect delinquent taxes) and *Fox v. Saginaw Cty*, 67 F.4th 284 (6th Cir. 2023) (finding individualized issues predominated in class of property owners deprived of surplus proceeds). Dismissal of the amended complaint for lack of standing as to Will and Winnebago Counties and their respective officials is proper.

III.    **THE CLAIMS ASSERTED ARE SUBJECT TO A TWO-YEAR STATUTE OF LIMITATIONS.**

Plaintiffs continue to allege violations of the 5th Amendment, state and federal due process guarantees, 8th Amendment and Section 1983.  These claims are subject to a two-year statute of limitations.  *Devbrow v. Kalu*, 705 F.3d 765, 767 (7th Cir. 2013).  The claims accrued when the tax deed was issued, but the amended complaint, which only adds facts designed to elicit sympathy for the named plaintiffs' loss of their real property because of unpaid taxes, notably omits any dates.  Here, plaintiffs filed the original complaint on November 9, 2023.  Any claim arising out of a tax deed issued before November 9, 2021 is time barred.  Boone, Carroll, Peoria, Will and Winnebago Counties further adopt DuPage County's argument relating to retroactive application of the *Tyler* holding.  *See* DuPage Brief at p. 9-11.

IV.    **PLAINTIFFS FAIL TO STATE A LEGALLY COGNIZABLE CLAIM[4].**

Plaintiffs continue to premise their claims on the incorrect assumption that, by collecting delinquent taxes owed them the defendant counties effect a "taking" under the Supreme Court's holding in *Tyler v. Hennepin Cnty., Minnesota*, 598 U.S. 631, 143 S. Ct. 1369 (2023).  Plaintiffs overlook that the Supreme Court in *Tyler* considered a Minnesota property tax code that is wholly dissimilar from the PTC.  Plaintiffs' takings claim, alleged violation of due process claim and excessive penalty claim each fail to state a legally viable cause of action.

A.    **There is No Taking Under the PTC.**

Whether the surplus from tax sales constitutes a violation under the Takings Clause depends on state law, "traditional property law principles," historical practice, and the Court's precedents.  *Tyler*, 598 U.S. at 631; *citing Phillips v. Washington Legal Found.*, 524 U.S. 156, 157

---

[4] In the interest of avoiding duplication, these defendants also join in and adopt the Eleventh Amendment and *quasi-*immunity arguments advanced by Kane County in its memorandum.  *See* Kane County Brief at p. 9-11.

(1998). In *Tyler*, the Supreme Court laid bare what constitutes an impermissible taking in this context:

> History and precedent dictate that, while the County had the power to sell Tyler's home to recover the unpaid property taxes, ***it could not use the tax debt to confiscate more property than was due***. Doing so effected a "classic taking in which the government directly appropriates private property for its own use."

*Tyler*, 598 U.S. at 631 (emphasis added), *citing Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 324 (2002).

Unlike the statute in *Tyler*, the PTC facilitates collection of the tax amount due, nothing more. "The primary purpose of the tax sales provisions of the Property Tax Code is to coerce tax delinquent property owners to pay their taxes, ***not to assist tax petitioners in depriving the true owners of their property.***" *Excalibur Energy Co. v. Rochman*, 2014 IL App (5th) 130524, ¶ 17 (emphasis added). Consistent with the PTC, the defendant counties satisfy delinquent taxes owed to the respective taxing districts and restore the properties to the taxing rolls. The PTC also affords delinquent owners a "right of redemption," allowing them to redeem their properties and prohibit the issuance of tax deeds by paying all tax principal, special assessments, interest and penalties up to 30 months after the tax sale. *See* 35 ILCS 200/21-345 *et seq*. In the rare event the owner does not avail himself of the redemption right, or the tax buyer does not obtain a tax deed, the defendant counties may take title for the sole purpose of finding a buyer of the property—but even then, the county only collects the delinquent tax amount due. In any event, the PTC includes a safety net for any owners whose property is sold under the PTC, that creates an avenue for owners to recover lost equity via the Indemnity Fund. *See* 35 ILCS 200/21-305(a).

The PTC merely facilitates the counties' collection of delinquent taxes (from the buyer at a tax sale) and future taxes (from a subsequent purchaser of the property). This distinction is significant, as the State of Minnesota itself retained the surplus in *Tyler*, compelling the Supreme

15

Court to find there was a taking. *Tyler*, 598 U.S. at 635 (Minnesota obtains "absolute title" to the property after the expiration of the redemption period after which the state may sell the property to private parties and retain any excess funds, leaving the former owner no opportunity to recover the surplus). Those are not the facts alleged here, and the PTC does not allow plaintiffs to allege otherwise.

