IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS—EASTERN DIVISION

MICHEL SHARRITT, *et al.*
   v.
GWEN HENRY, Treasurer of DuPage County, *et al.*

23 CV 15838
Judge Sara L. Ellis

## MOTION TO DISMISS THE AMENDED COMPLAINT
## BY THE LAKE COUNTY DEFENDANTS

Lake County Treasurer Holly Kim, Clerk Anthony Vega, and the County of Lake, by Eric F. Rinehart and his assistants Karen D. Fox and Stephen J. Rice, move under Fed. R. Civ. P. 12(b)(1) and (b)(6) to dismiss the *First Amended Complaint* (Dkt # 78). In support, they state as follows.

**I.**    **The changes brought by the *Amended Complaint*.**

The Plaintiffs amended their complaint rather than respond to the Defendants' first motions to dismiss, but the legal claims remain unchanged: Takings, Due Process of every kind, Excessive Fines, all state and federal. The core allegations also remain unchanged: the plaintiffs owed taxes but had "surplus equity" in their real estate above the taxes owed; they lost their properties to a tax deed; a tax buyer received the equity.

The new complaint has 153 paragraphs instead of 82 and is "part affirmative story-telling, and part response to the Defendants." *Slabon v. Sanchez*, 2020 WL 5763760, at *1 (N.D. Ill. Sept. 28, 2020). The new paragraphs: (1) add additional details about the Plaintiffs (¶¶ 5–56[1]); (2) reference with some greater detail the private tax buyers' roll in the tax sale process (¶¶ 63–69; 119); and (3) narrate a long list of grievances about the Tax Code's Indemnity Fund provision (¶¶ 97–118). While referencing the tax buyers somewhat more

---

[1] All ¶ references are to the *First Amended Complaint*, Dkt # 78, aka the "new complaint" for simplicity.

1

fully, this new complaint is animated by the legal conclusion that the buyers' actions should be attributed to the government defendants here. That conclusion—bolstered by a lot of extraneous storytelling—is the gravamen of the amendment.

Unchanged are the underlying statutes setting forth the tax deed process, and they also tell a story. Those statutes are matters the Court can consider, because a court may take judicial notice of statutes. *Demos v. Indianapolis*, 302 F.3d 698, 706 (7th Cir. 2002) (judicial notice of statutes); *Zebulon Enter., Inc. v. DuPage Cnty*, 438 F. Supp. 3d 881, 885 (N.D. Ill. 2020) (accord, at the pleadings stage).

## II. Tax collection in Illinois, and a county treasurer's and clerk's role in it.

Delinquent tax collection in Illinois is an obscure practice area, codified as part of the Illinois Tax Code at 35 ILCS 200/19-5 *et seq*. An overview showing **who** does **what** is important to understanding the tax sale process. *See generally Sabrina Invest. v. Will County Treasurer*, 2024 IL App (3d) 220134. For illustration purposes, we will supply Lake County actors as the tax collecting agents. The general tax sale process described here has been the system in place for over 100 years. *See Balthazar v. Mari Ltd*, 301 F. Supp. 103, 104 (N.D. Ill. 1969) (noting that "the general statutory scheme has remained unaltered since 1872"). An equity-recovery provision was added to the process in 1970. 35 ILCS 200/21-295; see *Apex Tax Investments v. Lowe*, 217 Ill. 2d 1, 28 (2005) (judgment vacated *Estate of Lowe ex rel. Harris v. Apex Tax Investments, Inc.*, 547 U.S. 1145 (2006), but aff'd on remand at 225 Ill. 2d 208 (2007)). The process described below is reflected in the plaintiffs' complaint and not outside the four corners of it.

### A. The tax sale.

The Lake County Treasurer issues to landowners a tax bill each year, with payments due in June and September.[2] 35 ILCS 200/21-15. Unpaid taxes become a first-priority lien. 35 ILCS 200/21-75. The Treasurer (aka Collector) give notice that he or she "will apply to the circuit court on a specified day for judgment" as to the taxes. 35 ILCS 200/21-115. This "application" to the court starts a judicial process that can result in the court ordering that a tax deed be issued.

