**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHEL SHARRITT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 1:23-cv-15838 |
| v. | ) | |
| | ) | Hon. Sara L. Ellis |
| GWEN HENRY, in her capacity as Treasurer | ) | |
| of DuPage County, Illinois, et al., | ) | Magistrate Judge Maria Vazquez |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**PLAINTIFFS' BRIEF IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT
AND TO STRIKE THE CLASS ALLEGATIONS**

Charles R. Watkins
GUIN, STOKES & EVANS, LLC
805 Lake Street, #226
Oak Park, IL 60301
(312) 878-8391

David Guin (*pro hac vice*)
GUIN, STOKES & EVANS, LLC
300 Richard Arrington Jr. Blvd. North
Site 600/Title Bldg.
Birmingham, AL 35203
 (205) 226-2282

Vildan A. Teske
TESKE LAW PLLP
80 South 8th Street
Suite 900
Minneapolis, Minnesota 55402

(612) 767-0521
Garrett Blanchfield (*pro hac vice*)
Roberta A. Yard (*pro hac vice*)
REINHARDT WENDORF &
BLANCHFIELD
80 So. 8th Street, Suite 900
Minneapolis, MN 55402
(651) 287-2100

Daniel C. Hedlund (*pro hac vice*)
Daniel J. Nordin (*pro hac vice*)
Abou B. Amara (*pro hac vice*)
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
(612) 333-8844

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................1

I.    Plaintiffs Sufficiently Allege an Uncompensated Taking in Violation of the
      Fifth and Fourteenth Amendments and the Illinois Constitution..................................3

      A.    The Complaint Fully Describes the Taking Claims ...........................................4

      B.    Plaintiffs Sufficiently Allege Causation and All Other Matters Necessary to
            State a Takings Claim .......................................................................................6

            1.    Plaintiffs Sufficiently Allege Causation.................................................6

            2.    Defendants Have Not Established as a Matter of Law That "Tax Buyers"
                  are the "Sole Cause" of or "Moving Force" Behind Plaintiffs'
                  Injuries .............................................................................................10

      C.    Defendants' Actions Were Neither "Ministerial" Nor Compelled; Rather,
            The Payment Of "Just Compensation" Was Compelled But Disregarded.......12

      D.    It Is Irrelevant "Who Gets The Windfall". ....................................................14

II.   The Indemnity Fund Provides no Basis to Dismiss Plaintiffs' Claims ......................17

      A.    As Merely An Alternative Cause Of Action The Indemnity Fund Is
            Irrelevant. ......................................................................................................18

      B.    Even if it Were Not Irrelevant, the Indemnity Fund Does Not
            Satisfy Nelson and Is Not a Constitutionally Adequate Means of
            Paying Just Compensation ...............................................................................19

III.  Plaintiffs Allege Sufficient Facts Under Monell...........................................................24

      A.    The Defendants Can Be Held Liable Under Section 1983 For Their Own
            Policies............................................................................................................24

      B.    Plaintiffs Allege Defendants Are The "Moving Force" Behind The
            Constitutional Violations. ...............................................................................28

      C.    Defendant Counties Are Liable Under Section 1983 Even Though the
            Treasurer and Clerk are Separate Elected Officers .........................................29

IV.   Plaintiffs Have Stated an Excessive Fines Claim Under the Eighth Amendment
      and Illinois Constitution..................................................................................................31

i

A.      The Uncompensated Forfeitures Are Not Remedial .........................................33

B.      The Uncompensated Forfeitures Are Disproportionate and Excessive ..........34

V.      Plaintiffs Have Stated a Violation of Due Process under the Fifth Amendment
and Illinois Constitution ...............................................................................................35

A.      Taking Surplus Home Equity is One of the Things Government Just
Cannot Do No Matter How Much Process is Provided ..................................35

B.      The Indemnity Fund Does Not Insulate Defendants From Their Due
Process Violations ..........................................................................................37

VI.     The Motion to Strike Class Allegations Should Be Denied.........................................39

A.      The Named Plaintiffs Have Standing to Assert Their Claims Against All
Defendants Pursuant to the Juridical Link Doctrine Adopted in Payton  ........39

B.      The Motion to Strike Class Allegations is Premature .....................................41

1.      Plaintiffs Have a Number of Viable Options for Class Certification;
the Court Cannot Decide on this Undeveloped Record That No Class
is Possible..............................................................................................43

2.      Even if the Court Decides to Review the Rule 23 Class Requirements
at This Juncture, Plaintiffs Have Sufficiently Pled a Class.................44

3.      The Class is Ascertainable ...................................................................53

VII.    Fed. R. Civ. P. 19 Does Not Apply..............................................................................54

VIII.   The Rooker-Feldman Doctrine Does Not Apply ..........................................................56

IX.     The Eleventh Amendment Does Not Apply   ...............................................................57

X.      Quasi-Judicial Immunity Does Not Apply    ...............................................................60

CONCLUSION           ...............................................................................................60

## TABLE OF AUTHORITIES

**Cases**

*20th Avenue Realty, LLC v. Roberto*, 477 N.J. Super. 339, 307 A.3d 19, 25 (App. Div. 2023), cert. granted, 256 N.J. 535 (March 19, 2024) ......................................... 10, 15, 16

*Alexander v. Eaton,*
2024 U.S. DIST. LEXIS 16612 *12 (E. D. Pa. 2024) ...................................... 6

*Arkansas Game & Fish Comm'n v. United States,*
736 F.3d 1364 (Fed. Cir. 2013) ...................................................... 49

*Armstrong v. United States,*
364 U.S. 40 (1960) ................................................................. 37

*Arnett v. Kennedy,*
416 U.S. 134 ...................................................................... 35

*Austin v. United States,*
509 U.S. 602 (1993) ............................................................. 31, 33

*Balthazar v. Mari Limited,*
301 F. Supp. 103 (N.D. Ill.), *aff'd without opinion*, 396 U.S. 114 (1969) ............. 23, 34

*Bauman v. Ross,*
167 U.S. 548 (1897) ............................................................... 49

*Beaton v. SpeedyPC Software,*
907 F.3d 1018 (7th Cir. 2018) ...................................................... 52

*Bell v. Hood,*
327 U.S. 678 (1946) ............................................................... 17

*Bell v. Pappas,*
Case No. 1:22-cv-07061, 2024 U.S. Dist. LEXIS 71779 (N.D. Ill April 19, 2024)...... 30

*Benson v. Cady,*
761 F.2d 335 (7th Cir. 1985) ....................................................... 7

*Bethesda Lutheran Homes & Services, Inc. v. Leean,*
154 F.3d 716 (7th Cir. 1998) ...................................................... 27

*Biesenmeyer v. Mun. of Anchorage,*
2024 U.S. Dist. LEXIS 63917 at *19 (D. Alaska 2024) ............................... 24, 34

*Bietsch v. Sergeant's Pet Care Prods.,*
No. 15 C 5432, 2016 U.S. Dist. LEXIS 32928, at *31-32 (N.D. Ill. Mar. 15, 2016)..... 42

*Boim v. Amer. Muslims for Palestine,*
9 F. 4th 545 (7th Cir. 2021) ...................................................... 17

*Boston Chamber of Commerce v. Boston*,
217 U.S. 189 (1910) ................................................................. 14

*Brandon v. Holt*,
469 U.S. 464 (1985) ................................................................. 29

*Brokaw v. Weaver*,
305 F.3d 660 (7th Cir. 2002) ................................................... 56

*Broner v. ABG Servs.*,
2020 IL App (1st) 182254 ....................................................... 51

*Brown v. Legal Found.*,
538 U.S. 216 (2003) ................................................................. 14

*Buonomo v. Optimum Outcomes, Inc.*,
301 F.R.D. 292 (N.D. Ill. 2014) .............................................. 42

*Burrus v. State Lottery Commission of Indiana*,
546 F.3d 417 (7th Cir. 2008) ................................................... 58

*Butler v. Sears Roebuck & Co.*,
727 F. 3d 796 (7th Cir 2013) .................................................. 47

*Carl v. Muskegon Cty.*,
763 F. 3d 592 (6th Cir 2014) ................................................... 11

*Cherokee Nation v. Southern Kansas Ry. Co.*,
135 U.S. 641 (1890) .......................................................... 22, 38

*Chicago, B. & Q.R. Co. v. City of Chicago*,
166 U.S. 226 (1897) ................................................................. 55

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,
526 U.S. 687 (1999) ................................................................. 14

*Clay v. Dart*,
2021 U.S. Dist. LEXIS 178568 at*26-27 (N D Ill. 2021) ..................... 52, 53

*Cnty. of Cook v. HSBC N. Am. Holdings, Inc.*,
136 F. Supp. 3d 952 (N.D. Ill. 2015) ......................................... 6

*Codan Forsikring A/S v. ConGlobal Indus., Inc.*,
315 F. Supp. 3d 1085 (N.D. Ill. 2018) ...................................... 36

*Cont'l Res. v. Fair*,
311 Neb. 184, 971 N.W.2d 313, 324 (Neb. 2022),
*cert. granted, judgment vacated,* 143 S. Ct. 2580 (2023) ................ 24

*Cullom v. Dart*,
2020 LEXIS 242371 *8 (N. D. Ill. 2020) .................................... 6

*Dandino v. Tieri*,
    878 F. Supp. 129 (N.D. Ill. 1994)......................................................................... 7

*Davis Companies v. Emerald Casino, Inc.*,
    268 F.3d 477 (7th Cir. 2001) ............................................................................. 55

*Davis v. City of Camden*,
    657 F. Supp. 396 (D.N.J. 1987)............................................................................ 9

*Direct Marketing Ass'n v. Brohl*,
    575 U.S. 1 (2015)............................................................................................... 59

*District of Columbia Court of Appeals v. Feldman*,
    460 U.S. 462 (1983)........................................................................................... 56

*Doe v. Bd. of Educ. of City of Chicago*,
    611 F. Supp. 3d 516 (N.D. Ill. 2020) ........................................................... 36, 37

*Dorce v. City of New York*,
    608 F. Supp. 3d 118 (S.D.N.Y. June 24, 2022) ........................................... 34, 57

*DuPage Regional Office of Education v. United States Department of Education*,
    58 F.4th 326 (7th Cir. 2023) ......................................................................... 57, 58

*Excalibur Energy Co. v. Rochman*,
    2014 IL App (5th) 130524 .................................................................................. 33

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
    544 U.S. 280 (2005)........................................................................................... 56

*FDIC v. Chi. Title Ins. Co.*,
    12 F.4th 676 (7th Cir. 2021) ............................................................................... 7

*Felder v. Casey*,
    487 U.S. 131 (1988)........................................................................................... 22

*Florida Pawnbrokers v. Fort Lauderdale, Fla.*,
    711 F. Supp. 1084 (S.D. Fla.1989) .................................................................... 28

*Fox v. Barnes*,
    2013 U.S. Dist. LEXIS 68723, *5 (N.D. Ill. May 15, 2013)............................. 55

*Fox v. Saginaw County, Michigan*,
    67 F.4th 284 (6th Cir. 2023) .............................................................................. 41

*General Auto Serv. Station v. City of Chicago*,
    526 F.3d 991 (7th Cir. 2008) ............................................................................. 35

*Georgia-Pacific Corp. v. United States*2
    26 Ct. Cl. 95 (Ct. Clm. 1980) ............................................................................ 49

v

*Goudy v. Cummings,*
   922 F. 3d 834 (7ᵗʰ Cir. 2019) ......................................................................... 7

*Halgren v. City of Naperville,*
   577 F. Supp. 3d 700 (N.D. Ill. 2021), *aff'd sub nom. Lukaszczyk v. Cook Cnty.*, 47
   F.4th 587 (7th Cir. 2022) ............................................................................. 36

*Hall, et al v. Oakland County,*
   2024 WL 209702, *6-12 (E.D. Mich. Jan. 19, 2024) ...................................... 41

*Harper v. Virginia Dept. of Tax.,*
   509 U.S. 86 (1993) .......................................................................................... 6

*Heller Fin., Inc. v. Midwhey Powder Co.,*
   883 F.2d 1286 (7th Cir. 1989) ...................................................................... 41

*Henry v. Farmer City State Bank,*
   808 F.2d 1228 (7th Cir. 2011) ...................................................................... 60

*Hernandez v. Cnty. of DuPage,*
   No. 96 C 8030, 1997 U.S. Dist. LEXIS 14526, at *8 ..................................... 30

*Heyde v. Pittenger,*
   633 F.3d 512 (7th Cir. 2011) ........................................................................ 60

*Hohn v. United States,*
   524 U.S. 236 (1998) (Scalia, J., dissenting) ................................................. 23

*Hudson v. City of Chicago,*
   242 F.R.D. 496 (N.D. Ill. 2007) ................................................................... 40

*Hudson v. United States,*
   522 U.S. 93 (1997) ........................................................................................ 31

*Illinois Gamefowl Breeders Ass'n v. Block,*
   75 Ill.2d 443, 27 Ill. Dec. 465, 389 N.E.2d 529 (1979) ................................ 37

*In People ex rel. Waller v. 1989 Ford F350 Truck,*
   162 Ill.2d 78, 642 N.E.2d 460, 466 (1994) ................................................... 32

*In re Beyond Meat, Inc.,*
   2024 U.S. Dist. LEXIS 30397 *11 (N.D. Ill. Feb. 21, 2024) ........................... 4

*In re Detention of Sveda,*
   354 Ill. App. 3d 373, 820 N.E.2d 987, 289 Ill. Dec. 912 (2004) ................... 37

*In re Marriage of Miller,*
   227 Ill. 2d 185, 879 N.E.2d 292, 316 Ill. Dec. 225 (2007) ...................... 36, 37

*In re Paulsboro Derailment Cases,*
   2014 U.S. Dist. LEXIS 48209, at *15 (D. N.J. Apr. 8, 2014) ......................... 42

*In re Rustoleum Restore Marketing, Sales Practices and Prods. Liab. Lit.*
  155 F. Supp. 3d 772 (N.D. Ill. 2016) .................................................................. 9

*J.K.J. v. Polk Cty.*,
  960 F.3d 367 (7th Cir. 2020) ............................................................................. 9

*Kashani v. Purdue University*,
  813 F.2d 843 (7th Cir. 1987) ........................................................................... 58

*Kaskaskia Land Co. LLC v. Vandalia Levee & Drainage Dist.*,
  2019 IL App (5th) 180403, 139 N.E.3d 610 .................................................... 15

*Keele v. Wexler*,
  149 F.3d 589 (7th Cir.1998) ............................................................................ 52

*Kelo v. City of New London*,
  545 U.S. 469 (2005) .................................................................................... 15, 21

*Kentucky v. Graham*,
  473 U.S. 159 (1985) ........................................................................................ 29

 *Kirby Forest Indus., Inc. v. United States*,
  467 U.S. 1 (1984) ............................................................................................ 22

*Knick v. Twp. of Scott, Pennsylvania*,
  588 U.S. 180 (2019) ............................................................................. 18, 19, 38

*Koutnik v. Brown*,
  456 F.3d 777 n.2 (7th Cir. 2006) ..................................................................... 36

*Kruse v. Village of Chagrin Falls*,
  74 F.3d 694 (6th Cir. 1996) ............................................................................. 22

*Ladik v. Wal-Mart Stores, Inc.*,
  291 F.R.D. 263 (W.D. Wis. 2013) ................................................................... 41

*Lake Co Bd of Rev v. Prop Tax App Bd*
  119 Ill. 2d 419, 519 N.E. 2d 459 (1988) ................................................... 13, 14

*Landwer v. Deluxe Towing, Inc.*,
  2024 IL App (3d) 220077 ................................................................................ 51

*Leach v. Shelby County Sheriff*,
  891 F.2d 1241 (6th Cir. 1989),
  *cert. denied*, 495 U.S. 932 (1990) .................................................................. 29

*Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*,
  507 U.S. 163 (1993) ........................................................................................ 25

*Leavell v. Illinois Dep't of Nat. Res.*,
  600 F.3d 798 (7th Cir. 2010) ........................................................................... 38

*Lee v. City of Chi.*,
    330 F.3d 456 (7th Cir. 2003) ........................................................................ 40

*Lewis v. City of Chicago*,
    496 F.3d 645 (7th Cir. 2007) ........................................................................ 25

*Lossman v. Pekarske*,
    707 F.2d 288 (7th Cir. 1983) .......................................................................... 7

*Matthews v. Eldridge*,
    424 U.S. 319 (1976) ...................................................................................... 35

*Mauer v. Am. Intercontinental Univ., Inc.*,
    No. 16 C 1473, 2016 U.S. Dist. LEXIS 121061, at *5 (N.D. Ill. Sep. 8, 2016) ............ 42

*McCaster v. Darden Restaurants, Inc.*,
    845 F.3d 794 (7th Cir. 2017) ........................................................................ 54

*McDonald v. City of Chicago*,
    561 U.S. 742 (2010) ...................................................................................... 55

*McDonald v. Obaisi*,
    2017 U.S. Dist. LEXIS 148487, at *12 (N.D. Ill. Sept. 12, 2017) ................. 29

*McMillian v. Monroe County, Ala.*,
    520 U.S. 781 (1997) ...................................................................................... 30

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    672 F.3d 482 (7th Cir. 2012) ........................................................................ 46

*Messner v. Northshore University Health System*,
    669 F.3d 802 (7th Cir. 2012) ........................................................................ 54

*Miller v. Henman*,
    804 F.2d 421 (7th Cir. 1986) ........................................................................ 36

*Miller v. Vohne Liche Kennels, Inc.*,
    600 Fed. Appx. 475 (7th Cir. 2015) .............................................................. 11

*Mills v. Springfield*,
    2024 Mass. Super. LEXIS 51 at *9 (Super.Ct. Apr. 18, 2024) ............... 21, 57

*MONELL v. NEW YORK CITY DEPT. OF SOCIAL SERVICES*,
    436 U.S. 658 (1978) ........................................................................................ 9

