# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MICHEL SHARRITT, et al., )
)
   Plaintiffs, )
)    No. 23 C 15838
   v. )
)    Judge Sara L. Ellis
GWEN HENRY, in her capacity as Treasurer )
of DuPage County, Illinois, et al., )
)
   Defendants. )

## OPINION AND ORDER

Plaintiffs Michel Sharritt, Melody Cannon, Maurice Cross, Christopher Meyer, Dareios

Little, and Karl Lee sued Winnebago, Peoria, Will, Carroll, Newport, and Boone Counties

(collectively the "Other Counties"), and DuPage, Lake, and Kane Counties, as well as each of

the individual Defendant Counties' respective treasurers and clerks (as individual counties with

their respective officials, *e.g.*, the "DuPage County Defendants," and collectively with all other

defendants, "Defendants"), alleging that Defendants' use of the Illinois tax sale procedures

contained in the Illinois Tax Code, 35 Ill. Comp. Stat. 200 *et seq.*, violates Plaintiffs' rights to

(1) fair compensation for takings pursuant to the Fifth and Fourteenth Amendments, and the

Illinois Constitution; (2) due process under the Fourteenth Amendment and the Illinois

Constitution; and (3) be free from excessive fines under the Eighth and Fourteenth Amendments,

and the Illinois Constitution. Defendants raise a host of threshold immunity and standing

arguments for why this Court lacks jurisdiction to hear this case, challenge the sufficiency of

Plaintiffs' allegations under Federal Rule of Civil Procedure 12(b)(6), and argue that Plaintiffs

failed to sue all necessary parties under Rule 19. While the Court agrees that Plaintiffs fail to

state a substantive or procedural due process claim and accordingly dismisses Count II of their

amended complaint, the Court disagrees with the remainder of Defendants' arguments concerning why this case cannot proceed. The Court therefore grants in part and denies in part Defendants' separate motions to dismiss.[1]

## BACKGROUND[2]

### I.  Illinois Tax Sales

Illinois counties assess taxes on real property every year in accordance with the Illinois Tax Code, 35 Ill. Comp. Stat. 200 *et seq.* If a property owner fails to pay their property taxes, the property becomes delinquent and the county places a first-priority lien on the property for the unpaid amounts, which accrue interest. If the owner fails to timely satisfy his or her tax burden, then a state court issues a judgment for nonpayment. After receiving this judgment, Illinois law requires the county treasurer to offer the amount of unpaid taxes (the "Tax Amounts") at an annual tax sale. At a tax sale, potential buyers, who are often corporations and LLCs, but occasionally individuals, bid on the interest rate they will charge the property owner to redeem the property. The buyer that bids the lowest interest rate wins and immediately pays the county the Tax Amounts. In exchange, the buyer receives (1) the right to collect the Tax Amounts from the property owner, plus the winning interest rate, and (2) a lien on the property.

After the buyer receives a lien, Illinois law requires it to provide the property owner with "reasonable notice of the sale and the date of expiration of the period of redemption." Ill. Const. art. IX, § 8(e). The redemption period—the time during which the property owner must repay

---

[1] Lake, DuPage, and Kane Counties filed separate motions to dismiss. *See* Doc. 88 (Lake County), Doc. 89 (DuPage County), Doc. 90 (Kane County). The Other Counties filed a collective motion to dismiss. *See* Doc. 86. The Court thanks the parties for their comprehensive briefing, which spanned a collective 252 pages, on the several matters they raised before the Court.

[2] The Court takes the facts in the background section from Plaintiffs' first amended complaint and exhibits attached thereto and presumes them to be true for the purpose of resolving Defendants' motions to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

the buyer the Tax Amounts plus the winning interest rate—is usually thirty months. If the property owner redeems the property within the redemption period, then the buyer's lien is void. However, if the property owner fails to redeem the property, then the buyer can petition a state court for ownership of and the right to evict any current tenants occupying the property. If the state court accepts the buyer's petition, then the county clerk issues a tax deed that transfers ownership of the property from the original owner to the buyer.

Counties maintain "indemnity funds" to compensate eligible parties who have suffered losses from tax sales. *See* 35 Ill. Comp. Stat. 200/21-295. Petitioners who assert injuries springing from the Illinois tax sale procedures can petition a state court for an indemnity. If the petitioner seeks an award of $99,000 or less, then the reviewing court may grant the petition if "in the discretion of the [petitioned] Court, the equities warrant the action." 35 Ill. Comp. Stat. 200/21-305(1). If the petitioner seeks to recover more than $99,000, then the court may only grant such an award if the petitioner shows "the loss of his . . . property was not attributable to his . . . own fault or negligence." *Id.* Plaintiffs allege that Defendants routinely challenge petitioners who seek to recover from the Indemnity Fund their losses that result from the Illinois tax sale procedures in order to prevent such recoveries.

## II.     Plaintiffs

### A.     Sharritt

Sharritt is a resident of DuPage County, Illinois. She owned a home in Naperville, Illinois, but became delinquent on her property taxes. DuPage County sold the Tax Amounts, and Sharritt failed to redeem her property from the tax buyer. After the redemption period expired, the tax buyer received a tax deed, awarding him ownership of Sharritt's property. Sharritt did not receive compensation for the value of the equity she owned in the home that was

3

greater than the Tax Amounts. Eventually, the tax buyer evicted Sharritt and her family from the property.

### B.     Cannon and Cross

Cannon and Cross are residents of Carroll County, Illinois. They owned a home in Shannon, Illinois. Cannon and Cross failed to stay current with their property taxes, so Carroll County sold the Tax Amounts to a tax buyer. Cannon and Cross did not redeem their property from the tax buyer. When the redemption period expired, the tax buyer obtained a tax deed, awarding them ownership of Cannon and Cross' property. Cannon and Cross did not receive compensation for the value of the equity they owned in the home that was greater than the Tax Amounts. The tax buyer evicted the pair from the property.

### C.     Lee

Lee is a resident of Peoria County, Illinois, and a U.S. military veteran. He owned a home in Chillicothe, Illinois, that he renovated over time after purchasing it in poor condition. However, Lee failed to pay his property taxes, and Peoria County sold the overdue Tax Amounts to a tax buyer. Lee failed to redeem his property from the tax buyer within the redemption period. After its expiration, the tax buyer received a tax deed, awarding them ownership of Lee's property. Lee did not receive compensation for the value of the equity he owned in the home that was greater than the Tax Amounts. Eventually, the tax buyer evicted Lee from the property.

### D.     Little

Little is a resident of Michigan. He formerly owned and lived in a residence in DuPage County, Illinois. Little became delinquent on his property taxes, and DuPage County sold the Tax Amounts to a tax buyer. Little did not redeem his property within the redemption period.

After its expiration, the tax buyer received a tax deed, awarding them ownership of Little's property. Little did not receive compensation for the value of the equity he owned in the home that was greater than the Tax Amounts. Eventually, the tax buyer evicted Little, his wife, and seven children from the property.

### E. Meyer

Meyer is a resident of Boone County, Illinois. He owned a home in Belvidere, Illinois, but he did not pay his property taxes. Eventually, Boone County sold the Tax Amounts to a tax buyer. Meyer did not redeem his home, and when the redemption period expired, the tax buyer received a tax deed awarding them ownership of Meyer's property. Meyer did not receive compensation for the value of the equity he owned in the home that was greater than the Tax Amounts. The tax buyer evicted Meyer from the property.

### LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The standard of review for a Rule 12(b)(1) motion to dismiss depends on whether the defendant raises a facial or factual challenge. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction—a facial challenge—the Court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences" in the plaintiff's favor. *Id.* "[W]hen evaluating a facial challenge to subject matter jurisdiction," the Court employs the *Twombly–Iqbal* "plausibility" standard, "which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Id.* at 174. If, however, the defendant contests the truth of the jurisdictional allegations—a factual challenge—the Court may look beyond the pleadings and view any competent proof submitted by the parties to determine if the plaintiff has

5

established subject matter jurisdiction by a preponderance of the evidence. *See id.* at 173; *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444–45 (7th Cir. 2009); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Defendants each incorporate by reference different arguments that other Defendants made in their respective briefs to create a nesting chain of arguments. *E.g.*, Doc. 88 at 14–15 (Lake County Defendants' incorporation by reference of arguments made in their co-Defendants' briefs).[3] The Court unstacks this *matryoshka* doll in the following order: it begins with threshold immunity, abstention, and statute of limitations arguments that, if resolved in Defendants' favor, would warrant the dismissal of the entire case, certain claims, or specific Defendants regardless of the sufficiency of the allegations in Plaintiffs' amended complaint. If Plaintiffs surmount

---

[3] Citations to documents in the record are to the page number the ECF system provides at the top of each page, not the page number as reflected at the bottom of each document.

these hurdles, the Court moves to the second layer, addressing issues of standing relevant to the Will, Lake, Kane, and Winnebago County Defendants. The Court then considers whether Plaintiffs' amended complaint states a claim for relief under the Fifth, Eighth, and Fourteenth Amendments, and the Illinois Constitution. Finally, if the amended complaint survives this analysis, the Court then addresses the residual housekeeping issue of whether the roster of Defendants that Plaintiffs named in their amended complaint satisfies Rule 19, or if Plaintiffs must also sue those who purchased their properties at tax sales.

## I. Whether the Eleventh Amendment Strips This Court of Jurisdiction

The Court starts with the Eleventh Amendment argument that the Kane County Defendants develop in their brief, and which the other Defendants incorporate by reference. Doc. 91 at 9–11 (arguing immunity for the Kane County Clerk and Treasurer under the Eleventh Amendment); *see also* Doc. 87 at 14 n.4 (the Other Counties "join[ing] in and adopt[ing] the Eleventh Amendment" argument in Kane County's brief); Doc. 88 at 14 (same for Lake County Defendants); Doc. 89 at 13 (same for DuPage County Defendants). Defendants argue that the Eleventh Amendment shields county clerks and treasurers from liability in this case because their duties relevant to collecting the Tax Amounts due on delinquent properties—issuing a tax deed and administering tax sales, respectively—are creatures of state court orders and state statutes, which makes the county clerks and treasurers arms of the state immune from suit under the Eleventh Amendment.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Amendment also bars federal courts from hearing suits between a

State and its own citizen. *See PennEast Pipeline Co., LLC v. New Jersey*, 594 U.S. 482, 499 (2021) ("States retain their immunity from suit regardless of the citizenship of the plaintiff." (citing *Hans v. Louisiana*, 134 U.S. 1 (1890))). "[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver by the state or a congressional override." *Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir. 1992). "This immunity does not extend, however, to other political or municipal entities created by states," including county governments and their officials. *DuPage Reg'l Off. of Educ. v. U.S. Dep't of Educ.*, 58 F.4th 326, 337 (7th Cir. 2023).

However, the Eleventh Amendment analysis does not boil down to an easy sorting exercise between state officials and governments who enjoy immunity and municipal officials and governments who covet it. In certain contexts, local governments and officials operate as "arms of the state" and may find immunity under the Eleventh Amendment. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *cf. Scott*, 975 F.2d at 371 (county sheriff acts as state official when "executing Writs of Assistance and other state court orders"); *see also Ruehman v. Sheahan*, 34 F.3d 525, 528 (7th Cir. 1994) ("An official-capacity suit challenging the execution of the warrants would be a suit against the state, because state courts issued the warrants."). When a local official looks to the Eleventh Amendment for protection, courts consider whether the local official is "carrying out non-discretionary duties subject to state policy control." *Cassell v. Snyders*, 990 F.3d 539, 552 (7th Cir. 2021); *cf. Richman v. Sheahan*, 270 F.3d 430, 439 (7th Cir. 2001) ("In determining whether the sheriff is an agent of Illinois government when performing particular functions, we have looked to the degree of control

exercised by Illinois over the conduct at issue and whether the Eleventh Amendment policy of avoiding interference with state (as opposed to county) policy is offended by the lawsuit.").[4]

The Kane County Defendants argue that the county clerks and treasurers are entitled to Eleventh Amendment immunity because state courts and state law control all actions the officials take to enforce the provisions of the Illinois Tax Code. For treasurers, those acts include petitioning state courts to obtain judgments for nonpayment of delinquent property taxes and then offering those taxes at a tax sale; for clerks, this includes issuing a tax deed after a state court awards title to a tax buyer once the original property owner fails to timely redeem their property. Per the Kane County Defendants' argument, state law compels the treasurers and clerks to perform these acts, *see, e.g.*, 35 Ill. Comp. Stat. 200/21-150 (compelling county treasurer to file "all applications for judgment and order of sale for taxes and special assessments on delinquent properties . . . within 90 days after the second installment due date"); 35 Ill. Comp. Stat. 200/22-40 (empowering court to "enter an order directing the county clerk . . . to issue to the purchaser or its assignee a tax deed"), so under *Scott* they enjoy Eleventh Amendment immunity from suit to the extent that Plaintiffs' amended complaint challenges their execution of those duties. 975 F.2d at 371; *see also Cassell*, 990 F.3d at 552 (municipal officials enjoy

---

[4] Plaintiffs argue that the Court should use an alternate two-factor test to assess whether the treasurers and clerks are "arms of the state" entitled to Eleventh Amendment immunity. *See Burrus v. State Lottery Comm'n of Ind.*, 546 F.3d 417, 420 (7th Cir. 2008) ("To determine if a particular entity is an arm of the state, courts look primarily at two factors: (1) the extent of the entity's financial autonomy from the state; and (2) the 'general legal status' of the entity."). However, as the language of the test belies, it applies to *entities*, not *individual officials*. *See, e.g., id.*; *Tucker v. Williams*, 682 F.3d 654, 659 (7th Cir. 2012) ("To determine *if a particular entity* is a state agency, i.e., an arm of the state, courts look at: (1) the extent of the entity's financial autonomy from the state; and (2) the 'general legal status' of the entity." (emphasis added)); *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695 (7th Cir. 2007) ("In deciding whether *an entity* is an agency of the state, the most important factor is the extent of the entity's financial autonomy from the state." (quotations omitted) (emphasis added)); *Kashani v. Purdue Univ.*, 813 F.2d 843, 845 (7th Cir. 1987) ("The most important factor is the extent of *the entity's* financial autonomy from the state." (emphasis added)). Accordingly, the Court applies the test that applies to individual actors as set out above.

Eleventh Amendment immunity when they are "carrying out non-discretionary duties subject to state policy control").

However, Plaintiffs argue that their case does not challenge anything the treasurers or clerks actually do during the tax sale process, whether it is collecting property taxes or issuing tax deeds. Rather, Plaintiffs frame their amended complaint to target "actions Defendants take, or do not take, after the enforcement of the tax law is complete and the taxes are paid." Doc. 96 at 73 (emphasis omitted). Those actions the treasurers and clerks allegedly fail to take include rendering just compensation to Plaintiffs for equity they owned in their properties greater than the Tax Amounts after the tax buyers obtain tax deeds. Plaintiffs argue that state law does not compel treasurers and clerks to withhold such compensation—and more to the point, that the Constitution compels them to provide it—so the Eleventh Amendment does not protect their failure to provide it.

