IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GWEN HENRY, et al. ) | |
| ) | |
|     Third Party Plaintiffs, ) | |
| ) | Case No.: 1:23-cv-15838 |
| v. ) | |
| ) | |
| THE STATE OF ILLINOIS, et al. ) | Honorable Sara L. Ellis |
| ) | |
|     Third Party Defendants. ) | |

**THIRD PARTY DEFENDANT SCRIBE HOLDINGS, LLC'S
RULE 12(b)(6) MOTION TO DISMISS THIRD PARTY COMPLAINT**

Third Party Plaintiffs are the treasurers and clerks of DuPage and Lake Counties (the "Counties"). In the underlying complaint in this case, the Counties were sued for allegedly unconstitutionally taking Plaintiffs' property, specifically Plaintiffs' home equity, through tax sales to private tax buyers. The Counties now assert third-party claims against Scribe Holdings, LLC ("Scribe") and other tax buyers, arguing that both the State of Illinois and a class of tax buyer defendants are 100% liable to Plaintiffs instead of them.

The Counties' claims against Scribe should be dismissed under Rule 12(b)(6) because Scribe is not a state actor and cannot be held liable for violating Plaintiffs' constitutional rights. Plaintiffs' claims against the Counties are brought under 42 U.S.C. § 1983 for alleged violations of the Illinois and United States Constitutions. On the meager facts pled by the Counties, none of the doctrines that extend the umbrella of state action over limited private entities can be applied to Scribe.

1

Separately, all of the Counties' claims fail as a matter of law. Contribution is not available in Section 1983 actions. The Counties' implied indemnity claim is deficient because they cannot allege a pre-tort relationship with Scribe and because the Court has already found that the Counties may be liable to Plaintiffs directly. An unjust enrichment claim cannot be maintained where a written contract exists. Lastly, the Counties' claims against Scribe are untimely. Their Third-Party Complaint removes the uncertainty that previously gave the Court pause in deciding the limitations issue at the pleading stage. On the face of the Third-Party Complaint, all of the Counties' claims against Scribe are untimely.

## **RELEVANT FACTS**

Plaintiffs sued the Counties for taking property without just compensation. *See* Dkt. 78 ¶3 (First Amended Complaint or "FAC"). The gravamen of the FAC is that under *Tyler v. Hennepin County,* 598 U.S. 631 (2023), units of Illinois government "had no right to sell to Tax Buyers a right to obtain Plaintiff's . . . property" via tax sales without providing just compensation. *Id.* Plaintiffs sued the Counties, who moved to dismiss on a variety of grounds, including that Scribe and other tax buyers were necessary parties under Fed. R. Civ. P. 19. The Court largely denied that motion and found that Scribe was not a necessary party. Dkt. 105 at 35-36.

On April 11, 2025, the Counties filed their third-party complaint ("3PC") against Scribe as a defendant class representative, and against the State of Illinois. Dkt. 124. The Counties seek a declaratory judgment ordering the State of Illinois to bring its property tax code ("PTC") into compliance with *Tyler*. Dkt. 124 (3PC), Count

I. Against Scribe and the purported defendant class, the Counties plead a claim for contribution on plaintiffs' takings claims (*id.* Count II), implied indemnity on those claims (*id.* Count III), and unjust enrichment because Scribe allegedly retained just compensation that the State may now owe to plaintiffs (*id.* Count IV).

The Counties do not plead that Scribe was a state actor. *Id., passim*. Instead, they allege only that (1) Scribe is a tax buyer who obtained a tax deed on Plaintiff's property, Dkt. 124 ¶ 7; (2) whether Scribe is a state actor is a common question of law, *id.* ¶ 11(b); (3) Scribe "could" be a state actor, *id.* ¶ 31; and (4) Scribe was "potentially acting as a state actor…" *Id.* ¶37.

## ARGUMENT

The Counties' three claims against Scribe each fail as a matter of law and should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6). They have not alleged enough factual content to support any plausible cause of action. *Adams v. City of Indianapolis*, 742 F.3d 720, 728-29 (7th Cir. 2014) ("more than mere notice" required to survive motion to dismiss under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

**I.     Scribe is not a state actor and cannot be liable on constitutional claims.**

The Counties seek contribution and indemnity from Scribe through constitutional claims brought under 42 U.S.C. § 1983 ("Section 1983") for alleged violations of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and the analogous provisions of the Illinois Constitution. Dkt. 78.

