**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| GWEN HENRY, et al. | ) |
| | ) |
| Third Party Plaintiffs, | ) |
| | )   Case No. 1:23-cv-15838 |
| v. | ) |
| | ) |
| THE STATE OF ILLINOIS, et al. | )   Honorable Sara L. Ellis |
| | ) |
| Third Party Defendants. | ) |

**THIRD PARTY DEFENDANT HOBO INVESTMENTS, LLC'S**
**MOTION TO DISMISS THE THIRD PARTY COMPLAINT**

Third Party Defendant, Hobo Investments, LLC, by and through its attorneys, Jospeh D. Ryan of the Law Offices of Joseph D. Ryan, P.C., moves this Court to dismiss the Third Party Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6).

**INTRODUCTION**

The plaintiffs in the underlying complaint failed to pay their real estate taxes resulting in the sale of their delinquent taxes and subsequent transfer of title to their properties to tax purchasers. They sued several counties and their officials under 42 U.S.C. § 1983, seeking compensation in the amount that the value of their properties exceeded their tax obligations ("surplus"). *See* Dkt. 78 (First Amended Complaint).

Although this Court has ruled that tax purchasers are not a necessary party to the proceedings (Dkt. 105 at 35-36), two of the counties, DuPage and Lake, and their Treasurers and Clerks (collectively the "Counties"), filed a third party complaint ("complaint") against Hobo Investments, LLC ("Hobo"), the entity that purchased the delinquent taxes for, and acquired title to, the property formerly owned by Dareios Little ("Little"). Dkt. 124, ¶ 8. Three of the four

counts in the complaint are directed towards Hobo. Under 42 U.S.C. § 1983, the Counties seek

contribution in Count II, implied indemnity in Count III, and unjust enrichment in Count IV.

## ARGUMENT

### A. Hobo Is Not A State Actor And Did Not Act Under Color Of Law.

Conduct by a private party that allegedly causes a deprivation of a constitutional right must

be fairly attributable to the State, otherwise private parties could face constitutional litigation

whenever they seek to rely on some state rule governing interaction with other private parties.

*Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982). A private party is deemed a State

actor or acting under color of law where the party acted together with or obtained significant aid

from a state official, or whose conduct is otherwise chargeable to the State. *Id*. at 937. Further

clarification of this test was provided in *Scott v. University of Chicago Medical Center*, 107 F.4th

752 (7th Cir. 2024). State action is found where there is a conspiracy or joint action between the

State and the private party, the private party performs a public function, or when the State and

private party have a symbiotic relationship or are entwined. *Id.* at 757.

Prior to discussing the three categories of State action, it should be noted that the Counties

do not allege that Hobo was a state actor. Rather, they allege that Hobo "could be" a State actor

and Hobo is "potentially" a State actor. Dkt. 124, ¶¶ 31 and 37. This pleading deficiency is

sufficient by itself to dismiss the complaint.

### 1. Hobo and the Counties did not enter into a conspiracy or joint action.

More than mere allegations of joint action or conspiracy must be alleged to demonstrate

that Hobo acted under color of state law. *Scott*, 107 F.4th at 758. The Counties must allege that

they and Hobo "had a meeting of the minds and thus reached an understanding … to deny" Little

and other former property owners of a constitutional right. *Id*. at 758, *citing, Wilson v. Warren*

2

*County*, 830. F.3d 464, 468 (7th Cir. 2016). The *Scott* court "stress[ed] that there must have been a real agreement … between the parties." *Id*. at 758. "Merely working in parallel toward 'a common goal' is not the same as conspiring together" or having joint action to find a private party having acted under color of law. *Id*.

The Counties do not allege that they and Hobo had a meeting of the minds and reached an agreement to deprive property owners of their surplus. They do not even assert that there was any type of communication or transmission of thoughts with Hobo that resulted in an agreement and meeting of the minds. Just the opposite. The Counties allege that Hobo "was the *sole* moving force behind seeking and obtaining tax deed(s)." Dkt. 124, ¶¶ 32 and 45 (emphasis added). "All acts that violated the former property owners' civil rights as alleged in the present suit were *conducted* and *initiated* by [Hobo]." Dkt. 124, ¶ 48 (emphasis added). The Counties' acts were "*directed* by the *choices made by [Hobo]*." Dkt. 124, ¶ 49 (emphasis added). And, Hobo "compelled" the Counties "to violate the former property owners constitutional rights." Dkt. 124, ¶¶ 36 and 52. Thus, according to the complaint, Hobo acted alone and compelling the Counties to act is the antithesis of the parties having an agreement.

