IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICOLE BJERKE, *et al.*, <br><br> Third-Party Plaintiffs, <br><br> v. <br><br> DG ENTERPRISES, LLC, *et al.*, <br><br> Third-Party Defendants. | No. 23-cv-15838 <br><br> Judge Sara L. Ellis |

**THIRD-PARTY DEFENDANT ATTORNEY GENERAL RAOUL'S
MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS**

**INTRODUCTION**

Third-Party Plaintiffs, the treasurers and clerks of Peoria, Will, Carroll, Boone, and Kane counties, have filed a third-party complaint against "tax buyers" DG Enterprises, LLC-XPROP, LLC; Cortezz, LLC; and Realtax Developers, Ltd.; as well as Illinois Attorney General Kwame Raoul in his official capacity. In the underlying lawsuit, the plaintiffs are individuals who allege that certain Illinois counties are unconstitutionally depriving homeowners who fail to pay their property taxes of the equity in their homes in excess of any tax amounts due. Third-Party Plaintiffs, in turn, allege that any liability that could be imposed on them is "based solely on actions they are required to take" under the Illinois Property Tax Code, 35 ILCS 200/21-305. In Count I of their complaint (the only count naming Attorney General Raoul), Third-Party Plaintiffs seek a declaratory judgment regarding the constitutionality of the Property Tax Code. They do not allege that Attorney General Raoul enforces the Property Tax Code. Rather, they have named the Attorney General as a defendant based only on generic allegations that he is responsible for enforcing Illinois law and defending Illinois statutes. As established below, Third-Party Plaintiffs' claims are barred by the political subdivision standing doctrine, the Eleventh Amendment, and related standing principles.

## BACKGROUND

Plaintiffs in the underlying lawsuit allege that Illinois homeowners who have property in the defendant counties (including Peoria, Will, Carroll, Boone, and Kane counties, plus others) and fail to pay their property taxes "can be and are divested without compensation not just of title to their home, but of the monetary value of their home over and above the amount owed in taxes, penalties, interest, and costs." Dkt. 78 at ¶ 1

Plaintiffs allege that when homeowners in the defendant counties fall behind on their property tax obligations, a tax lien is placed on the property for the delinquent "Tax Amounts." *Id*. at ¶ 2. The Tax Amounts are sold to speculators, or "Tax Buyers," who obtain the right to collect the back taxes plus interest, as well as the county's rights to a tax lien on the property. *Id.* If the Tax amounts are not paid off within a certain time, the Tax Buyers may foreclose, in which case the former homeowner "receives no compensation for the home or the equity in it in excess of the Tax Amounts." *Id.* Citing *Tyler v. Hennepin County*, 598 U.S. 631 (2023), Plaintiffs allege that this situation/practice violates the Fifth Amendment. *Id.* at ¶ 3.

The counties moved to dismiss. They argued, among other things, that they were entitled to Eleventh Amendment immunity because "their duties relevant to collecting the Tax Amounts due on delinquent properties—issuing a tax deed and administering tax sales, respectively—are creatures of state court orders and state statutes." Dkt. 105 at 7. But the Court rejected this argument because the Plaintiffs framed their complaint to target "actions Defendants take, or do not take, after the enforcement of the tax law is complete and taxes are paid." *Id.* at 10. The Court explained that Plaintiffs "are not suing the [county] officials for any act they performed that state law compelled them to do." *Id.*

Nevertheless, the treasurers and clerks of Peoria, Will, Carroll, Boone, and Kane counties filed this third-party complaint against the Illinois Attorney General in his official capacity, as well as three Tax Buyers, DG Enterprises, LLC-XPROP, LLC; Cortezz, LLC; and Realtax Developers, Ltd. Third-Party Plaintiffs allege that "they do not have discretion to deviate from the procedures and requirements in the [Property Tax Code]," and that any liability that could be imposed on them is "based solely on actions they are required to take" under the Property Tax Code Dkt. 128 at ¶¶ 6, 10. They assert claims under the Illinois Constitution, 42 U.S.C. § 1983, and the Fifth Amendment to the United States Constitution. *Id.* at ¶ 1. In Count I of their complaint, which is the only count against Attorney General Raoul, Third-Party Plaintiffs seek a declaratory judgment, alleging that an "actual controversy exists" as to the constitutionality of the Property Tax Code in light of the Supreme Court's decision in *Tyler*. *Id.* at ¶ 27.

Third-Party Plaintiffs' sole allegations against Attorney General Raoul appear in paragraphs 12-13 of the complaint. They allege that the Attorney General is "responsible for enforcement of Illinois law" and for "defending the constitutionality of statutes enacted by the Illinois legislature." *Id.* at ¶¶ 12-13.

