**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GWEN HENRY, et al.                         )

                                 )

    Third Party Plaintiffs,        )

                                 ) Case No.: 1:23-cv-15838

v.                              )

                                 )

THE STATE OF ILLINOIS, et al.     ) Honorable Sara L. Ellis

                                 )

    Third Party Defendants.       )

**THIRD PARTY DEFENDANT SCRIBE HOLDINGS, LLC'S
REPLY IN SUPPORT OF ITS
RULE 12(b)(6) MOTION TO DISMISS THIRD PARTY COMPLAINT**

Scribe moves to dismiss the Counties' third-party claims on three independent grounds. First, because Scribe is not a state actor it cannot be derivatively liable to the Counties on Plaintiffs' Section 1983 claims.[1] In response, the Counties argue that Scribe is a state actor under no fewer than three different legal theories. This scattershot approach fails; there is no basis for Scribe to be considered a state actor under any theory, and thus no basis for Scribe to remain in this case.

Second, the Counties' claims are each substantively deficient. Their contribution argument has been soundly rejected by nearly every court that has considered it, and for good reason. Their implied indemnity arguments cannot save their 3PC because they cannot plead the first element of that claim. The Counties try to separate their unjust enrichment claim from their contract with Scribe, but are unable to do so and thus that claim fails. Lastly, the Counties' claims against Scribe

---

[1] Capitalized and defined terms have the same meaning here as in Scribe's opening brief.

1

are untimely on the face of their 3PC. For all these reasons, Scribe should be dismissed from this case with prejudice.

## I.  The Counties' Complaint and response brief show that the state action question can be decided at the pleading stage as a matter of law.

Remarkably, the Counties' response brief does not contain a "facts" section. They cite to their 3PC only twice in fifteen pages. *See* Dkt. 157 at 4. The cited paragraphs are mostly legal argument; the only facts alleged are that Scribe did not pay compensation to Plaintiffs and somehow "compelled" the Counties to violate Plaintiffs' constitutional rights. Dkt. 124 ¶¶ 32-36.

After failing to plead or argue relevant facts, the Counties pivot on a dime to declare that "[w]hether a private entity acts under color of state law lacks a rigid formula and is typically a fact-intensive question that cannot be resolved on the pleadings." Dkt. 157 at 2. The Counties cannot fairly argue that a fact dispute exists without having pled or pointed to any facts. Whatever may happen in a typical state action case, by virtue of their pleading and argument the Counties all but admit the state action question as to Scribe in this case can be decided as a matter of law. This issue is thus appropriately decided on Scribe's Rule 12(b)(6) motion.

## II.  Scribe is not a state actor as a matter of law.

### A. Scribe is not a state actor under *Lugar* or any other "joint action" theory.

The Counties argue that Scribe should be considered a state actor under *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). Dkt. 157 at 2-5. A close reading of

*Lugar*, as well as Seventh Circuit cases applying *Lugar*, shows that *Lugar's* theory of state action cannot be applied to Scribe.

The plaintiff in *Lugar* brought a due process challenge to Virginia's prejudgment attachment statute. *See Lugar*, 457 U.S. at 925. The Supreme Court first asked whether the alleged rights deprivation was "caused by the exercise of some right or privilege created by the State…" *Id.* Second, "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* Applying this two-prong test, the Supreme Court found that Lugar could maintain his due process claim attacking Virginia's prejudgment interest statute. *Id.* at 942.

The *Lugar* court did two things that show why the Counties' claims against Scribe should not be treated as analogous to the plaintiff's claims in that case. First, the Supreme Court parsed Lugar's complaint to determine whether he was challenging the constitutionality of Virginia's prejudgment attachment statute generally, or that statute's use by the defendant. *Id.* at 940. The Court found that Lugar's Count I properly stated a claim that the statute was unconstitutional, but that his Count II failed because it attacked defendant's use of that statute, which "could in no way be attributed to a state rule or state decision." *Id.* Lugar "did present a valid cause of action under § 1983 insofar as he challenged the constitutionality of the Virginia statute; he did not insofar as he alleged only misuse or abuse of the statute." *Id.* This Court has ruled that Plaintiffs here may maintain their takings claims generally, but that does not convert Scribe into a state actor for the purpose of the Counties' claims against it.