Plaintiffs do not allege that the defendants deprived or prevented any named plaintiff from availing himself of the Indemnity Fund, 35 ILCS 200/21-305. Indeed, no named plaintiff alleges a claim under the Fund. They instead contend—in a series of conclusory and argumentative paragraphs that read like an argument in response to the motions to dismiss the original complaint—that the Indemnity Fund does not trump the purported Takings Claims asserted in Count I. DE 78, ¶¶ 97-119. Plaintiffs cite several Supreme Court cases interpreting the Takings Clause in the context of eminent domain of real property, a subject matter entirely dissimilar to statutorily enacted, property tax collection procedures. DE 78, ¶¶ 100, 111.

For example, *Albrecht v. United States*, 329 U.S. 599 (1947), considered whether the Takings Clause of the Fifth Amendment required the government to pay interest in connection with land purchases and condemnation proceedings. *Albrecht*, 329 U.S. at 600–02. Similarly, *Jacobs v. United States*, 290 U.S. 13 (1933), considered whether the construction of a dam along the petitioners' lands, which caused overflow, damage and a partial taking of those lands, necessitated interest payments to the landowners as an element "just compensation." *Jacobs*, 290 U.S. 13, 16. Lastly, *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180 (2019), involved a Fifth Amendment Taking Clause challenge to a local ordinance requiring all cemeteries to be kept open and accessible during daylight. *Knick*, 139 S. Ct. at 2164. The petitioner owned a small family cemetery on her 90-acre rural property, and the court held that

16

state law did not require her to seek compensation prior to having an actionable Fifth Amendment claim. *Id*. By contrast, the amended complaint here relates to duly enacted statutory procedures by the Illinois legislature for collecting delinquent taxes and distributing the amounts owed to the respective taxing districts—an entirely factually inapposite context. The cases cited in plaintiff's amended complaint do not inform the entirely different analysis this Court is asked to undertake—whether the existence of the Indemnity Fund in the PTC forecloses a takings claim.

Plaintiffs' Takings Claim and Indemnity Fund allegations are also improperly narrative, conclusory and argumentative. DE 78, ¶¶ 77-119. A pleading that states a claim for relief must contain, among other things*,* a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Courts find that narrative, conclusory and argumentative allegations violate these federal pleading standards. *See Barbosa v. Sanchez Vilella*, 293 F. Supp. 831, 833 (D.P.R. 1967) (finding the complaint to be impermissibly prolix, argumentative, containing evidentiary matter, and long on conclusions of law and short on allegations of fact); *Stein v. Bhd. of Painters, Decorators & Paper Hangers of Am.*, 11 F.R.D. 153, 155 (D.N.J. 1950) ("The averments are so argumentative and ambiguous that it is difficult to determine either the nature of the claim stated or the nature of the relief sought."); *Prezzi v. Berzak*, 57 F.R.D. 149, 151 (S.D.N.Y. 1972) ("Complaints which ramble, which needlessly speculate, accuse, and condemn, and which contain circuitous diatribes far removed from the heart of the claim do not comport with these goals and this system; such complaints must be dismissed.")

Paragraphs 77-96 of the amended complaint are general condemnations of the PTC and *de facto* responses to the arguments advanced in the motion to dismiss the original complaint. These allegations offer no additional facts on which a case and controversy any named plaintiff has with

any named defendant could be premised. *See e.g.*, DE 78, ¶78; 82; 84 (proclamations that lawful tax sales to tax buyers under the PTC spare the defendants of the "opprobrium that would otherwise be visited on them . . . in foreclosing and evicting owners. . . ." ; unfounded accusations involving the "Gift Clause" of the Illinois Constitution; opinions regarding the "relevancy" of "accomplices or assistants" the defendants may have regarding administration of the PTC; and advisory opinions of the Attorney General of Colorado on matters concerning Colorado law. These allegations violate Rule 8(a), fail to support any claim and should be stricken as a matter of law. Count I should be dismissed with prejudice.

Similarly, in paragraphs 77-83 of the amended complaint, plaintiffs attempt to plead takings clause violations – through improper argumentation and insinuation – that the PTC confers upon defendants "additional financial benefits," "consideration," subsidies and cost-shifting benefits. Plaintiffs cite multiple Fifth Amendment Supreme Court cases that are factually distinguishable from the facts at issue here in support. *See Armstrong v. United States,* 364 U.S. 40, 41-42 (1960) (dealing with the extinguishment of liens held by supplier of contractor when contractor breached its contract with government); *Brown v. Legal Found. of Wash.*, 538 U.S. 216-17 (2003) (considered state law that required escrowees of real estate transactions to transfer interest earned on monies deposited by parties to transaction to state's non-profit legal foundation); *United States ex rel. TVA v. Powelson*, 319 U.S. 266, 269-69 (1943) (addressed the federal government's condemnation of 12,000 acres of land); *United States v. Miller*, 317 U.S. 369, 370-71 (1943) (dealt with federal government's condemnation of privately owned land to build railroad tracks); *Kelo v. City of New London*, 545 U.S. 469 (2005) (considered the "public use" restriction of the Fifth Amendment in context of real estate condemnation proceeding).