Next, if "the trial court grants the collector's application, the delinquent property is offered for sale at a public auction." *Rosewell v. Chicago Title & Tr. Co.*, 99 Ill. 2d 407, 410 (1984). The Treasurer conducts this "public auction"—the tax sale—at which companies (or sometimes individuals) bid to pay the taxes. 35 ILCS 200/21-205 (titled "Tax sale procedures"). The "bids" are not monetary amounts but rather interest rates applied to the taxes: the winning tax buyer pays the tax principal amount, and gets the interest rate that the buyer bid. 35 ILCS 200/21-215 (titled "Penalty bids"). At the tax sale, "the bidder who permits the owner to redeem for the least penalty (interest)" is the winning bidder. *Id.*; *Balthazar*, 301 F. Supp. at 104. A 0% bid is thus a winning bid. If there are multiple 0% bids, the winning bidder is selected randomly.[3]

**B. Post tax-sale proceedings.**

The tax sale produces three immediate results: **first**, the Treasurer obtains the taxes owed, which are distributed to the county's taxing districts; **second**, the property owner is provided time to remedy the past-due amounts through what is known as a "redemption

---

[2] As an example, the payment schedule for 2023 can be viewed on the Lake County Treasurer's website: https://www.lakecountyil.gov/3522/Real-Estate-Tax-Calendar.

[3] See https://www.lakecountyil.gov/DocumentCenter/View/43060/2022-Tax-buyer-registration-packet?bidId=, in which the instructions note that for "multiple bids at the lowest interest rate . . . one of the low bidders will be randomly selected as the bid winner using electronic means."

3

payment." *See* 35 ILCS 200 §§ 21-345–397. For a property with a single-family residence, for example, that "redemption period" is 2.5 years from the date of sale (*id.*), although tax buyers typically extend the period to three years. 35 ILCS 200/21-385. **Third**, the government's tax lien is extinguished. *Application of Rosewell*, 127 Ill. 2d 404, 410 (1989) ("When the court confirms the sale, the county's lien is extinguished, and a new lien arises by operation of law in favor of the purchaser."). The tax buyer receives a certificate of purchase. 35 ILCS 200/21-250.

During the redemption period and extending up until a tax buyer obtains a tax deed—if the buyer ever gets to that final step, for the vast majority of owners redeem—a tax buyer must take a series of actions to ensure due process. *See* 35 ILCS 200 §§ 22-5–22-95. During this process the County Clerk acts solely in a ministerial capacity. A **tax buyer** must first create a notice under 35 ILCS 200/22-5 "to the party in whose name the taxes are last assessed as shown by the most recent tax collector's warrant books . . . ." *DG Enterprises*, 2015 IL 118975, ¶ 4. The **tax buyer** delivers this notice to the County Clerk, who sends it. 35 ILCS 200/22-5. Later, the **tax buyer** sends notice under 35 ILCS 200/22-10 "to the owners, occupants, and parties interested in the property, including any mortgagee of record . . . ." *DG Enterprises*, 2015 IL 118975, ¶ 8. A final notice, identical to the last one but which the **tax buyer** this time delivers for sending to the Circuit Clerk, is sent under 35 ILCS 200/22–25; *DG Enterprises*, 2015 IL 118975, ¶ 9.

After these notices and the two-to-three-year period prescribed by statute, a **tax buyer** can apply to the circuit court for a tax deed. 35 ILCS 200/22-30. A court will sign an order directing the County Clerk to issue a tax deed if the **tax buyer** provides "sufficient evidence" that all statutory requirements have been met. 35 ILCS 200/22-40. Tax deeds

4

eliminate almost all lien interests; liens that cannot be eliminated, such as federal tax liens, entitle the tax buyer to receive its money back in what is called a "sale in error." *See, e.g.,* 35 ILCS 200/21-310(b)(3). Otherwise, the tax deed itself is intended to convey clean title **to the tax buyer**. 35 ILCS 200/22-45 (titled "Tax deed incontestable unless order appealed or relief petitioned"); 35 ILCS 200/22-55 (titled "Tax deeds to convey merchantable title").