*Morrill v. Holmes Cty.*,
    2017 U.S. DIST. LEXIS 202927 *3 (N.D. Fla. Dec. 11, 2017) ..................... 11

*Morse v. Republican Party of Va.*,
    517 U.S. 186 n.21 (1996) .............................................................................. 23

*Moy v. Cty. of Cook*,
    159 Ill.2d 519 (1994) ........................................................................... 29

*Murdock-Alexander v. Tempsnow Empl. & Placement Servs., LLC.*,
    No. 16-cv-5182, 2016 U.S. Dist. LEXIS 160616, at *10 (N.D. Ill. Nov. 21, 2016) ...... 42

*Murr v. Wisconsin*, 582 U.S. 383 (2017) ................................................................ 15

*Nat'l Accident Ins. Underwriters*, *Inc. v. Citibank, FSB*,
    333 F. Supp. 2d 720 (N.D. Ill. 2004) ............................................................ 42

*Nelson v. City of New York*,
    352 U.S. 103 (1956) ....................................................................... 17, 19

*Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc., No. 02-C-2523*,
    2003 U.S. Dist. LEXIS 4964, at *10 (N.D. Ill. Mar. 28, 2003) .................................... 42

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ........................................................................... 40

*Oshana v. Coca-Cola Co.*,
    472 F.3d 506 (7th Cir. 2006) ................................................................... 44

*Owens v. City of Independence*,
    445 U.S. 622, 638, 100 S. Ct. 1398, 63 L. Ed. 2d 673 (1980) ....................................... 6

*Payton v. Cnty. of Kane*,
    308 F.3d 673 (7th Cir. 2002) ............................................................... 39, 43

*Pembaur v. City of Cincinnati*,
    475 U.S. 469 (1986) ........................................................................... 30

*Pennington v. Hobson*,
    719 F. Supp. 760 (S.D. Ind. 1989) ............................................................... 29

*People v. Beard*,
    366 Ill. App. 3d 197, 851 N.E.2d 141, 303 Ill. Dec. 243 (2006) .................................... 36

*People v. Lindner*,
    127 Ill. 2d 174, 535 N.E.2d 829, 831–32 (1989) .................................................. 37

*People v. Newcomer*,
    284 Ill. 315 (1918) ........................................................................... 47

*People v. One GMC*,
    357 Ill. App. 3d 873, 829 N.E.2d 437, 440 (2005) ................................................ 32

*People v. R.G.*,
    131 Ill. 2d 328, 546 N.E.2d 533, 137 Ill. Dec. 588 (1989) ........................................ 36

*Phoenix Bond and Indemnity Co. v. Pappas*
    194 Ill. 2d 99, 741 N.E.2d 248 (2000) ........................................................... 13

*Polizzi v. County of Schoharie*,
    2024 U.S. Dist. LEXIS 42848 at *4 (N.D.N.Y. Mar. 12, 2024) .................................. 27

*Pyles v. Fahim*, 771 F.3d 403 (7th Cir. 2014)........................................................................ 25

*Rochin v. California*,
    342 U.S. 165 (1952)........................................................................................................ 37

*Rogers v. Sheriff of Cook Cty.*,
    2020 U.S. Dist. LEXIS 222297 (N. D. Ill. 2020) .......................................................... 46

*Rooker v. Fidelity Trust Co.*,
    263 U.S. 413 (1923)........................................................................................................ 56

*Rosario v. Livaditis*
    963 F.2d 1013 ......................................................................................................... 44, 45

*Ruehman v. Village of Palos Park*,
    842 F. Supp. 1043 (N.D. Ill. 1993)................................................................................ 59

*Rysewyk v. Sears Holdings Corp.*,
    No. 15 CV 4519, 2015 U.S. Dist. LEXIS 169124, at *24-25 (N.D. Ill. Dec. 18,
    2015)................................................................................................................................ 42

*Schiller Piano Co. v. Illinois N. Utilities Co.*,
    288 Ill. 580, 123 N.E. 631, 633 (1919).......................................................................... 35

*Scott v. Dart*,
    No. 23-1312, 2024 U.S. App. LEXIS 10305 (7th Cir. Apr. 29, 2024) ................... 46, 50

*Scott v. O'Grady*,
    975 F.2d 366 (7th Cir. 1992) .................................................................................... 58, 59

*Simmons v. Uintah Health Care Special Serv. Dist.*,
    506 F.3d 1281 (10th Cir. 2007) ..................................................................................... 27

*Smith v. D.R.G., Inc.*,
    63 Ill.2d 31, 344 N.E.2d 468, 472 (1976)...................................................................... 34

*St. Bernard Parish Gov't v. United States*,
    126 Fed. Cl. 707 (Ct. Claims 2016)............................................................................... 49

*Starzenski v. City of Elkhard*,
    87 F.3d 872 (7th Cir. 1996) ........................................................................................... 12

*Steele v. GE Money Bank*,
    2009 U.S. Dist. LEXIS 11536, *15 (N.D. Ill. Feb. 17, 2009) ......................................... 6

*Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*,
    560 U.S. 702 (2010)........................................................................................................ 15

x

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
    282 U.S. 555 (1931) ................................................................................ 48

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) ................................................................ 46

*Super Mix of Wis., Inc. v. Nat. Gas Pipeline Co. of Am., LLC*,
    2020 IL App (2d) 190034 ...................................................................... 50

*Surplus Store & Exch., Inc. v. City of Delphi*,
    928 F. 2d 788 (7th Cir. 1991) ...................................................... 14, 27, 28

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*,
    535 U.S. 302 (2002) ................................................................................ 2

*Tarrify Properties, LLC v. Cuyahoga County*,
    37 F.4th 1101 (6th Cir. 2022) ................................................................ 49

*Taylor v. Federal National Mortgage Association*,
    374 F.3d 529 (7th Cir. 2004) ............................................................ 30, 56

*Tex. Hill Country Landscaping, Inc. v. Caterpillar, Inc.*,
    522 F. Supp. 3d 402 (N.D. Ill. 2021) .................................................... 44

*Thornton v. Barnes*,
    890 F.2d 1380 (7th Cir. 1989) .............................................................. 35

*Towers v. City of Chicago*,
    173 F.3d 619 (7th Cir. 1999) ................................................................ 31

*Town of Tyngsborough v. Recco*,
    No. 18-TL-001223, 2024 Mass. LCR LEXIS 71, 2024 WL 2331197 (Mass. Land
    Ct. May 21, 2024) ............................................................................ 8, 9

*Tucker v. Williams*,
    682 F.3d 654 (7th Cir. 2012) ................................................................ 58

*Tyler v. Hennepin County*,
    598 U.S. 631 (2023) .................................................................... passim

*United States v. 38,994 Net Usable Square Feet of Space etc.*,
    1989 U.S. Dist. LEXIS 5167, *9 (N.D. Ill. May 10, 1989) ...................... 15

*United States v. Bajakajian*,
    524 U.S. 321 (1998) .................................................................. 31, 32, 33

*United States v. Chem. Found., Inc.*,
    272 U.S. 1 (1926) .................................................................................. 47

*United States v. Commodities Corp.*,
    339 U.S. 121 (1950) .......................................................................... 48, 49

*United States v. Miller,*
    317 U.S. 369 (1943)................................................................................. 21

*United States v. Real Property Located at 6625 Zumirez Drive,*
    845 F. Supp. 725 (C.D.Cal.1994) ........................................................... 32

*United States v. Salerno,*
    481 U.S. 739 (1987)................................................................................. 37

*Van Harken v. City of Chicago,*
    305 Ill. App. 3d 972, 713 N.E.2d 754, 762 (1999).................................. 35

*Vulcan Golf, LLC v. Google Inc.,*
    552 F. Supp. 2d 752 (N.D. Ill. 2008) ...................................................... 43

*Wallace v. Masterson,*
    345 F. Supp. 2d 917 (N.D. Ill. 2004) ...................................................... 30

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011)................................................................................. 52

*Washington v. Glucksberg,*
    521 U.S. 702 (1997)................................................................................. 37

*Watson v. Metro. Enf't Grp. of S. Ill,*
    2023 U.S. App. LEXIS 21422, *2 n.2 (7th Cir. Aug. 16, 2023) .................... 50

*Watts v. Laurent,*
    774 F.2d 168 (7th Cir. 1985) ................................................................... 11

Wegman v. Pratt,
    219 Ill.App.3d 883, 162 Ill. Dec. 221, 579 N.E.2d 1035 (1991)..................... 36

*West v. Atkins,*
    487 U.S. 42 (1988)................................................................................... 12

*White v. City of Chicago,*
    829 F.3d 837 (7th Cir. 2016) ........................................................ 25, 28, 29

*Williamson Cty. Planning Comm'n v. Hamilton Bank,*
    473 U.S. 172 (1985)................................................................................. 18

*Wilson v. Illinois Department of Financial and Professional Regulation,*
    376 F.Supp.3d 849 (N.D. Ill. 2019) ........................................................ 60

*Wolf-Lillie v. Sonquist,*
    699 F.2d 864 (7th Cir. 1983) ................................................................... 25

*Woodbridge v. City of Greenfield,*
    No. 23-30093, 2024 U.S. Dist. LEXIS 96015 (D. Mass. May 29, 2024)............. 8, 21, 27

*Zimmerman v. Tribble,*
   226 F.3d 568 (7th Cir. 2000) ........................................................................ 12

*Zollicoffer v. Gold Std. Baking, Inc.,*
   335 F.R.D. 126 (N.D. Ill. 2020).................................................................... 45

*Zorzi v. Cnty. of Putnam,*
   30 F.3d 885 (7th Cir. 1994) .......................................................................... 35

**Constitutional Provisions & Statutes**

42 U.S.C. § 1983 ................................................................................................ 22

Defendants' motions to dismiss the Amended Complaint ("AC") should be denied. Defendants' taking of Plaintiffs' homes without paying just compensation for the value of their properties in excess of the taxes owed is functionally identical to the uncompensated "taking" condemned as unconstitutional in *Tyler v. Hennepin County,* 598 U.S. 631 (2023).[1] Defendants' conduct also violates the Eighth Amendment and its Illinois equivalent, *see id.* at 648-50 (Gorsuch, J., concurring), and due process.

## INTRODUCTION

When collecting overdue property taxes, the Defendants deprived Plaintiffs and putative class members of their homes, transferring absolute title to third-party tax buyers, while providing them with no compensation for the value of their homes in excess of the taxes ("surplus value" or "equity"). AC ¶¶ 5-54. As a proximate and foreseeable result of Defendants' actions, Plaintiffs lost tens or hundreds of thousands of dollars and were evicted by the Sheriff, even though the amount owed for taxes often was dwarfed by the value of the home. AC ¶¶ 69, 76.

Plaintiffs' "Takings" claims are validated by the Supreme Court's unanimous holding in *Tyler,* which confirms that Defendants' unjust failure to pay just compensation for taken property violates the Takings Clause of the Fifth Amendment. *See* AC, *passim.* In *Tyler,* a Minnesota county took Geraldine Tyler's condominium for $15,000 in back taxes, sold it for

---

[1] There are four motions to dismiss: Lake County and its Treasurer and Clerk (Dkt. 88), DuPage County and its Treasurer and Clerk (Dkt. 89), Kane County and its Treasurer and Clerk (Dkts. 90, 91), and a motion filed jointly by the remaining County Defendants and their Clerks and Treasurers (Dkts. 86 & 87). For convenience, Plaintiffs refer to these motions as being brought by "Lake", "Kane", "DuPage" and "Multi," as appropriate to the context. All Defendants seek dismissal pursuant to Rule 12(b)(6). Defendant DuPage also moves under Rule 12(b)(7), and the Multi Defendants move under Rule 12(b)(1). These latter motions are combined with the Rule 12(b)(6) motions and neither is accompanied by extra-pleading evidence – appropriately in that discovery is stayed – and the basic analysis applicable to these motions accordingly is the same as for the 12(b)(6) motions.

$40,000, and failed to compensate her for the $25,000 difference – her surplus value. 598 U.S. at 635, 647. Citing precedent harkening to *Magna Carta*, *id*. at 632, the Supreme Court ruled this practice unconstitutional. *Id.* at 647. *Tyler's* guiding principle is that "[t]he County had the power to sell Tyler's home to recover the unpaid property taxes. But it could not use the toehold of the tax debt to confiscate more property than was due. By doing so, it effected a 'classic taking in which the government directly appropriates private property for its own use.'" *Id*. at 639 (quoting *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 324 (2002)). In short, "[t]he taxpayer must render unto Caesar what is Caesar's, but no more." *Id*. at 647.

Defendants vainly attempt to distinguish the system held unlawful in *Tyler* from the approach they chose to employ here by pointing the finger elsewhere, arguing that they do not take homeowners' property, the tax buyers do it. This is not only false – the tax buyers "do it" only because Defendants give them the opportunity – it exalts form over substance. From a constitutional standpoint, the two systems are identical in depriving homeowners of their entire equity in the home regardless of how small the tax debt may be. Indeed, the *Defendants* must have taken the property and its surplus value from homeowners in order to have given it to the tax buyers. This is why courts and state Attorneys General have concluded that tax buyer systems like the model Defendants use here are indistinguishable from *Tyler. See infra.,* at I.D.

Defendants are nowhere compelled to take citizens' homes without paying for the surplus value. They have other options available to collect taxes without violating the U.S. and Illinois Constitutions. But they ***chose*** to take the surplus value without compensation in

disregard of both Constitutions[2] and are therefore responsible for depriving Plaintiffs and putative class members of their property without compensation. Defendants' constitutional duty to pay just compensation is independent of, and consistent with, the Illinois Property Tax Code ("PTC"). Nothing in the PTC prevents Defendants from following the Constitutions *after* taking a home for nonpayment of taxes.

Defendants' "home equity theft" inevitably disadvantages the most vulnerable members of our society – the poor, the elderly, the physically and mentally infirm, and members of racial minorities.[3] Illinois is one of the few states where statutes permit equity forfeitures. 598 U.S. at 642 ("Thirty-six States and the Federal Government require that the excess value be returned to the taxpayer."), and shockingly, Defendants' home equity thefts have proceeded unabated despite the Supreme Court's unanimous ruling in *Tyler* that taking homeowners' surplus value without paying "just compensation" violates the Constitution, further emphasizing the importance of this litigation.[4]

## I. Plaintiffs Sufficiently Allege an Uncompensated Taking in Violation of the Fifth and Fourteenth Amendments and the Illinois Constitution

Defendants' motions to dismiss under Rule 12(b)(6), Fed. R. Civ. P. should be based

---

[2] Art. I, Sec. 5 of the Illinois Constitution similarly compels Defendants to pay just compensation for taken property: "Private property shall not be taken or damaged for public use without just compensation as provided by law."

[3] *E.g.,* AC ¶¶ 67, 72, 73; *In re Application Of County Collector*, 225 Ill. 2d 208, 217 (2007) (property owner hospitalized with mental illness); Sidnee King, *Tax Sale Process Hits Black Homeowners Hardest,* Illinois Answers Project (Nov. 17, 2022), https://illinoisanswers.org/2022/11/17/tax-sale-process-hits-black-homeowners-hardest/ (last visited May 30, 2024) ("the average home equity lost after eviction [for non-payment of taxes] was at least $135,000, while the median cost for tax purchasers to get a lien on their properties was just over $2,000.").

[4] Legislative efforts in the wake of *Tyler* to stop Defendants' equity theft are underway but none has come to fruition. *E.g.,* HB 0613; HB 4318; HB 4573. (https://www.ilga.gov/legislation/BillStatus.asp?DocNum=613&GAID=14&DocTypeID=HB&LegId=100814&SessionID=91&GA=100; https://legiscan.com/IL/bill/HB4318/2023; https://www.ilga.gov/legislation/BillStatus.asp?DocTypeID=HB&DocNum=4573&GAID=17&SessionID=112&LegID=151833 (all last visited May 31, 2024)).

on the allegations of the complaint, with well-pleaded allegations taken as true and all reasonable inferences drawn in plaintiff's favor. *In re Beyond Meat, Inc.,* 2024 U.S. Dist. LEXIS 30397 *11 (N.D. Ill. Feb. 21, 2024). That is especially so in that discovery is stayed. (Dkt. 77). Because it cannot be said as a matter of law that Plaintiffs have no claims against Defendants, the dismissal motions should be denied.

### A. <u>The Complaint Fully Describes the Taking Claims</u>

Defendants feign an inability to understand the nature of Plaintiffs' claims (DuPage Dkt. 89 at 3), but Plaintiffs' 153-paragraph Amended Complaint overflows with allegations sufficient to put Defendants on notice of Plaintiffs' claims, including that Defendants divested Plaintiffs of their homes without compensating them in violation of the Constitutions. AC ¶¶ 3, 133-153. Plaintiffs cite *Tyler* throughout the AC, *see, e.g.,* ¶¶ 3, 84, 85, 89 & 102, and explain that what happened to them at Defendants' hands is what happened to Ms. Tyler in Minnesota. *E.g.,* AC ¶¶ 86 – 89, 92, 93, 94. Plaintiffs allege *how* their property was taken from them. (*See* DuPage Dkt. 89 at 3). In a nutshell, Plaintiffs' losses stem from two policy choices Defendants make:

<u>One</u>, the policy choice to obtain a lien judgment against Plaintiffs and the putative class members and then put those judgment properties in the tax sale. Once a property owner is in the tax sale, and their taxes are sold, they are almost certain to suffer equity forfeiture if they do not pay the taxes, plus interest and fees that quickly accumulate. This is what happened to Ms. Tyler, and what happened to Plaintiffs.