Accordingly, under Plaintiffs' conception of their amended complaint, the Eleventh Amendment does not protect the clerks and treasurers from this suit because they are not suing the officials for any act they performed that state law compelled them to do. *Cf. Ruehman*, 34 at 528–29 (Illinois county sheriffs not immune from suit where county governments designed and implemented challenged warrant-tracking system because "State law requires the Sheriff to arrest the right people but says nothing about how he should do it"). The Court therefore declines to dismiss Plaintiffs' amended complaint on Eleventh Immunity grounds.[5]

---

[5] The Kane County Defendants, in their reply brief, urge the Court to reject Plaintiffs' claims on Eleventh Amendment grounds because they "are asking this court to order the Defendants to do something that there is no statutory mechanism to do," namely to compensate them for any surplus equity they lost as a result of the Illinois tax sale procedures. Doc. 97 at 7. But even if state law does not explicitly authorize Defendants to provide such compensation, if their failure to do so violates the Constitution then Defendants will nevertheless be liable for damages. *See Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019) ("[A] municipality can be liable under § 1983 only 'when execution of a government's policy or

II.     **Whether Quasi-Judicial Immunity Applies**

The Court next turns to the Kane County Defendants' quasi-judicial immunity argument,
which the other Defendants adopted by reference.  Doc. 91 at 11–12; *see also* Doc. 87 at 14 n.4
(the Other Counties "join[ing] in and adopt[ing] the . . . *quasi*-immunity" argument in Kane
County's brief); Doc. 88 at 14 (same for Lake County Defendants); Doc. 89 at 14 (same for
DuPage County Defendants).

Quasi-judicial immunity is a form of absolute immunity from suit, ordinarily reserved for
"members of quasi-judicial adjudicatory bodies when their duties are functionally equivalent to
those of a judge or prosecutor."  *Heyde v. Pittenger*, 633 F.3d 512, 517 (7th Cir. 2011).
"Absolute immunity is only accorded for limited functions; '[t]he presumption is that qualified
rather than absolute immunity is sufficient to protect government officials in the exercise of their
duties.'"  *Wilson v. Kelkhoff*, 86 F.3d 1438, 1443 (7th Cir. 1996) (quoting *Burns v. Reed*, 500
U.S. 478, 486–87 (1991)).  Although the doctrine primarily protects officials performing
discretionary acts, *see Snyder v. Nolen*, 380 F.3d 279, 288 (7th Cir. 2004) (quasi-judicially
protected acts include "resolving disputes between parties, or authoritatively adjudicating private
rights"), those performing ministerial duties "in reliance on a facially valid court order are
entitled to quasi-judicial immunity from suit under § 1983 for damages," *Henry v. Farmer City
State Bank*, 808 F.2d 1228, 1239 (7th Cir. 1986); *see also Zoretic v. Darge*, 832 F.3d 639, 644
(7th Cir. 2016) (official can obtain quasi-judicial immunity by "engaging in a non-discretionary
or administrative function, but at the explicit direction of a judicial officer").

The Kane County Defendants argue that the county clerks and treasurers are entitled to
absolute quasi-judicial immunity because Plaintiffs' lawsuit challenges the issuance of tax deeds

---

custom . . . inflicts the [constitutional] injury.'" (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*,
436 U.S. 658, 694 (1978))).

11

following a tax buyer's petition to take title of the original property owner's land. Because the clerks and treasurers only issue these deeds following a state court order, Defendants view the performance of this duty as an extension of the judicial system that entitles the clerks and treasurers to quasi-judicial immunity. This argument again hinges on the target of Plaintiffs' amended complaint. As with the Eleventh Amendment analysis, if Plaintiffs were suing the county clerks and treasurers for non-discretionary acts such as issuing the tax deeds that resulted in the tax buyers taking title to their former properties, then quasi-judicial immunity would clearly protect them because they performed an "administrative function"—issuing the tax deed—"at the explicit direction of a judicial officer"—a court order. *Zoretic*, 832 F.3d at 644. However, Plaintiffs argue that their amended complaint "do[es] not challenge the issuance of tax deeds" but instead the lack of just compensation following the loss of their properties. Doc. 96 at 74 (emphasis omitted). This is a separate issue from whether the county officials appropriately acted in issuing the tax deeds. Although the Kane County Defendants state that the law requires them to issue a tax deed, this fails to address Plaintiffs' core theory that the Constitution also requires the government to provide just compensation for any taking of property, which Defendants have allegedly failed to do. As such, Plaintiffs' amended complaint does not take issue with an action by the county clerks or treasurers that would be entitled to quasi-judicial immunity, *see Henry*, 808 F.2d at 1239, but rather unconstitutional omissions, which are not the result of any duties that were "functionally equivalent to those of a judge or prosecutor," *Heyde*, 633 F.3d at 517, or done at the behest of a judicial officer, *see Zoretic*, 832 F.3d at 644. Accordingly, the Court finds that Defendants are not entitled to quasi-judicial immunity for allegedly failing to compensate Plaintiffs after issuing tax deeds to tax buyers.

### III.     Whether *Rooker-Feldman* Abstention Applies

The Court next addresses *Rooker-Feldman* abstention, which the DuPage County

Defendants argue in their brief, and which the other Defendants also incorporated by reference.

Doc. 89 at 12–13; *see also* Doc. 87 at 12 (the Other Counties "incorporat[ing] by reference

DuPage County's argument on the application of *Rooker-Feldman*"); Doc. 88 at 15 (same for

Lake County Defendants); Doc. 91 at 13 (same for Kane County Defendants).  Defendants argue

that this doctrine bars Plaintiffs' claims because the claims, in effect, target state court decisions

that stripped Plaintiffs of title to their former properties.

The *Rooker-Feldman* abstention doctrine says that federal courts other than the Supreme

Court lack authority to hear challenges to state court decisions.  It derives from two Supreme

Court cases that held that inferior federal courts have "no authority to review final judgments of

a state court in judicial proceedings."  *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482

(1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 416 (1923) ("The jurisdiction possessed by the

District Courts is strictly original.").  The doctrine bars "cases brought by state-court losers

complaining of injuries caused by state-court judgments rendered before the district court

proceedings commenced."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284

(2005).  The Seventh Circuit recently described the four necessary criteria for *Rooker-Feldman*

to apply: "*First*, the federal plaintiff must have been a state-court loser.  *Second*, the state-court

judgment must have become final before the federal proceedings began.  *Third*, the state-court

judgment must have caused the alleged injury underlying the federal claim.  *Fourth*, the claim

must invite the federal district court to review and reject the state-court judgment."  *Gilbank v.

Wood Cnty. Dep't of Human Servs.*, 111 F.4th 754, 766 (7th Cir. 2024) (en banc).  "[T]he crucial

point is whether 'the district court is in essence being called upon to review the state-court

decision.'" *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993) (quoting *Feldman*, 460 U.S. at 483–84 n.16).

As discussed above, Plaintiffs assert that their amended complaint does not challenge the outcome of any state court decision, only the counties' failures to compensate them for the loss of any excess equity resulting from losing their properties to tax buyers. If Plaintiffs sought to undo the tax deeds the tax buyers obtained or otherwise requested the return of their former properties as forms of relief, then the DuPage County Defendants' argument that the *Rooker-Feldman* doctrine applies might be more on-point because it applies if there is "no way for the injury complained of by a plaintiff to be separated from a state court judgment." *Sykes*, 837 F.3d at 742. But Plaintiffs disavow seeking such relief. *See* Doc. 96 at 71 ("Defendants can take, and tax buyers can keep, the properties in issue."). They only ask for monetary compensation that they claim the counties owed them when they lost their properties. Although their injuries clearly derive from the state court orders to grant the tax buyers deeds to Plaintiffs' former properties, the requested relief does not "call[] upon [this Court] to review the state court decision" to issue the tax deeds. *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017). Accordingly, the *Rooker-Feldman* abstention doctrine does not apply.[6]

## IV.    Whether the Statute of Limitations Bars Plaintiffs' Claims

The Court now turns to the DuPage County Defendants' argument that the statute of limitations bars Plaintiffs' claims, which all other Defendants join except for the Kane County Defendants. Doc. 89 at 11–12; *see also* Doc. 87 at 22 (the Other Counties adopting in part the

---

[6] The DuPage County Defendants also argue that Plaintiffs could have raised these challenges in the state court proceedings that resulted in the issuance of tax deeds. *See Jakupovic*, 850 F.3d at 902 (*Rooker-Feldman* applies only when federal "plaintiff had a reasonable opportunity to raise the [federal] issue in state court proceedings"). The Court does not reach this issue because it determines that *Rooker-Feldman* does not apply for separate reasons.