3

Such claims may only be brought against defendants acting "under color of state law." *Scott v. Univ. of Chicago Med. Ctr.*, 107 F.4th 752, 757 (7th Cir. 2024). It is undisputed that Scribe is a private corporation, not a governmental or even quasi-governmental entity. Thus the "threshold question" is whether it was "engaged in state action at the time of the alleged constitutional violations." *Id.* "Without state action there can be no § 1983 liability." *Id.* at 762 (affirming Rule 12(b)(6) dismissal of Section 1983 claim brought against private actors).

The Seventh Circuit and the Supreme Court recognize three general "scenarios when private entities will be considered state actors for the purposes of a claim pursuant to § 1983." *Id.* at 757. The first is a "joint action" or "conspiracy" theory where the private party is alleged to have conspired with the government to infringe on plaintiffs' constitutional rights. *Id.* The second occurs when a private party performs a function that "has traditionally been the exclusive prerogative of the State." *Id.* Lastly, "[c]ourts will also find state action when a private party and the State are interdependent to the point of largely overlapping identity." *Id.*[1] None of these apply to make Scribe a state actor.

### A. Scribe did not act jointly with or conspire with the State to deprive Plaintiffs of their constitutional rights.

"To get past the pleading stage on this theory, the [plaintiffs] must point to more than mere allegations of joint action or a conspiracy to demonstrate that the defendants acted under color of state law." *Scott*, 107 F.4th at 758. The Counties must allege that the private party and the government "had a meeting of the minds and

---

[1] Citations and quotations are omitted throughout unless otherwise indicated.

4

thus reached an understanding" to deny plaintiffs their constitutional rights. *Id.* In *Scott,* decided just last year, the Seventh Circuit stressed that "there must have been a real agreement—explicit or implicit—between the parties. Merely working in parallel toward 'a common goal' is not the same as conspiring together." *Id*; *see also United States v. Bebris*, 4 F.4th 551, 560-61 (7th Cir. 2021) (no state action where private party acted jointly with government but did so "to further his own ends").

The Counties allege that Scribe is a "tax buyer" who obtained a tax deed to Plaintiff Michel Sharritt's house in 2019 via the PTC's tax sale procedures. Dkt. 128 ¶ 7. Their remaining allegations related to state action are conclusory and offer no additional facts as to what Scribe did or intended to do. *See id.* ¶ 11(b), ¶ 31; ¶ 37.

Scribe's contract to purchase the tax lien on Sharritt's property was not an agreement with the Counties to deprive Sharritt of her constitutional rights. The 3PC contains no allegations that Scribe met with DuPage County officials prior to the tax sale, coordinated with government officials, or conspired in advance to take Plaintiff's home equity. Tax sales are open auctions, where the prospective tax buyers are, if anything, adversarial to the Counties. 35 ILCS 200/21-205 (delineating tax sale procedure). Scribe entered into an arm's-length sales contract after winning its auction, but that is not the same thing as agreeing with the Counties to deprive Sharritt of her rights. The alleged rights deprivation occurred when DuPage County refused to pay Sharritt her home equity. *See* Dkt. 105 at 34-35 (discussing the Counties' *Monell* policy choices). Scribe did not join in or agree to that decision, and thus cannot be a state actor under a joint action theory.

This is particularly true because the Court has already found that Plaintiffs have stated constitutional claims against the Counties directly. The Counties moved to dismiss those claims by arguing that they did not retain the equity in Plaintiffs' homes, but instead that money was taken by tax buyers. *See, e.g.* Dkt. 88 at 10-12; Dkt. 89 at 4. As the Court noted in denying the motions to dismiss, Plaintiffs contend that "Defendants' attempt to pass the buck to the tax buyers is a red herring because the Fifth Amendment does not care whether the government or a private party receives the windfall…" Dkt. 105 at 23-24. The Court sided with Plaintiffs, and found that Plaintiffs stated a takings claim against the Counties. *Id.* at 25. No coordination or conspiracy between Scribe and the Counties is necessary for the Counties to be directly liable to Plaintiffs, but such joint action is necessary to state a claim under Section 1983 against Scribe. Such allegations are absent from the Counties' 3PC.