The pleading deficiencies are exemplified by the Counties describing their relationship with Hobo as a "statutorily mandated relationship" and "required by law." Dkt. 124, ¶¶ 44 and 49. At most, these allegations establish interaction between the parties or a statutorily mandated working relationship – not a mutual meeting of the minds to reach an agreement to deprive property owners of their constitutional right.

In addition, Little and the other former property owners allege that a constitutional violation occurred when county officials refused to pay compensation for the loss of their

3

properties. Dkt. 105 at 34-35. There are no allegations that Hobo joined in or agreed to that decision.

In summary, the Counties have plead that Hobo was acting on its own, and at most, they have alleged that they were working towards a common goal – the collection of taxes. As pointed out by the Seventh Circuit, "[m]erely working in parallel toward 'a common goal' is not the same as conspiring together" or having joint action to find a private party having acted under color of law. *Id*. at 758. There must be, as the Seventh Circuit has "stressed," a real agreement between the parties." *Id*.

**2.      Hobo did not perform a traditionally exclusive public function.**

The public function test requires a private party to exercise powers traditionally and exclusively reserved to the State. *Id*. at 760. Here, the Counties' complaint is devoid of such allegations.

Without any action by Hobo, on January 1 of each year, a lien for real estate taxes attaches to all non-exempt real property, securing the payment of that year's taxes levied on that property. 35 ILCS 200/21-75. The Counties – and not Hobo – apply to the court for a judgment and order of sale against properties with delinquent real estate taxes. 35 ILCS 200/21-160. Once the order is obtained, the Counties – and not Hobo – choose to sell the delinquent taxes at the annual tax sale. 35 ILCS 200/21-215. Thus, the Counties use the Property Tax Code, 35 ILCS 200/21-110 *et seq.,* to collect delinquent taxes, and the Counties – not Hobo – perform these traditional functions exclusively reserved for the State. Hobo merely attended the sale to bid and purchase the delinquent taxes offered for sale by the Counties. Hobo's self-serving interest in purchasing delinquent taxes does not constitute State action. *United States v. Bebris*, 4 F.4th 551, 560-62 (7th Cir. 2021) (there is no state action where a private party acts for its own, private purposes or to

4

"further its own ends"); *Manhattan Community Access Corp. v. Halleck*, 587 U.S. 802, 814 (2019) (contracts between the government and a private party do not convert the private party into a State actor); *Chicago Title Ins. Co. v. Aurora Loan Services, LLC*, 2013 IL App (1st) 123510, ¶ 33 (conducting the tax sale and transferring the tax lien to the tax purchaser ends the government's collection of taxes); *Hinman v. Lincoln Towing Service, Inc.*, 771 F.2d 189, 193 (a private party's enforcement of a state created lien is not State action: "That a private entity performs a function which services the public does not make its acts state action").

**3.     Hobo and the Counties do not have a symbiotic relationship or are entwined.**

The symbiotic relationship or entwinement test involves more than parties working together. *Scott*, 107 F.4th at 761. It requires allegations that parties "are *actually* entwined, not whether they appear to be," *Id*. at 761 (emphasis in the original), *citing Brentwood Acad. v. Tenn. Secondary School Athletic Ass'n*, 531 U.S. 288, 303 (2001); and that the private and public parties "are interdependent 'to the point of largely overlapping identity.'" *Id*. There are no such allegations in the Counties' complaint. To the contrary, the Counties plead allegations showing that Hobo was a separate entity from them; that the Counties had specific statutory duties; and that Hobo made its own independent decisions and initiated steps on its own to obtain a tax deed. Dkt. 124 ¶¶ 2, 18-20, 22, 32, 36, 45, 48, 49, 52. The Counties' sale of delinquent taxes – that ends the exclusive state function of tax collection – and then the next step – that being Hobo's subsequent business decision to obtain a tax deed that is an enforcement procedure traditionally performed by private actors – does not create a symbiotic relationship or entwined status to constitute State action. *Chicago Title Ins. v. Aurora Loan Services, LLC*, 2013 IL App (1st) 123510, ¶ 33 (conducting the tax sale and transferring the lien to a tax purchaser ends the government's collection of taxes, and the enforcement of the lien is performed by the private party/tax purchaser);