## ARGUMENT

The Court need not reach the merits of Third-Party Plaintiffs' claims. As a threshold jurisdictional matter, the claims against the Attorney General in his official capacity are barred by the political subdivision standing doctrine, which precludes a political subdivision of a state (including a county) from suing its own state in federal court, as well as state sovereign immunity, the Eleventh Amendment, and related standing principles.

3

### I. Third-Party Plaintiffs' claim against the Attorney General is barred by the political subdivision standing doctrine.

Third-Party Plaintiffs' claim cannot get out of the starting gate because it is barred by the political subdivision standing doctrine. *See City of Trenton v. New Jersey*, 262 U.S. 182, 188 (1923). Peoria, Will, Carroll, Boone, and Kane counties are political subdivisions of Illinois; they "never were and never have been considered as sovereign entities," but instead are "subordinate governmental instrumentalities created by the State to assist in the carrying out of state governmental functions." *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 362 (2009). As political subdivisions of Illinois, the counties—and their officials in their official capacity—lack standing to bring their takings claims against the State, including the Attorney General in his official capacity, in federal court. The political subdivision standing doctrine bars political subdivisions, like Third-Party Plaintiffs here, from advancing such claims against their parent state. *See City of Green Bay v. Bostelmann*, No. 20-cv-479, 2020 U.S. Dist. Lexis 53554, at *7-8 (Mar. 27, 2020) (applying political standing doctrine to dismiss claims brought by City of Green Bay and its clerk in her official capacity against Wisconsin officials), citing *City of Trenton*, 262 U.S. at 188, *City of E. St. Louis v. Circuit Court for the Twentieth Judicial Circuit*, 986 F.2d 1142, 1144 (7th Cir. 1993) (municipalities "cannot challenge state action on federal constitutional grounds"); *City of South Bend v. South Bend Common Council*, 865 F. F3d 889, 892 (7th Cir. 2017) (explaining that cities cannot sue their states). Third-Party Plaintiffs' claims fail at the outset.

### II. Third-Party Plaintiffs' claim against Attorney General Raoul should be dismissed on state sovereign immunity and Eleventh Amendment grounds.

In addition, Third-Party Plaintiffs' claim against the Attorney General is barred by state sovereign immunity and the Eleventh Amendment. To start, to the extent that the claim is based on the Illinois Constitution, it must be dismissed. State sovereign immunity bars any such state-

law claim. *See Benning v. Bd. of Regency Universities*, 928 F.2d 775, 779 (7th Cir. 1991) ("state rules of immunity are binding in federal court with respect to state causes of action"); 745 ILCS 5/1 (providing that "[t]he State of Illinois shall not be made a defendant or party in any court"). And so does the Eleventh Amendment. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.* (State sovereign immunity also bars this claim.

More broadly, the Eleventh Amendment entirely bars Third-Party Plaintiffs' claim against Attorney General Raoul (regardless of whether it is based on state or federal law) because the third-party complaint does not adequately allege that that the Attorney General has "some connection" to the enforcement of the Property Tax Code, 35 ILCS 200/1-1 *et seq.*, nor have does it adequately allege a threat of enforcement. Although there is an exception to the State's Eleventh Amendment immunity under *Ex Parte Young* for suits seeking prospective injunctive relief against state officials who are sued in their official capacity for an ongoing violation of federal law, *see* 209 U.S. 123, 155-57 (1908), the named official must have "some connection" to the enforcement of the act and "threaten" enforcement. *Id.*

Here, Third-Party Plaintiffs allege that Attorney General Raoul is "responsible for the enforcement of Illinois law." Dkt. 128 at ¶ 12. But this "nonspecific recitation of the Attorney General's job description does not pierce sovereign immunity." *Scholl v. Ill. State Police*, No. 24-cv-4435, 2025 U.S. Dist. Lexis 60496, at *14-15 (N.D. Ill. Mar. 31, 2025) (claims against Attorney General barred by Eleventh Amendment despite allegation that he is "responsible for enforcing and defending the laws of the state of Illinois" and serves as "the chief law enforcement officer of the state"). In *Ex Parte Young* itself, the Supreme Court explained that attorneys general and

governors are not proper defendants in cases challenging state legislation merely by virtue of their positions. *See* 209 U.S. 123 at 157. Likewise, the Seventh Circuit has made clear that a "general duty to enforce state laws" is not sufficient for the *Ex Parte Young* exception. *Doe v. Holcomb*, 883 F.3d 971, 976-78 (7th Cir. 2018) (claims against governor and attorney general barred because plaintiff had not shown a sufficient connection to the enforcement of the challenged statute); *see also Sherman v. Cmty. Consol. Sch. Dist. 21*, 980 F.2d 437, 441 (7th Cir. 1992); No. 22-cv-7171, *Ruiz v. Pritzker*, 2024 U.S. Dist. Lexis 53686, at *9 (N.D. Ill. Mar. 26, 2024) ("The Seventh Circuit has held that an attorney general's broad power to enforce state law is insufficient, on its own, to make him subject to suit."). Third-Party Plaintiffs' generic allegation that the Attorney General enforces Illinois law is not enough to satisfy *Ex Parte Young*.