Second, in *Lugar's* Footnote 21, the Supreme Court stated that "we do not hold today that a private party's mere invocation of state legal procedures constitutes 'joint participation' or 'conspiracy' with state officials satisfying the § 1983 requirement of action under color of law." *Id.*, 457 U.S. at 939 n.21. Rather, "[t]he holding today, as the above analysis makes clear, is limited to the particular context of prejudgment attachment." *Id.* In other words, the *Lugar* court's decision is based on the particularities of prejudgment attachment; i.e. an *ex parte* court-ordered deprivation of property without a final judgment.

The *Lugar* framework was expressly limited to that context and was not intended to apply as a universal standard. The due process restrictions on prejudgment attachments are a wholly different constitutional creature than failure to pay just compensation for the taking of property. In the former, the state's statutory regime must pass muster under the due process clause. In the latter, once a taking is established the only question is one of damages. As the Court has noted, Plaintiffs here are not asking that tax buyers like Scribe disgorge or return their property, and Plaintiffs' due process claims were dismissed. Dkt. 105 at 29-30; 36.

Northern District and Seventh Circuit cases have expressly recognized the limits of *Lugar*. In *Spiegel v. McClintic*, No. 16 C 9357, 2017 WL 4283727 (N.D. Ill. Sept. 27, 2017), *aff'd,* 916 F.3d 611 (7th Cir. 2019), this Court held that "the Supreme Court's *Lugar* decision is limited to the particular context of prejudgment attachment." *Spiegel*, 2017 WL 4283727, *7, *citing Lugar*, 457 U.S. at 939 n.21. "Furthermore, the Seventh Circuit has not adopted [plaintiff's] interpretation of the

4

*Lugar* decision and continues to require an agreement or understanding among the state actor and the private actor." *Id.* (dismissing § 1983 claims alleging First and Fourteenth Amendment violations by private citizen).

Similarly, in *Scott v. Univ. of Chicago Med. Ctr.*, 107 F.4th 752, 759 (7th Cir. 2024), the Seventh Circuit expressly distinguished *Lugar*, and held that a private actor's choice to model its behavior "around public guidelines" "cannot support an inference of 'joint action.'" *See also Scott*, 107 F.4th at 758 n.7. Although *Scott* was decided just last year and discussed at length the standard for finding a private company to be a state actor, the Counties all but ignore it. Their only citation is within a string-cite for the proposition that the state action inquiry is typically fact-intensive and not appropriate for decision at the pleading stage. This is telling, as the *Scott* court upheld this Court's 12(b)(6) dismissal of a complaint on state action grounds. *See also Hinman v. Lincoln Towing Serv., Inc.,* 771 F.2d 189, 192 (7th Cir. 1985) (distinguishing *Lugar*). The same result is warranted here.

Even if *Lugar* is applied, the Counties' state action analysis is flawed. They begin by asserting that the tax sale process "is entirely Scribe's to direct," citing, as a *non-sequitur*, the entire PTC. Dkt. 157 at 3. In reality, it is the Counties who are responsible for collecting property taxes by listing delinquent properties for sale, issuing tax liens, and conducting annual tax sales. 35 ILCS 200/21-75; 160; 215. Tax buyers like Scribe play no role in this tax collection process. Scribe does act to enforce its tax lien, a step performed by private parties in Illinois since at least the mid-to-late 1800's. *See* 1870 Illinois Constitution, Article IX, §4, §5; 1970 Illinois

Constitution, Article IX, §8; Section 253 of Revenue Act of 1872; *see also Gage v. Davis*, 129 Ill. 236 (1889) (tax deed issued to private party on July 16, 1879). The joint action required under *Lugar* is sorely lacking with regard to the PTC.

The Counties proceed to link Scribe's actions taken pursuant to the PTC with the "first prong of the *Lugar* test." Dkt. 157 at 4. But the first prong is not the basis for Scribe's motion to dismiss. This Court has held that Plaintiffs stated a takings claim against the Counties and can pursue their claims for just compensation. Dkt. 105 at 21-25; 36. That is enough to satisfy the first prong of the *Lugar* test. The second prong of the Lugar test is what has become the traditional state action analysis performed in *Scott* and elsewhere, and is where the Counties' claims fail. *See Lugar*, 457 U.S. at 937-9. The Counties' 3PC fails to satisfy this prong for all of the reasons stated in Scribe's opening brief and in this brief.