Plaintiffs also fail to state a "takings" claim under section 15 of the Illinois Constitution:

> Private property shall not be taken or damaged for public use without just compensation as provided by law. Such compensation shall be determined by a jury as provided by law.

Ill. Const. art. I, § 15.  The Illinois Takings Clause "provides protection greater than that provided by its federal counterpart" because it also guards against "governmental damage" to private property.  *Int'l Coll. of Surgeons v. City of Chicago*, 153 F.3d 356, 363 (7th Cir. 1998).  But plaintiffs do not allege any such damages and as such fail to state a "takings" claim under the Illinois Constitution.

### B.    Plaintiffs Do Not State a Due Process Violation.

The Supreme Court delineated due process rights as both substantive and procedural under the Fourteenth Amendment.  Substantive due process "protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 702, 703 (1997).  Whereas procedural due process claims involve the following inquiries: "(1) is there a property or liberty interest protected by due process; and (2) if so, what process is due, and when must that process be made available?" *Simpson v. Brown Cnty.*, 860 F.3d 1001, 1006 (7th Cir. 2017).  In interpreting due process guarantees under Article 1, section 2 of the Illinois Constitution, the Illinois Supreme Court stated that federal precedent interpreting the federal due process clause is useful as a guide. *Lewis E. v. Spagnolo*, 186 Ill. 2d 198, 227 (1999); *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1166 (N.D. Ill. 1995) ("In construing the Illinois Constitution's guarantee of due process, a court may look for guidance to constructions of the federal due process clause by federal courts.").

Plaintiffs' amended complaint does not and cannot state a claim for either substantive or procedural due process violations.  The discussion above shows that the PTC does not deprive, convert or misappropriate the owners' equity in their property.  Procedural due process only requires notice and an opportunity to be heard. *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972).  The

19

PTC offers property owners like plaintiffs generous notice and numerous opportunities to be heard. *See* e.g., 35 ILCS 200/21–350; 35 ILCS 200/22–10, 22–30; 35 ILCS 200/22–30, 22–40, 22–85.

Finally, plaintiffs' due process claims are duplicative of their failed takings claims. Plaintiffs improperly seek to create a new claim based on the same conduct that they allege violates the Fifth Amendment. This is not permitted. *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865 (1989). Dismissal of Count II is proper and should be granted.

### C. The Excessive Penalty Claim Fails.

The Eighth Amendment prohibits excessive fines and penalties. Determining whether a fine is excessive is a fact-dependent inquiry that requires a trial. *See United States v. Malewicka*, 664 F.3d 1099, 1104 (7th Cir. 2011) (stating that courts must consider "the nature of the harm caused by the defendant's conduct" when evaluating a fine). Plaintiffs' invocation of the Eighth Amendment fails because the only facts pled in the amended complaint are that the defendant counties collected delinquent taxes owed by the named plaintiffs in the legislatively approved manner set out in the PTC. The above discussion makes clear there was no harm because the defendant counties' conduct was legislatively authorized. Count III is subject to dismissal with prejudice.

### D. Plaintiffs Fail to State a Claim Under *Monell*.

*Monell* held that a local government can be sued under Section 1983, but only "when execution of a government's policy or custom ... inflicts the injury." *Monell v. Department of Social Services of the City of N.Y.*, 436 U.S. 658, 694. A plaintiff may demonstrate the existence of a governmental policy through proof of an express policy causing the loss, a widespread practice constituting custom or usage causing the loss, or causation of the loss by a person with final policymaking authority. *Kujawski v. Bd. of Comm'rs*, 183 F.3d 734, 737 (7th Cir. 1999).

Here, plaintiffs generally allege that defendants' policies and practices under the PTC caused a taking of their private property. *See generally* DE. 1. But plaintiffs fail to present facts indicating that any decision *by* Boone, Carroll, Peoria, Will or Winnebago Counties, the counties' clerk's or treasurer's offices, or by those counties' final policymakers, is the "moving force" behind the alleged constitutional violations. *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388, 137 L. Ed. 2d 626 (1997) ("The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged."). Instead, to the extent plaintiffs allege any policy, the only possible policy is the defendant counties', clerks' and treasurers' enforcement or implementation of the PTC. Enforcing or implementing state law cannot provide the basis for *Monell* liability. *Surplus Store & Exchange, Inc. v. City of Delphi*, 928 F.2d 788 (7th Cir. 1991) (rejecting *Monell* liability based on municipal enforcement of state law); *Bethesda Lutheran Homes & Services, Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998) ("When the municipality is acting under compulsion of state or federal law, it is the policy contained in that state or federal law, rather than anything devised or adopted by the municipality, that is responsible for the injury.").