### C. Who does what, particularly as to any equity above the taxes owed.

From the date of the tax sale on, the entire process is driven by the **tax buyer**—not the County Collector (aka Treasurer); not the County Clerk; certainly not the County itself, which is an entity that has no role in the process described above.

If and only after a **tax buyer** obtains a tax deed, then the Treasurer occasionally assumes a new role in the process. That role activates when a property owner who "sustains loss or damage by reason of the issuance of a tax deed" applies to the Treasurer for compensation from the "Indemnity Fund." 35 ILCS 200/21-305. The Indemnity Fund is generated from a fee on each property sold at a tax sale. 35 ILCS 200/21-295. For owners who lose their property to a tax deed but have equity beyond the taxes owed, the Indemnity Fund allows for recovery of that equity. *Id.* The relevant part of the Indemnity Fund statute— the part that is relevant post-*Tyler*—is cited and discussed further below.

### D. The tax sale process as reflected in the new complaint.

The tax sale process described above is sporadically captured in the new complaint's allegations (¶¶ 63–65; 68; 92), but misleadingly so. The new complaint frames the process as county-driven:[4] tax buyers are "**granted by the Defendant counties** the right to

---

[4] County-driven is itself misleading, because (1) Treasurers and Clerks, like Sheriffs, are elected "county officer" who are independent from the County (*cf. Moy v. County of Cook*, 159 Ill. 2d 519, 523 (1994)

5

foreclose" (¶ 63 (emphasis added)); "**the county grants** to the Tax Buyer a lien . . . ." (¶ 64 (emphasis added)). But this is an inaccurate way to frame the County Treasurer's and Clerk's purely administrative roles in the process, which the statutes cited above reflect. So, the Clerk does not bestow a "right to foreclose," but rather is merely instructed to "make out and deliver to the [Tax Buyer] . . . a tax certificate countersigned by the collector . . . ." 35 ILCS 200/21-250. Later, if the Tax Buyer faithfully adheres to the many statutory steps towards a deed, then "**the court**"—not the County, the Clerk, or the Treasurer—"shall enter an order directing the county clerk . . . to issue to the purchaser or its assignee a tax deed." 35 ILCS 200/22-40(a).

The moving force behind the process to a tax deed is not the County, the Clerk, or the Treasurer at all, but rather the **tax buyer**. That actor is the one who disseminates notices through mail and publication (35 ILCS 200 at §§ 22-5, 22-10, 22-15, 22-25), petitions for a deed (35 ILCS 200/22-30), and ultimately takes title to and possession of a parcel if a court authorizes a deed. 35 ILCS 200/22-40. The county actors' roles are ministerial as it relates to tax deeds; only after the tax deed issues does the Treasurer take a more than ministerial role. That occurs where a property owner seeks indemnity—a word the Supreme Court has historically used synonymously with "just compensation"[5]—so that a property owner may be compensated, where appropriate.

---

(Sheriff is a "county officer" and not employee of a county); Ill. Const. Art. 7, § 4 (titled "County Officers" and classifying Sheriffs, Treasurers, and Clerks together), and (2) the County itself plays no role in the tax sale process as it pertains to private tax buyers. A county has a role where no tax buyer bids under 35 ILCS 200/21-90, but the *Complaint* does not implicate that section of the Property Tax Code.

[5] *U.S. v. Miller*, 317 U.S. 369, 375 (1943) ("Since the owner is to receive no more than **indemnity** for his loss, his award cannot be enhanced by any gain to the taker.") (emphasis added).