<u>Two,</u> Defendants made a policy choice when the Clerk issued the tax deeds to not pay compensation despite their certain knowledge of the tax deed's harsh consequences to the owner and the overarching command of ***both*** the U.S. and Illinois Constitutions to pay

4

compensation for taken property and avoid excessive fines. Defendants attempt to create the impression that the Illinois Property Tax Code ("PTC") compels them to take property without compensation, but in fact, as Defendants admit: the "PTC *facilitates*[5] collection of the tax amount due, ***nothing more***." (Multi Dkt. 87, at 15 (emphasis added)). Nothing in the PTC *commands* use of the tax sale method, stops Defendants from paying compensation or overrides the Constitutions. The PTC says nothing about compensation and thus is not in conflict with the Constitutional requirements. The Defendants can comply with both the PTC and the Constitutions, but decided not to.

As alleged in the Amended Complaint: overdue taxes became a lien; the Treasurers, acting for the Counties, identified overdue tax parcels and exercised their discretion to choose *which* delinquent properties they would seek a judgment against, obtained the judgment against selected properties, including Plaintiffs', placed those into the tax sale, sold the taxes, issued tax certificates empowering the tax buyer to foreclose on the *entirety* of the property (including surplus value) if the taxes were not timely paid or "redeemed" (a right the counties did not themselves legally possess without paying compensation for the excess) and then the Clerks, for the Counties, issued a tax deed divesting Plaintiffs of *all* of their equity, *all while disregarding the U.S. and Illinois Constitutions. See generally,* 35 ILCS 200/1-1, *et seq.*; AC ¶¶ 1-3, 63-65, 92. Defendants are on notice of the Takings claims against them. Defendants'

---

[5]   "Facilitate:   "to   make   something   easy   or   easier."   https://www.merriam-webster.com/dictionary/facilitate.

other arguments fare no better.[6]

**B.** **Plaintiffs Sufficiently Allege Causation and All Other Matters Necessary to State a Takings Claim**

Defendants point their collective fingers elsewhere claiming the tax buyers caused Plaintiffs' injuries. (DuPage Dkt. 89 at 3; Lake Dkt. 88 at 2). According to Defendants, the tax buyers are the *only* "moving force" behind the Plaintiffs' losses (Multi Dkt. 87 at 5, Lake Dkt. 88 at 5-6), Defendants' actions were only "ministerial," (*e.g.,* Lake, Dkt. 88, at 6), and tax buyers reaped the equity windfall, not them. (Multi Dkt. 87 at 15). These arguments ignore precedent and common sense.

**1.** **Plaintiffs Sufficiently Allege Causation.**

Fact-bound and even mixed fact-and-law questions of causation are ill-suited to motions to dismiss. *See, e.g., Steele v. GE Money Bank*, 2009 U.S. Dist. LEXIS 11536, *15 (N.D. Ill. Feb. 17, 2009) (Complaint "plausibly points the finger at the defendants' alleged practices", putting them on notice; question of who was responsible should not be resolved on motion to dismiss); *Cnty. of Cook v. HSBC N. Am. Holdings, Inc.*, 136 F. Supp. 3d 952, 961 (N.D. Ill. 2015) ("Once causation is sufficiently pleaded, further adjudication of causality is

---

[6] DuPage argues *Tyler* might not be retroactive. As a matter of black letter Supreme Court law, *Tyler* is fully retroactive. *Harper v. Virginia Dept. of Tax.*, 509 U.S. 86 (1993). DuPage also claims that if *Tyler is* retroactive, the DuPage Defendants might, presumably *after* discovery, be able to assert a good faith defense. This argument is premature as discovery is stayed and qualified immunity is a fact intensive inquiry. *Alexander v. Eaton,* 2024 U.S. DIST. LEXIS 16612 *12 (E. D. Pa. 2024) ("qualified immunity requires a fact intensive analysis."). In any event, government actors only have qualified immunity if sued in their *individual* capacity, not, as here, when they are sued in their *official* capacity. *Cullom v. Dart*, 2020 LEXIS 242371 *8 (N. D. Ill. 2020) ("Qualified immunity, however, does not apply to Cullom's claim against the Sheriff in his official capacity. *Owens v. City of Independence*, 445 U.S. 622, 638, 100 S. Ct. 1398, 63 L. Ed. 2d 673 (1980).").

better left to summary judgment."). Discovery is required to resolve questions of causation and discovery has been stayed. (*See* Minute Order, Dkt. 77).

In any event, Plaintiffs properly allege that Defendants' actions caused their losses. In constitutional violation cases, causation is analyzed as in tort cases. *Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985) ("A section 1983 action is a tort damage action even though the duty the defendant is alleged to have breached is created by the Constitution or federal law."); *Lossman v. Pekarske*, 707 F.2d 288, 291 (7th Cir. 1983) ("the principles of tort causation apply to constitutional as to other tort suits."). Under tort principles, a causal connection between the defendant's actions and the loss complained of is enough to hold the defendant accountable. *Dandino v. Tieri*, 878 F. Supp. 129, 131 (N.D. Ill. 1994) (Causation sufficiently alleged; factual defense would not be resolved on motion to dismiss).

A defendant need not be the sole cause in order to be liable. *FDIC v. Chi. Title Ins. Co.*, 12 F.4th 676, 689 (7th Cir. 2021) (interpreting Illinois tort law principles). If multiple parties participate in causing a wrong, all are jointly and severally liable for the loss. *Goudy v. Cummings,* 922 F. 3d 834, 843 (7th Cir. 2019) (Applied in Section 1983 case). "A defendant may thus be held responsible as a proximate cause of damages even if a later intervening cause [such as a tax buyer] produces a joint effect with the negligence of the defendant." *FDIC*, 12 F.4th at 689. The Amended Complaint is replete with causation allegations satisfying the foregoing legal standards. AC ¶¶ 76 ("shocking *result*"), 81 ("homes seized as a *result*"), 86 ("direct *causal link*") (emphasis all added), 87 ("know to a substantial certainty"), 88, 89, 92, 93, 95, 137, AC ¶ 95 ("Without Defendants' actions…").

Indeed, Defendants are not just **_a_** cause but almost the sole cause, and clearly the "moving force" of Plaintiffs' losses: they levied taxes, assessed properties, ascertained whose

taxes were unpaid and in what amount, decided to hold tax sales *and put Plaintiffs' properties in them,* publicized the sales, decided who would be permitted to bid, conducted the sales, collected the money from the tax sales, issued tax certificates to successful bidders, kept track of who redeemed their taxes, and then the Clerks issued tax deeds delivering the *coup de grace,* all while knowing that although the PTC permitted them to compensate, and the Constitutions ***compelled*** them to compensate, they were not going to do so. AC ¶¶ 86–89, 92, 96. Defendants seek to shift responsibility onto them but tax buyers do not swoop in and "take" homeowners' equity by themselves; the ability to do so is given to them by Defendants.

The court in *Woodbridge v. City of Greenfield*, No. 23-30093, 2024 U.S. Dist. LEXIS 96015 (D. Mass. May 29, 2024) recently, and in light of *Tyler*, faced a similar situation and concluded that the municipalities' constitutional duty to pay just compensation for surplus value when taking homes for the nonpayment of taxes was consistent with the Massachusetts property tax code that provided for the taking of absolute title from delinquent homeowners. That is, even though taxing municipalities are ***authorized by statute*** to take absolute title to the homes for nonpayment of taxes, they remain subject to an independent Constitutional duty, which they disregarded, to pay just compensation for the surplus value. Thus, even if the PTC did compel the takings here , that does not relieve Defendants' of their constitutional mandate to pay just compensation. *See also Town of Tyngsborough v. Recco*, No. 18-TL-001223, 2024 Mass. LCR LEXIS 71, 2024 WL 2331197 (Mass. Land Ct. May 21, 2024) (Just compensation can be paid even though tax collection statute did not provide for payment of surplus to homeowner; Constitutional just compensation and statutory tax collections are not mutually exclusive).

And just as the PTC does not forbid compensation – in Defendants' words, it merely

"facilitates" the collection of taxes, which is accomplished as soon as the taxes are sold – it does not mandate use of the tax sale method, which is only one collection method available under the PTC, others being straight foreclosure, 35 ILCS 200/21-75, foreclosing on "rents and profits," *id.,* or simply waiting for the property to sell and collecting the lien at that time. It is true that parameters for the *manner* of conducting tax sales are prescribed if the decision is made to put a particular property in the tax sale (although there is leeway for the Treasurers even there) but Defendants *choose* whose taxes to foreclose on and sell and whose to collect in an equity-preserving way. AC ¶¶ 57, 89, 91, 92, 93, 95. Whatever they do, however, and this bears repeating, Defendants are ***compelled*** by the U.S. and Illinois Constitutions to pay just compensation. *See Davis v. City of Camden,* 657 F. Supp. 396, 404 (D.N.J. 1987) (stating in a Section 1983 case that "[m]unicipal officials cannot blindly implement state laws; they are required to independently assess the constitutionality of the laws"). The Amended Complaint spells out the Defendants' actions, roles and policy choices, and alleges that Plaintiffs' injuries were caused by the Defendants' actions and choices and thereby satisfies Rule 12(b)(6) as well as the pleading requirements of *Monell v. New York City Dept. Of Social Services*, 436 U.S. 658 (1978), which is discussed in Section III, below.[7]

---

[7]*E.g.,* AC ¶¶ 86, 89 ("Defendants made a decision"), 92, 93, 95 ("tax buyers do not conduct tax sales, issue tax certificates … or issue tax deeds"). Plaintiffs have sufficiently alleged Defendants' causative role in their injury to satisfy Rule 12(b)(6). *See J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020) ("[I]nferences of … causation are easy" when "an affirmative municipal action is itself unconstitutional" because they "follow directly from the municipality's intentional decision to … take particular action."); *In re Rustoleum Restore Marketing, Sales Practices and Prods. Liab. Lit*. 155 F. Supp. 3d 772, 815 (N.D. Ill. 2016) ("Plaintiffs have sufficiently pled causation. … [A] finding of proximate cause 'is generally a fact question for the jury' and less amenable to resolution on a motion to dismiss. *See Abbotts v. Campbell*, 551 F.3d 802, 806 (8th Cir. 2008)"); *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 840-41 (1996) ("[I]ssues of proximate causation and superseding cause involve application of law to fact, which is left to the factfinder.").

9

2.    **Defendants Have not Established as a Matter of Law That "Tax Buyers" Are the "Sole Cause" or "Moving Force" Behind Plaintiffs' Injuries.**

Defendants' argument that unnamed private investors and speculators who are not government actors are the moving force and the sole cause of the uncompensated equity losses at issue is not based on allegations in the Amended Complaint or other properly cognizable facts of record and is legally incorrect.[8] Tax buyers are not the moving force because they do ***nothing*** without Defendants' permission. Tax buyers are only allowed to bid at tax sales and then take title to the Plaintiffs' and class members' homes because the Defendants decided to let tax buyers bid on Plaintiffs' property at tax sales rather than collecting taxes in another manner. Defendants' argument that "the entire process is driven by the tax buyer" (Lake Dkt. 88 at 5), is hollow rhetoric. It ignores almost everything about the collection and non-compensation process. Tax buyers do not decide Defendants will not pay compensation and do not decide there will be tax sales. Just as scam artists had no legal authority to take Graceland from the Presley family,[9] tax buyers have no authority by themselves to swoop in and take Illinois homeowners' properties. Tax buyers can receive only what the Defendants have first taken and given to them. *257-261 20th Avenue Realty, LLC v. Roberto*, 477 N.J. Super. 339, 350, 307 A.3d 19, 25 (App. Div. 2023), *cert. granted,* 256 N.J. 535 (March 19, 2024) (Because "[t]he government cannot confer to a third-party a greater entitlement to property than that to which the public entity is entitled… it is clear a third-party tax sale certificate holder's taking of property without just compensation, through a tax sale foreclosure,

---

[8] A motion to dismiss is decided on the allegations of the complaint. *Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022) ("Ordinarily, when adjudicating a motion to dismiss under Rule 12(b)(6), a district court is limited to the allegations of the complaint.")

[9] "*Graceland Self-Described Scammer Takes Credit For Attempted Foreclosure Sale Of Elvis' Home*", CNN (May 29, 2024) (https://www.cnn.com/2024/05/29/investing/graceland-scam/index.html; last visited 6/5/2024).

is not shielded from the application of the holding in *Tyler* as a violation of the Fifth Amendment Takings Clause.") (internal citations omitted). There is just no basis for the Court to find that – *as a matter of law* – private tax buyers from all over the country, ranging from "mom and pop" individual investors to Wall Street hedge funds, are the "moving force" behind the forfeitures. AC ¶ 93 ("***Defendants*** are the moving force…") (emphasis added).

Even assuming the boogeymen "tax buyers" play enough of a role to be liable as state actors under color of law – a complex question Defendants have not even begun to analyze – that would not help the Defendants. A non-government actor can *never* be the "sole cause" of a constitutional deprivation. Delegating power to a private party can *subject* the government to liability, but it cannot *absolve* it. *Miller v. Vohne Liche Kennels, Inc.*, 600 Fed. Appx. 475, 477 (7th Cir. 2015) ("delegating an exclusive public function to a private entity does not absolve a state of its constitutional obligations."); *Carl v. Muskegon Cty.,* 763 F. 3d 592, 596 (6th Cir 2014) ("A state may not escape §1983 liability by contracting out or delegating its obligation….."); *Morrill v. Holmes Cty.*, 2017 U.S. DIST. LEXIS 202927 *3 (N.D. Fla. Dec. 11, 2017) ("Delegating the policymaking for jail operations to the sheriff does not absolve the county of liability under *Monell* but instead makes the sheriff the final policymaker for the jail on behalf of the county."). Governments cannot "pawn off" their obligations to follow the Constitutions.

Defendants' argument runs afoul of another cardinal rule of Section 1983 liability: where, as here, multiple actors – *e.g*., the Treasurer, the Clerk, the County itself and maybe the tax buyers – contribute to an uncompensated taking, they ***all*** are liable. *Watts v. Laurent*, 774 F.2d 168, 179 (7th Cir. 1985) ("It is axiomatic that where several independent actors concurrently or consecutively produce a single, indivisible injury, each actor will be held

jointly and severally liable for the entire injury. In such a case the injured party may proceed to judgment against any or all of the responsible actors in a single or in several different actions."); *Palmer v. Marion Co.,* (7th Cir. 2003) (showing that official "acquiesced in some demonstrable way in the alleged constitutional violation" sufficient for Section 1983); *accord Zimmerman v. Tribble,* 226 F.3d 568 (7th Cir. 2000) (Official can be liable under Section 1983 if he "participated in[the] alleged constitutional deprivation") (quoting *Starzenski v. City of Elkhard*, 87 F.3d 872, 879 (7th Cir. 1996); AC ¶¶ 82, 93 ("the existence of accomplices, co-actors or helpers such as tax buyers" is not relevant).

Defendants cite *West v. Atkins*, 487 U.S. 42 (1988), for the proposition that a private doctor could be liable under the Eighth Amendment for providing bad medical care to a prisoner. The question here, however, is not whether Plaintiffs "could have" *also* sued the tax buyers, the question is whether they can sue *the Defendants*. And based on Plaintiffs' allegations, the answer is "yes".

### C.    Defendants' Actions Were Neither "Ministerial" Nor Compelled; Rather, The Payment Of "Just Compensation" Was Compelled But Disregarded.

Defendants say their actions were ministerial, without defining the term, (Lake Dkt. 88 at 6), but cite no case holding "ministerial" actions immune from constitutional challenge; and Defendants' actions are not "ministerial" anyway. They were deliberate choices to systematically use the equity-stripping tax sale method against the Plaintiffs and then disregard the Illinois and U.S. Constitutions' compensation mandate and established law going back hundreds of years as enunciated in *Tyler. Tyler* did not make new law it just announced what

the law had been *all along*.[10] 598 U.S. at 639. Defendants' failure to understand the law, or decision to ignore it, does not absolve them of their obligation to comply with it. *See, e.g.,* AC ¶¶ 57 (Defendants acted with "discretion"), 89 ("Defendants have made a decision"), 94 ("Defendants have decided to sell the right to foreclose"), 129 (Defendants have "chosen not to pay just compensation.").

The non-ministerial nature of Defendants' actions is confirmed by *Phoenix Bond and Indemnity Co. v. Pappas*, 194 Ill. 2d 99, 741 N.E.2d 248 (2000). There, the Cook County Treasurer unilaterally removed properties from the tax sale she already had included because she felt there was insufficient competitive bidding. A tax buyer sued, claiming the treasurer lacked discretion to remove properties from the sale. Rejecting that challenge, the court affirmed the wide scope of the treasurer's authority in collecting taxes:

> The appellate court was correct in rejecting the circuit court's narrow view of the collector's [Treasurer's] authority. Contrary to the position taken by the circuit court, *the collector [Treasurer] is not confined to those actions specifically detailed in the Property Tax Code.* When the General Assembly conferred on county collectors the power to conduct tax sales, it also conferred, by implication, the authority to do all that is reasonably necessary to execute that power. *Lake County Board of Review v. Property Tax Appeal Board,* , 427 (1988).

> County collectors are permitted to "exercise discretion to accomplish in detail what is legislatively authorized in general terms." *Lake County Board of Review*, 119 Ill. 2d at 428.

194 Ill. at 105, 741 N.E.2d at 251 (emphasis added).

In *Lake Co Bd of Rev v. Prop Tax App Bd*, 119 Ill. 2d 419, 519 N.E. 2d 459 (1988), cited with approval in *Phoenix Bond*, the Illinois Supreme Court made a similar

---

[10] The Supreme Court in *Tyler* traced this fundamental property right back to "Runnymede in 1215, where King John swore in Magna Carta that when his sheriff or bailiff came to collect any debts owed him from a dead man, they could remove property 'until the debt which is evident shall be fully paid to us; and the residue shall be left to the executors to fulfil the will of the deceased.'" 598 U.S. at 639.

pronouncement:

> [W]ide latitude must be given to administrative agencies in fulfilling their duties. We agree … that administrative officers may validly exercise discretion to accomplish in detail what is legislatively authorized in general terms. We agree with the appellate court that the collection activity involved herein was a reasonable means of accomplishing the above-stated broad statutory directives for the collection of property taxes.