14

DuPage County Defendants' argument); Doc. 88 at 15 (same for Lake County Defendants). The DuPage County Defendants argue that they located a tax deed related to Sharritt's property issued outside of the applicable two-year statute of limitations, meaning that her claims are untimely.

Courts only dismiss complaints under Rule 12(b)(6) for running afoul of statutes of limitations "when the allegations of the complaint reveal that relief is barred." *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011). The Court cannot consider extrinsic evidence unless Defendants point to "documents that are central to the complaint and are referred to in it." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013); *see also Burke*, 714 F.3d at 505 ("In general, a court may only consider the plaintiff's complaint when ruling on a Rule 12(b)(6) motion.").

The tax deed the DuPage County Defendants located is one that they "reasonably assum[e]" is related to Sharritt's claims. Doc. 89 at 11 n.3. At the motion to dismiss stage, the Court does not assume facts in Defendants' favor, reasonably or otherwise. *See Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289–90 (7th Cir. 2016) (when reviewing motion to dismiss the court "construe[s] [the complaint] in the light most favorable to the nonmoving party . . . and draw all inferences in [its] favor"). Moreover, Plaintiffs' amended complaint does not refer to a specific tax deed issued against Sharritt's property, meaning the Court cannot consider this extrinsic evidence at this time. *See Williamson*, 714 F.3d at 436 (courts may only consider "documents that are central to the complaint and are referred to in it" when ruling on motion to dismiss). Defendants' arguments based on this document, which may or may not be related to

Sharritt's seized property, are unavailing, so the Court declines to dismiss any portion of the amended complaint on this basis.[7]

## V. Whether Plaintiffs Have Standing to Sue Will, Lake, Kane, and Winnebago Counties

The Will, Lake, Kane, and Winnebago County Defendants (the "Standing Counties") argue that Plaintiffs lack standing to represent the class of property owners that Plaintiffs propose in the amended complaint because the named Plaintiffs fail to allege an injury that any of the Standing Counties inflicted upon them. Plaintiffs argue that they have plausibly alleged that the Standing Counties are "juridically linked" with the other Defendants under the doctrine established in *Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002), so they may represent absent class members from the Standing Counties even without having suffered an actual alleged injury at their hands.

The Constitution requires that a plaintiff must have standing to bring suit in federal court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III."). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v.*

---

[7] Defendants may raise this defense if this case reaches summary judgment. The Court has concerns with the dearth of details in the amended complaint concerning the "when" of Plaintiffs' claims. It would behoove Plaintiffs to ensure that their claims will survive such an easily ascertainable affirmative defense before embarking on a costly discovery process. Although Plaintiffs claim that a twenty-year statute of limitations applies to inverse condemnation claims, they do not fully develop their argument that they even bring such claims. As such, the Court takes no stance on whether Illinois' two-year, 735 Ill. Comp. Stat. 5/13-202 (§ 1983 statute of limitations), five-year, 735 Ill. Comp. Stat. 5/13-205 (catch-all statute of limitations), or twenty-year, *Super Mix of Wis., Inc. v. Nat'l Gas Pipeline Co. of Am., LLC*, 2020 IL App (2d) 190034, ¶¶ 37, 45 (inverse condemnation statute of limitations), statute of limitations applies to this case.

*Ramirez*, 594 U.S. 413, 423 (2021). The second element ordinarily requires the plaintiff to suffer an injury at the hands of each defendant she sues. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (injury must be "fairly traceable to the defendant's allegedly unlawful conduct" for standing); *Payton*, 308 F.3d at 678 ("[T]o bring a valid case, a plaintiff must allege that a defendant—the very defendant sued—has somehow wronged her in a legally cognizable way."); *cf. Gas Tech. Inst. v. Rehmat*, No. 05 C 2712, 2006 WL 3422190, at *21 (N.D. Ill. Nov. 27, 2006) (dismissing several defendants from RICO case when plaintiffs failed to allege injuries resulting from the dismissed defendants' conduct). Plaintiffs' amended complaint does not allege that any of the Standing Counties caused them injury—in the Standing Counties' eyes, this resolves the standing inquiry in their favor and requires their dismissal from this case.

But *Payton* adds a wrinkle to the rote standing analysis the Standing Counties urge this Court to perform. In *Payton*, six plaintiffs sued nineteen Illinois counties, claiming that they unlawfully imposed a bail fee greater than the set bail amount as a condition of their release. Kane County was allegedly responsible for assessing the challenged bail fee against four of the plaintiffs, and DuPage County allegedly assessed the fee against the remaining two—none of the plaintiffs alleged that any of the other seventeen named counties caused them injury. *Payton*, 308 F.3d at 676–77. However, the plaintiffs also sued on behalf of a class comprised of those who had been charged the fee in all nineteen counties—they argued that the juridical link doctrine "entitle[d] them to sue all similarly situated counties in a single case if they [could] show that their injuries [arose] out of a common legal rule . . . that is binding on, and followed to various degrees by, all the named counties." *Id.* at 678.

The *Payton* court adopted the juridical link doctrine. The court started by canvassing cases that "suggested that if all the defendants took part in a similar scheme that was . . .

mandated by a uniform state rule, it was appropriate to join as defendants even parties with whom the *named* class representative did not have direct contact." *Id.* at 679; *see id.* at 679–80 (collecting cases). Those factors were present in *Payton* because "the bail bond fee [was] imposed pursuant to a state statute" making it "reasonable for the putative plaintiff class to try to hold all counties accountable within one suit" where the "constitutionality of a bond fee . . . should not differ from one county to the next." *Id.* at 680.

Then, after noting that it could not perform a proper class certification analysis "without a proper record," the court discussed certain class action principles that made the adoption of the juridical link doctrine appropriate. *Id.* It observed that "once a class is properly certified, statutory and Article III standing requirements must be assessed not simply with reference to the individual named plaintiffs. The certification of a class changes the standing aspects of a suit, because '[a] properly certified class has a legal status separate from and independent of the interest asserted by the named plaintiff.'" *Id.* (quoting *Whitlock v. Johnson*, 153 F.3d 380, 384 (7th Cir. 1998)). The court also focused on how the "critical actor" shifts between the named plaintiff—for diversity of citizenship, for example, *see Supreme Tribe of Ben–Hur v. Cauble*, 255 U.S. 356, 366–67 (1921)—and the class as a whole—such as for claim preclusion purposes, *see Tice v. Am. Airlines*, 162 F.3d 966, 972 (7th Cir. 1998). It concluded that there was "no reason to truncate potentially efficient uses of the class action device when they are otherwise not prohibited and here the class action device may be superior to 19, or 102, different cases in each Illinois county challenging the effects of the same state statute." *Payton*, 308 F.3d at 681.[8]

---

[8] The Standing Counties urge the Court to reject *Payton* in favor of the Sixth Circuit's rejection of the juridical link doctrine in *Fox v. Saginaw County*, 67 F.4th 284 (6th Cir. 2024). In that case, the court determined that the "juridical link doctrine does not comport with the Supreme Court's standing cases" or with historical jurisprudence. *Id.* at 294. However, as the *Fox* court acknowledged, "the [Supreme] Court does not have a decision directly addressing the [juridical link] doctrine." *Id.* at 298. Assuming *arguendo* that this Court found *Fox*'s reasoning more persuasive than *Payton*'s, it would still be improper for it to

To apply *Payton*, the Court first must "defin[e] the class and assess[] whether the proposed class representatives can satisfy all four requirements of Rule 23(a), and at least one of the categories of Rule 23(b)," before resolving issues of standing. *Id.* at 680 (district courts should "consider issues of class certification prior to issues of standing"). But this places the Court in a bind:

> Compliance with the Rule 23 prerequisites theoretically should not be tested by a motion to dismiss. The proper vehicle is Rule 23(c)(1)(A), which provides that, at an early practicable time, the court must "determine by order whether to certify the class as a class action." Therefore, a party wishing to challenge the validity of maintaining the action under Rule 23 should move for a determination under Rule 23(c)(1) that a class action is unwarranted.