**B.     Scribe did not perform a traditional, exclusive State function.**

A private entity "acts under color of law when he or she exercises powers traditionally exclusively reserved to the State." *Scott*, 107 F.4th at 760, *citing Jackson v. Metro. Edison Co.,* 419 U.S. 345, 352 (1974). If such power is a "traditional, exclusive public function," then the private party may fairly be treated as a state actor. *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 819 (2019). Generally, "very few" exceptions fall into this category. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978). Scribe did not perform any traditional, exclusive state functions.

It was DuPage County who chose to place Sharritt's property for sale, and who used the PTC to collect Sharritt's taxes. Sharritt's tax sale occurred following a

judicial determination under the PTC and issuance of a court order. Those are traditional, exclusive state functions that were performed entirely by various DuPage County actors, not Scribe. They could not have possibly been performed by Scribe. All Scribe did was choose to participate in a public real estate auction based on its own economic self-interest, which is not state action. *Berbis,* 4 F.4th at 562. More generally, the fact that the government contracts with a private entity "does not convert the private entity into a state actor." *Manhattan Cmty. Access Corp.*, 587 U.S. at 814. Otherwise, every business who contracted with an Illinois county would be liable under Section 1983. That is not the law.

    **C.    Scribe and the Counties are not interdependent.**

State action based on interdependence, or entwinement "is premised on whether the entitles are *actually* entwined, not whether they appear to be." *Scott*, 107 F.4th at 761 (emphasis in original). "'Working together' is not enough." *Id*. Instead, there is state action only when public and private entities are interdependent "to the point of largely overlapping identity." *Id., citing Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 303 (2001). The Counties' pleading is devoid of any allegations that support an entwinement theory of state action.

The facts of *Brentwood* provide a clear example of private-public entwinement, and show why Scribe is not entwined with the Counties. In *Brentwood*, the private entity was a statewide association incorporated to regulate high school sports ("Association"). *Brentwood Acad.*, 531 U.S. at 291. 84% of the schools that comprised that association were public, i.e. state actors. *Id.* at 298. State government officials

served as members of the Association's board of control and legislative counsel, and the Association's employees were eligible to join the state public employees' retirement system. *Id.* at 300. "[P]ublic school officials . . . control [and] overwhelmingly perform all but the purely ministerial acts" of the purported private entity. *Id.* Thus, the Supreme Court found, "[e]ntwinement will support a conclusion that an ostensibly private organization ought to be charged with a public character and judged by constitutional standards…" *Id.* at 302.

The relationship between Scribe and the Counties could hardly be more different. Scribe is a private limited liability company. It has no personnel overlap with the Counties, no prior relationship, and receives no direction from the Counties. There is no shared control or common management. Unlike a typical civil rights case, in this third-party action the state actors are the plaintiffs. That means that any evidence of entwinement is already within their knowledge and could have been pled. No discovery is needed for the Counties to plead their best facts. They have pled none.

**D.      Recent tax buyer state-action cases are inapplicable here.**

Plaintiffs cite to a New Jersey intermediate appellate decision that was recently affirmed as modified by the New Jersey Supreme Court in *257-261 20th Ave., Realty, LLC v. Roberto*, 259 N.J. 417 (2025). Dkt. 78 ¶ 85. The New Jersey Supreme Court found that the tax buyers in that state were state actors because they acted jointly with the state and because the state delegated to the tax buyers "the common government function of seizing properties to satisfy a tax debt." *Roberto*, 259 N.J. at

8

445. The *Roberto* court cites *Cont'l Res. v. Fair*, 317 Neb. 391 (2024), where the Nebraska Supreme Court reached a similar conclusion.

The state action analyses of the New Jersey and Nebraska Supreme Courts are at odds with the Seventh Circuit's *Scott* decision and the PTC, and this Court should decline to follow them. The New Jersey Supreme Court perfunctorily and erroneously applied *Manhattan Cmty. Access Corp.* to New Jersey's tax sale law. That court held that the collection of tax revenue is a traditional public function and that the tax buyers "act jointly" with the government to collect delinquent property taxes. *Roberto*, 259 N.J. at 445. Per the New Jersey Supreme Court, the government and tax buyers take "interdependent actions." *Id.*

This analysis understates the rigor of the Supreme Court's state action tests, and conflates tax collection with enforcement of a tax lien. "[M]ere allegations of joint action or a conspiracy" are not enough to find state action, *Scott*, 107 F.4th at 759, and the Counties have pled no facts supporting joint action or a conspiracy.[2] Simply because Scribe followed the procedures set forth in the PTC does not mean it acted jointly with the State. *Scott*, 107 F.4th at 759.