5

*Hinman v. Lincoln Towing Service, Inc.*, 771 F.2d 189, 193 ("[t]hat a private entity performs a function which services the public does not make its acts state action").

**B.      Contribution And Indemnity Are Not Permitted In Section 1983 Actions**

Section 1983 was enacted to benefit the class of individuals who have suffered constitutional injuries. It was not passed into law to benefit an individual who participated in depriving someone of a constitutional right. *See Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981) (Congress neither expressly nor implicitly intended to create a right to contribution when enacting the antitrust statutes, and there is no federal common law contribution right); *Northwest Airlines, Inc. v. Transport Workers Union of America,* 451 U.S. 77 (1981) (Congress did not explicitly or implicitly create a right to contribution in enacting the Equal Pay Act or Title VII, and there is no federal common law right to contribution).

Section 1983 does not contain language, like other federal statutes, authorizing contribution among parties who may have both violated the law. There is no implication that Congress contemplated contribution when it enacted § 1983. There also is no federal common law, and in the instances where the federal judiciary has created law, it has been limited to a "few and restricted" areas. *Texas Instruments*, 451 U.S. at 638-641. In the Supreme Court's view, contribution was a matter for Congress and not for the courts to create. *Id*. at 646-47.

The analytical framework for determining whether contribution exists has been extended to indemnity because contribution and indemnity are closely related. *See Mortgages, Inc. v. U.S. Dist. Court of Dist. Of Nev.*, 934 F.2d 209, 212 n. 3 (9th Cir. 1991). In a sense, "indemnity is only an extreme form of contribution." *Hoa v. Riley*, 78 F.Supp.3d 1138, 1145 (N.D. CA. 2015), *citing Slattery v. Marra Bros., Inc.*, 186 F.2d 134, 138 (2d Cir. 1951). "There is no federal right to indemnification provided in 42 U.S.C. § 1983." *Allen v. City of Los Angeles*, 92 F.3d 842, 845, n.

1 (9th Cir. 1996), *overruled on other ground, Acri v. Varian Associates, Inc.*, 114 F.3d 999 (9th Cir. 1997); *Firestone v. Berrios*, 42 F.Supp.3d 403, 419 (E.D. N.Y. 2013); *Banks v. City of Emeryville*, 109 F.R.D. 535, 539 (N.D. Cal. 1985); *Nemeth v. Village of Tiltonsville*, 2023 WL 2692262 (S.D. OH. 2023).

Several Illinois District Court cases, relying on *Texas Industries* and *Northwest Airlines*, have dismissed contribution claims involving § 1983 actions. *Marine Bank of Champaign-Urbana v. United States*, 739 F.Supp. 1267 (C.D. Ill. 1990) (dismissed counterclaim for contribution in a § 1983 action); *Burris v. Cullinan*, 2009 WL 3575420 (C.D. Ill. October 23, 2009) (Congress did not intend a right to contribution under § 1983 and there is no federal common law right to contribution); *Estate of Carlock ex rel. Andreatta-Carlock v. Williamson*, 2009 WL 1708088 (C.D. Ill. June 12, 2009) (dismissed § 1983 contribution claim, recognizing that the majority of District Courts that have addressed the issue have also reached the same conclusion).