Third-Party Plaintiffs' only other allegation relating to the Attorney General states that he is "responsible for defending the constitutionality of statutes enacted by the Illinois legislature." Dkt. 128 at ¶ 13. This too is insufficient. While the Attorney General may intervene in a case to defend the constitutionality of a state statute, see Fed. R. Civ. P. 5.1, that does not make it proper for Third-Party Plaintiffs to name him "as a *party*" in their complaint. *Guerro v. Ryan*, No. 97-cv-4554, 1997 U.S. Dist. Lexis 9574, at *2 (N.D. Ill. Jul. 2, 1997) (emphasis in original); *see also Ruiz*, 2024 U.S. Dist. Lexis 53686, at *11 (explaining that the Attorney General's role in supporting the constitutionality of a statute is distinct from enforcing it).

Additionally, Third-Party Plaintiffs' claim against the Attorney General fails because they have not alleged that he has enforced or threatened to enforce the Property Tax Code against them. *See Doe*, 883 F.3d at 997, *citing Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996) ("*Young* does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute."); *see also Okpalobi*

6

*v. Foster*, 244 F.3d 405, 415 (5th Cir. 2001) ("The requirement that there be some action or threatened enforcement action before *Young* applies has been repeatedly applied by the federal courts."). Absent such a threat, Third-Party Plaintiffs cannot invoke the *Ex Parte Young* exception to Raoul's Eleventh Amendment immunity. *Palmetto Properties Inc. v. County of DuPage*, 160 F. Supp. 2d 876, 880 (N.D. Ill. 2001) ("Although the plaintiffs argue that it is enough that Birkett is charged with enforcement, they have pointed to no case—in the context of the First Amendment or otherwise—where this has been held sufficient under *Young*.").

Relatedly, because the *Ex Parte Young* exception does not apply here, Third-Party Plaintiffs' Section 1983 claim fails. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). There is a limited exception to this principle for *Ex Parte Young* claims against state officials, *see id.* at 71 n. 10, but it does not apply here because, as discussed above, the claims against Attorney General Raoul do not fall within *Ex Parte Young*.

### III. Third-Party Plaintiffs' claim against Attorney General Raoul should be dismissed for lack of standing.

Finally, for similar reasons, Third-Party Plaintiffs' claims against the Attorney General should be dismissed for lack of standing. "[W]here a plaintiff sues a state official to enjoin the enforcement of a state statute, the requirements of *Ex Parte Young* overlap significantly with the last two standing requirements—causation and redressability." *Doe*, 883 F.3d at 975-76. "The party invoking federal jurisdiction bears the burden of establishing' standing." *Clapper v. Amnesty Int'l USA*, 568 U.S. 411-12 (2013). To establish standing, Third-Party Plaintiffs must allege an "actual or imminent," not "conjectural or hypothetical," injury that is "fairly traceable" to the defendants and "not the result of the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The Supreme Court "ha[s] repeatedly

reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original).

Here, Third-Party Plaintiffs have not alleged facts showing an imminent injury fairly traceable to the Attorney General. As this Court previously explained, Plaintiffs in the underlying lawsuit "are not suing the [county] officials for any act they performed that state law compelled them to do." Dkt. 105 at 10. Moreover, the third-party complaint alleges no facts suggesting an imminent injury attributable to the Attorney General. Dismissal is warranted under both the Eleventh Amendment and standing doctrine.

## CONCLUSION

Third-Party Plaintiffs' claim against Illinois Attorney General Kwame Raoul should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1), for lack of jurisdiction, and 12(b)(6), for failure to state a claim.

Dated: August 4, 2025

*/s/ Michael T. Dierkes*
Michael T. Dierkes
General Law Bureau/Government
Representation Division
Office of the Illinois Attorney General
115 South LaSalle Street
Chicago, IL 60603
Telephone: (312) 814-3672
Facsimile: (312) 814-4425
michael.dierkes@ilag.gov

*Attorney for Illinois Attorney General Kwame Raoul*