## B. Scribe did not perform a traditional, exclusive State function.

The Counties next argue that Scribe "performed a function traditionally reserved to the State." Dkt. 157 at 5 (header "B"). In making this argument, the Counties have chopped the legal test in half. It is not enough that the power at issue is one traditionally exercised by the state. *Scott*, 107 F.4th at 760, *citing Jackson v. Metro. Edison Co.,* 419 U.S. 345, 352 (1974); *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 819 (2019). That power must also be *exclusive* to the state. Tradition alone is not enough. The lien enforcement actions taken by Scribe about which the Counties complain are not exclusive state functions.

The Counties argue that Scribe's "choices and actions necessary to seize property" were traditional and exclusive public functions. Dkt. 157 at 7. *Hinman*, 771 F.2d at 193, shows otherwise. Plaintiff Hinman sued defendant Lincoln Towing Service for violating her due process rights by towing her car from a private parking lot and demanding that she pay a fee before returning it. *Id.* at 191. The Seventh Circuit rejected Hinman's argument that Lincoln Towing was performing a traditional, exclusive state function and thus could be liable for due process violations. Because private property owners in Illinois "have long had the right" to tow unauthorized vehicles from their property at the owner's expense, and because "[t]he availability of and right to exercise state-created liens has never been an exclusive prerogative of the State," there was no state action. *Id.* at 193.

If Lincoln Towing was not performing a traditional, exclusive public function, neither was Scribe. The Counties argue that *Hinman* is irrelevant, but make no argument that the vehicle lien at issue in that case is analytically distinct from the tax lien at issue here. No meaningful distinction can be drawn. In both cases, the plaintiff complained of a "private act taken pursuant to" a state statute. *Id.* at 193. In both cases, the defendant's actions taken to enforce a lien are not enough to make their choices "decision[s] of the state for purposes of the Fourteenth Amendment." *Id.* To hold otherwise "would open up virtually the entire arena of private conduct to constitutional challenge." *Id.*

### C. Scribe and the Counties are not interdependent.

In response to Scribe's argument that it was not intertwined with the Counties, *see* Dkt. 137 at 7-8, the Counties argue that *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 303 (2001) makes Scribe a state actor because Scribe invoked "the machinery of state power." Dkt. 157 at 8.

That's not what *Brentwood* stands for, and this is a classic "proves too much" argument. Any civil plaintiff who uses the courts to try to enforce a legal claim or collect on a judgment is, per the Counties, invoking "the machinery of state power." But every civil plaintiff is not a state actor. The Counties' reliance on *Marsh v. Alabama*, 326 U.S. 501, 506-09 (1946) here, *see* Dkt. 157 at 6, fails. They say that Scribe "mirrors" the corporate company town owner found to be a state actor in *Marsh* because it invoked statutory authority that led to entry of a court order. *Id.* Scribe, like any civil plaintiff, initiated a lawsuit to obtain a remedy available to it under Illinois law. In that regard, it is no different from Plaintiffs, who have invoked Section 1983 in hopes of obtaining a favorable court order from this Court. Any plaintiff who prevails on a money damages claim and obtains a judgment will rely on the courts and, if necessary, law enforcement, to collect on their judgment. Using the courts does not transform a private party into a state actor.[2]

For all of these reasons, Scribe is not a state actor and the Counties' 3PC should be dismissed on that basis.

---

[2] The Counties cite *Cont'l Res. v. Fair*, 317 Neb. 391 (2024), without addressing Scribe's analysis of that case. *See* Dkt. 157 at 7. The Nebraska Supreme Court concluded that tax buyers in that state were engaging in tax collection, which is not the case in Illinois.

### III.     The Counties' claims fail as a matter of law.

### A.  Section 1988 cannot save the Counties' contribution claim.

Scribe moves to dismiss the Counties' Count III because contribution is not allowed under Section 1983. Dkt. 137 at 10-11. In response, the Counties argue that Section 1988 allows them to seek contribution under Illinois law. Dkt. 157 at 10-11.