Defendants join and incorporate DuPage County's argument on this issue as though fully set out herein. *See* DuPage Brief at p. 9-12.

## V.     THE CLASS ALLEGATIONS SHOULD BE STRICKEN.

There is no rule that prohibits this Court from reviewing and striking class allegations at the pleading stage. *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011). Rule 23(c)(1)(A) requires a court to determine whether class treatment is appropriate as early as practicable when a person sues as a class representative. Fed. R. Civ. P. 23(c)(1)(A). Rule 12(f) empowers this Court to strike class allegations at the pleading stage. Fed. R. Civ. P. 12(f). Striking the putative class allegations here is proper because it is clear from the pleadings that plaintiffs

may not proceed in a representative capacity. *See Murdock-Alexander v. Tempsnow Empl.*, No. 16-CV-5182, 2016 WL 6833961 at \*3 (N.D. Ill. Nov. 21, 2016) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim[.]")).

The measure of plaintiffs' damages, if any, here are limited to the unspecified difference between the fair market value of their property and the delinquent taxes, interest and penalties due. Without conceding that plaintiffs advance a legally viable claim, plaintiffs' attempt to pursue this matter as a class action is fraught with insurmountable obstacles. Defendants incorporate by reference the arguments in Section I.D. above relative to Rule 23. Similar Rule 23 deficiencies recently prompted the Eastern District of Michigan to strike the class allegations in a complaint filed by plaintiffs seeking to represent a class of property owners whose properties were sold in connection with tax sales. *See e.g., Hall, et al v. Oakland County*, No. 20-12230, 2024 WL 209702, \*6-12 (E.D. Mich. Jan. 19, 2024). The class allegations in the amended complaint are plagued by the same defects that were identified in the original complaint. The class allegations should be stricken without leave to replead.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants Susan J. Goral in her capacity as Treasurer of Winnebago County, Illinois, Lori Gummow in her capacity as Clerk of Winnebago County, Illinois, Winnebago County, Illinois; Nicole Bjerke, in her capacity as Treasurer of Peoria County, Illinois, Rachael Parker in her capacity as Clerk of Peoria County, Illinois, Peoria County, Illinois, Tim Brophy, in his capacity as Treasurer of Will County, Illinois, Andrea Linn in her capacity as clerk of Will County, Illinois, Will County, Illinois, Lydia Hutchcraft, in her capacity as Treasurer of Carroll County, Illinois, Amy Buss, in her capacity as clerk of Carroll County,

Illinois, Carroll County, Illinois; Curt Newport, in his capacity as Treasurer of Boone County, Illinois, Julie Bliss in her capacity as Clerk of Boone County, Illinois, and Boone County, Illinois, respectfully request that this Court enter an order granting their motion and dismiss the Will and Winnebago Counties for lack of standing; dismiss the amended complaint in its entirety for failure to state a claim and in the alternative strike the class allegations.

Dated: April 8, 2024

Respectfully submitted,

Susan J. Goral in her capacity as Treasurer of Winnebago County, Illinois, Lori Gummow in her capacity as Clerk of Winnebago County, Illinois, Winnebago County, Illinois, Lydia Hutchcraft, in her capacity as Treasurer of Carroll County, Illinois, Amy Buss, in her capacity as clerk of Carroll County, Illinois, Carroll County, Illinois; and Curt Newport, in his capacity as Treasurer of Boone County, Illinois, Julie Bliss in her capacity as Clerk of Boone County, Illinois, and Boone County, Illinois, Nicole Bjerke, in her capacity as Treasurer of Peoria County, Illinois, Rachael Parker in her capacity as Clerk of Peoria County, Illinois, Peoria County, Illinois, and Tim Brophy, in his capacity as Treasurer of Will County, Illinois, Andrea Linn in her capacity as clerk of Will County, Illinois, and Will County, Illinois.

By:   *s/Rosa M. Tumialán*
Charles A. LeMoine
clemoine@tresslerllp.com
Rosa M. Tumialán
rtumialan@tresslerllp.com
Molly E. Thompson
mthompson@tresslerllp.com
Jerome Murphy
jmurphy@tresslerllp.com
Carter Frambes
cframbes@tresslerllp.com
TRESSLER, LLP
233 S. Wacker Dr., 61st Floor
Chicago, IL 60606
312-627-4191

Tim Brophy, in his capacity as Treasurer of Will County, Illinois, Andrea Linn in her capacity as clerk of Will County, Illinois, and Will County, Illinois

By:   *s/ Gary Scott Pyles*
Gary Scott Pyles
spyles@willcountyillinois.com
57 N. Ottawa Street
Joliet, IL 60432
(815) 724-1318

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 8, 2024, I electronically filed the foregoing Defendants' Joint Memorandum In Support Of Motion to Dismiss with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

*/s/ Rosa M. Tumialán*