6

But back to the new complaint: some of its paragraphs do frame the "surplus equity" issue in a manner consistent with the Tax Code:

> . . . the **Tax Buyer** may foreclose, take ownership of the home, sell or otherwise use the home, and retain all value of the home as a windfall . . . . (¶ 64)

> . . . the **Tax Buyer** gets the right to collect high rates of penalty interest . . . . (¶ 65)

> . . . on a property worth $258,000 (the median value of a home in Illinois), the **Tax Buyer** would get the title to the home while the owner receives nothing—losing $248,000 in equity, an amount which may represent the owner's life savings. (¶ 76)

The new complaint seeks to reconcile the actions of tax buyers with the liability of these defendants by proffering a whole series of legal conclusions, perhaps best summarized in ¶ 93: "Defendants are the moving force behind the complained of loss of equity and failure to provide just compensation and the existence of accomplices, co-actors or helpers such as Tax Buyers does not change that." But legal conclusions such as this are not taken as true on the pleadings. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And the Court should not just ignore that legal conclusion but, in light of the statutory context set forth above, it should question whether these defendants are proper parties at all. They are not.

**III.** *Tyler v. Hennepin County* **is not the guiding precedent here.**

The complaint is premised upon the ruling in *Tyler v. Hennepin County*, 598 U.S. 631 (2023). A simple comparison table highlights two distinctions between the tax system in Minnesota versus the one outlined above:

| | |
|---|---|
| In *Tyler*, a Minnesota woman lost her condominium **to the government** in a tax foreclosure. *Id.* at 634. | In Illinois, the Plaintiffs here lost their property **to a private tax buyer** through a tax foreclosure. |
| Under the Minnesota statutes, the woman had **no ability to recover any equity** | Under the Illinois tax foreclosure process, the Plaintiffs **have the ability, by law, to** |

7

| from Hennepin County above the amount she owed for taxes. *Id.* at 644. | **recover equity** in the property above the amount they owed for taxes. |
|---|---|

These differences continue to matter under the new complaint: the Plaintiffs do not state a plausible Fifth Amendment takings claim against these governmental defendants. The Plaintiffs may have a takings claim against the tax buyers, whom they can assert act under color of state law because the buyers' actions are "fairly attributable to the State." *Cf. West v. Atkins*, 487 U.S. 42, 49 (1988); see generally Jack M. Beerman, *Why Do Plaintiffs Sue Private Parties Under Section 1983?*, 26 Cardozo L. Rev. 9 (2004). Or they might sue the buyers under a state-law unjust enrichment theory. But this is not a proper case against treasurers, clerks, and counties, whose roles with regards to any "surplus equity" is outside of their control and wholly encompassed within the role of the tax buyers. It was not so in Hennepin County, but this Court is not being asked to apply Minnesota law.

The framework that should guide the Court's analysis here is the same one that animates the countless medical claims that this Court hears out of jails and prisons. In the medical care context, private medical care providers are commonly sued as acting under color of law. *West v. Atkins*, 487 U.S. 42 (1988) (prison's contracted physician acts under color of law). And *Monell* claims, if that is what the Plaintiffs pursue, can also be stated against private entities. *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 378 (7th Cir. 2017). The fact that carceral medical care is a government responsibility does not impose strict liability on a Sheriff or prison warden. The Illinois Tax Code should similarly not be construed to impose such liability without fault.

The Court should dismiss the *Complaint* under Fed. R. Civ. P. 12(b)(1) for lack of a case or controversy, or under 12(b)(6) for failure to state a claim.

IV. **Argument.**

A motion to dismiss under Rule 12(b)(6) takes the well-pled facts as true but contests that those facts entitle the pleader to the relief he seeks. *McCauley v. Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Unlike the facts, a complaint's "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *Id.* Allegations aside, "a district court can always rely on public statutes." *Demos v. City of Indianapolis*, 302 F.3d 698, 706 (7th Cir. 2002) (citing Fed. R. Evid. 201).

A complaint must contain enough factual matter to both entitle the plaintiff to relief, but also to state a claim that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). To meet the plausibility standard, the allegations in a complaint must be sufficient to raise the possibility of relief above the "speculative level." *Bell Atlantic*, 550 U.S. at 554.