119 Ill. 2d at 428 (internal citations omitted). Clearly, Treasurers have the discretion to decide which properties to put into or take out of the tax sale process.

Defendants' citation to *Surplus Store & Exch., Inc. v. City of Delphi,* 928 F. 2d 788 (7th Cir. 1991), (DuPage Dkt. 89 at 10; Multi Dkt. 87 at 21), does not change things. There, a police officer seized rings from a pawn shop that were suspected to have been stolen and immediately returned them to their owner despite having promised the pawn shop that the rings would be held pending court approval. The pawn shop sued the municipality. The Seventh Circuit affirmed dismissal because there is no *respondeat superior* liability for Section 1983 claims, and the plaintiff alleged no policy or choices made by *the municipality* leading to the return of the rings. The plaintiff alleged only a rogue action by a single police officer, and that was not enough. That case has no relevance.

### D.    It Is Irrelevant "Who Gets The Windfall".

Defendants argue that the tax buyers, not them, received the surplus." But who "got" the surplus is irrelevant. What is relevant is that, as in *Tyler*, government action caused the equity to be forfeited. *Boston Chamber of Commerce v. Boston*, 217 U.S. 189, 195 (1910) (Holmes, J., Oliver W.) ("And the question is what has the owner lost, not what has the taker gained."); *Brown v. Legal Found.*, 538 U.S. 216, 235-36 (2003) ("'just compensation' required by the Fifth Amendment is measured by the property owner's loss rather than the government's gain"); *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 710 (1999) ("the

question is what has the owner lost, not what has the taker gained" (internal quote omitted));

*United States v. 38,994 Net Usable Square Feet of Space etc.*, 1989 U.S. Dist. LEXIS 5167,

*9 (N.D. Ill. May 10, 1989). *See also* AC ¶¶ 82, 83.

The fact that the government gave the equity to a tax buyer merely proves the government took it; how else does it give it away? *257-261 20th Avenue Realty, LL, supra*, 477 N.J. Super.at 350, 307 A.3d at 25. The Takings Clause is not limited to transfers of property to the state, but includes any actions that deprive owners of their property. *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.,* 560 U.S. 702, 713 (2010). Similarly, condemning property so a private developer can use it is a taking requires compensation even if the government gets nothing. *Kelo v. City of New London*, 545 U.S. 469 (2005). The "taken" property in *Kelo* went to a third party, just as here, taken equity goes to tax buyers, exemplifying the broader principle that a taking is determined not by what the government "gets" but by what the "tak-ee" loses. *Boston Chamber of Commerce*, *supra*. Indeed, just compensation is often required where the "taker" does not receive anything. In "regulatory takings" cases, for example where the government so heavily regulates property as to deprive it of value, a taking has still occurred even though the owner's loss does not end up in the government's pocket. AC ¶ 84; *Murr v. Wisconsin*, 582 U.S. 383, 392-93 (2017), *Kaskaskia Land Co., LLC v. Vandalia Levee & Drainage Dist.*, 2019 IL App (5th) 180403, at ¶22, 139 N.E.3d 610, 616 (App. Ct. of Ill., 5th Dist. 2019). [11]

---

[11] The Defendants *do* derive financial benefit from putting Plaintiffs' properties into the tax sale and subjecting them to uncompensated loss of property: giving tax buyers the right obtain tax deeds coerces taxpayers to pay their taxes and incentivizes tax buyers to attend the tax sale. More tax buyers come to auctions where the prospect of equity forfeitures is dangled before them. AC ¶¶ 78-80. If the government "got" nothing for giving the tax buyers the equity, it would violate the "no gifts" clause of the Illinois Constitution. AC ¶ 80 and would violate the U.S. Constitution, *Kelo*, 545 U.S. at 477-78 (2005) ("the City would no doubt be forbidden from taking petitioners' land for the purpose of conferring a private benefit on a particular private party").

This is why courts and state Attorneys General have concluded that tax buyer systems like the model Defendants chose to use here are indistinguishable from *Tyler*. *See* AC ¶¶ 84-85; Formal Opinion of Philip J. Weiser, Attorney General of the State of Colorado, No. 23-01 (July 27, 2023) ("whether the county receives the sale proceeds is irrelevant to the Tyler analysis. What matters is whether the property owner is deprived of property with a value exceeding the tax debt owed"; "the logic of Tyler (and of takings jurisprudence in general) does not warrant a different outcome where the county gives property away versus selling it."); *257-261 20th Avenue Realty, LLC v. Roberto*, 477 N.J. Super. 339, 350, 307 A.3d 19, 25 (App. Div. 2023), cert. granted, 256 N.J. 535 (March 19, 2024) ("[T]he application of Tyler to New Jersey's similar TSL framework establishes that the confiscation of a New Jersey property owner's equity, through a tax sale foreclosure, violates the Fifth Amendment Takings Clause." Further, "[t]he government cannot confer to a third-party a greater entitlement to property than that to which the public entity is entitled… it is clear a third-party tax sale certificate holder's taking of property without just compensation, through a tax sale foreclosure, is not shielded from the application of the holding in Tyler as a violation of the Fifth Amendment Takings Clause."). *See also* Kris Olson, *State Urged to Pick Up Pace to End "Equity Theft"*, Massachusetts Lawyers Weekly (Aug. 13, 2023) ("The official position of the [Massachusetts] Attorney General's Office, as expressed by First Assistant AG Pat Moore at a legislative hearing before the Joint Committee on Revenue on June 22, is that an 'essential feature' of Massachusetts' tax lien foreclosure process — the way it extinguishes a former property owner's equity — 'cannot be distinguished' from the Minnesota system the Supreme Court struck down in Tyler. 'Let me say again, and plainly: The tax lien foreclosure process set forth in Chapter 60 of the General Laws [of Massachusetts] is unconstitutional,' Moore said.").

16

## II.     The Indemnity Fund Provides no Basis to Dismiss Plaintiffs' Claims

Defendants suggest Plaintiffs' takings claims should be dismissed simply because "the Indemnity Fund exists." However, whether characterized as a "safety net" (Multi Dkt. 87 at 15), an "alternate remedy" (Lake Dkt. 88, at 12), or something else, *e.g.,* "not a perfect remedy, poorly funded, requires work on their part to effectuate or is not named correctly" (DuPage Dkt. 89 at 8), the Indemnity Fund ("IF") is not Plaintiffs' "exclusive remedy" (no one even claims that), nor does it supplant Plaintiffs' right to sue for just compensation. Its mere existence provides no basis to dismiss Plaintiffs' claims.

Plaintiffs are masters of their complaint, entitled to determine what claims or causes of action to pursue based on their needs, and which ones not to pursue. *Bell v. Hood*, 327 U.S. 678, 681 (1946); *Boim v. Amer. Muslims for Palestine,* 9 F. 4th 545, 557 (7th Cir. 2021). Absent a statutory provision that a remedy is exclusive, there is no rule that a lawsuit can be dismissed because the plaintiff could have pursued alternative claims, nor any allowing the defendant to decide what claims a plaintiff must pursue. Whether this lawsuit proceeds depends on one thing only: whether Plaintiffs have stated a claim, as they have.

Defendants offer two alternative arguments based on the IF, but they fare no better. One seems to be that the potential ability to *file* an IF lawsuit in state court is similar to the pre-taking ability that the taxpayer had in *Nelson v. City of New York,* 352 U.S. 103 (1956) to claim surplus equity and prevent a taking from having occurred. (*See, e.g.,* DuPage Dkt. 89 at 6). Two, Defendants argue that even if it is not a "*Nelson*-compliant" mechanism for preventing a taking from occurring, the IF is nonetheless a constitutionally sufficient way of providing just compensation to takings victims. That is, Defendants argue that although the IF is such a difficult, seldom-used and uncertain remedy that Plaintiffs determined it is not worth pursuing now, its very existence provides just compensation to the Plaintiffs, effectively mooting their

17

claims. Neither argument has merit, and as discussed below, the Supreme Court's holding in *Knick* defeats both.

**A.**    **As Merely An Alternative Cause Of Action The Indemnity Fund Is Irrelevant.**

Whatever relief theoretically may be available to an owner who ultimately wins an IF lawsuit, the IF is, by its very nature, no more than a statutorily created alternative cause of action. It permits, but does not require, some homeowners, but not all, to file a lawsuit against the Indemnity Funds ***after*** the tax deed has issued and ***after*** the "taking" of their property is complete, seeking relief for injuries that the statute refers to as "indemnity" but does not otherwise define. But what Defendants portray as a panacea is really just a highly unsatisfactory, alternate cause of action, as Plaintiffs allege in detail at AC ¶¶ 97-98, 100-02, 108, 115.

As an alternative state court remedy, the IF is irrelevant under the Supreme Court's holding in *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180 (2019). In *Knick*, the question was whether a takings plaintiff was required to first exhaust state court remedies like the IF before pursuing a Section 1983 claim. The Supreme Court previously had required exhaustion of state remedies in *Williamson Cty. Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985), but *Knick* expressly overruled *Williamson County* and eliminated any requirement to pursue state remedies, instead holding that Takings plaintiffs may sue in federal courts like this one "regardless of post-taking remedies that may be available to the property owner." *Knick*, 588 U.S. at 190. *Knick* could not be more explicit:

> [A] property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it. The Clause provides: '[N]or shall private property be taken for public use, without just compensation.' It does not say: 'Nor shall private property be taken for public use, without an available procedure that will result in compensation.'

18

*Id.* at 189.

There is no required "waiting period" for just compensation; it is due immediately. *Id.,* at 191-93, 197 n.5, 198. Plaintiffs are entitled to proceed in this Court, *in this lawsuit,* and need not first, or ever, exhaust whatever speculative rights they may have under the IF.

> **B.**     **Even if it Were Not Irrelevant, the Indemnity Fund Does Not Satisfy *Nelson* and Is Not a Constitutionally Adequate Means of Paying Just Compensation**

*Knick* is an iron-clad rebuttal to Defendants' arguments based on the IF. But Defendants slog on, arguing that the post-taking IF is sufficiently like the pre-taking procedure available in *Nelson v. City of New York*, 352 U.S. 103 (1956) that no taking should be deemed to have occurred. Defendants are in error, but some background is helpful to see why.

In *Nelson*, New York City foreclosed on property owners who were delinquent in paying utility bills but the property owner could avoid an equity loss through a simple, pre-taking, free of charge, automatic mechanism: all the owner had to do was submit a form requesting that after the forfeiture, the property be sold by the city, whereupon 100% of the surplus sale proceeds would be paid back to the owner, as in a mortgage foreclosure. The property owner was not required to hire a lawyer, file a lawsuit, or prove anything other than establish ownership of the affected property.

In *Tyler*, Hennepin County—like the Defendants here—argued it should prevail because the homeowners had a right, as in *Nelson*, to sell their homes during the redemption period and pay the taxes, thereby avoiding foreclosure. The Supreme Court rejected Hennepin County's argument, finding that although Minnesota did afford homeowners a way to avoid an equity loss, Minnesota's method was not immediate, cost-free and certain as in *Nelson*. 598 U.S. at 645 ("requiring a taxpayer to sell her house to avoid a taking is not the same as

providing her an opportunity to recover the excess value of her house once the State has sold it.").

Defendants argue here that although *Nelson* did not defeat Ms. Tyler's claim, the IF does so because the IF's very existence constitutes a *Nelson*-like method to protect equity.[12] There are a host of crucial reasons why the IF, like Minnesota's equity-preserving procedure, is nothing like the *Nelson* procedure – most notably it requires claimants to prove their own lack of fault in the nonpayment of taxes before they can recover, often a difficult burden given the Defendants' propensity to vigorously defend IF cases on this basis and does not provide just compensation to homeowners. See 35 ILCS 200/21-305(a)(1) & (2).

First, neither the IF nor indeed *any* contested lawsuit is a "mechanism" or method of collecting equity within the contemplation of the Supreme Court in *Nelson*. When the Supreme Court said *Nelson* did not apply to *Tyler* because in *Nelson* there was a mechanism to get just compensation, it was not referring to Mr. Nelson's ability to spend months or years in court fighting to establish the "equities" of his situation or his lack of fault for not paying his water bill as is required by the IF. It was referring to a simple, fast, certain and trouble-free filing of a form. The IF is no more a *Nelson* remedy than is a potential lawsuit for inverse condemnation (like this one), unjust enrichment or conversion. It is nothing more than an alternative state court remedy that *Knick* has said is irrelevant.

No case holds that if there is an available cause of action, they have "received" just compensation. The absurdity of this proposition is especially apparent where the alternate lawsuit is an IF lawsuit – by definition a particularly complicated, risky, and in Plaintiffs'

---

[12] DuPage claims that because of the IF cause of action, the "Illinois tax sale system more closely resembles the system involved in the *Nelson* case", than the system condemned in *Tyler*. (DuPage Dkt 89, at 6).

opinion generally useless cause of action presenting many difficulties and problems. If a takings lawsuit could be defeated by the very *existence* of another alternate cause of action, *every* takings case would be derailed at its outset because there are **always** alternate causes of action that can be pleaded and pursued in court. Being able to hire a lawyer and file a lawsuit in the hopes of proving your lack of fault and with the hope that money will be available to pay your claim at the end of the litigation is not equivalent to filing a simple, free form in exchange for a check.

The only court we are aware of to address an argument like Defendants' squarely rejected it. In *Woodbridge v. City of Greenfield*, 2024 U.S. Dist. LEXIS 96015 *15 (D. Mass. 2024), the defendant argued that a Massachusetts statute giving another court "the authority to order a judicial sale and reserve the surplus equity for the taxpayer" but not *requiring* such sale, "saved" the Massachusetts procedures. Citing both *Tyler* and *Nelson*, the court held that Massachusetts's statutory scheme was insufficient and more like Minnesota's defective procedure than New York's acceptable one, and denied the defendant's 12(b)(6) motion to dismiss.[13]

Just compensation is not "some money maybe, if you win your lawsuit." "Just compensation" is an exalted concept that has been defined as "the full and perfect equivalent in money" for what was taken. *United States v. Miller*, 317 U.S. 369, 373 (1943). It is make-whole relief that puts the takings victim in the same position as they would have been in had

---

[13] *Id.,* at *19 ("The Court finds that the Massachusetts statutory scheme is closer to that of Minnesota's, which the Supreme Court struck down, than New York's (which, *as part of its statutory scheme*, provides a taxpayer the right to seek a judicial sale of the property where there is likely to be surplus proceeds). Accordingly, the Court finds that Plaintiffs have plausibly alleged that the Massachusetts statutory scheme is unconstitutional under *Tyler*.") (Emphasis in original). *Accord Mills v. Springfield*, 2024 Mass. Super. LEXIS 51 at *13-17 (Super.Ct. Apr. 18, 2024) (finding no *Nelson*-equivalent process under Massachusetts law despite the right of redemption the possibility of a suit for damages).

there been no taking. *United States* v. *564.54 Acres of Monroe and Pike County Land,* , 510 (1979) (quoting *Olson* v. *United States,* , 255 (1934)). Included in such "make whole" relief is what we normally think of as prejudgment interest, *i.e.*, compensation for delay between the taking and the time money is actually received, *see, e.g., Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 10 (1984)*,* relief unavailable in an IF lawsuit.

In addition to the requirement that just compensation be paid in the full amount with interest, it must be reasonably accessible and trouble-free, a requirement the IF does not come close to satisfying. In *Cherokee Nation v. Southern Kansas Ry. Co*., 135 U.S. 641, 659 (1890), the Supreme Court held that just compensation must be provided in a manner that is "reasonable, certain and adequate." The onus is *on the government* to compensate the owner, "without imposing on the owner any bur[d]en of seeking or pursuing any remedy, or *leaving him exposed to any risk or expense in obtaining it.*" *Bonaparte v. Camden & AR Co*, 3 F. Cas. 821, 831 (D. N.J. 1830) (emphasis added).

In *Felder v. Casey,* 487 U.S. 131 (1988), the Supreme Court held that federal constitutional claims under 42 USC §1983 could not be made contingent on satisfying Wisconsin's 120-day notice-of-claim statute. *Id.,* at 142. It would be inconsistent with 1983's purpose of vindicating constitutional rights to deny recovery based on a state law designed "to minimize governmental liability." *Id*., at 141. Those subjected to a taking cannot be required to pursue procedures that send them "knee-deep in technicalities . . . and mak[e] a pretence [sic] of equity . . . ." *Kruse v. Village of Chagrin Falls*, 74 F.3d 694, 701 (6ᵗʰ Cir. 1996) (quoting Charles Dickens, *Bleak House 2* (Oxford University Press ed. 1989) (London 1853)).

"Housekeeping" burdens on just compensation may be permissible, such as a time period to request the surplus, as in *Nelson*, but outright obstacles, such as those posed by the

IF and the IF trustees' routine practices of opposing IF lawsuits brought by people who experienced equity theft, are not permitted. AC ¶117 ("Defendants routinely oppose Indemnity Fund petitions on grounds of fault, negligence and other grounds irrelevant to … just compensation").

Just compensation must be "reasonably prompt," and if not paid immediately upon taking, there must be "adequate provision for enforcing the pledge." . An IF lawsuit, plagued with unpredictable court congestion and related delays outside the plaintiff's control (but not outside the Defendants') – and suffering from a lack of funding – is not a "prompt" and sure means of paying just compensation. AC ¶ 113.