Wright, Miller & Kane, *Federal Practice & Procedure*, Civil 3d § 1798. The Seventh Circuit has made clear that district courts should not make class certification decisions "in a fact-free zone." *Priddy v. Health Care Serv. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017). Typically, courts only decide to certify (or not certify) a class after the parties have engaged in class-focused discovery, completed briefing the arguments for and against certification, and sometimes made additional arguments at a certification hearing. *See Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014) (when a "dispute concerning class certification is factual in nature and discovery is needed to determine whether a class should be certified, a motion to strike the class allegations at the pleading stage is premature" (citation omitted) (internal

---

cast aside binding circuit precedent in favor of an out-of-circuit holding. "This Court must follow Seventh Circuit decisions even if it believes those decisions are wrong or mistaken." *Laudicina v. City of Crystal Lake*, 328 F.R.D. 510, 515 (N.D. Ill. 2018); *accord Donohoe v. Consol. Operating & Prod. Corp.*, 30 F.3d 907, 910 (7th Cir. 1994) ("Ours is a hierarchical judiciary, and judges of inferior courts must carry out decision they believe mistaken."). As such, it is not the Court's place to opine on the merits of the Sixth Circuit's more recent holding as compared to the Seventh Circuit's binding one. The Standing Counties' arguments are best reserved for any appeal the Seventh Circuit might someday hear resulting from this case.

quotation marks omitted)); *Boatwright v. Walgreen Co.*, No. 10 C 3902, 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2011) ("Because a class determination decision generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action, . . . a decision denying class status by striking class allegations at the pleading stage is inappropriate."). Indeed, many of the arguments Defendants raise in this case—such as whether common questions of law or fact predominate over the proposed class, especially with respect to the difficulty of calculating potential damages for each individual plaintiff—highlight why it would be a mistake for this Court to prematurely opine on the certification question before the parties have fully developed the record. Accordingly, the Court defers this decision until it has a full record to consider and limits its assessment to determining whether the amended complaint plausibly alleges facts that fairly invoke a juridical link between the Standing Counties and their co-Defendants.

Plaintiffs state that Defendants "follow the same practices and act in a uniform manner toward delinquent taxpayers such as Plaintiffs and Class members according to the same Illinois statutes." Doc. 78 ¶ 128. Given that Defendants' common practices are a creature of Illinois law, "constitutionality of [the recovery procedure] . . . should not differ from one county to the next." *Payton*, 308 F.3d at 680. Plaintiffs have thus plausibly alleged that the Standing Counties are juridically linked with the other counties against whom Plaintiffs have claimed a direct injury. That is enough to keep them in this case until the issue of class certification is properly before the Court. *See generally id.*; *see also Snyder v. U.S. Bank N.A.*, 387 F. Supp. 3d 867, 873 (N.D. Ill. 2019) ("Although the defendants are correct that the standing analysis in pre-certification class action suits is generally confined to the named plaintiffs, the Seventh Circuit has admonished that district courts must in some cases defer consideration of the standing

question until after assessing class certification. Specifically, in putative class actions where multiple defendants are accused of violating class members' rights as part of a common scheme subject to common proof—sometimes called a juridical link—the Seventh Circuit has held that district courts must consider issues of class certification prior to issues of standing." (citation omitted) (internal quotation marks omitted)); *Hillgamyer v. ReliaStar Life Ins. Co.*, No. 11 C 729, 2013 WL 12234289, at *3 (W.D. Wis. Feb. 27, 2013) ("Having pled a viable breach of contract claim against one of the defendants . . . plaintiff Hillgamyer's putative class action claim passes the initial standing inquiry.").

Accordingly, the Court denies the Standing Counties' motion to dismiss for lack of standing without prejudice.[9]

## VI. Whether Plaintiffs' Claims in Their Amended Complaint Satisfy Rule 12(b)(6)

Having addressed Defendants' threshold arguments, the Court turns to the sufficiency of Plaintiffs' amended complaint. Plaintiffs assert: (1) a takings claim under the Fifth and Fourteenth Amendments, and the Illinois Constitution; (2) a due process claim under the Fourteenth Amendment and the Illinois Constitution; and (3) an excessive fines claim under the Eighth and Fourteenth Amendments, and the Illinois Constitution. Defendants argue that Plaintiffs' amended complaint fails to state a claim with respect to any of these three alleged constitutional violations, and that it fails to sufficiently allege the necessary facts to impose liability against Defendants under *Monell*.

---

[9] For the same reasons, the Court also denies the Other Counties' motions to strike Plaintiffs' class allegations. *See also Balabanos v. N. Am. Inv. Grp., Ltd.*, 708 F. Supp. 1488, 1497 (N.D. Ill. 1988) ("In general, the motion to strike is disfavored by the federal courts.").

### A.    Count I – Takings Claim

The Takings Clause of the Fifth Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, states that "private property [shall not] be taken for public use, without just compensation."  U.S. const., amend. V.  The Supreme Court of Illinois has linked interpretations of the Takings Clause of the Illinois Constitution, found in Article I, § 15, with its federal counterpart so long as plaintiffs bring a claim for "taken" property (as Plaintiffs do here), as opposed to "damaged" property, for which the Illinois Constitution also provides compensation.  *Hampton v. Metro. Water Reclamation Dist. of Greater Chicago*, 2016 IL 119861, ¶ 16 ("United States Supreme Court decisions regarding what constitutes a taking are relevant for purposes of determining whether a plaintiff has sufficiently alleged a taking under the Illinois Constitution."); *see Int'l Coll. of Surgeons v. City of Chicago*, 153 F.3d 356, 363 (7th Cir. 1998) ("The greater protection provided by the Illinois Takings Clause stems from the fact that the clause not only guards against a governmental taking of private property but also guards against governmental 'damage' to private property. . . .  If the plaintiff cannot make this showing [of damage], then his claim is analyzed under the same standard employed under the federal constitution[.]").

To assert a takings claim under the Fifth Amendment, a plaintiff must allege "(1) that the governmental entity 'took' his property, either through a physical taking or through unduly onerous regulations; (2) that the taking was for a public use; and (3) that, no matter what type of property (real or personal) was taken, the government has not paid just compensation."  *Conyers v. City of Chicago*, 10 F.4th 704, 710–11 (7th Cir. 2021).

Defendants raise two arguments against Plaintiffs' takings claims.  First, they argue that no takings occurred because private tax buyers—not the county governments—received the

22

surplus equity from any properties whose value exceeded the amount of property tax due, so the Fifth Amendment does not apply. Second, Defendants assert that even if takings occurred, the Indemnity Fund provides Plaintiffs a way to recover any lost equity, and Defendants cannot be liable for Plaintiffs' failure to avail themselves of this method of being made whole. Plaintiffs rebut both points, first contending that the Fifth Amendment protects their property rights regardless of whether a public or private entity receives the benefit of any taking, and second that the Indemnity Fund does not provide "just compensation" within the meaning of the Fifth Amendment for their lost equity. The Court addresses these arguments in turn.