The delegation theory of state action will apply only where the delegated power is "a traditional, exclusive public function." *Manhattan Cmty. Access Corp.*, 587 U.S. at 819. In turn, the Seventh Circuit has held that "[t]he availability of and right to exercise state-created liens has never been an exclusive prerogative of the State."

---

[2] In *Fair*, 317 Neb. at 408, the Nebraska Supreme Court expressly disclaimed any application of the public function test for state action, instead basing its decision entirely on the "joint action" theory.

*Hinman v. Lincoln Towing Serv., Inc.*, 771 F.2d 189, 193 (7th Cir. 1985) (finding no state action). The *Roberto* Court thus steals two bases in its analysis: it conflates the exclusive state function of tax *collection* with non-exclusive tax lien *enforcement*, and it says "seizing properties" is a "common" government function without analyzing whether that function is traditionally exclusive to the government, which it is not.

In Illinois, tax buyers must pay all delinquent taxes to acquire a tax lien. That payment ends the government's tax collection efforts. *Chicago Title Ins. v. Aurora Loan Servs., LLC*, 2013 IL App (1st) 123510, ¶33. What follows is tax lien enforcement, which has traditionally been performed by private actors. *Hinman*, 771 F.2d at 193. *Roberto* and *Fair* cannot save the Counties' claims against Scribe.

**II.     Even if Scribe is found to be a state actor, the Counties' claims fail as a matter of law.**

   **A. The Counties' contribution claim should be dismissed because contribution claims are not permitted in Section 1983 actions.**

The Counties' Count III seeks contribution from Scribe for an alleged violation of the Plaintiff class's civil rights. Dkt. 124 ¶¶ 37, 38. Plaintiffs' civil rights claims, in turn, can only be maintained under Section 1983. Dkt. 78 at 28; *Gerlach v. Rokita,* 95 F.4th 493, 499 (7th Cir. 2024); *DeVillier v. Texas*, 601 U.S. 285, 291 (2024). The Counties' contribution claim, therefore, asks for contribution from Scribe for the Counties' liability under Section 1983.

The Counties cannot assert contribution claims under Section 1983 or, alternatively, as a matter of federal common law. *Perks v. Cnty. of Shelby*, No. 09-3154, *3 2009 WL 2985859 (C.D. Ill. Sept. 15, 2009) ("no such right exists;" dismissing

10

cross-claim for contribution under Section 1983); *Burris v. Cullinan,* No. 09-3116, *8 2009 WL 3575420 (C.D. Ill. Oct. 23, 2009) (Section 1983 "does not authorize a right to contribution"), *citing, inter alia, Northwest Airlines, Inc. v. Transp. Workers Union of America, AFL-CIO*, 451 U.S. 77, 91 (1981).

This law is clear. The Counties were expressly sued by Plaintiffs pursuant to Section 1983. They cannot seek contribution from Scribe (or anyone else) relating to their potential liability to Plaintiffs on those claims.

### B. Implied indemnity is not available based on the Counties' complaint and the Court's prior ruling.

"[E]quitable or implied indemnity based on tort principles of relative blameworthiness no longer exists in Illinois." *UIRC-GSA Holdings Inc. v. William Blair & Co., L.L.C.*, 289 F. Supp. 3d 852, 861 (N.D. Ill. 2018). Implied indemnity is viable only if premised on vicarious liability. *Id.* What is more, an implied indemnity action lies only where the plaintiff is "blameless though liable – typically because of strict liability, *respondeat superior*, implied warranty, or some other legal principle that imposed liability regardless of fault." *Id.* at 861. To state a claim for implied indemnity, the Counties must allege (1) a pre-tort relationship between the indemnitor and indemnitee; and (2) that the indemnitee was held derivatively liable for the acts of the indemnitor. *Jordan v. Jewel Food Stores, Inc.*, 83 F. Supp. 3d 761, 772 (N.D. Ill. 2015) (dismissing implied indemnity claim).