The majority of other courts hold that contribution and indemnity are not permissible in § 1983 actions. *Crews v. County of Nassau*, 612 F.Supp.2d 199, 208 (E.D. N.Y. 2009) ("the Court agrees with the majority of courts that have confronted the issue and found that no such claim for contribution is available for Section 1983 actions"); *Hepburn v. Athelas Institute, Inc.*, 324 F.Supp.2d 752, 759-60 (D. MD. 2004) ("For all of these reasons, even if Maryland law provided a right to contribution among defendants in Constitutional tort cases, such a right is inconsistent with § 1983, and [defendant's] third-party contribution and indemnity claim will be dismissed"); *Katka v. Mills*, 422 F.Supp.2d 1304 (N.D. GA. 2006) ("most cases decided since *Northwest Airlines* have held that there is no right to contribution under § 1983"); *Loughney v. Correctional Care Inc.*, 2024 WL 1501743, at *8 (M.D. March 19, 2024) (the court agreeing, with emphasis, that "the weight of persuasive authority holding there is no right to contribution for § 1983

7

violations"); *Bulfin v. Rainwater*, 2021 WL 2915057 (E.D. MO. July 12, 2021) (collecting cases holding that contribution would reduce the deterrent effects of § 1983 and therefore be inconsistent with the text and intent of § 1983 to prevent constitutional violations); *Blair v. Marable*, 2022 WL 3588408 (N.D. AL August 22, 2022); *M.O.C.H.A. Society, Inc. v. City of Buffalo*, 272 F.Supp.2d 217 (W.D. N.Y. 2003); *TCI Cablevision, Inc. v. City of Jefferson, Missouri*, 604 F.Supp. 845 (W.D. MO 1984).

**C.      The Counties Do Not Sufficiently Allege Indemnification.**

Illinois' Contribution Among Joint Tortfeasor Act, 740 ILCS 100/1-5 (1994), abolished implied indemnity except in a few limited circumstances involving pre-tort relationships:  lessor and lessee; employer and employee; owner and lessee; and master and servant.  *Jordan v. Jewel Food Stores, Inc.*, 83 F.Supp.3d 761, 772 (N.D. Ill. 2015), *citing, Kerschner v. Weiss & Co.*, 282 Ill.App.3d 497 (1st Dist. 1996) and *Van Slambrouck v. Econ. Baler Co.*, 105 Ill.2d 462 (1985); *American Nat'l Bank & Tr. Co. v. Columbus-Cuneo-Cabrini Med. Ctr.*, 154 Ill.2d 347 (1992).  It is not alleged that the relationship between the Counties and Hobo falls into any of these categories, and courts have refused to expand the list of pre-tort relationships for which indemnity is available. *Jordan*, 83 F.Supp.3d at 772-73 (collecting cases rejecting the expansion of the pre-tort relationships, including business relationships between entities).

Indemnification also is limited to situations where the indemnitee is held derivatively liable for the acts of the indemnitor.  *Jordan*, 83 F.Supp.3d at 772-73, *citing, Kerschner*, 282 Ill.App.3d 497.  Stated differently, "the party on whom the duty to indemnify is sought to be imposed must have been in some (though often an attenuated) sense 'at fault' and the other party blameless though liable – that is to say, only *strictly* liable, by virtue of respondent superior, implied, warranty, strict products liability, or some other legal principle that imposes liability regardless of

fault." *Jordan*, 83 F.Supp.3d at 773, *quoting, Jinwoong, Inc. v. Jinwoong, Inc.*, 310 F.3d 962, 965 (7th Cir. 2002) (emphasis in original). Here, if the Counties can be held liable to the former property owners, a determination this Court has already made (Dkt. 105 at 25), then the Counties are not blameless and their liability arises because of their own conduct and not derivatively through Hobo's actions.

**D.     The Counties Cannot Assert An Unjust Enrichment Claim.**

Unjust enrichment "is not a separate cause of action that, standing alone, would justify an action for recovery." *Toushin v. Ruggiero*, 2021 IL App (1st) 192171, ¶ 80, *citing, Mulligan v. OVC, Inc.*, 382 Ill.App.3d 620, 631 (1st Dist. 2008). "Rather it is a condition resulting from improper conduct 'such as fraud, duress, or undue influence, and may be redressed by a cause of action based upon that improper conduct.'" *Toushin*, at ¶ 80, *citing, Aliance Acceptance Co. v. Yale Insurance Agency, Inc.*, 271 Ill.App.3d 483, 492 (1st Dist. 1995). The dismissal of the Counties' other claims leaves their unjust enrichment claim standing alone, thereby requiring its dismissal.