The Counties are wrong. They say that "courts" allow contribution claims to proceed under Section 1988, but cite only one such instance: a Connecticut case that turned on the particularities of that state's contribution regime and a Third Circuit precedent that was subsequently discarded by the Supreme Court in *Northwest Airlines, Inc. v. Transp. Workers Union of America, AFL-CIO*, 451 U.S. 77, 91 (1981) and by other courts after that. Dkt. 157 at 10, *citing Hoffman v. McNamara*, 688 F. Supp. 830, 834 (D. Conn. 1988).[3]

Scribe cited two federal Illinois cases that directly reached and rejected a contribution claim. Dkt. 137 at 10-11. In *Burris v. Cullinan*, No. 09-3116, 2009 WL 3575420, *8-10 (C.D. Ill. Oct. 23, 2009), the court undertook a thorough and persuasive analysis of whether Section 1988 allows for contribution claims, and concluded that it did not. That court noted that its defendants were relying on *Miller v. Apts. and Homes of N.J. Inc.*, 646 F.2d 101 (3rd Cir. 1981), which was the case that the Supreme Court zagged away from in *Northwest Airlines, Inc*, 451 U.S. at 91. *See*

---

[3] In *Marine Bank of Champaign-Urbana v. United States*, 739 F. Supp. 1257, 1259 (C.D. Ill. 1990), also cited by the Counties, the court noted in dicta that Section 1988 allows state law to fill gaps in federal common law, but *Marine Bank of Champaign-Urbana* was not a Section 1983 case and that court held the Tax Code provision at issue did not allow for contribution.

*also, e.g., Mathis v. United Homes, LLC,* 607 F. Supp. 2d 411, 427 n.17 (E.D.N.Y. 2009) ("the continued precedential value of *Miller* is suspect").

The *Burris* court went on to undertake a "three-step process" to determine if a right to contribution exists under Section 1988. *Burris*, 2009 WL 3575420 at *9. "[T]he relevant inquiry for § 1988 purposes is whether Illinois' contribution law is consistent with § 1983." *Id.* Analyzing the statutory language as well as the policy rationale for the Illinois Joint Tortfeasor Act, the *Burris* court found that Section 1983's deterrent function was inconsistent with Illinois law. "Indeed, the deterrent effects of § 1983 would be reduced by allowing state actors to seek contribution, and would thus frustrate one of the purposes behind the provision." *Id.* Arguments to the contrary were "neither compelling nor persuasive" and thus that court dismissed defendants' cross-claims for contribution. *Id.*

The Counties have done nothing more than repeat the unsuccessful arguments made in *Burris* and in *Perks v. Cnty. of Shelby*, No. 09-3154, *3, 2009 WL 2985859 (C.D. Ill. Sept. 15, 2009). Those arguments should be rejected as applied to Scribe.

**B. The Counties cannot establish a pre-tort relationship that is a prerequisite for their claim for implied indemnity.**

Scribe moved to dismiss the Counties' Count IV because they failed to allege a pre-tort relationship that Illinois law recognizes as sufficient to support a claim for implied indemnity. Dkt. 137 at 11-12. In response, the Counties argue that the PTC creates such a relationship out of its "statutory framework." *Id.* at 12. They say that "Illinois law is broader than Scribe's assertion that implied indemnity is only available for vicarious liability." *Id.* at 11

Their cited case says the exact opposite. "Implied indemnity, however, is viable in the quasi-contractual context, but only if premised on vicarious liability." *UIRC-GSA Holdings Inc. v. William Blair & Co., L.L.C.*, 289 F. Supp. 3d 852, 861 (N.D. Ill. 2018). In *Jordan v. Jewel Food Stores, Inc.*, 83 F. Supp. 3d 761, 772-3 (N.D. Ill. 2015), the court noted that "Illinois courts have generally refused to expand the set of qualifying pre-tort relationships." Only "classic" relationships like "lessor and lessee; employer and employee[;] owner and his lessee; [and] master and servant" qualify. *Id.* at 772. The relationship between the Counties and Scribe fits none of these categories. That fact is dispositive of the Counties' implied indemnity claim.[4]