The new complaint remains carefully drafted in many regards. It scrupulously notes only "official capacity" claims (¶ 57); it disclaims injunctive relief as to taxes (¶ 4 n.2); it cites legislative history (¶ 70). But the new complaint is carefully drafted in another regard: it uses the legal conclusion of the defendants being the "moving force" behind the constitutional deprivation, so as to place these government actors into the shoes of the tax buyers. (¶ 93) And another legal conclusion: that the tax deeds are a "policy or custom" of the defendants. Only, the issuance of a tax deed derives from a statute, which ultimately can lead to a court order under 35 ILCS 200 §§ 22-30 ("Petition for Deed") and 22-40 ("Issuance of Deed; Possession"). These defendants control neither those statutes nor the judges,

making the policies-and-customs allegations not just legal conclusions, but plainly erroneous ones based on the text of the statutes. *Id.*

### A. Regarding a Fifth Amendment taking, the *Tyler* case not only illustrates but in fact highlights the meaningful differences in the Illinois tax collection approach.

In *Tyler*, Hennepin County foreclosed a $15,000 tax lien on a condominium, obtaining title to the condo. 598 U.S. at 634. The **county then sold the condo** for $40,000 and **the county** kept $25,000 surplus. *Id.* at 635. The Court noted that the "former owner has no opportunity to recover this surplus." *Id.* Under those circumstances, the Supreme Court held that the plaintiff had "plausibly alleged a taking under the Fifth Amendment . . . ." *Id.* at 647.

Here there is no corresponding plausible claim, due to statutory differences that make a difference. In Illinois, as described above, any equity involving a tax buyer does **not** go to the government. Only payment for the delinquent taxes owed goes to the government, and this payment extinguishes the government's tax lien. *Application of Rosewell*, 127 Ill. 2d at 410. From there, a property owner has the opportunity to recover surplus beyond the tax payment from the Treasurer's indemnity fund.

The new complaint no longer ignores the Tax Code's indemnity section, which allows a property owner to recover lost surplus equity. Instead, the Plaintiffs now malign the remedy in a long series of paragraphs that are again laden with legal conclusions.

The Tax Code's indemnity fund provision dates back to 1970 and must be read in light of the *Tyler* opinion. 35 ILCS 200/21-305. Its subsection 21-305(a)(1) caps recovery at $99,000 and might not, involving fact patterns exceeding that amount, satisfy *Tyler*. But the Indemnity Fund's next subsection—(a)(2)—contains no monetary cap and is relevant here:

\* \* \*

> (2) An owner who sustains the loss or damage of any property occasioned by reason of the issuance of a tax deed, without fault or negligence of his or her own, has the right to indemnity limited to the fair cash value of the property less any mortgages or liens on the property. In determining the existence of fault or negligence, the court shall consider whether the owner exercised ordinary reasonable diligence under all of the relevant circumstances.
>
> (3) In determining the fair cash value of property less any mortgages or liens on the property, the fair cash value shall be reduced by the principal amount of all taxes paid by the tax purchaser or his or her assignee before the issuance of the tax deed.
>
> (4) If an award made under paragraph (1) or (2) is subject to a reduction by the amount of an outstanding mortgage or lien on the property, other than the principal amount of all taxes paid by the tax purchaser or his or her assignee before the issuance of the tax deed and the petitioner would be personally liable to the mortgagee or lienholder for all or part of that reduction amount, the court shall order an additional indemnity award to be paid directly to the mortgagee or lienholder sufficient to discharge the petitioner's personal liability. The court, in its discretion, may order the joinder of the mortgagee or lienholder as an additional party to the indemnity action.

35 ILCS 200/21-305(a)(2)–(4).

The indemnity fund provision long predates the *Tyler* opinion. Even still, the statute's essence is that recovery should be available to property owners with demonstrable surplus equity in their property. That is consistent with the lesson in *Tyler*. The Court should avoid reaching collateral constitutional issues that it need not address. *Dean Foods Co. v. Brancel*, 187 F.3d 609, 614 (7th Cir. 1999) ("Generally, courts interpret laws consistent with their meaning, but with an eye towards avoiding exposing any constitutional infirmities.")