Defendants hang their hat on *Balthazar v. Mari Limited*, 301 F. Supp. 103 (N.D. Ill.), *aff'd without opinion*, 396 U.S. 114 (1969). DuPage Dkt. 89 at 12). Aside from the fact that summary affirmances are of doubtful precedential value,[14] *Balthazar* was squarely overruled by *Tyler*. In *Balthazar*, the plaintiffs alleged a violation of the Due Process and Takings Clauses when their property was sold in a tax sale. The decision focused on the Due Process claim, mentioning Takings only in footnote 6, where the district court stated that forfeiting home equity did not involve "taking private property" but was merely "collecting taxes," *id*. at 105, n. 6, and that the homeowner's ability to redeem the property was equivalent to the pre-taking procedure to claim surplus equity that had been allowed in *Nelson*. Both of these holdings were demolished by *Tyler*, which holds that forfeiting home equity ***IS*** "taking private property" and a right of redemption and the ability to sell the house before losing the surplus are ***NOT*** the

---

[14] The fact that *Balthazar* was summarily affirmed by the Supreme Court without opinion does not transform its dicta into binding precedent because there is no way to discern the grounds for the affirmance. Summary affirmances have been described by the Supreme Court as "a rather slender reed on which to rest future decisions," *Morse v. Republican Party of Va.,* 517 U.S. 186, 203 n.21 (1996) and as "carr[ying] little more weight than denials of certiorari," *Hohn v. United States,* 524 U.S. 236, 260 (1998) (Scalia, J., dissenting).

equivalent of a *Nelson*-type process for reclaiming surplus value. *Tyler,* 598 U.S. at 638-43.[15]

In sum, the IF is irrelevant under *Knick*. And even if it were not irrelevant, it is nowhere close to the equity-preserving pre-taking procedure that was available in *Nelson* and in *Biesenmeyer v. Mun. of Anchorage*, 2024 U.S. Dist. LEXIS 63917 at *19 (D. Alaska 2024) (Six-month period to automatically claim surplus value satisfied *Nelson*), but absent in *Tyler, Woodbridge, supra,* and here. Nor is the IF an adequate means of providing post-taking just compensation. The many distinctions between *Nelson* and the IF are summarized in the Appendix hereto. Clearly, the IF provides no basis to dismiss Plaintiffs' claims.

## III. Plaintiffs Allege Sufficient Facts Under *Monell*

### A. The Defendants Are Liable Under Section 1983 For Their Own Policies.

Plaintiffs' federal claims against the Defendants (but ***not*** their claims under the Illinois constitution) are evaluated under the standard for municipal liability established in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). The underlying purpose of *Monell* is to insulate government defendants from liability for the actions of employees under *respondeat superior,* only holding them liable for actions they take in their status as government. *Id.* at 707 (Holding "can best be understood … as a rejection of *respondeat superior* or any other principle of vicarious liability") (Powell, J., concurring).  The way this is accomplished is that under *Monell,* "a local governmental entity, such as [a] County, will be liable when through the execution of a government's policy or custom, whether made

---

[15] The overruling of *Balthazar* is confirmed by the Supreme Court's action in *Cont'l Res. v. Fair*, 311 Neb. 184, 198–99, 971 N.W.2d 313, 324 (Neb. 2022), *cert. granted, judgment vacated,* 143 S. Ct. 2580 (2023). In *Fair*, the Nebraska Supreme Court, for essentially the same reasons stated by *Balthazar* in footnote 6, upheld a property forfeiture in the context of a tax buyer system like Illinois'. *Fair* was accepted for review by the Supreme Court along with *Tyle*r. After the Court decided *Tyler*, it vacated the Nebraska Supreme Court's ruling and remanded the case for further consideration *in light of Tyler*, *id.*, an unmistakable rejection of *Balthazar* footnote 6.

by its law-makers or by those whose edicts or acts may fairly be said to represent official policy, another's rights are violated." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 870 (7th Cir. 1983) (internal citations omitted). However, even "[i]nformal actions, if they reflect a general policy, custom, or pattern of official conduct which even tacitly encourages conduct depriving citizens of their constitutionally protected rights, may well satisfy the amorphous standards of § 1983." *Id.* (internal citations omitted).

To plead a *Monell* claim, a plaintiff asserts an underlying constitutional injury*, see Pyles v. Fahim*, 771 F.3d 403, 412 (7th Cir. 2014), and that the challenged conduct (or inaction) by the county or officer was the result of *either*: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the final force of law; or (3) […] was caused by a person with final policymaking authority." *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) (internal citation omitted).

*Monell* claims do not impose a pleading standard "more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure." *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (quoting *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993)). *Monell* imposes no requirement that the deliberations behind a policy, custom or practice be well informed, or long-in-the-making; it is enough that an actionable policy, custom or practice, good, bad or indifferent, is *pleaded*, with the legality or correctness of the policy to be litigated as discovery progresses and the facts are developed and the law is applied.

Defendants assert that Plaintiffs have failed to allege sufficient facts to satisfy *Monell*

because as a factual matter they were merely enforcing the PTC. (Multi Dkt. 87 at 21, DuPage Dkt. 89 at 10). But Defendants do not support their factual assertion, and in any event, Plaintiffs are not alleging enforcement of the PTC at all. The PTC does not compel use of the tax sale method on Plaintiffs, as explained above. Plaintiffs instead allege that Defendants are, in a systematic and uniform way, choosing to **use** the PTC, which **allows** but does not **compel** the tax sale method.

In addition, Plaintiffs allege *another* policy: Defendants' policy choice to disregard the long-standing law as laid out in *Tyler* by refusing to pay the Plaintiffs and class members the compensation the Constitutions require. Defendants know what *Tyler* says (and what the law was before *Tyler*, and that Illinois was in a distinctly minority position by not paying for surplus value, *see Tyler,* 598 U.S. at 642) and they have made a policy decision *to not let it influence their actions*. Defendants are confiscating surplus equity and then making a decision that they will not pay for it, just like Hennepin County did in *Tyler*. Hennepin County decided to follow Minnesota statutes, which did not require compensation, instead of paying the compensation *Tyler* requires. It collected its taxes and just kept going, taking Ms. Tyler's equity, too. The same thing happened here; the taxes were collected, and then for no PTC or tax-collection-related reason *and* in derogation of the Constitutions, Plaintiffs were divested of their equity because Defendants failed to pay them. Defendants could have paid – were required by the Constitutions to pay – and systematically and incorrectly decided not to pay.

A policy to disregard the constitutional just compensation mandate can form the basis of a *Monell* claim even where a state tax collection statute provides for the taking of absolute title. The court so held in *Woodbridge v. City of Greenfield*, No. 23-30093, 2024 U.S. Dist. LEXIS 96015 at *12-13 (D. Mass. May 29, 2024):

> The City argues that the Plaintiffs have not established that it had a custom or policy which violated their rights, rather the so-called "policy" identified by the Plaintiffs was they (sic) City's conduct in acting in accordance with Chapter 60 of Massachusetts General Laws [to take homes for nonpayment of property taxes]. … Plaintiffs have alleged that the City had a policy of exercising its discretion under the Massachusetts Statutory scheme to foreclose on the Plaintiffs' property and to retain the excess proceeds/value. The Court finds that at this stage of the proceedings, the Plaintiffs' have plausibly stated a claim that the City had a custom or policy that violated their constitutional rights.

*See also Polizzi v. County of Schoharie*, 2024 U.S. Dist. LEXIS 42848 at *4 (N.D.N.Y. Mar. 12, 2024) (municipality foreclosed on homes and chose to retain the proceeds from each sale; such conduct was a policy decision with direct causal link to alleged constitutional violation); *Cf. Simmons v. Uintah Health Care Special Serv. Dist.*, 506 F.3d 1281, 1283 (10th Cir. 2007) ("Were the law otherwise, a municipality's leaders would have the very strange incentive to flout their own policies. Or perhaps even enact policies with the deliberate purpose of disregarding them."). Defendants may have reasons to use the tax sale process and Plaintiffs do not challenge Defendants' choice to use it. But as in *Tyler*, it comes at a price. Administrative efficiency may be a fine reason to do something, but it is no excuse for violating the Constitutions.

Defendants rely on *Surplus Store & Exchange, Inc. v. City of Delphi*, 928 F.2d 788 (7th Cir. 1991) and *Bethesda Lutheran Homes & Services, Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998) to support their motions. But putting aside the fact that the defendants are not "enforcing" state law (and certainly are not enforcing the Constitutions) neither case stands for the proposition that a municipality can **never** be held liable under Section 1983 when acting in conformity with state law. In *Surplus Store*, the court examined whether *Monell* liability can be based on enforcement of a state statute, and looked to *Florida Pawnbrokers v. Fort Lauderdale, Fla.*, 711 F. Supp. 1084, 1085 (S.D. Fla.1989) ("*Pawnbrokers II*"). There, the

27

court found *Monell* liability, explaining that "[t]he city here did not merely enforce the state statute … the city of Fort Lauderdale had a policy of using the statute as one part of a comprehensive plan for dealing with the potential of the pawnbroking business as a market for stolen property." *Surplus Store*, 928 F.2d at 792. Similarly here, Defendants did not just collect their taxes, *i.e.*, enforce the law, they went beyond enforcement, using the uncompensated equity-stripping tax sale process allowed by the PTC and their power to withhold compensation as part of a comprehensive plan to "deal with" the broader issue of coercing people to pay their taxes, collecting them if they didn't, and getting property back on the tax rolls.

In *Bethesda*, the plaintiffs had not alleged that the local officials had discretion in whether or not to follow the state law in question. Here, Plaintiffs have alleged Defendants ***did*** have the discretion to, and did choose to use the statutorily-allowed process as a means of dealing with delinquent properties, AC ¶¶ 86-96, 129, 138, and ***did*** have the discretion to pay compensation and chose not to. *Id*. To be clear: these policies and practices are Defendants' policies, not someone else's and not the tax buyers'. AC ¶¶ 57-59.

## B. Plaintiffs Allege Defendants Are The "Moving Force" Behind The Constitutional Violations.

Plaintiffs also have alleged, as explained above, that the Defendants are the "moving force" behind the constitutional violations they allege in the Amended Complaint. (AC ¶¶ 86-92, 93 ("Defendants are the moving force… [despite] the existence of accomplices, co-actors or helpers such as tax buyers"), 94-96). Plaintiffs' allegations go well beyond what the Seventh Circuit found to be sufficient in *White v. City of Chicago*, 829 F.3d 837, 843-44 (7th Cir. 2016). In *White*, the lower court dismissed the plaintiff's *Monell* claim because it was based upon "the sole allegation that [the defendant] acted in accordance with a widespread practice of the police department of the City of Chicago when seeking a warrant." 829 F.3d at 843 (internal citations

omitted). The lower court believed this was not sufficient to support an inference that the City had maintained a custom, policy or practice that deprived the plaintiff of constitutional rights. *Id.* The Seventh Circuit disagreed and held that even this general allegation was enough to meet the pleading requirement of Rule 8(a)(2). *Id.* at 843–44. Plaintiffs' allegations here similarly exceed those found sufficient in *McDonald v. Obaisi*, 2017 U.S. Dist. LEXIS 148487, at *12 (N.D. Ill. Sept. 12, 2017) (finding the complaint was sufficient to assert *Monell* liability and that the plaintiff's additional facts "might get extra credit").

### C.    Defendant Counties Are Liable Under Section 1983 Even Though the Treasurer and Clerk are Separate Elected Officers

Defendants argue that a *county* may not be held liable for the acts of a separate elected official under a *respondeat superior* theory of liability, citing *Moy v. Cty. of Cook*, 159 Ill.2d 519, 524–25 (1994). (DuPage Dkt. 89 at 10). They imply that the counties can never be held liable for the actions of separately-elected officials. Not so. Naming a government official such as a treasurer or clerk in an official capacity, however – as Plaintiffs have done – is the equivalent of naming the government entity itself as the defendant. An official capacity suit seeks to recover compensation from the government itself. *See Brandon v. Holt*, 469 U.S. 464, 471-72 (1985); *Kentucky v. Graham*, 473 U.S. 159 (1985). It is sometimes said that to avoid confusion, where the intended defendant is the government body, plaintiff should name the entity itself, and this is what Plaintiffs, in an abundance of caution, have done. *See*, *e.g*., *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989) (prudent course to hold government liable is to name government entity), c*ert. denied*, 495 U.S. 932 (1990); *Pennington v. Hobson*, 719 F. Supp. 760, 773 (S.D. Ind. 1989) ("better practice is to make the municipal liability action unmistakably clear in the caption, by expressly naming the

municipality").[16]

Plaintiffs do not allege an employer-employee relationship between the counties and their treasurers or clerks but that these officials' actions, conducted in their official capacities, constituted county policy, thereby subjecting the counties to *Monell* liability. *See, e.g.*, *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 783 (1997) (If a county official's "actions constitute county 'policy,' then the county is liable for them"); *Hernandez v. Cnty. of DuPage*, No. 96 C 8030, 1997 U.S. Dist. LEXIS 14526, at *8–9 (N.D. Ill. Sept. 19, 1997) (Illinois counties are liable under *Monell* for policies of county officials who act for the counties). *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (Distinguishing *Monell* liability of governments for officers' policy choices from *respondeat superior*).[17]

---

[16] Plaintiffs might be faulted for failing to name the counties as defendants. In *Wallace v. Masterson*, 345 F. Supp. 2d 917, 925 (N.D. Ill. 2004), the court examined the relationship between the counties and elected officials and held:

> After receiving the answer to the certified question, the Seventh Circuit held that the Illinois Supreme Court's resolution of the question of state law implied an additional point of federal law: "that a county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so on) in an official capacity." *Carver III*, 324 F.3d at 948 (citing Fed. R. Civ. P. 17, 19). "Because state law requires the county to pay, federal law deems it an indispensable party to the litigation." *Id.*

[17] Another Court in this District recently granted the Cook County Clerk's motion to dismiss in a case challenging Cook County's similar equity theft process, concluding that the Clerk in issuing tax deeds acted under compulsion of a state statute and court order and therefore the *Monell* policy needed for plaintiffs to recover was the State's, not hers. That is, the State was the "moving force." *Bell v. Pappas*, Case No. 1:22-cv-07061, 2024 U.S. Dist. LEXIS 71779 (N.D. Ill. April 19, 2024). *Bell* does not address the liability of the Treasurer of Cook County or Cook County itself, which also were sued and neither of which moved to dismiss the constitutional claims. Given that the duties and responsibilities of the Treasurer and County are substantially broader than those of the Clerk, and that their actions in causing the equity loss Plaintiffs complain of were not "compelled," the decision has no applicability to the Defendant Treasurers and Counties in this case.

With respect to the Clerk Defendants here, it should be noted that the complaint in *Bell* varies significantly from the AC. Plaintiffs here have detailed the elements of their Section 1983 claim against the Clerk, including causation and a *Monell* policy, and under Rule 12(b)(6), that is sufficient to allow the action to proceed, especially given the complexity of the issues and undeveloped state of the record. Should the Court delve deeper at this time, it would find that the clerk – in *Bell* as here – in deciding to issue tax deeds was faced with a choice: issue tax deeds knowing that they were materially participating in an equity deprivation that would never be compensated, or obey the higher and overriding command

Having pleaded the Defendants' policy making and the lack of any provision in the PTC prohibiting the payment of just compensation, together with the Constitutions' mandate to pay just compensation for taken properties, Plaintiffs should be permitted discovery to demonstrate the fact and impact of such discretion and policy choices.

## IV. Plaintiffs Have Stated an Excessive Fines Claim Under the Eighth Amendment and Illinois Constitution

The Eighth Amendment prohibits excessive fines, and the Illinois Constitution mandates proportionality in punishment, stating "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. Art. I., Sec. 11. The Excessive Fines Clause applies to civil fines and forfeitures. *See Hudson v. United States*, 522 U.S. 93, 103 (1997); *Austin v. United States,* 509 U.S. 602, 609 (1993).

Analyzing an Excessive Fines claim involves two steps. The first is whether the sanction is purely remedial or also punitive. If the fine is *purely* remedial, the Eighth Amendment does not apply. *Towers v. City of Chicago*, 173 F.3d 619, 624 (7th Cir. 1999). However, if as here, the fine is not solely remedial, the court applies a "gross disproportionality" test to determine if a fine is "excessive." *Id.* In *United States v. Bajakajian*, 524 U.S. 321, 334 (1998), the Court held that "[t]he amount of the forfeiture must bear some

---

of the Illinois and U.S. Constitutions to either refrain from participating in equity theft or insure that just compensation is paid. The Clerks chose the former – to ignore Constitutions, and having made that choice, without the benefit of a court ruling it would have been easy for them to obtain, they must pay the well-known price the Constitutions have always required: just compensation to the Plaintiffs.

The *Bell* decision is an unfortunate example of why weighty issues such as those presented in this case should not be resolved on a motion to dismiss. *Bell* is additionally unpersuasive in that in *Bell,* the Clerk did not even meaningfully raise a *Monell* argument nor was it fully briefed, much less subjected to discovery with respect to the Clerk's policies and discretion. Here, in contrast, Defendants roles and discretion in the conduct of tax sales is explicitly pleaded.

relationship to the gravity of the offense that it is designed to punish" and that "a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *Id*.

In Illinois, courts take an even more citizen-friendly approach. *In People ex rel. Waller v. 1989 Ford F350 Truck*, 162 Ill.2d 78, 642 N.E.2d 460, 466 (1994), the Illinois Supreme Court outlined several factors to consider when analyzing excessive fines claims. *Id*.

> (i) the inherent gravity of the offense compared with the harshness of the penalty; (ii) whether the property was an integral part of the commission of the crime; and (iii) whether the criminal activity involving the defendant property was extensive in terms of time and/or spatial use.

(quoting *United States v. Real Property Located at 6625 Zumirez Drive*, 845 F. Supp. 725, 732 (C.D.Cal.1994)). These factors, however, are not exclusive, *1989 Ford F350 Truck*, 162 Ill.2d at 90, 642 N.E.2d at 466, and in *People v. One GMC*, the court elaborated:

> [T]he value of the seized property is germane to assessing the harshness of the penalty, but [] "a court must consider not only the monetary value of the property forfeited but also the intangible value of the property." **Forfeiture of personal property is less harsh than forfeiture of real estate**. . . . As far as the gravity of the offense is concerned, the majority stated that relevant factors include whether the crime was one of violence; whether the offense was a completed crime (as opposed to an attempted one); whether the conduct involved was intentional or negligent; and whether the claimant was convicted, acquitted, or never charged with a criminal offense.