### 1. Whether Takings Occurred

Defendants argue that the Fifth Amendment only prohibits the government from collecting and retaining any surplus property value in excess of the delinquent property taxes due as part of a tax sale. Defendants argue that the provisions of the Illinois Tax Code accordingly cannot violate the Fifth Amendment because the municipal governments do not collect or retain any more than the amount of property taxes to which they are entitled because tax buyers only pay them the Tax Amounts in exchange for the right to place a lien on and perhaps eventually take title to a delinquent property owner's property. In Defendants' eyes, it is irrelevant that the original owners who ultimately lose title to their property to tax buyers suffer a greater loss than what they owed in delinquent property taxes because any excess loss goes to the tax buyer, who is a private entity. Plaintiffs respond that the Fifth Amendment makes it unconstitutional for original property owners to lose more equity than what they owed in property taxes without compensation, regardless of who ultimately benefits. To Plaintiffs, Defendants' attempt to pass the buck to the tax buyers is a red herring because the Fifth Amendment does not care whether

23

the government or a private party receives the windfall; what matters is that it is unconstitutionally coming out of the original owner's pocket.

Defendants' argument defies the Fifth Amendment's text and established Supreme Court precedent. The Fifth Amendment prohibits the government from "tak[ing] for public use" privately-owned property. It does not limit this prohibition to situations where the government also *retains* the property: "a State may transfer property from one private party to another if future 'use by the public' is the purpose of the taking." *Kelo v. City of New London*, 545 U.S. 469, 477 (2005); *see also Haw. Housing Auth. v. Midkiff*, 467 U.S. 229 (1984) (finding constitutional a state law authorizing use of condemnation proceedings to seize land from large landowners—with compensation—for purpose of transferring title to renters or other local Hawaiians). Indeed, the Illinois tax sale system is essentially a mechanism for the counties to "transfer property from one private party to another" for the eminently justifiable purpose of recovering overdue taxes. *Kelo*, 545 U.S. at 477. Nothing in the Fifth Amendment requires property "taken for public use" to remain in the government's hands, and Defendants' briefs are conspicuously light on caselaw supporting this position.

Instead, Defendants rest their argument on select phrases from the Supreme Court's recent decision in *Tyler v. Hennepin County*, 598 U.S. 631 (2023), which ultimately cannot bear the weight Defendants place on them. In *Tyler*, the plaintiff sued Hennepin County for seizing her condominium—on which she owed $15,000 in delinquent property taxes—auctioning it for $40,000, and then failing to remit to her the $25,000 surplus. *Id.* at 635–36. The Court found that this was an unconstitutional taking, acknowledging that Hennepin County had the "power to sell Tyler's home to recover the unpaid property taxes" but could not "use the toehold of the tax debt to confiscate more property than was due." *Id.* at 639. By refusing to pay Tyler the

24

$25,000 surplus, Hennepin County violated the Fifth Amendment by failing to provide her with "just compensation" for the taking.

The Other Counties focus on the Supreme Court's explanation that Hennepin County could not "use the toehold of the tax debt to confiscate more property than was due," *id.* at 639, arguing that because they did not keep the total value of the property Plaintiffs lost, they did not carry out a taking within the definition of the Fifth Amendment. But "confiscating" and "retaining" are separate acts, and *Tyler* did not only apply to the latter. Defendants "confiscate" all of a delinquent property owner's property when they transfer title to a tax buyer pursuant to the Illinois Tax Code. *Cf. Kelo*, 545 U.S. at 477 (assuming, without deciding, that private entity's exercise of eminent domain authority constituted a taking that required compensation). That is the exact thing *Tyler* prohibits—without just compensation. For their part, the DuPage County Defendants advance a similar line of argument, pointing to the *Tyler* Court's quip that the "taxpayer must render unto Caesar what is Caesar's but no more." *Id.* at 647. But this ignores that Plaintiffs ultimately render *the entire value* of their properties unto Caesar, who in turn renders it unto Antony. This still constitutes a taking, *see Kelo*, 545 U.S. at 477, for which the Fifth Amendment demands compensation for anything greater than what Plaintiffs owed to the counties in overdue property taxes, *see Tyler*, 598 U.S. at 639.

Accordingly, the Court finds that Plaintiffs' amended complaint plausibly alleges that their losses of excess value in their respective properties to tax buyers constitute takings within the meaning of the Fifth Amendment.

### 2. Whether the Indemnity Fund Provides "Just Compensation"

Defendants—through the DuPage County Defendants' brief—also argue that the existence of the Indemnity Fund forecloses Plaintiffs' takings claim. This argument comes in

two flavors: first, that the existence of the Indemnity Fund is analogous to the procedures the Supreme Court blessed in *Nelson v. City of New York*, 352 U.S. 103 (1956), that automatically returned surplus equity to a property owner, meaning Plaintiffs' failures to avail themselves of the procedure lie squarely on their own shoulders; and second, that the Indemnity Fund provides constitutionally sufficient compensation, rendering this litigation superfluous.

In *Nelson*, the Supreme Court considered the constitutionality of a law that allowed New York City to seize properties with outstanding water bills, sell them, and pocket the excess after providing notice to the property owners. *Id.* at 105. However, New York courts had interpreted the law to require a separate sale of all properties where the duly notified owner appeared and asserted that the property was more valuable than the unpaid bills; in such circumstances, the owner would automatically receive any surplus funds resulting from the auction. *Id.* at 110. The Court held that because the law provided property owners an opportunity "to redeem [the property] or to recover[] any surplus," it did not result in an unconstitutional taking if a property owner failed to avail himself of the procedures. *Id.*

Defendants argue that the Indemnity Fund is like the procedures in *Nelson* "by expressly providing for a method by which an owner may seek to recover any surplus sale proceeds or excess value in the property." Doc. 89 at 7. This abstracts too much from what the procedures at issue in *Nelson* did and too charitably describes the machinations of the Indemnity Fund. The statute authorizing the Indemnity Fund provides that a petitioner seeking indemnity from the loss of property in a tax sale may only recover "the fair cash value of the property as of the date the tax deed was issued less any mortgages or liens on the property, and the award will not exceed $99,000." 35 Ill. Comp. Stat. 200/21-305(1). Awards for $99,000 or less are only granted if, "in the discretion of the [petitioned] Court, the equities warrant the action." *Id.* If the petitioner

26

requests even a penny more, he must show that "the loss of his . . . property was not attributable to his . . . own fault or negligence." *Id.*

Several critical differences between the *Nelson* procedures and the Indemnity Fund make the comparison inappropriate. The New York City law upheld in *Nelson* only required a property owner to make a brief pre-deprivation statement that her property was worth more than the lien, after which the City would conduct a separate auction and automatically return all surplus funds—no matter the amount. *See* 352 U.S. at 110. By contrast, the Indemnity Fund is a post-deprivation form of relief that limits the amount a petitioner is entitled to recover—if at all based on a court's equitable judgment—and imposes a stricter evidentiary burden on recoveries greater than an arbitrary amount. *See* 35 Ill. Comp. Stat. 200/21-305(1). In other words, under *Nelson*'s procedures, recovery was automatic and the amount was readily ascertainable (i.e., New York City sold the property at auction, took what it was entitled to, and returned the rest); under the Indemnity Fund, a petitioner has no guarantee of recovering anything and the total amount depends on the whims of the reviewing court's equitable balancing, which can lead to uncertain outcomes. *See Mamloff v. Kerr*, 227 Ill. 2d 118, 125 (2007) ("In its broadest and most general signification, [equity] denotes the spirit and the habit of fairness, justness, and right dealing which would regulate the intercourse of men with men." (quotations omitted)).