The Counties have not pled either element. On the first, they allege only that "a statutorily mandated relationship" between Scribe and the Counties existed "if *Tyler* applies to the PTC." Dkt. 124 ¶ 44. The Counties allege no facts supporting a

11

pre-tort relationship with Scribe, because there are none. In a light most favorable to the Counties, their alleged "relationship" with Scribe began and ended with the sale of Sharritt's property at the tax sale. No relationship whatsoever existed prior to that sale, certainly not one that rises above Illinois' high bar for "classic pretort relationships." *Jordan*, 83 F. Supp. 3d at 772 (such relationships include "lessor and lessee; employer and employee[;] owner and his lessee; [and] master and servant.") (dismissing implied indemnity claim); *First Am. Bank v. RBS Citizens, N.A.*, No. 14 C 8120, 2015 WL 9304354 (N.D. Ill. Dec. 22, 2015), *aff'd sub nom. First Am. Bank v. Fed. Rsrv. Bank of Atlanta*, 842 F.3d 487 (7th Cir. 2016) (conclusory allegation of pretort relationship insufficient).

The Counties also fail to allege that their liability is "solely" derivative of Scribe's. *Jordan*, 83 F. Supp. 3d. at 773. Their allegations are vague but seem to boil down to blaming Scribe for deigning to buy a delinquent property that DuPage County listed for sale. Dkt. 124 ¶¶ 46-49. These are not allegations of derivative liability. They are allegations that wholly disregard the Court's denial of the Counties' motion to dismiss, where the Court found the Counties blameworthy. Dkt. 105 at 25. The existence of direct liability – that the Counties are not blameless – forecloses the Counties' implied indemnity claim against Scribe.

### C. The Counties' unjust enrichment claim fails because their transaction with Scribe is governed by a contract.

"[W]hen a contract governs the relationship between two parties, unjust enrichment has no application." *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 886 (7th Cir. 2022) (cleaned up) (applying Illinois law).

12

The tax sale to Scribe "constituted a contract" between DuPage County and Scribe. *Application of Cnty. Collector for Non-Payment of Gen. Taxes for Year 1968 & Prior Years*, 27 Ill. App. 3d 646, 650 (1st Dist. 1975). There were no separate oral or quasi-contractual promises. *See* Dkt. 78 ¶¶ 63-64. Just as a written agreement between a plaintiff and defendant bars a claim for unjust enrichment, the PTC sale process bars the Counties' claim that Scribe was unjustly enriched at their expense. For this independent reason, the Counties' Count IV should be dismissed.

### III. The Counties' claims are all time-barred on the face of the 3PC.

An untimely claim may be dismissed at the pleading stage "when the allegations of the complaint reveal that relief is barred." Dkt. 105 at 15, *citing Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011).

#### A. Because Plaintiffs' claims against Scribe are untimely, so too are the Counties' claims for contribution and indemnity.

The Counties moved to dismiss Plaintiffs' claims as untimely, which this Court denied. Dkt. 89 at 11-12; Dkt. 105 at 14-16. Although the Court had "concerns" as to the timeliness of Plaintiffs' claims, *see* Dkt. 105 at 16 n.7, it held that the vagueness of Plaintiffs' allegations regarding the date on which Sharritt lost her surplus equity made ruling on that issue impossible at the pleading stage. *Id*. at 15-16. The Counties' 3PC clarifies the date of Sharritt's loss. The Counties plead unambiguously that Scribe obtained a tax deed to Sharritt's property on February 21, 2019. Dkt. 124 (3PC) ¶ 7. Thus, that date becomes the accrual date for limitations purposes for any claim that could have been brought by Sharritt against Scribe.

13

The limitations period for the Counties' contribution and implied indemnity claims, in turn, is set by 735 ILCS 5/13-204, which provides that such claims are timely "only to the extent that the claimant in an underlying action could have timely sued the party from whom contribution or indemnity is sought at the time such claimant filed the underlying action…" 735 ILCS 5/13-204(c). In other words, the Counties' Counts II and III against Scribe are timely only if Sharritt's (hypothetical) claims against Scribe were live on November 9, 2023, when she filed suit. *See* Dkt 1.