Also, unjust enrichment involves a defendant unjustly retaining a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. *Hernandez v. Illinois Institute of Technology*, 63 F.4th 661, 671 (7th Cir. 2023). A plaintiff may not recover under an unjust enrichment theory if there is an enforceable contract between the parties. *Id.* "If a defendant has fulfilled [defendant's] obligations under a valid contract with the plaintiff, then [the defendant] cannot be said to have acted "unjustly" to the plaintiff's detriment." *Id*.

The Counties and Hobo entered into a contract. The Counties held a sale of delinquent taxes. Hobo attended the sale to bid and purchase the taxes offered for sale by the Counties. In

return for its purchase, Hobo received a certificate transferring the tax lien to Hobo. Dkt. 124, ¶ 1; *Application of County Collector for Non-Payment of General Taxes v. County of Alexander*, 27 Ill.App.3d 646, 650 (1st Dist. 1975) (the tax sale "constituted a contract" between the County and tax purchaser). This contractual transaction bars the plaintiff's unjust enrichment claim.

Furthermore, the Counties are not entitled to the surplus based upon fundamental principles of justice, equity, and good conscience. Their failure to give the surplus to the former property owners is why they are being sued. Yet, in their unjust enrichment claim, they want to receive the surplus, and in equity and good conscience if anyone besides Hobo is entitled to the surplus, it would be the former property owners and not the Counties.

**E. Hobo's Good Faith Requires The Dismissal Of The Complaint.** [1]

Although a private party acting under color of state law does not enjoy qualified immunity from suit, a private party is entitled to raise a good-faith defense to liability under § 1983. This is true in the Seventh Circuit; *Janus v. American Federation of State, County and Municipal Employees*, 942 F.3d 252, 364 (7th Cir. 2019); *Mooney v. Illinois Education Association,* 942 F.3d 368 (7th Cir. 2019); and every other appellate court that has addressed the issue. *Akers v. Maryland State Education Association*, 990 F.3d 375 (4th Cir. 2021) (collecting cases from the Second,

---

[1] Courts have granted motions to dismiss § 1983 actions pursuant to Fed R. Civ. P. 12(b)(1) and (6) on the grounds of a good-faith defense. *Akers v. Maryland State Education Association*, 990 F.3d 375 (4th Cir. 2021) (Fed. R. Civ. P. 12(b)(6)); *Alen v. Santa Clara County Correctional Peace Officers Association*, 38 F.4th 68, (9th Cir. 2022) (lack of subject matter jurisdiction); *Ogle v. Ohio Civil Service Employees Association*, 951 F.3d 794 (6th Cir. 2020) (same); *See Lee v. Ohio Education Association*, 951 F.3d 386 (6th Cir. 2020) (motion to dismiss); See *K.H. Through Murphy v. Morgan*, 914 F.2d 846, 847 (7th Cir. 1990) (defendants "raised the defense of [qualified] immunity in a motion to dismiss the complaint. This was a permissible way to proceed"); *McDonald by McDonald v. Haskins*, 966 F.2d 292 (7th Cir. 1992) (the District Court addressed a qualified immunity defense in a motion to dismiss, and the Appellate Court held that "[o]ne may certainly raise an immunity defense in a motion to dismiss"); *Landstrom v. Illinois Dept. of Children and Family Services*, 892 F.2d 670 (7th Cir. 1990) (motion to dismiss granted based on qualified immunity and affirmed on appeal).

Third, Fifth, Sixth, and Nineth Circuits); *Wyatt v. Cole,* 994 F.2d 1113 (5th Cir. 1993), *cert. denied*, 510 U.S. 977 (1993).

The defense arises out of concern that a private party's reliance on the law, prior to a judicial determination of unconstitutionality, is reasonable and therefore private parties that make use of seemingly valid state laws should not be held responsible for what turns out to be a constitutional violation. *See Wyatt v. Cole,* 994 F.2d 1113, 1115 (private parties should not be held liable under § 1983 unless the parties knew or should have known of the constitutional infirmity, and invocation of a replevin statute was not objectively unreasonable for purpose of determining whether the defendants could be held liable under § 1983); *Clement v. City of Glendale*, 518 F.3d 1090, 1096-97 (9th Cir. 2008) (Good faith defense available to private towing company "that did its best to follow the law and had no reason to suspect that there would be a constitutional challenge to its actions").