## C. The Counties are not blameless.

The Counties cannot establish the second element of implied indemnity either. *UIRC-GSA Holdings Inc.* cites *Mizuho Corp. Bank (USA) v. Cory & Assocs., Inc.*, 341 F.3d 644, 652 (7th Cir. 2003), to describe the type of blamelessness required, and that case bolsters Scribe's argument for dismissal. In *Mizuho*, the Seventh Circuit held that "[a] claim of implied indemnity under Illinois law arises only where the indemnitee (here, [defendant]) was guiltless with respect to the underlying tort." *Mizuho*, 341 F.3d at 652-3. *Jinwoong, Inc. v. Jinwoong, Inc.,* 310 F.3d 962, 967 (7th

---

[4] The Counties distort *UIRC-GSA Holdings Inc.* by using its holding on the second element of implied indemnity to support their argument on the first. They assert that the *UIRC-GSA Holdings Inc.* court held that "some other legal principle" could support the existence of a pre-tort relationship, and that one such principle could be the existence of statutory duties. Dkt. 157 at 12. But that Court used the phrase "some other legal principle" to refer to the second element of blamelessness, not the first, which is the nature of the parties' relationship. *UIRC-GSA Holdings Inc.*, 289 F. Supp. 3d at 861.

Cir. 2002), cited by the Counties, illustrates that by "guiltless" courts mean blameless though legally liable through doctrines such as strict liability.

By denying the Counties' motion to dismiss Plaintiffs' claims, this Court ruled that Plaintiffs stated direct claims against the Counties, i.e. that the Counties are not blameless as a matter of law. The Counties cannot articulate a legal theory that would find them blameless though liable to Plaintiffs. Their best effort is to assert that they were mere functionaries in a process that Scribe "initiated and directed." Dkt. 157 at 13. But it was DuPage County who put Plaintiff Sharritt's property up for sale and collected taxes on it. Those actions were not directed by Scribe. Scribe simply followed the PTC in initiating a lawsuit, just like any other private plaintiff who brings a statutory claim. That does not make the Counties blameless.

### D. The Counties' unjust enrichment claim fails because their relationship with Scribe is governed by a contract.

The Counties concede that where a contract governs "the specific subject matter of the claim," the plaintiff cannot maintain a claim for unjust enrichment. Dkt. 157 at 13. "Subject matter" in this context is "broadly construed" and if a contract exists that governs the parties' relationships "generally," there can be no claim for unjust enrichment. *Illinois ex rel. Hammer v. Twin Rivers Ins. Co.*, No. 16 C 7371, 2017 WL 2880899. *11 (N.D. Ill. July 5, 2017) (dismissing unjust enrichment claim).

The Counties argue that Scribe was not unjustly enriched until it recorded its tax deed, which the Counties claim occurred in some sort of post-contractual period. Dkt. 157 at 13. Their attempted distinction between the tax sale and recording the tax deed is contradicted by *Application of Cnty. Collector for Non-Payment of Gen.*

12

*Taxes for Year 1968 & Prior Years*, 27 Ill. App. 3d 646, 650 (1st Dist. 1975). That case says that both the initial certificate and the eventual tax deed are "evidence of the contract" between the county and the tax buyer, and that the post-sale relationship of the parties "constitute[s] contractual rights and duties." *Id., see also Smith v. D. R. G., Inc.,* 30 Ill. App. 3d 162, 169 (1st Dist. 1975), *rev'd on other grounds at* 63 Ill. 2d 31 (1976) (tax buyer's "right in the subject real estate was contractual").

A different court has characterized the tax buyer's certificate of purchase as a "contingent right to title" to the property at issue, i.e. "an absolute right to receive title to the property if redemption is not made within the statutory period." *Jackson v. Midwest P'ship*, 176 B.R. 156, 158 (N.D. Ill. 1994). This description shows that the Counties' effort to separate the certificate of purchase from the tax deed makes no sense. They are different parts of the same business relationship and components of the same general subject matter, i.e. the ripening of a tax lien into a tax deed. Because the Counties' relationship with Scribe is governed by a contract, they cannot maintain their claim for unjust enrichment.

## IV. The Counties offer no response to Scribe's limitations arguments.

### A. The Counties' contribution and indemnity claims are untimely based on the 3PC and Plaintiffs' counsels' later admission.