In any case, the new complaint itself speaks *almost exactly* to why the indemnity fund itself is not of the essence of the action here: "The collateral nature of Indemnity Fund awards is attested to by the fact that the Indemnity Fund statute does not even allow a suit against the parties who are guilty of the uncompensated taking . . ." only this allegation continues by misidentifying the correct object of the sentence: **the tax buyer**. (¶ 99, which instead identifies: "Defendants"). That the Tax Code offers a remedy for a **tax buyer's**

11

transgression does not transfer the tax buyer's liability onto the government. The indemnity fund merely provides an alternative remedy to that which the Plaintiffs seek: recovery of surplus equity from "the taker." That "taker" is not these defendants.

The distinctions as to parties and statute are directly drawn from the *Tyler* case that the Plaintiffs cite throughout the new complaint, alongside a fuller and more contextual reading of the Illinois Tax Code. Where the *Tyler* plaintiff had "plausibly alleged a taking under the Fifth Amendment," the Plaintiffs here fail to do so, making dismissal under 12(b)(6) for failure to state a claim appropriate.

The result is no different under the Illinois Constitution's Art. I, § 15, which provides only analogous protections to the federal Constitution in "takings" jurisprudence. *Hampton v. Metro. Water Reclamation Dist. of Greater Chicago*, 2016 IL 119861, ¶ 13 ("We find no convincing evidence that the delegates to the Illinois constitutional conventions intended for a "taking" to be defined differently from its federal counterpart.").

### B. Regarding due process: so too is there no plausible claim arising under either the federal or Illinois due process clauses.

The application of the federal and Illinois due process clauses generally end in the same result under the Illinois Supreme Court's limited lockstep doctrine. *See, e.g., Hope Clinic for Women, Ltd. v. Flores*, 2013 IL 112673, ¶ 50 ("we should interpret the due process clause of our state constitution the same way that the United State Supreme Court has interpreted the due process clause in the federal constitution unless there is something in the language of our constitution, or in the debates and the committee reports of the constitutional convention, which would indicate that the due process provision within our state constitution was intended to be construed differently"); *but see People v. Washington*, 171 Ill. 2d 475, 488 (1996) (departing from the federal approach as to freestanding innocence claims based

upon newly discovered evidence). A "party urging greater protection than federal law affords must argue that the state and federal constitutions 'differ in dispositive ways.'" *People v. Caballes*, 221 Ill. 2d 282, 308 (2006).

The Plaintiffs assert some soup-to-nuts procedural and substantive due process violations under both the federal and Illinois constitutions, but in a wholly conclusory fashion. As the Supreme Court has written: "The first problem with using substantive due process to do the work of the Takings Clause is that we have held it cannot be done." *Stop the Beach Renourishment, Inc. v. Florida Dept. of Envtl. Prot.*, 560 U.S. 702, 721 (2010). The reason is that an "explicit textual source of constitutional protection" trumps "the more generalized notion of" substantive due process. *Graham v. Connor*, 490 U.S. 386, 395 (1989).

As to procedural due process, the *Complaint's* allegations neither state nor reasonably imply anything about such due process. In fact, procedural due process abounds under the tax sale provisions of the Illinois Tax Code and the constitutionality has been rigorously litigated in the past. *See, e.g., Apex Tax Investments v. Lowe*, 217 Ill. 2d 1, 28 (2005) (judgment vacated *Estate of Lowe ex rel. Harris v. Apex Tax Investments, Inc.*, 547 U.S. 1145 (2006), but aff'd on remand at 225 Ill. 2d 208 (2007). In addition to U.S. constitutional and Illinois statutory due process requirements, tax sales have their own provision in the Illinois Constitution: Art. 9, § 8. There is simply no colorable argument that procedural due process is at issue in this lawsuit, and the *Complaint* articulates only insubstantial conclusory allegations to the contrary. Here again, dismissal under 12(b)(6) for failure to state a claim is appropriate.