357 Ill. App. 3d 873, 876, 829 N.E.2d 437, 440 (2005) (internal citation omitted) (emphasis added).

The Supreme Court did not reach the Excessive Fines claim in *Tyler*, but in their concurring opinion, Justices Gorsuch and Jackson opined that Ms. Tyler had stated a claim:

> Because "sanctions frequently serve more than one purpose," this Court has said that **the Excessive Fines Clause applies to any statutory scheme that "serv[es] in part to punish**." It matters not whether the scheme has a remedial purpose, even a predominantly remedial purpose. So long as the law "cannot fairly be said **solely to serve a remedial purpose**," the

Excessive Fines Clause applies. . . .

> [A] statutory scheme may still be punitive where it serves another "goal of punishment," such as "[d]eterrence." And the District Court expressly approved the Minnesota tax-forfeiture scheme in this case in large part because "'the ultimate possibility of loss of property serves as a deterrent to those taxpayers considering tax delinquency.' "Economic **penalties imposed to deter willful noncompliance with the law are fines by any other name. And the Constitution has something to say about them: They cannot be excessive.**

*Tyler*, 598 U.S. at 649-50 (Gorsuch, J., concurring) (internal citations omitted) (emphasis added).

### A.  The Uncompensated Forfeitures Are Not Remedial.

The forfeiture imposed by Defendants – total loss of equity regardless of the amount of the taxes due – is not solely remedial. Defendants and Illinois courts have acknowledged, as noted in Defendants' own brief that "[t]he primary purpose of the tax sales provisions of the Property Tax Code is to coerce tax delinquent property owners to pay their taxes." (Multi Dkt. 87 at 15) (quoting *Excalibur Energy Co. v. Rochman*, 2014 IL App (5th) 130524, ¶ 17, 22 N.E.3d 322, 326)) (Emphasis added).  As Justice Gorsuch stated, "Economic penalties imposed to deter willful noncompliance with the law are fines by any other name. And the Constitution has something to say about them: They cannot be excessive."

### B.  The Uncompensated Forfeitures Are Disproportionate and Excessive.

"The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *Bajakajian*, 524 U.S. at 334 (citing *Austin*, 509 U.S. at 622–623). Here, Plaintiffs allege that their property had a fair market value substantially in excess of any Tax Amounts due. (AC ¶¶ 6, 19, 27, 40, 49). As the court stated in *Balthazar*: "total forfeiture seems extremely harsh when overdue taxes amount to only two

33

or three percent of the property's value." 301 F. Supp. at 106. Plaintiffs have also alleged that because of Defendants' actions, they lost the right to use, live in and dispose of their homes, and that they were deprived of the ability to use their equity to pay for another place to live. (AC ¶¶ 55-56).

Plaintiffs have alleged that Defendants knew this constitutes an excessive fine. (AC ¶ 87). In *Biesenmeyer v. Mun. of Anchorage*, 2024 U.S. Dist. LEXIS 63917 at *19 (D. Alaska 2024), the court held that a complaint alleging a tax forfeiture similar to ones at issue here stated an Eighth Amendment claim: "Plaintiff has alleged facts sufficient to permit a reasonable inference that the tax foreclosure and subsequent sale of his property were not purely remedial and were disproportionate" *See also Dorce v. City of New York*, 608 F. Supp. 3d 118, 143-44 (S.D.N.Y. June 24, 2022) (same).

The loss of the entire value of their home bears no relationship to the gravity of the offense. Non-payment of property taxes is not a crime. The amount of the Plaintiffs' fine is wholly disconnected from the amount of taxes they failed to pay; the fine depends almost entirely on the value of the home. The more valuable the home, the larger the fine.

Illinois courts consider the "intangible value" of the property, too. Plaintiffs here have lost their home — their means of shelter for themselves and their family — and for many if not most, their life savings and most valuable asset. Several Plaintiffs lost personal belongings and vehicles at their home at the time of eviction. (AC ¶¶ 35-37, 44).

In short, the punishment exceeds the crime. "The forced sale of a home is a grave and melancholy event' (*Smith v. D.R.G., Inc.*, 63 Ill.2d 31, 39, 344 N.E.2d 468, 472 (1976)) that can have severe consequences for the delinquent taxpayer." Such punishment should not be visited on people who were not able to pay small amounts of taxes.

Defendants' pointing their collective finger at the tax buyers to deflect blame is again unavailing. The argument is factually unsupported and the Eighth Amendment, like the Fifth, applies only to government actors. Unaffiliated private individuals and businesses do not qualify as government actors nor would it matter if they did due to the application of joint and several liability principles.

## V. Plaintiffs Have Stated a Violation of Due Process under the Fifth Amendment and Illinois Constitution

### A. Taking Surplus Home Equity is One of the Things Government Just Cannot Do No Matter How Much Process is Provided.

"The right of property is a fundamental right, and its protection is one of the most important objects of government." *Schiller Piano Co. v. Illinois N. Utilities Co.,* 288 Ill. 580, 587, 123 N.E. 631, 633 (1919); *Zorzi v. Cnty. of Putnam*, 30 F.3d 885, 894 (7th Cir. 1994) (property interest protected by substantive due process). The right to due process in connection with deprivations of property rights "is conferred, not by legislative grace, but by constitutional guarantee." *Thornton v. Barnes*, 890 F.2d 1380, 1386 (7th Cir. 1989) quoting *Arnett v. Kennedy,* 416 U.S. 134, 167 (Powell, J. concurring in part).[18]

Due process is "not a technical conception with a fixed content unrelated to time, place and circumstances;" it is "flexible and calls for such procedural protections as the particular situation demands." *Matthews v. Eldridge*, 424 U.S. 319, 334 (1976). In Illinois, "the essence of due process is based on the concept of fundamental fairness." *Van Harken v. City of Chicago*, 305 Ill. App. 3d 972, 983, 713 N.E.2d 754, 762 (1999). The Amended Complaint sufficiently alleges that the Defendants have denied Plaintiffs' fundamental right to substantive

---

[18] Courts interpret the Illinois Constitution consistently with the United States Constitution. *General Auto Serv. Station v. City of Chicago*, 526 F.3d 991, 998 (7th Cir. 2008).

due process under the federal and Illinois Constitutions.[19]

"The nub of a substantive due process claim is that some things the state just cannot do, no matter how much process it provides." *Miller v. Henman*, 804 F.2d 421, 427 (7th Cir. 1986). *See also In re Marriage of Miller*, 227 Ill. 2d 185, 197, 879 N.E.2d 292, 316 Ill. Dec. 225 (2007) ("substantive due process limits the state's ability to act, irrespective of the procedural protections provided."). Taking someone's home for a small tax debt, evicting them, and then refusing to compensate them is one of these "things the state just cannot do."

Given that property ownership is a fundamental right, a statute limiting that right "'may be justified only by a compelling state interest, and ... must be narrowly drawn to express only the legitimate state interests at stake.'" *People v. R.G.*, 131 Ill. 2d 328, 342, 546 N.E.2d 533, 137 Ill. Dec. 588 (1989) (internal quotation marks and citations omitted). Where, as here, the right infringed upon is fundamental, the statute is subject to strict scrutiny analysis. *People v. Beard*, 366 Ill. App. 3d 197, 200, 851 N.E.2d 141, 303 Ill. Dec. 243 (2006).

Defendants' depriving Plaintiffs of property rights is therefore unconstitutional unless Defendants can show "that the regulation is necessary to serve a compelling state interest and prove that it is narrowly drawn to achieve that end." *Halgren v. City of Naperville,* 577 F. Supp. 3d 700, 727 (N.D. Ill. 2021), *aff'd sub nom. Lukaszczyk v. Cook Cnty.*, 47 F.4th 587 (7th Cir. 2022). Defendants fail to carry their burden. While there may be a compelling interest in *taking*

---

[19] Defendants argue that Plaintiffs' due process claims are unnecessary or are trumped by the takings clause of the 5th Amendment which supposedly covers the same conduct. That is not so. "[C]ourts pay close attention to the precise description of the right at stake. *See Koutnik v. Brown*, 456 F.3d 777, 781 n.2 (7th Cir. 2006) (whether another textual source covers a substantive due process claim depends on the protections invoked by the plaintiff)." *Doe v. Bd. of Educ. of City of Chicago*, 611 F. Supp. 3d 516, 536 (N.D. Ill. 2020). And in any event, Plaintiffs' due process claims are distinct from their claims for violations of the Takings Clause. Furthermore, Plaintiffs bring their due process and takings claims in the alternative, as permitted under the Federal Rules of Civil Procedure. *Codan Forsikring A/S v. ConGlobal Indus., Inc.,* 315 F. Supp. 3d 1085, 1091 (N.D. Ill. 2018); *Wegman v. Pratt,* 219 Ill.App.3d 883, 895–96, 162 Ill. Dec. 221, 579 N.E.2d 1035 (1991).

Plaintiffs' property to collect taxes, there is none for taking *more* than is owed, as *Tyler* points out. Enriching private tax buyers at the expense of citizens such as Plaintiffs is certainly not a compelling state interest, nor is the statute that permits this result "narrowly drawn." Rather, it sweeps more widely than necessary, impermissibly forcing "some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Tyle*r, 598 U.S. at 647 (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)).

The Supreme Court has recognized that substantive due process claims arise from the exercise of government power that "shocks the conscience." *See, e.g.*, *Rochin v. California*, 342 U.S. 165 (1952), *United States v. Salerno*, 481 U.S. 739, 756 (1987), *Doe v. Bd. of Educ. of City of Chicago*, 611 F. Supp. 3d 516, 537 (N.D. Ill. 2020), *In re Detention of Sveda*, 354 Ill. App. 3d 373, 380, 820 N.E.2d 987, 289 Ill. Dec. 912 (2004). The instant practice does so.[20]

## B. The Indemnity Fund Does Not Insulate Defendants From Their Due Process Violations.

Defendants argue that the mere existence of another cause of action in another court against the IF – one they do not even establish Plaintiffs are eligible to bring – defeats Plaintiffs' due process claims as a matter of law. (Multi Dkt. 87 at 19-20). They argue that Plaintiffs cannot sue *them* for a constitutional due process violation here because Plaintiffs might be able to sue someone else – the IF trustee – somewhere else – in the applicable state Circuit Court.

---

[20] Even assuming Plaintiffs' property rights were not fundamental does not change the result. Where a statute does not implicate a fundamental right, courts apply a "rational basis" test to determine its constitutionality. *Miller*, 227 Ill.2d at 197, 316 Ill. Dec. 225, 879 N.E.2d 292. Under this test, the statute must bear a reasonable relationship to a legitimate state interest. *id.*, 227 Ill.2d at 197, 879 N.E.2d 292 (citing *Washington v. Glucksberg*, 521 U.S. 702, 722 (1997)), and "the means adopted must be a reasonable method of accomplishing the desired objective." *People v. Lindner*, 127 Ill. 2d 174, 180, 535 N.E.2d 829, 831–32 (1989) (quoting *Illinois Gamefowl Breeders Ass'n v. Block*, 75 Ill.2d 443, 453, 27 Ill. Dec. 465, 389 N.E.2d 529 (1979)). Not paying compensation does not bear a rational relationship to collecting taxes.

The irrelevance and deficiencies of the IF, however, are detailed at length above, and in the Appendix, and will not be repeated here. In addition, Defendants' argument continues to make no sense. It could be applied to ANY of the other causes of action Plaintiffs might be able to assert in addition to the IF, some of which they HAVE asserted. The existence of "post-deprivation procedures [such as the IF, assuming it even *is* a post-deprivation procedure to recover for a due process violation] will not, *ipso facto*, satisfy due process." *Leavell v. Illinois Dep't of Nat. Res.,* 600 F.3d 798, 805 (7th Cir. 2010) (quotation and citations omitted), *Knick,* 588 U.S. at 190. This is especially so in that the post-deprivation remedy is woefully inadequate, as described in Section II.

Contrary to Defendants' assertions, the Amended Complaint does not allege that the "tax and sale" provisions of the PTC violate due process; it alleges that *Defendants' procedures, policies and practices* violate due process by failing to provide Plaintiffs with "reasonable, certain and adequate compensation," as required by *Cherokee Nation v. Southern Ry. Co.*, 135 U.S. 641, 659 (1890).[21]

As with the Takings claim, the IF is an irrelevant post-taking, alternative cause of action that does not make Defendants' system more fair or less arbitrary and shocking.

---

[21] *See, e.g.*, AC ¶ 86 ("There is a direct causal link between each Defendant's policy or custom of taking property for a public purpose by issuing tax deeds without paying for them and the resulting constitutional deprivation(s) and violations complained of."), ¶ 144 (Defendants' actions as alleged herein deprive Plaintiffs of substantive and procedural due process and of property and a fundamental property interest without due process of law. This is especially so if, as Defendants maintain, the IF is Plaintiffs' exclusive remedy for loss of equity or Surplus Value or stands as an obstacle to Plaintiffs' recover"), ¶ 146 ("Defendants have created, implemented and administered procedures in a way that fails to provide Plaintiffs and Class members with reasonable, certain and adequate compensation for taking the entire value of a property over and above any liability for their respective Tax Amounts.").

**VI.    The Motion to Strike Class Allegations Should Be Denied.**

    **A.    The Named Plaintiffs Have Standing to Assert Their Claims Against All Defendants Pursuant to the Juridical Link Doctrine Adopted in *Payton***

Defendants do not challenge Plaintiffs' standing to sue the Defendants that were involved in the named Plaintiffs' property tax forfeitures (*i.e.*, DuPage, Peoria, Carroll, and Boone), only their standing to sue Will, Lake, Kane, and Winnebago, counties in which Plaintiffs did not own property. (Multi Dkt. 87 at 4, Lake Dkt. 88 at 14, Kane Dkt. 91 at 4-5). Defendants' motion should be denied because Plaintiffs properly pled the Defendants are all "juridically linked" and in the Seventh Circuit such linked defendants can be sued in one class action lawsuit; even if the named plaintiffs might not have standing, the class does.

The Seventh Circuit adopted the juridical link doctrine of standing twenty-two years ago in *Payton v. Cnty. of Kane*, 308 F.3d 673, 677–80 (7th Cir. 2002). There, several named plaintiffs sought to represent a class of individuals who had been charged certain fees in connection with bail by multiple counties, including counties which had *not* charged any of the named plaintiffs such fees. 308 F.3d at 675. The district court dismissed because the named plaintiffs only alleged dealings with two of the nineteen defendants. *Id.* at 675–76.

Noting the inherent commonality of issues when government officials follow a common policy sanctioned by a state statute, the court reversed, citing the juridical link doctrine and holding that:

> [i]f the defendants with whom the named representative did not interact directly are following a common statute (and this common factor assures that the representative has the same legal claim as the unnamed parties . . . ), we see nothing in either standing doctrine or Rule 23 that automatically precludes use of the class action device.

*Id.* at 681-82.[22]

The court thus held that the standing inquiry, rather than being conducted *first*, should be deferred until *after* the court has the opportunity to address class certification and determine whether there are *class members* with standing to sue each defendant. *Id.* at 680–81. The Seventh Circuit relied on *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 831 (1999), which constitutes a "directive to consider issues of class certification prior to issues of standing," because "class certification issues are ... logically antecedent to Article III concerns, and themselves pertain to statutory standing, which may properly be treated before Article III standing." *Payton,* at 680 (quoting *Ortiz*).

Plaintiffs have properly pleaded the juridical link involved here. In ruling on a "facial" or non-evidentiary motion to dismiss for lack of standing like this one, the Court "must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor." *Lee v. City of Chi.*, 330 F.3d 456, 468 (7th Cir. 2003). Plaintiffs allege the Defendants all employed the same tax sale collection procedure and deprived the putative plaintiff class of the surplus equity in their homes without compensation in the same way. *See* AC ¶ 60. Plaintiffs allege that the Defendant Counties and their respective Treasurers and Clerks are juridically linked within the meaning of *Payton*. AC ¶ 61. Throughout their Amended Complaint, Plaintiffs allege how Defendants make the same policy choices and take the same actions to deprive the Plaintiffs and the putative class of their surplus equity. *See e.g.* AC ¶¶ 1-4, 7, 9, 20, 22, 28, 30, 41, 43, 50, 52, 55-56, 60-61, 63-66, 69, 71, 76-80, 86-96. Defendants all have chosen to act pursuant to the same Illinois law. They all have made the

---

[22] Courts in this District have not limited the juridical link doctrine to scenarios where defendants were acting pursuant to a common statute or rule as Defendants have done in this case and apply the doctrine where plaintiffs allege the government defendants were acting pursuant to a common course of conduct. *See Hudson v. City of Chicago*, 242 F.R.D. 496, 502 (N.D. Ill. 2007).

same policy choices to sell delinquent taxes to tax buyers and facilitate the tax buyers obtaining deeds to the properties, and the policy choice not to pay for the homeowners' surplus equity. (*See e.g.* Kane Dkt. 91 at 3). Defendants' actions pursuant to a common statute and these common policies present the quintessential facts to establish a juridical link.

As a fallback, Defendants argue that although *Payton* has been the law for more than two decades, the Court should abandon it because of a decision in the **_Sixth_** Circuit, *Fox v. Saginaw County, Michigan*, 67 F.4th 284 (6th Cir. 2023). This Court must decline this improper invitation to commit plain error, especially in that *Fox* admits there is no Supreme Court decision on the juridical link doctrine, *id.,* at 298, and that its holding is based merely on speculation about how the Supreme Court might someday rule if the issue came before it.

**B.**     **The Motion to Strike Class Allegations Lacks Merit and is Premature**

Defendants move to strike Plaintiffs' class allegations pursuant to Fed. R. Civ. P. 23(c)(1)(A) and Rule 12(f). This motion should be denied for the same reasons that are set forth above regarding why the Court should not decide yet whether *Payton* applies.[23]

First, "the general rule is that motions to strike are disfavored," *Heller Fin*., *Inc*. *v*. *Midwhey Powder Co*., 883 F.2d 1286, 1294 (7th Cir. 1989) and almost never granted. "[I]t is the rare case in which it is clear from the pleadings that the plaintiffs may not proceed as a class[.]" *Ladik v. Wal-Mart Stores, Inc.*, 291 F.R.D. 263, 272 (W.D. Wis. 2013).