Second, for many of these same reasons, the Indemnity Fund is no substitute for "just compensation." U.S. Const. amend. V. As noted, the Indemnity Fund's governing law requires a Court to find that "the equities warrant" payments of up to $99,000, and that the property owner was not negligent if he claims indemnity for any more than that amount. 35 Ill. Comp. Stat. 200/21-305(1). But the Supreme Court has long and consistently held that compensation "must be a full and perfect equivalent for the property taken." *Monongahela Navigation Co. v.*

27

*United States*, 148 U.S. 312, 326 (1893); *see Brown v. Legal Found. of Wash.*, 538 U.S. 216, 235–36 (2003) ("[T]he 'just compensation' required by the Fifth Amendment is measured by the property owner's loss rather than the government's gain."); *United States v. Miller*, 317 U.S. 369, 373 (1943) ("[C]ompensation means the full and perfect equivalent in money of the property taken."); *Kimball Laundry Co. v. United States*, 338 U.S. 1, 23 (1949) (Douglas, J., dissenting) ("The truth of the matter is that [in this case] the United States is being forced to pay not for what it gets but for what the owner loses."); *Olson v. United States*, 292 U.S. 246, 255 (1934) (compensation's "equivalent is the market value of the property at the time of the taking contemporaneously paid in money"); *Boston Chamber of Com. v. Boston*, 217 U.S. 189, 195 (1910) ("[T]he question is what has the owner lost, not what has the taker gained."); *see also City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 717 (1999) ("When the government repudiates this duty [to provide just compensation for a taking], either by denying just compensation in fact or by refusing to provide procedures through which compensation may be sought, it violates the Constitution.").  A procedure that does not provide certain and full compensation, such as the Indemnity Fund, is therefore constitutionally deficient as a mechanism to satisfy the Fifth Amendment.

  *Colantuono v. Novak*, 2011 IL App (2d) 100957-U, illustrates why the Indemnity Fund fails to satisfy the Fifth Amendment.  In that case, the Illinois Appellate Court upheld a lower court's finding that a petitioner was not entitled to any recovery after losing his property to tax sale proceedings (i.e., there would be no compensation).  The trial court faulted the petitioner for failing to act after receiving several notices of his delinquent property taxes and one notice informing him that "his property had been sold and he had less than five months to redeem the property."  *Id.* ¶ 21.  "Based on the petitioner's repeated failures to act after learning that his

delinquent taxes had not been paid," the appellate court found the trial court's decision to deny him equitable recovery proper. *Id.* Instead of providing the original owner "the full and perfect equivalent in money of the property taken," *Olson*, 292 U.S. at 255, the government paid him nothing. The Indemnity Fund cannot both be the proper procedure that former owners can exercise to receive compensation for their lost land, *see* Doc. 98 at 11 ("Post-*Tyler*, there is no takings claim at all if the statutory framework includes a surplus return mechanism. That is what the Indemnity Fund is."), *and* a gatekeeping mechanism that prevents those who lost their land from receiving compensation, *see Colantuono*, 2011 IL App (2d) 100957-U, ¶ 21. In its current form, the Indemnity Fund is not a font of just compensation that satisfies the Fifth Amendment's clear compensation requirement. *See Monongahela Navigation Co.*, 148 U.S. at 326 (just compensation is "a full and perfect equivalent for the property taken").

Accordingly, the Court finds that Plaintiffs' complaint states a claim for an unconstitutional taking without compensation.[10]

## B.    Count II – Substantive and Procedural Due Process Claim

Defendants next argue that Plaintiffs' amended complaint fails to state a claim for both substantive and procedural due process violations. In their brief, Plaintiffs frame their allegations as stating a due process claim, pleaded in the alternative to their takings claim. *See* Doc. 96 at 49–52; *id.* at 50 n.19. However, the "problem with using substantive due process to

---

[10] The DuPage County Defendants briefly argue that *Tyler* should not apply retroactively and that they should not face damages due to what they characterize as their good-faith application of the law pre-*Tyler*. Their retroactivity argument is underdeveloped and, more importantly, wrong. *See Lund v. City of Rockford*, 956 F.3d 938, 944 (7th Cir. 2020) ("[W]hen the Supreme Court 'applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect . . . regardless of whether such events predate or postdate [the Supreme Court's] announcement of the rule.'"). And their argument that they should not be liable for damages due to their good-faith execution of Illinois law is not ripe for adjudication at the motion to dismiss stage. *Cf. Hoover v. Said*, 629 F. Supp. 3d 826, 834 (N.D. Ill. 2022) ("There has been no judicial finding of good faith here, and this Court certainly can't make that type of finding on a Rule 12(b)(6) motion to dismiss.").

do the work of the Takings Clause is that [the Supreme Court has] held it cannot be done." *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 721 (2010); *cf. Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 478 (7th Cir. 2011) ("In moving for summary judgment, the defendants did not address the parents' substantive due process claims premised on taking Jaymz into protective custody.  Nonetheless, these claims stand or fall with Jaymz's Fourth Amendment claim premised on his removal[.]").  To the extent that Plaintiffs attempted to state a procedural due process claim in their amended complaint, they waived it by failing to respond to Defendants' arguments against a procedural due process claim.  *See Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

Accordingly, the Court dismisses Count II of Plaintiffs' amended complaint with prejudice to the extent it pleads an alleged violation of substantive due process, and without prejudice to the extent it pleads an alleged violation of procedural due process.

### C.    Count III – Excessive Fines Claim

Plaintiffs' final claim is that the wholesale loss of their equity pursuant to Illinois' tax sale procedures constitutes an excessive fine that violates the Eighth and Fourteenth Amendments to the U.S. Constitution, *see Timbs v. Indiana*, 586 U.S. 146, 150 (2019) (incorporating the Eighth Amendment against the States), and the Proportionate Penalties Clause of the Illinois Constitution, *see* Ill. Const. art. I, § 11 ("All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship.").  The Illinois Constitution "provide[s] a limitation on penalties beyond those afforded by the eighth amendment."  *People v. Clemons*, 2012 IL 107821, ¶ 39.  If Plaintiffs'

amended complaint states a claim for excessive fines under the Eighth Amendment, then it likewise states a claim under the Illinois Constitution.

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The analysis under the Excessive Fines Clause proceeds in two steps. The first is a threshold determination: Is the sanction punitive or purely remedial?" *Grashoff v. Adams*, 65 F.4th 910, 916 (7th Cir. 2023). If the sanction is not punitive, then the Eighth Amendment does not apply. *See Austin v. United States*, 509 U.S. 602, 609–10 (1993) (the Eighth Amendment "limits the government's power to extract payments . . . as punishment for some offense"). "If the sanction is punitive, the next step is to determine whether it is 'grossly disproportional to the gravity of [the] . . . offense.'" *Grashoff*, 65 F.4th at 916–17 (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)).

Defendants give short shrift to their arguments against Plaintiffs' excessive fines claim. The Other Counties argue that "there was no harm because the defendant counties' conduct was legislatively authorized." Doc. 87 at 28. Simply because there is legislative support for a fine does not mean that it cannot be punitive nor excessive. *See Timbs*, 586 U.S. at 148 (discussing state court decision finding that forfeiture of vehicle worth $32,000 more than maximum penalty was "grossly disproportionate to the gravity of [petitioner's] offense"). The Lake County Defendants argue that none of the Counties collect any of the surplus equity, meaning they have not levied any potentially excessive fine, but fail to cite supporting caselaw that the government's non-retention of property used to pay a fine means that it did not levy a fine in the full amount it collected. *See Schaefer*, 839 F.3d at 607 (arguments without legal support are waived).