Illinois' two-year personal injury statute of limitations, 735 ILCS 5/13-202, unambiguously applies to Sharritt's claims, because that statute applies to "*all* 1983 claims." *Woods v. Illinois Dep't of Child. & Fam. Servs.,* 710 F.3d 762, 768 (7th Cir. 2013) (emphasis in original); *Tadros v. Stack*, No. CV 20-12546, 2021 WL 3856258, *2 (D.N.J. Aug. 30, 2021) (Section 1983 takings claims). Plaintiffs have suggested that a different statute of limitations may apply, *see* Dkt. 96 at 50-51, but provided no authority. *Id.*[3] Plaintiffs' three claims are pled – in bolded capital letters – under Section 1983. Dkt. 78. They mention inverse condemnation only as a possible conditional remedy within their Count I. *Id.* ¶ 139. That is not enough to plead an inverse condemnation claim or to invoke 735 ILCS 5/13-101, which applies only to claims for recovery of land (a remedy not available to Sharritt).

Sharritt's claims against Scribe are subject to a two-year statute of limitations, and began accruing on February 21, 2019. Those claims thus became time-barred on

---

[3] Plaintiffs' argument focused more on getting their class claims through to discovery than on Sharritt and Scribe specifically. *See* Dkt. 96 at 50.

February 21, 2021. Per 735 ILCS 5/13-204(c), the Counties' claims for contribution and indemnity based on Plaintiffs' November 2023 complaint are thus untimely.

### B. The Counties' unjust enrichment claim is also untimely.

"In Illinois, actions seeking recovery on the basis of unjust enrichment or *quantum meruit* are subject to the five-year statute of limitations set forth in 735 ILCS 5/13-205." *Toll Processing Servs., LLC v. Kastalon, Inc.*, No. 12-CV-10058, 2014 WL 1379676, *3 (N.D. Ill. Apr. 8, 2014). An unjust enrichment claim accrues the moment that the defendant becomes unjustly enriched. *Zic v. Italian Gov't Travel Off.*, 149 F. Supp. 2d 473, 476 (N.D. Ill. 2001).

Taking the Counties' allegations as true, their unjust enrichment claim accrued when Scribe received its tax deed on February 21, 2019. Dkt. 124 ¶ 7. Because the Counties' 3PC against Scribe was not filed until April 11, 2025, their unjust enrichment claim is untimely and should be dismissed.

### IV. Adoption of Hobo Investments, LLC's Motion to Dismiss.

Scribe hereby joins and adopts all arguments made by Third-Party Defendant Hobo Investments, LLC in its motion to dismiss that are applicable to Scribe.

### CONCLUSION

For all of the reasons stated herein, the Counties' Third Party Complaint against Scribe, Dkt.124, should be dismissed with prejudice in its entirety pursuant to Fed. R Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Respectfully submitted,
Scribe Holdings, LLC

*/s/ Adam N. Hirsch*

15

| | |
|---|---|
| Adam N. Hirsch | Gregory M. Reiter |
| ARDC #6275127 | ARDC #6227066 |
| Schoenberg Finkel Beederman Bell Glazer, LLC | Reiter Law Offices, Ltd |
| 300 South Wacker Drive, Suite 1500 | 208 West Washington Street, Suite 2113 |
| Chicago, Illinois 60606 | Chicago, Illinois 60606 |
| Adam.Hirsch@sfbbg.com | greiter@reiterlawoffices.com |

*Attorneys for Third-Party Defendant Scribe Holdings, LLC*

## Local Rule 37.2 Certification

 Adam N. Hirsch, Counsel for Scribe, hereby certifies that on May 22, 2025, he met and conferred with Graeme Quinn and Trevor Prindle, counsel for DuPage County, and Stephen Rice and Karen Fox, counsel for Lake County, via Microsoft Teams videoconference. Such consultation included a good faith effort to resolve the differences raised by this motion, but Scribe and the Counties were unable to reach an agreement.

*/s/ Adam N. Hirsch*

**CERTIFICATE OF SERVICE**

  I hereby certify that on June 10, 2025 a true and correct copy of the foregoing document has been filed electronically and served on the parties via the Court's electronic filing system or by mail to anyone unable to accept electronic filings. Parties may access this filing through the Court's CM/ECF system.

*/s/ Adam N. Hirsch*