Hobo cannot be held accountable for a constitutional violation, and is entitled to dismissal of the case, unless the plaintiff can demonstrate that Hobo failed to act in good faith in obtaining tax deeds. *See Wyatt v. Cole,* 994 F.2d at 1115. That is, Hobo either knew or should have known that its acts were unconstitutional. *Id*. This requires the Counties to plead "the contours of the right … sufficiently clear [so] that a reasonable [person] would understand that what he is doing violates that right." *McDonald by McDonald v. Haskins*, 966 F.2d 292, 293 (7th Cir. 1992); *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir. 1988) (en banc), *cert. denied,* 488 U.S. (1988) ("It is the plaintiff who bears the burden of establishing the existence of the allegedly clearly established constitutional right"); *Landstrom v. Illinois Department of Children and Family Services*, 892 F.2d 670, 675 (7th Cir. 1990) ("it is plaintiffs' burden to show – or in this case, given

11

the Rule 12(b)(6) context, to sufficiently plead – that the constitutional right was clearly established").

Stated another way, for a right to be clearly established, it must be "sufficiently particularized to put potential defendants on notice that their conduct is unlawful." *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir. 1988), *cert. denied,* 488 U.S. (1988). There must be "sufficient consensus 'based on all relevant case law,' indicating that the [defendant's] conduct was unlawful." *Landstrom,* 892 F.2d at 676, *citing Cleveland-Perdue v. Brutsche,* 881 F.2d 427, 431 (7th Cir. 1989). A defendant is liable when "the law was clear in relation to the specific facts confronting the [defendant] when he acted." *Rakovich,* 850 F.2d at 1209; *McDonald*, 966 F.2d at 294. "Once the defendant's actions are defined or characterized according to the specific facts of the case this characterization is compared to the body of law existing at the time of the alleged violation to determine if constitutional, statutory, or case law shows that the now specifically defined actions violated the clearly established law." *Rakovich*, 850 F.2d at 1209, 1211.

The Property Tax Code, pursuant to which tax deeds are issued, has been in existence for over 150 years with little change. Since its inception, there have been constitutional challenges to its provisions, but not a single decision stating or implying that the issuance of a tax deed results in a constitutional violation. Just the opposite. An Illinois federal case, affirmed by the United States Supreme Court, found no constitutional violation, including the 5th Amendment, in issuing a tax deed that deprived the former property owner of the "surplus value" (amount in excess of the taxes and interest). *Balthazar v. Mari Ltd.*, 301 F.Supp. 103 (N.D. Ill. 1969), *aff'd, Balthazar v. Mari, Ltd.*, 396 U.S. 114 (1969).

In *Balthazar*, the plaintiffs challenged the constitutionality of the Illinois statutes that authorized the issuance of tax deeds. *Balthazar*, 301 F.Supp. at 104. They argued that the tax

purchaser obtained title to the property "for a fraction of its market value, thus gaining as a windfall all 'surplus value' which exceeds the land's tax and interest liabilities." *Id*. at 105. This, according to the plaintiffs, constituted a violation of the plaintiff's due process right under the 14th amendment, *Id*. at 105; and a violation of the 5th Amendment by depriving them of their property without just compensation. *Id*. at 105, n. 6. The three-judge District Court dismissed the plaintiffs' complaint, holding that there was no due process violation, *Id*. at 106; and rejected the 5th Amendment claim because there was no taking of private property. *Id*. at 105, n. 6. The court reached these conclusions despite acknowledging the Illinois tax system "severely penalizes" a homeowner who fails to redeem the delinquent taxes, and the forfeiture of the property was "extremely harsh when overdue taxes amount to only two or three percent of the property's value." *Id*. at 106. As stated, the United States Supreme Court affirmed this decision. *Balthazar v. Mari, Ltd.*, 396 U.S. 114 (1969).