Scribe moved to dismiss because the Counties' claims are untimely on the face of their Third-Party Complaint. Dkt. 137 at 13-15. In response, the Counties make no substantive argument, and cite no authority. Dkt. 157 at 14-15. Instead, they note that the Court denied their motion to dismiss Plaintiffs' complaint on limitations

13

grounds and declined to rule on the applicable statute of limitations. *Id.* The Counties take this holding as dispositive in their favor.

The Counties' attempted punt on this issue fails because they explicitly plead dispositive facts that Plaintiffs previously left strategically vague. The Counties themselves noted that Plaintiffs' complaint was "woefully devoid of all details associated with the named Plaintiffs' property…" Dkt. 89 at 11 n.3. Plaintiffs' vagueness appears to have led to the Court's denial of the Counties' motion to dismiss on limitations grounds. Dkt. 105 at 14-16; *but see, e.g., Joe Phuong Nguyen v. LaSalle Bank Nat'l Ass'n for Morgan Stanley Mortg. Loan Trusts 2005-AR6*, No. SACV-09-881-DOCSSX, 2010 WL 11595432, *6-7 (C.D. Cal. July 9, 2010) (granting Rule 12(b)(6) motion to dismiss on limitations grounds because "clear application" of statute of limitations "should not be muddled by artful, vague, and conclusory pleading by a plaintiff").

The Counties cleaned up Plaintiffs' complaint by explicitly and unambiguously pleading that Scribe obtained a tax deed on Plaintiff Sharritt's property on February 21, 2019. Dkt. 124 ¶ 7. In a similar pending tax buyer class action brought by the same plaintiffs' counsel, on class certification (i.e. freed from pleading-stage strategic considerations), plaintiffs took the position that the appropriate statute of limitations is two years. *See Kidd v. Pappas,* No. 22 C 7061, 2025 WL 1865983, *12 (N.D. Ill. July 7, 2025) (class's proposed class definition limited to those to whom a tax deed was issued within two years of the date of the complaint). The *Kidd* court accepted the plaintiffs' class definition in certifying that class. *Id.* at *20. There does not appear to

14

be any dispute as to (1) the date on which Plaintiffs' hypothetical claims against Scribe accrued; and (2) the applicable statute of limitations.

This newfound clarity means the Counties' claims against Scribe are untimely on the face of the 3PC. *See* Dkt. 137 at 13-15. Thus, Rule 12(b)(6) is an appropriate vehicle for dismissal because the Counties have pleaded themselves out of the limitations period on those claims. *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008). This Court can so rule without revisiting its denial of the Counties' motion to dismiss addressed to the Plaintiffs' class allegations at large.

**B. The Counties' unjust enrichment claim is direct, not derivative, and is therefore untimely.**

In any event, the Court's denial of the Counties' motion to dismiss on limitations grounds has nothing to do with the Counties' unjust enrichment claim against Scribe. Unlike the Counties' contribution and implied indemnity claims, their unjust enrichment claim is not derivative. The Counties allege directly that Scribe unjustly retained a benefit at their expense. Dkt. 124 ¶ 53. That claim is untimely, *see* Dkt. 137 at 15, and the Counties offer no argument to the contrary.

**CONCLUSION**

For all of the reasons stated herein, the Counties' Third-Party Complaint against Scribe, Dkt. 124, should be dismissed with prejudice in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Respectfully submitted,
Scribe Holdings, LLC

*/s/ Adam N. Hirsch*

15

Adam N. Hirsch
ARDC #6275127
Schoenberg Finkel Beederman Bell Glazer, LLC
300 South Wacker Drive, Suite 1500
Chicago, Illinois 60606
adam.Hirsch@sfbbg.com

Gregory M. Reiter
ARDC #6227066
Reiter Law Offices, Ltd
208 West Washington Street, Suite 2113
Chicago, Illinois 60606
greiter@reiterlawoffices.com

*Attorneys for Third-Party Defendant Scribe Holdings, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 15, 2025 a true and correct copy of the foregoing document has been filed electronically and served on the parties via the Court's electronic filing system or by mail to anyone unable to accept electronic filings. Parties may access this filing through the Court's CM/ECF system.

<u>*/s/ Adam N. Hirsch*</u>