C. **Regarding the Eighth Amendment and its Illinois analog: on the new complaint's allegations, the Plaintiffs supply no factual basis for a remedy.**

13

Paragraph 152 of the new complaint states: "By failing and refusing to compensate Plaintiffs and the Class for their equity in excess of their Tax Amounts owed, Defendants are engaged in assessing and collecting prohibited excessive fines that are not in accord with the seriousness of the offense nor with the objective of restoring the offender to useful citizenship." The statutory overview above illustrates how this theory of recovery fails to state a claim. Have these governmental actors 'failed and refused' to compensate the Plaintiffs? Considering the Tax Code's express procedure for providing compensation, when sought, the Plaintiffs must at a minimum assert that they gave the Defendants an opportunity to "fail or refuse." None of the Plaintiffs hail from Lake County, so these Defendants can confidently assert that no such attempts were made in Lake County.

Furthermore, the Defendants collected only the tax amounts owed—a practice the Plaintiffs do not oppose, *Compl.* ¶ 4, n.2—and none of the Defendants here assessed or collected any equity, which is the ostensible "prohibited excessive fines" the Plaintiffs seek. (*Compl.* ¶ 81.) These nonactions are the quintessence of a failure to state a claim under Fed. R. 12(b)(6).

### D. The Lake County Defendants adopt the other counties' arguments.

The Lake County Defendants otherwise adopt the arguments made in the briefs submitted by the other defendants. Namely:

1. **From the Kane County Defendants:** the Lake County Defendants are in the same position as the Kane County Defendants as to (a) **standing** (none of the plaintiffs hail from Lake County), (b) pleading sufficiency for **juridical link**, and, as to all defendants, as to the (c) **11th Amendment** and (d) **quasi-judicial immunity** arguments, all of which we adopt.

2. **From the DuPage County Defendants:** The Lake County Defendants adopt the arguments regarding (a) the **failure to state a *Monell* claim**, in light of the ministerial acts the Treasurers and Clerks perform under state statutory commands[6], (b) the **Rooker-Feldman** argument, and (c) the failure to add **necessary parties** argument under Fed. R. Civ. P. 19.

3. **From the Winnebago *et al.* Defendants:** The Lake County Defendants also adopt the Winnebago County brief's arguments related to the unsuitability of a class action and urge the Court to consider the Sixth Circuit's very recent analysis in a closely related case to this one, *Fox v. Saginaw County, MI*, 67 F.4th 284 (6th Cir. 2023), rather than the Seventh Circuit's more remote analysis, both in time and circumstance, contained in *Payton v. Kane County*, 308 F.3d 673 (7th Cir. 2002).

## V. Conclusion

The Court should dismiss this lawsuit under Fed. R. Civ. P. 12(b)(1) on the standing, immunity, or Rooker-Feldman grounds set forth above, or under Fed. R. Civ. P. 12(b)(6) for failure to state a claim otherwise.

Eric F. Rinehart  
STATE'S ATTORNEY OF LAKE COUNTY  
Karen D. Fox (#6255941)  
Stephen J. Rice (#6287192)  
Assistant State's Attorney  
18 N. County St., Waukegan, IL 60085  
(847) 377-3050; kfox@lakecountyil.gov  
srice@lakecountyil.gov  

Respectfully submitted,  
ERIC F. RINEHART  
State's Attorney of Lake County  

By: /s/Stephen J. Rice  
    /s/Karen D. Fox  
    Assistant State's Attorneys

---

[6] *See also Surplus Store and Exchange, Inc. v. City of Delphi*, 928 F.2d 788, 791 n.4 (7th Cir. 1991) (writing that the plaintiff's theory that "all cities can be charged with 'adopting' as a matter of policy all state laws that they do not ignore" would "allow municipalities to be nothing more than convenient receptacles of liability for violations caused entirely by state actors").