Second, Defendants' motion is premature. Where, as here, motions to strike raise factual issues, courts deny them as premature prior to discovery, which has been stayed in this case. *See Murdock-Alexander v. Tempsnow Empl. & Placement Servs., LLC.*, No. 16-cv-5182,

---

[23] Defendants point to *Hall, et al v. Oakland County*, 2024 WL 209702, *6-12 (E.D. Mich. Jan. 19, 2024) to argue the Court should strike class allegations here. But *Hall* applied the **_Sixth_** Circuit's class certification jurisprudence, which, as discussed below, conflicts with this circuit's precedent.

2016 U.S. Dist. LEXIS 160616, at *10 (N.D. Ill. Nov. 21, 2016).[24] Defendants provide no reason to short-cut the expected and normal course of proceedings contemplated by Rule 23, in which discovery would be conducted to aid the Court in ruling on class certification.

Third, Defendants fail to carry their burden of proof. *Bietsch*, 2016 U.S. Dist. LEXIS 32928, *32 ("on a motion to strike class allegations, the defendant, as the movant, bears the burden of persuasion"). They have not shown that no matter what discovery reveals, or how the class definition is modified, no class could ever be feasible. *See Mauer v. Am. Intercontinental Univ., Inc.*, No. 16 C 1473, 2016 U.S. Dist. LEXIS 121061, at *5 (N.D. Ill. Sep. 8, 2016) (to strike class allegations, it must be "clear from the pleadings that the class claims are defective," and no additional discovery nor amended class definition would be useful in resolving the class determination.).[25]

Defendants incorrectly suggest the plaintiff must demonstrate class action allegations are sufficient. But the burden is on Defendants. Like a motion to dismiss, a motion to strike takes all well-pleaded facts as true and views all allegations in the light most favorable to the non-moving party. *Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, No. 02–C–2523, 2003 U.S. Dist. LEXIS 4964, at *10 (N.D. Ill. Mar. 28, 2003); *Nat'l Accident Ins. Underwriters*, *Inc. v. Citibank, FSB*, 333 F. Supp. 2d 720, 723 (N.D. Ill. 2004). Defendants' motion does the opposite and should be denied.

---

[24] *See also Bietsch v. Sergeant's Pet Care Prods.*, No. 15 C 5432, 2016 U.S. Dist. LEXIS 32928, at *31-32 (N.D. Ill. Mar. 15, 2016) ("if the issues concerning class certification are factual, requiring discovery to determine whether certification is appropriate, a motion to strike class allegations at the pleading stage is premature").

[25] *See also Rysewyk v. Sears Holdings Corp.*, No. 15 CV 4519, 2015 U.S. Dist. LEXIS 169124, at *24-25 (N.D. Ill. Dec. 18, 2015); *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014), *In re Paulsboro Derailment Cases*, 2014 U.S. Dist. LEXIS 48209, at *15 (D. N.J. Apr. 8, 2014) (requiring defendant to establish that a class is so unthinkable that "no amount of discovery or time will allow for plaintiffs to resolve").

      1.      **Plaintiffs Have a Number of Viable Options for Class Certification; The Court Cannot Decide on This Undeveloped Record That No Class is Possible.**

This case concerns not just Plaintiffs but potentially hundreds or thousands more former homeowners who are all in the same boat, all having suffered the traumatic loss of their home. Given the age and nature of the people impacted, the risks and costs of litigation and the profound uncertainties posed by the IF as detailed above and in the Appendix, this class action lawsuit offers the only realistic hope of recovery for these homeowners. And given what Plaintiffs believe is the clear applicability of *Tyler*, the class action aspects of this lawsuit should not lightly be cast aside or ruled on prematurely.

As this court is well aware, class certification is often a weighty topic, addressed after both sides have had the opportunity to conduct discovery, and often the inquiry is aided by expert testimony. Defendants nonetheless request that the Court decide now that the juridical link doctrine is not satisfied because no class is possible. Their request is misguided and premature. *See Payton,* 308 F.3d at 680 (declining to reach class certification "without a proper record").

Other courts in this District have deferred similar requests until after Plaintiff has conducted discovery enabling the court to evaluate class certification on a properly developed record.

> Class certification is not yet before the court, and any Article III standing issues are inherently intertwined with the class certification determination due to the plaintiffs' invocation of the juridical link doctrine. The court will thus postpone its analysis of the Article III standing issue as raised by [Defendants] until the motion for class certification is before it. This is consistent with the Seventh Circuit's recognition that in certain circumstances, it is appropriate for the court "to consider issues of class certification prior to issues of standing."

*Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 762 (N.D. Ill. 2008) (quoting *Payton*

at 680-81); *see also Tex. Hill Country Landscaping, Inc. v. Caterpillar, Inc.*, 522 F. Supp. 3d

402, 409 (N.D. Ill. 2021) ("The court rejects [Defendant's] efforts to inject class certification issues into the standing inquiry, particularly while class certification discovery is ongoing.") (citing *Payton*). Plaintiffs ask the Court to either deny the motion to strike or defer it until the completion of discovery and presentation of Plaintiffs' class certification motion.

### 2. Even if the Court Decides to Review the Rule 23 Class Requirements at This Juncture, Plaintiffs Have Sufficiently Pled a Class

Plaintiffs' class allegations are sufficient to indicate a class can and should be certified (at a later, more appropriate stage of the proceedings). The putative class is carefully defined using objective criteria as follows:

> All persons or entities who meet the following criteria: (1) they owned or were the beneficial owners of real property in the Defendant Counties; (2) the taxes on such property were sold; (3) a tax deed was issued to the purchaser of such taxes and not withdrawn or canceled, and the last market value of such property calculated by the county Assessor before issuance of the tax deed exceeded the Tax Amounts due at the time the tax deed issued. (AC ¶120)

This proposed class satisfies all the requirements of rule 23, Fed. R. Civ. P.

### a) Numerosity

Defendants acknowledge the numerosity element of Rule 23(a)(1) is likely met (Multi Dkt. 87 at 10), but argue Plaintiffs cannot meet the remaining Rule 23 requirements. Defendants' argument is premature and, again, wrong.

### b) The Typicality and Adequacy Requirements Can Be Met

Typicality under Rule 23(a) is satisfied if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . her claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). Some factual variations will not destroy typicality as long as the plaintiffs "have the same essential

characteristics as the claims of the class at large." *Id*. Similarly, "[t]o show that they are adequate representatives of the class, Plaintiffs must show that: 1) they do not have interests that conflict with the class as a whole, 2) they are 'sufficiently interested in the case outcome to ensure vigorous advocacy,' and 3) class counsel is competent and willing to vigorously litigate the case. *Zollicoffer v. Gold Std. Baking, Inc.*, 335 F.R.D. 126, 158 (N.D. Ill. 2020).[26]

Defendants contend that typicality and adequacy cannot be satisfied because (1) the amount of damages may vary for each property, (2) some Plaintiffs' claims could be time barred (although Defendants don't identify how, and have not yet answered and pled a statute of limitations defense), and (3) class members may be subject to individual defenses (again, without discussing how, or which defenses)[27] (Multi Dkt. 87 at 11), (4) that Plaintiffs have not suffered the same injury as the class because (a) the "property value" has to be calculated and each property is different, (b) some class members made a claim to the IF, and (c) that Plaintiffs can't represent lienholders such as banks. (Kane Dkt. 91 at 6-8). Defendants miss the mark on all of these supposed "potential" issues.

### (1) Varying Damage Calculations Present No Bar To Class Certification in the 7th Circuit.

#### (a) *The Seventh Circuit Holds That Individual Damages Determinations Generally Do Not Predominate Over Common Questions.*

Individualized damages present no bar to class certification in the Seventh Circuit. This Circuit has repeatedly confirmed that district courts should not deny class certification based on the possibility that damages may need to be proven individually. Most recently, in *Scott v.*

---

[26] Defendants did not attack the adequacy of the Plaintiffs' counsel, nor could they. Plaintiffs' counsel includes counsel for Ms. Tyler in *Tyler v. Hennepin County*, the Supreme Court case that established the law with respect to Defendants' Takings Clause violations.

[27] The timeliness of Plaintiff Sharritt's claim is discussed in Section B.2.b.3.

*Dart*, No. 23-1312 2024 U.S. App. LEXIS 10305 (7th Cir. Apr. 29, 2024), prisoners sued the government for poor medical care. The district court denied class certification because prisoners' physical pain was individualized. The Seventh Circuit reversed, *finding the district court abused its discretion* and holding that individualized damages are *not* a bar to class certification:

> To be sure, each class member eventually will have to present individualized evidence to show that the harm she suffered was causally related to the inadequate care she received. Individualized evidence may also be used to determine the amount of damages to which each class member is entitled. But we repeatedly have stressed that the common question presented need not resolve every issue in the case. "It is routine in class actions to have a final phase in which individualized proof [is] submitted."

*Id.* at *32-33 (quoting *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014)); *accord McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 488–89, 491 (7th Cir. 2012)("[S]hould the claim of disparate impact prevail in the classwide proceeding, hundreds of separate trials may be necessary to determine which class members were actually adversely affected. . . . [But] at least it wouldn't be necessary in each of those trials to determine whether the challenged practices were unlawful.").

A requirement of individualized proof of damages is simply not a bar to class certification in this case. *Rogers v. Sheriff of Cook Cty.*, 2020 U.S. Dist. LEXIS 222297 (N. D. Ill. 2020) (Certifying claims under the Eighth and Fourteenth Amendments relating to prisoner medical care**).** The Seventh Circuit has been crystal clear that individualized damages are not an insurmountable hurdle to class certification:

> A determination of liability could be followed by individual hearings to determine the damages sustained by each class member. The parties probably would agree on a schedule of damages based on the cost of fixing or replacing class members' mold-contaminated washing machines. In that event the hearings would be brief; indeed the case would probably be quickly settled. . .

> It would drive a stake through the heart of the class action device . . . to require that every member of the class have identical damages. If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification.

*Butler v. Sears Roebuck & Co*., 727 F. 3d 796, 799-801 (7th Cir 2013).

### (b)    *In Any Event, Damages Can Be Proved on a Classwide Basis.*

It is unlikely in any event that Plaintiffs will even need to rely on individual mini-trials to prove just compensation. Compensation can likely be proved on a classwide basis. Plaintiffs will only need to know the amount of taxes that were due on a property – something Defendants keep records on by statute, s*ee, e.g.*, , and the value of the property at the time of forfeiture, which can be established either by means of an inexpensive appraisal, or via an expert report drawing on publicly available records of assessed value and other publicly available data. In Illinois, county assessors are required by law to compute the fair market value for each property, 35 ILCS §200/1-50; 35 ILCS §200/9-155; the law presumes they do so, *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926); *People v. Newcomer*, 284 Ill. 315, 324 (1918), and this data is freely and publicly available for use in the classwide damage model Plaintiffs may employ.

This case does not involve subjective evidence, only evidence on the narrow issue of the property's value, which can be handled by an expert report, a special master, or by means of settlement. It is highly unlikely that the parties, after a finding that Defendants are liable, which is the only time the issue would arise, would find it necessary to engage in scores or hundreds of repetitive mini-trials on the valuation of individual homes. No rational defendant, or plaintiff, would find the expense of trial was warranted.

      **(2)**    **"Just Compensation" Does Not Require Precision;**
                   **Court has Flexibility to Fashion Relief Where Proof**
                   **is Burdensome.**

Reinforcing the suitability of this case for class certification is the fact that the measure of just compensation may be tailored to fit the unique facts of the case and a court which finds a constitutional violation has wide discretion in doing so. None of Defendants' cases address the calculation of constitutionally sufficient "just compensation"; they instead address traditional damages calculations. But as the Supreme Court explained in *United States v. Commodities Corp.*, 339 U.S. 121, 123 (1950):

> This Court has never attempted to prescribe a rigid rule for determining what is "just compensation" under all circumstances and in all cases. Fair market value has normally been accepted as a just standard. But when market value has been too difficult to find, or when its application would result in manifest injustice to owner or public, courts have fashioned and applied other standards.

*See also Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 564 (1931) ("when, from the nature of the case, the amount of the damages cannot be estimated with certainty, or only a part of them can be so estimated, [the plaintiff can] plac[e] before the jury all the facts and circumstances of the case, having any tendency to show damages, or their probable amount; so as to enable them to make the most intelligible and probable estimate which the nature of the case will permit.").

The need for such discretion on the court's part is especially apparent in situations like this, where the homes were taken some years ago and, as a result, are unavailable for inspection and need to be valued not as of now, but several years ago when market conditions may have been different. Any inquiry into just compensation must therefore be controlled by principles of equity and fairness to the property owner whose equity was taken. *Commodities Corp.*, 339 U.S. at 123-24; *Bauman v. Ross*, 167 U.S. 548, 5570 (1897). All that is required is a "reasonable approximation," because the "concept of just compensation … cannot be reduced

48

to a formula, nor can it be confined to inexorable rules." *St. Bernard Parish Gov't v. United States*, 126 Fed. Cl. 707, 738-39 (Ct. Claims 2016) (quoting *Arkansas Game & Fish Comm'n v. United States*, 736 F.3d 1364, 1739 (Fed. Cir. 2013) and *Georgia-Pacific Corp. v. United States* 226 Ct. Cl. 95, 106 (Ct. Clm. 1980)).

Defendants cite the pre-*Tyler* decision of the Sixth Circuit in *Tarrify Properties, LLC v. Cuyahoga County*, 37 F.4th 1101 (6th Cir. 2022). However, that decision rejecting the use of assessed value to measure damages is from another circuit with markedly different class certification jurisprudence than this circuit and is easily distinguished. The court in *Tarrify* utterly failed to consider the court's inherent powers to define the measure of just compensation that is suitable to the necessities of the situation by employing assessed value, which in Illinois is required to be computed by the Assessor and is presumed to be correct, unlike Ohio which does not view assessor's tax valuation as representing fair market value. *Id.* at 1108. Moreover, unlike in that case, the properties here are not all abandoned and for that reason hard to value.

Moreover, the court's analysis in *Tarrify* contained a critical logical flaw which this Court should not repeat. The court there was concerned that modeling the forfeited properties' values on a classwide basis would fail to consider the properties' interior and physical condition at the time of the taking. The court accordingly favored the use of individual appraisals – but the court ignored the fact that an individual appraiser cannot travel back in time to inspect a previously forfeited home any more than an assessor or expert's computer model can. We expect the evidence and expert testimony here will demonstrate that modeling can, in fact, reasonably take into consideration the condition of previously forfeited homes based on historical data. At a minimum, Plaintiffs must be permitted to take discovery and

49

develop the expert testimony to prove their case.[28]

### (3)     Statutes of Limitation Are a Red Herring.

No Defendant has yet answered and pleaded the statute of limitations and "[o]rdinarily a statute of limitations defense should not be raised under Rule 12(b)(6)." *Watson v. Metro. Enf't Grp. of S. Ill*, 2023 U.S. App. LEXIS 21422, *2 n.2 (7th Cir. Aug. 16, 2023). When and if Defendants do properly establish their affirmative limitations defense, the same thing can be done here as is done in many class actions: narrow the class to exclude untimely claims (although it should be noted that the statute of limitations on Plaintiffs' Illinois Constitutional claims is 20 years. *Super Mix of Wis., Inc. v. Nat. Gas Pipeline Co. of Am., LLC*, 2020 IL App (2d) 190034 at *P37, P45, 167 N.E. 2d 149 (2nd Dist. Ct. App. 2020)). In any event, individual defenses generally are not a bar to class certification. *Scott v. Dart*, No. 23-1312 2024 U.S. App. LEXIS 10305 at 32-33 (7th Cir. Apr. 29, 2024).

Attaching documents and relying on facts not alleged in the Amended Complaint, DuPage argues Plaintiff Sharritt's federal takings claims are time barred as a matter of law. (DuPage Dkt. 89 at 11). DuPage does *not* argue any claims of Plaintiff Little, who is also from DuPage, are time-barred or that any other Plaintiff has time-barred claims. DuPage is in error with respect to Plaintiff Sharritt. Plaintiff Sharritt's inverse condemnation claims under the Illinois Constitution, AC ¶¶ 139, are governed by a twenty-year statute of limitations and hence are timely. *See Super Mix,* 2020 IL App (2d) 190034 at P37, 45 (20 years). Plaintiff Sharritt's claims are also timely under the Illinois' "catchall" five year statute of limitations. *See* 735

---

[28] The accuracy and validity of assessor FMV calculations can be established in Illinois using a variety of public sources, and verified by expert analysis and testimony. And as addressed in more detail below, just compensation is not subject to the same sort of precision as other damage calculations.

ILCS 5/13-205. Equitable tolling defenses may also bar a limitations defense if is raised in an answer:

> [E]quitable tolling … is a recognized doctrine in this state. "Tolling doctrines stop the statute of limitations from running even if the accrual date has passed." *"*Extraordinary barriers that may warrant equitable tolling include legal disability, an irremediable lack of information, or circumstances where the plaintiff could not learn the identity of the proper defendants through the exercise of due diligence." ""[E]quitable tolling, unlike equitable estoppel, applies even when the defendant is faultless.'"

*Landwer v. Deluxe Towing, Inc*., 2024 IL App (3d) 220077 at *20 (3rd Dist. Ct. App. May 29, 2024).[29]

### (4) Indemnity Fund Claims Do Not Affect Class Certification.

There is no evidence that any class member has been paid constitutionally sufficient "just compensation" from the IF (an impossibility, actually, as explained *supra* and in the Appendix), or recovered anything at all. Assuming the collateral source rule does not render IF payments irrelevant, and Plaintiffs maintain it does, AC ¶ 99, whether a class member received compensation from the IF can easily be determined through Defendants' records and, if appropriate, offset against class recoveries.