With respect to the first prong of the Eighth Amendment analysis, the Excessive Fines Clause applies to any statutory scheme that "serv[es] in part to punish." *Austin*, 509 U.S. at 610. In other words, if a challenged penalty "cannot fairly be said solely to serve a remedial purpose," then a court must examine it through the lens of the Eighth Amendment. *Id.* Given that the amount of equity a property owner loses in Illinois' tax sale procedures is inherently variable depending on the value of the property, whether there was a mortgage or other liens against it, and other factors, its forfeiture is "a *penalty* that ha[s] absolutely no correlation to any damages sustained by society or to the cost of enforcing the law." *United States v. Ward*, 448 U.S. 242, 254 (1980) (emphasis added). And, as Illinois courts have recognized, the threat of losing property serves as a method of "*coerc[ing]* tax delinquent property owners to pay their taxes," *Excalibur Energy Co. v. Rochman*, 2014 IL App (5th) 130524, ¶ 17 (emphasis added), meaning that the loss of property does not "*solely* [] serve a remedial purpose," *Austin*, 509 U.S. at 610. Accordingly, the Excessive Fines Clause to the Eighth Amendment applies. *See Grashoff*, 65 F.4th at 916.

The Court next considers if the fine is "grossly disproportional to the gravity of [the] . . . offense." *Bajakajian*, 524 U.S. at 334. This entails weighing four factors:

> (1) the essence of the crime and its relation to other criminal activity; (2) whether the defendant fit into the class of persons for whom the statute was principally designed; (3) the maximum sentence and fine that could have been imposed; and (4) the nature of the harm caused by the defendant's conduct.

*United States v. Malewicka*, 664 F.3d 1099, 1104 (7th Cir. 2011). The allegations in Plaintiffs' amended complaint indicate that it is premature to conclude that their loss of all equity in their former properties does not satisfy these factors. Although the essence of the offense Plaintiffs committed—failing to pay property taxes—obviously merits some sort of monetary penalty, and

Plaintiffs undoubtedly fall within the class of persons to whom the Illinois tax sale statute applies, the loss of all equity a landowner holds in their property is likely "grossly disproportional to the gravity of" the offense. *Bajakajian*, 524 U.S. at 334; *see id.* at 337–39 (forfeiture of $357,144 is grossly disproportionate compared to seriousness of reporting statute). This is because "the maximum . . . fine" is indefinite and undefined: it depends entirely on the value of the properties Plaintiffs once owned and bears little relation to the amount of property taxes they failed to pay to the municipal governments. *Malewicka*, 664 F.3d at 1104. Moreover, due to the factual nature of these questions, a conclusive determination that Plaintiffs' loss of the equity in their properties does or does not violate the Eight Amendment would be premature. *Cf. United States v. Real Prop. Located At 1912 SE 15TH Ave. Gainesville FL with all improvements & appurtenances thereon*, No. 06 C 138, 2010 WL 2136044, at *8 (N.D. Fla. May 25, 2010) ("In sum, because of these disputed factual issues, the Court concludes that summary judgment is not appropriate regarding the issue of whether the forfeiture is an excessive fine."). Finally, although Plaintiffs' failures to pay property taxes undoubtedly caused some harm to Defendants and their communities, Plaintiffs' complaint contains no facts that would allow the Court to conclude that their failures to pay property taxes caused either significant or minimal damage.

Accordingly, the Court finds that Plaintiffs' amended complaint states a claim for a violation of the Excessive Fines Clause of the Eighth Amendment and denies Defendants' motions to dismiss Count III of Plaintiffs' amended complaint.

### D. *Monell* Liability

Defendants' final argument against Plaintiffs' amended complaint is that it fails to allege a "policy or custom" that "inflicts the injury" Plaintiffs claimed to have suffered, meaning they cannot sue the county treasurers or clerks in their official capacities under § 1983. *Monell v.*

*Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). "[A] municipality can be liable under § 1983 only 'when execution of a government's policy or custom . . . inflicts the [constitutional] injury.'" *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019) (quoting *Monell*, 436 U.S. at 694). The three avenues plaintiffs have to proceed under *Monell* are "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Est. of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007) (citation omitted).

Plaintiffs argue two policies that they believe could support liability under *Monell*. The first is Defendants' "choice" to use state law to recover delinquent taxes. But it "is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the 'policy' of enforcing state law." *Surplus Store & Exch., Inc. v. City of Delphi*, 928 F.2d 788, 791 (7th Cir. 1991). Plaintiffs will have to look elsewhere for a source of liability.

Plaintiffs' second alleged policy stands on firmer ground. They argue that this policy is Defendants' "choice to disregard the long-standing law as laid out in *Tyler* by refusing to pay the Plaintiffs and class members the compensation the [U.S. and Illinois] Constitutions require." Doc. 96 at 40. Defendants protest that this merely accuses them of following Illinois law, which is, again, impermissible. *See Delphi*, 928 F.2d at 791, *Bethesda Lutheran Homes & Servs., Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998) ("When the municipality is acting under compulsion of state or federal law, it is the policy contained in that state or federal law, rather than anything devised or adopted by the municipality, that is responsible for the injury."). But Plaintiffs' allegations go beyond accusing Defendants of simply following the law. They allege that it "is

34

Defendants' official policy and custom to promote Tax Buyers' obtaining tax deeds on properties whose taxes have been sold *without providing any compensation to the owners*." Doc. 78 ¶ 88 (emphasis added). They further allege that the treasurers and clerks "have final policymaking authority," *id.* ¶ 90, and that "[n]othing requires or compels any Defendant to refrain from paying just compensation to Plaintiffs and members of the Class," *id.* ¶ 91. The Court must accept these allegations as true, *see Kubiak*, 810 F.3d at 480–81, and as currently pleaded they satisfy *Monell*'s requirement to allege "that the constitutional injury was caused by a person with final policymaking authority." *Bureau*, 506 F.3d at 515.

The Court, therefore, allows Counts I and III to proceed, and dismisses Count II with prejudice with respect to the substantive due process claim and without prejudice regarding the procedural due process claim.

## VII.    Whether Rule 19 Requires Plaintiffs to Sue the Tax Buyers

Finally, the Court considers Defendants' last argument, which is that Plaintiffs must sue every tax buyer who took title to their former properties due to the tax sale procedures pursuant to Rule 19. Rule 19 provides that a person "must be joined" to a lawsuit if "in that person's absence, the court cannot accord complete relief among existing parties" or "that person claims an interest relating to the subject of the action" and their absence may "impair or impede" their "ability to protect the[ir] interest" or would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19. Because the "person" of whom Rule 19 speaks would be a tax buyer, and no tax buyer has appeared to claim that they have an interest in the subject of this action, the Court focuses only on whether the absence of the tax buyers make it so the Court "cannot accord complete relief among existing parties." *Id.*

35

The DuPage County Defendants argue that if "Plaintiffs have brought valid claims for violations of their rights, it is the tax buyers who so violated those rights. Therefore, those tax buyers are indispensable to adjudicating Plaintiffs' claims in this Court." Doc. 89 at 15; *see also* Doc. 88 at 15 (Lake County Defendants joining argument); Doc. 91 at 13–14 (Kane County Defendants joining argument). But the Court has already found that Plaintiffs' amended complaint states claims against Defendants who are already present, and the DuPage County Defendants fail to show how the Court would be unable to grant complete "relief between the persons already parties, and not as between a party and the absent person whose joinder is sought." *Perrian v. O'Grady*, 958 F.2d 192, 196 (7th Cir. 1992). Indeed, Plaintiffs only seek "just compensation" for their alleged constitutional violations, attorneys' fees, and declaratory relief in this suit. Doc. 78 at 31–32. They do not seek to recover anything from the tax buyers, such as the return of their former properties. Accordingly, the Court finds that the tax buyers are not necessary parties and denies the DuPage County Defendants' motion to order Plaintiffs to join them to this case.

## CONCLUSION

The Court grants in part and denies in part Defendants' motions to dismiss [86, 88, 89, 90]. The Court dismisses Plaintiffs' due process claim (Count II) with prejudice to the extent it pleads an alleged violation of substantive due process, and without prejudice to the extent it pleads an alleged violation of procedural due process.

Dated: October 18, 2024

SARA L. ELLIS
United States District Judge

36