Hobo, in following and relying upon the 150 plus year body of law, including the *Balthazar* decisions, took title to Little's property. This occurred on May 2, 2023 (Dkt. 124, ¶ 8), 23 days before the decision in *Tyler v. Hennepin County*, 598 U.S. 631 (2023). Assuming *Tyler* applies to a private tax purchaser – a premise Hobo denies but accepts for the purpose of this motion – then this is precisely the scenario – a private party's reliance on the law prior to a judicial determination of unconstitutionality – that forms the foundation for the good-faith defense, and its application shields Hobo from liability.[2]

---

[2] Hobo's argument is framed in a light most favorable to the Counties. However, there are questions as to whether *Tyler* applies to a private tax purchaser such as Hobo. *Tyler* involved a governmental agency taking title to property and retaining the surplus. It did not address the question in the third party complaint: Whether a private tax purchaser retaining the surplus amounts to a constitutional violation? The United States Supreme Court had the opportunity to address this precise question when deciding the *Tyler* case. The Court had before it two cases involving private tax purchasers, *Continental Resources v. Fair* and *Nieveen v. Tax 106*. *See Supreme Court Docket*, Nos. 22-160 and 22-237. Instead of addressing whether private tax purchasers violated a constitutional right in either of these two cases, on June 5, 2023, the Court

**F.      Adoption Of Scribe Holdings, LLC's Arguments.**

Hobo adopts and incorporates into its motion to dismiss the arguments presented by Scribe

Holdings, LLC in its motion to dismiss, except for Scribe's statute of limitations arguments.

WHEREFORE, the third party defendant, Hobo Investments, LLC, respectfully requests

this court to grant its motion and dismiss the Third Party Complaint (Dkt. 124) with prejudice

and/or the entry of an order that this Court deems just and equitable.

<div align="right">

Respectfully submitted,

/s/Joseph D. Ryan

Joseph D. Ryan
Attorney for Third Party Defendant
Hobo Investments, LLC

</div>

Joseph D. Ryan
Law Offices of Joseph D. Ryan, P.C.
1896 Sheridan Road, Suite 240
Highland Park, IL  60035
(847) 432-5971
ARDC No. 6192344
jryan@ryanlawoffices.com

---

remanded them to the Nebraska Supreme Court for reconsideration in light of its decision in *Tyler*. Although the Nebraska Supreme Court subsequently found that a constitutional violation is committed when a private tax purchaser retains the surplus, it did not do so until August 23, 2024. *Continental Resources v. Fair*, 317 Neb. 391 (2024) and *Nieveen v. Tax 106*, 317 Neb. 425 (2024). This is more than a year after Hobo acquired the deed to Little's property. Prior to *Tyler*, the Nebraska Supreme Court had held that private tax purchasers' retention of the surplus did not amount to a constitutional violation. *Continental Resources v. Fair*, 311 Neb. 184 (2022) and *Nieveen v. Tax 106*, 311 Neb. 574 (2022).

**<u>Local Rule 37.2 Certification</u>**

       Joseph D. Ryan, counsel for Hobo Investments, LLC, hereby certifies that on June 4, 2025, he conferred by telephone with Graeme Quinn, counsel for DuPage County, Gwen Henry, and Jean Kaczmarek; and Stephen Rice, counsel for Lake County, Holy Kim, and Anthony Vega.  Such consultation included a good faith effort to resolve the differences raised by this motion, but Hobo Investments, LLC and the third party plaintiffs were unable to reach an agreement.  An email was circulated by Graeme Quinn confirming compliance with Local Rule 37.2.  In addition, on May 25, 2025, Adam Hirsch, counsel for Scribe Holdings, LLC, had a Zoom video conference with Graeme Quinn and Trevor Prindle, counsel for the DuPage County parties, and Stephen Rice and Karen Fox, counsel for the Lake County parties, in which the same arguments, with one exception, raised by Hobo Investments, LLC were discussed without reaching an agreement.


                                      /s/Joseph D. Ryan           
                                        Joseph D. Ryan

**<u>CERTIFICATE OF SERVICE</u>**

I, Joseph D. Ryan, an attorney, state that, on June 10, 2025, this document has been electronically filed and served on the parties through the Court's E-Filing system in compliance with Local Rule 5.5, and by mail to anyone that is not a registered user of the system.

/s/Joseph D. Ryan

Joseph D. Ryan