### (5) Lienholder Claims Are Not in The Proposed Class.

Lienholders cannot present a typicality or adequacy concern because they are not included the proposed class. *Tyler* held that the existence of a lien on the property is irrelevant to whether a plaintiff has stated a claim. 698 U.S. at 637.

### b) The Commonality Requirement Is Met.

---

[29] Illinois courts do not require that an equitable tolling defense be pleaded; rather, it can be developed and raised in response to the assertion of an affirmative limitations defense. *Broner v. ABG Servs*., 2020 IL App (1st) 182254-U at *24-26 (Ct. App. May 22, 2020).

The commonality requirement of Rule 23(a)(2) is not difficult to satisfy: "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (quotation marks and alteration omitted). "What matters to class certification ... [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*. at 350 (quotation marks omitted). *See also Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir.1998) (common questions arise where "the defendants have engaged in standardized conduct towards members of the proposed class"). Plaintiffs list several common questions, including the crucial one of *Tyler*'s applicability to this case.

### c)      *Predominance is Satisfied.*

Without meaningful analysis, Defendants contend "numerous" individual issues predominate over the common issue of "retention of surplus proceeds from tax sales." (Multi Dkt. 87 at 13). They do not, as explained above in the discussion of why the need for individualized damages evidence does not bar class certification.

"The guiding principle behind predominance is whether the proposed class's claims arise from a common nucleus of operative facts and issues." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1029 (7th Cir. 2018). "[C]ourts routinely certify classes under Rule 23(b)(3) challenging ... a uniform policy or practice... And a determination as to whether those policies are unconstitutional is a significant aspect of this case that can be resolved for all class members in a single adjudication." *Clay v. Dart*, 2021 U.S. Dist. LEXIS 178568 at*26-27 (N D Ill. 2021) (internal quotations and cites omitted). Here, Defendants exercised the same policy choices to use the same means of collecting taxes from all class members, and none of them paid the just

compensation the U.S. and Illinois Constitutions requires.[30]

Plaintiffs have identified several common, resolution-driving questions of law and fact. AC ¶ 123. The central questions in this litigation, common to every class member beside which other questions in the litigation pale, are "[w]hether the transfer of properties to Tax Buyers without promptly remitting to owners, or compensating them for, the equity in their property in excess of the Tax Amounts, constitutes an uncompensated taking of private property for a public purpose," *id*., whether the taking of the Plaintiffs and class members' surplus value constituted an excessive fine under the Constitutions, and whether such takings violated due process. These common legal questions are easily capable of classwide resolution and predominate over every other question in the litigation.

### 3. The Class is Ascertainable

Plaintiffs carefully defined their class to make membership objective and based on *records maintained by Defendants*. If a person (1) owned property in a Defendant County, (2) the taxes on that property were sold, (3) a tax deed was issued to the purchasers of the taxes, and (4) the last market value of such property (*calculated by the county Assessor* before issuance of the tax deed) exceeded the tax amounts due at the time the tax deed issued, then they are a class member.

Defendants contend in blunderbuss fashion that the class is unascertainable because it is "unduly broad and wildly[!] overinclusive" and that the definition "establishes an impermissible fail-safe class; in defining the class in terms of property owners deprived of

---

[30] Plaintiffs can prove damages on a classwide basis with expert reports. Plaintiffs have also pleaded class certification under Rule 23(c)(4), *see* AC ¶120 (that paragraph contains a typographical error, referring to "23(c)(1)" instead of "23(c)(4)), which allows a court to certify a liability issue class and leave damages determinations to be made on an individual basis. Should the Court ultimately find that it cannot certify a Rule 23(b)(3) class, it has the option to certify an issue only, liability class.

surplus funds under procedures established in the PTC, the class would include members with actual and viable claims, which requires the Court to conduct a threshold determination to confirm class membership." (Multi Dkt. 87 at 12). These arguments are wrong and indeed somewhat incoherent. There is no ambiguity in the class definition; the class is __*not*__ defined in terms of "property owners deprived of surplus funds". Defendants' protest that the class includes members "with actual and viable claims" makes no sense. Classes are **supposed** to include members with viable claims. Plaintiffs' class definition does not result in a fail-safe class. Membership is determined objectively rather than based on the viability of the class member's claim. *McCaster v. Darden Restaurants, Inc.*, 845 F.3d 794, 799 (7th Cir. 2017) (explaining what a fail-safe class is); *Messner v. Northshore University Health System*, 669 F.3d 802, 825 (7th Cir. 2012) ("Defining a class so as to avoid, on one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science. Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis.").

## VII.   Fed. R. Civ. P. 19 Does Not Apply

Defendants argue that, in violation of Rule 19 of the Federal Rules of Civil Procedure, Plaintiffs omitted necessary parties, *i.e.*, the "parties who actually performed their alleged constitutional violations: the tax buyers" and that the Court should order their joinder. (DuPage Dkt. No. 89 at 14–15; *see also* Kane Dkt. 91 at 14; Lake Dkt. 88 at 15). Defendants' Rule 19 argument is specious.

*First*, because the tax buyers are non-governmental private parties, the Fifth Amendment generally does not apply to them, and the tax buyers did not, under the allegations of the Amended Complaint, commit a Takings Clause (or any other) violation. *See, e.g.,*

*McDonald v. City of Chicago*, 561 U.S. 742, 754–764 (2010) (*citing Chicago, B. & Q.R. Co. v. City of Chicago*, 166 U.S. 226 (1897)).[31]

Defendants' claim that the tax buyers are necessary parties because Defendants gave the tax buyers their ill-gotten gains also lacks merit, for reasons stated earlier. *See*, *e.g.*, *Boston Chamber of Commerce* at 195 (It is the deprivation that matters, not gain to the government). Plaintiffs are not seeking a return of the properties from the tax buyers or to set aside the takings; they seek instead the compensation to which they are entitled pursuant to the Illinois and U.S. Constitutions.

*Second*, even if the Takings Clause applied to private party tax buyers, they would not be necessary parties. To determine whether a party is "necessary," this Court must consider first whether complete relief can be accorded without joinder, second whether the tax buyer's ability to protect their interest will be impaired without joinder, and third whether the existing parties will be subjected to a substantial risk of multiple or inconsistent obligations unless the person is joined. *See Davis Companies v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001). Each of these considerations weighs against the tax buyers being necessary parties here.

First, complete relief *can* be accorded here without joinder: Defendants are ordered to compensate Plaintiffs for the surplus equity that was unconstitutionally taken. Defendants can provide this relief without the tax buyers. Second, the tax buyers' ability to protect their interest will *not* be impaired by non-joinder because their interests are not implicated here. Neither Plaintiffs nor Defendants seek relief from the tax buyers. Finally, Defendants fail to identify

---

[31] Although there are limited exceptions in which private actors acting with or at the behest of governments can *also* be liable with the government for constitutional violations, none of such circumstances have been pled or are in this record. Even in such exceptional cases, because the private actors are jointly and severally liable with the governments, they cannot be "necessary" parties. *Fox v. Barnes*, 2013 U.S. Dist. LEXIS 68723, *5 (N.D. Ill. May 15, 2013) (Because Section 1983 liability is joint and several, plaintiff may proceed against some or all of the responsible actors).

or demonstrate any "multiple" or "inconsistent" obligations as referred to in Rule 19(a)(1)(B)(ii), or explain how there is any risk of them. The tax buyers are not necessary parties and this Court should reject Defendants' Rule 19 argument.

## VIII.   The *Rooker-Feldman* Doctrine Does Not Apply

Defendants argue that "this court does not have jurisdiction to review Plaintiffs' claims and this case should be dismissed for lack of subject matter jurisdiction" under the *Rooker-Feldman* doctrine. (DuPage Dkt. 89 at 12–13; Multi Dkt. 87 at 4; Lake Dkt. 88 at 15; Kane Dkt. 91 at 13). This argument is similarly baseless.

The *Rooker-Feldman* doctrine, emanating from two U.S. Supreme Court cases,[32] "precludes lower federal court jurisdiction over claims seeking review of state court judgments . . . [because] the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment." *Taylor v. Federal National Mortgage Association*, 374 F.3d 529, 532 (7th Cir. 2004) (*quoting Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002)). The *Rooker-Feldman* doctrine is a narrow jurisdictional bar to litigation where the losing party in a state court action takes subsequent action in "federal court to undo the [state court] judgment in its favor." *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 294 (2005).

Defendants argue that Plaintiffs challenge the validity of the underlying state court judgments and want this Court to "review" them. (*See* DuPage Dkt. 89 at 13). False. Plaintiffs do *not challenge* and *have never challenged the validity of* or sought *review* of the underlying state court tax deed judgments. Defendants have the legal right to divest Plaintiffs of their

---

[32] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

property for non-payment of taxes and no one argues otherwise. 598 U.S. at 639, 647. Defendants can take, and tax buyers can keep, the properties in issue. The foreclosure judgment is therefore not relevant to the claim of nonpayment of just compensation. As stated in *Dorce v. City of New York*, 608 F. Supp. 3d 118, 134 (S.D.N.Y. June 24, 2022) rejecting Rooker-Feldman in a tax forfeiture case:

> The state court judgment [of foreclosure] did not address whether the plaintiffs were compensated for their surplus equity or whether the City's seizure and retention of such equity would be unlawful. Indeed, the alleged seizure and retention of the plaintiffs' surplus equity would have occurred, if at all, only after the foreclosure judgment was entered. Accordingly, … Rooker-Feldman does not deprive the Court of subject matter jurisdiction over this claim.

*Id.* at 134 (internal citations omitted). *See Mills v. Springfield*, 2024 Mass. Super. LEXIS 51 at *9 (Super.Ct. Apr. 18, 2024) (Takings Claim for surplus value "does not arise out of the transaction or occurrence that is the subject of the Tax Foreclosure Action").

Plaintiffs challenge only the unconstitutional *failure to **compensate** them* as *Tyler* requires for their equity in excess of the taxes. This request for compensation does not seek review or overturning of the foreclosures judgment or any other state court decision. The *Rooker-Feldman* doctrine does not apply.

## IX.     The Eleventh Amendment Does Not Apply

Defendants argue that as a matter of law, "Plaintiffs are prohibited from suing the Clerk and Treasurer because they should be deemed state officials for purposes of Eleventh Amendment Immunity." Under the arm-of-the-state doctrine and the Eleventh Amendment, the states, and certain political subdivisions that are an "arm-of-the-state," are generally immune from suit for damages in federal court*, DuPage Regional Office of Education v. United States Department of Education*, 58 F.4th 326, 337 (7th Cir. 2023). (Kane Dkt. 91 at 9–11*; see*

*also* DuPage Dkt. 89 at 13; Multi Dkt. 87 at 14 fn. 4; Lake Dkt. 88 at 14). This argument should likewise be rejected. Defendants cannot establish on this record that as a matter of law they are arms of the state.

To determine whether a particular entity is an "arm-of-the-state," courts look primarily at two complex factors that *this* record contains no information about: (1) the extent of the entity's financial autonomy from the state and (2) the general legal status of the entity." *Tucker v. Williams*, 682 F.3d 654, 659 (7th Cir. 2012); *see also Burrus v. State Lottery Commission of Indiana*, 546 F.3d 417, 420 (7th Cir. 2008). Of the two factors, the "entity's financial autonomy from the state" is the most important factor. *Kashani v. Purdue University*, 813 F.2d 843, 845–847 (7th Cir. 1987). In evaluating that factor, courts "consider the extent of state funding, the state's oversight and control of the entity's fiscal affairs, the entity's ability to raise funds independently, whether the state taxes the entity, and whether a judgment against the entity would result in the state increasing its appropriations to the entity." *Id*. at 845. Additionally, "when an entity facially appears to be local or regional rather than statewide," as here, "the entity will need to make a strong showing to establish itself as an arm of the state." *DuPage*, 58 F.4th at 349.

In light of these factors, it is abundantly clear that the Defendants have failed to carry their burden of showing they are an arm-of-the-state. In their leading papers, Defendants put forth no meaningful analysis, no facts, and no case law to satisfy the numerous and specific elements of the arm-of-the-state analysis. (*See* Kane Dkt. 91 at 9–11; *see also* Multi Dkt. 87 at fn. 4; DuPage Dkt. 89 at 13; Lake Dkt. 88 at 14). This alone defeats Defendants' argument..

Instead of properly stating the law on arm-of-the-state and providing facts in support of each element of the proper analysis, Defendants sidestep the issue and cite *Scott v. O'Grady*,

975 F.2d 366 (7th Cir. 1992). (*See* Kane Dkt. 91 at 9–11). This argument should be rejected as well. The county sheriff defendants in *O'Grady* claimed Eleventh Amendment immunity from claims based on their enforcing housing eviction court orders, and the court agreed. *See O'Grady,* 975 F.2d at 371. Here, Plaintiffs do not challenge the enforcement of *any* state court orders or the issuance of tax deeds pursuant thereto. Plaintiffs challenge actions Defendants take, *or do not take*, **after** the enforcement of the tax law is complete and the taxes are paid: *i.e.,* the failure to compensate Plaintiffs for the value in excess of the taxes that was taken.

*Ruehman v. Village of Palos Park*, 842 F. Supp. 1043 (N.D. Ill. 1993) illustrates how this case is different from *O'Grady*. In *Ruehman*, a county sheriff claimed he was acting as an arm-of-the-state when processing warrants, which are orders of the state court, *after* they issued. *Id*. at 1049. This Court rejected that argument, concluding that alleged misconduct occurring after issuance of the warrants – not in connection with their issuance or enforcing them – was not action taken as an arm-of-the-state. That is the situation here: Plaintiffs do not challenge actions pursuant to court order, *e.g*., issuance of a tax deed. They challenge what Defendants did (or failed to do) afterwards—Defendants' failure to pay compensation. *See Direct Marketing Ass'n v. Brohl*, 575 U.S. 1, 10 (2015) (Tax collection, in this case the sale of the taxes at the tax sale, is limited to the "act of obtaining payment of taxes due.").

The County Clerks and Treasurers' failure to compensate Plaintiffs for equity that exceeds the taxes owed is not the result of any court order or state compulsion and those failures are therefore not subject to the "arm-of-the-state" doctrine. The Clerk and Treasurer Defendants are not entitled to Eleventh Amendment immunity.

## X.     Quasi-Judicial Immunity Does Not Apply

Defendants argue that "Plaintiffs are also barred from suit … because of the application

[of] quasi-judicial immunity when following a court order to issue a tax deed." (Kane Dkt. 91 at 11). Quasi-judicial immunity protects members of quasi-judicial adjudicatory bodies "when their duties are functionally equivalent to those of a judge or prosecutor." *Wilson v. Illinois Department of Financial and Professional Regulation*, 376 F.Supp.3d 849, 864 (N.D. Ill. 2019) (citing *Heyde v. Pittenger*, 633 F.3d 512, 517 (7th Cir. 2011)). Because the Defendants are not members of an adjudicatory body and have no duties equivalent to prosecutors or judges, and because, as repeatedly noted, *Plaintiffs do not challenge the issuance of tax deeds*, this argument also is baseless.

Defendants rely on *Henry v. Farmer City State Bank*, 808 F.2d 1228 (7th Cir. 2011), where the Seventh Circuit extended quasi-judicial immunity to a sheriff (a "court officer[]"), who was executing a law enforcement function. *See id.* at 1239. That case is irrelevant. Here, the public officials are not court officers or instrumentalities of the judicial branch, executing a law enforcement function, but elected officials operating with and for the county with no adjudicatory or judicial officer function under Ill. Const. Art. VII § 4(c) & (d); *see also Heyde*, 633 F.3d at 517 (quasi-judicial immunity protects public officials whose "duties are functionally equivalent to those of a judge or prosecutor."). The County Clerks and Treasurers are not instrumentalities of the judicial branch and are not entitled to quasi-judicial immunity.

## <u>CONCLUSION</u>

Defendants' motions to dismiss the Amended Complaint and to strike Plaintiffs' class allegations should be denied.

Date: June 7, 2024.               By: _/s/_ _Charles R. Watkins_ _____

                      Charles R. Watkins (3122790)
                      GUIN, STOKES & EVANS, LLC
                      805 Lake Street, #226
                      Oak Park, Illinois 60301
                      (312) 878-8391

                      David Guin (*pro hac vice*)
                      GUIN, STOKES & EVANS, LLC
                      300 Richard Arrington Jr. Blvd N., # 600
                      Birmingham, Alabama 35203
                      (205) 503-4505
                      davidg@gseattorneys.com

                      Vildan A. Teske
                      TESKE LAW PLLC
                      80 South 8th Street
                      Suite 900
                      Minneapolis, Minnesota 55402
                      (612) 767-0521

                      _/s/_ _____ _Garrett Blanchfield_ _____
                      Garrett Blanchfield (*pro hac vice*)
                      Roberta A. Yard (*pro hac vice*)
                      REINHARDT WENDORF & BLANCHFIELD
                      80 So. 8th Street, Suite 900
                      Minneapolis, MN 55402
                      (651) 287-2100
                      g.blanchfield@rwblawfirm.com
                      r.yard@ rwblawfirm.com

                      Daniel C. Hedlund (*pro hac vice*)
                      Daniel J. Nordin (*pro hac vice*)
                      Abou B. Amara (*pro hac vice*)
                      Gustafson Gluek PLLC
                      Canadian Pacific Plaza
                      120 South Sixth Street, Suite 2600
                      Minneapolis, Minnesota 55402
                      (612) 333-8844

                      *Counsel for Plaintiffs*

**Certificate of Service**

The undersigned hereby certifies that on June 7, 2024, I caused the foregoing to be served upon all other parties of record registered with the Clerk of the Northern District of Illinois, by electronically filing a copy of the same via the Northern District of Illinois's CM/ECF filing system, which automatically transmits electronic copies to all parties registered therewith.

/s/ Garrett Blanchfield