IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| GWEN HENRY, *et al.*, | ) | |
| | ) | |
| Third Party Plaintiffs, | ) | |
| | ) | Case No. 1:23-cv-15838 |
| v. | ) | |
| | ) | The Honorable Sara L. Ellis |
| THE STATE OF ILLINOIS, *et al.*, | ) | |
| | ) | |
| Third Party Defendants. | ) | |

**REPLY OF THIRD PARTY DEFENDANT HOBO
INVESTMENTS, LLC IN FURTHER SUPPORT OF ITS
MOTION TO DISMISS THE THIRD-PARTY COMPLAINT**

Third Party Defendant Hobo Investments, LLC ("Hobo"), by and through its attorneys, Joseph D. Ryan of Law Offices of Joseph D. Ryan, P.C., respectfully submits this reply memorandum in further support of its motion to dismiss the third-party complaint.

**ARGUMENT**

In responding to Hobo's motion to dismiss, the Counties have crafted a version of their claims vastly different from the allegations of their complaint. A simple comparison of the complaint's actual allegations to the arguments that the Counties now make to save their claims shows how conclusively they have pleaded themselves out of court.

**I.  Hobo was not a state actor or acting under color of law**

It is important to recall that finding a private entity to be acting under color of law for purposes of 42 U.S.C. § 1983 is the exception, not the rule. Private actors, like Hobo, cannot usually be sued under § 1983. *Alarm Detection Sys., Inc. v. Village of Schaumburg*, 930 F.3d 812, 825 (7th Cir. 2019), *citing American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). A "private entity can qualify as a state actor in a few limited circumstances." *Manhattan Comm.*

*Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019). This situation, as alleged in the third-party complaint, does not fall within any of those circumstances.

A.     **The Counties do not allege that they entered into a conspiracy or joint action with Hobo**

A private entity may act under color of state law when it is a "willful participant in joint action with the State or its agents." *L.P. v. Marian Catholic High School*, 852 F.3d 690, 696 (7th Cir. 2017), *quoting Dennis v. Sparks*, 449 U.S. 24, 27 (1980). To get past the pleading stage on this theory, the Counties must allege that they and Hobo "had a meeting of the minds and thus reached an understanding . . . to deny" the plaintiffs a constitutional right. *Scott v. University of Chicago Med. Cntr.,* 107 F.4th 752, 758 (7th Cir. 2024), *quoting Wilson v. Warren County*, 830 F.3d 464, 468 (7th Cir. 2016). "It is not sufficient to allege that the (private and state) defendants merely acted in concert or with a common goal. There must be allegations that the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding." *Scott v. Walker*, 2022 WL 1421500 at *6 (N.D. Ill. May 5, 2022), *quoting Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204, 1206 (7th Cir. 1980) (citation omitted). *See also Gramenos v. Jewel Co., Inc.*, 797 F.2d 432, 435 (7th Cir. 1986), *citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) (To establish that a private party is a "willful participant in joint activity with the state or its agents" requires "a conspiracy, an agreement on a joint course of action in which the private party and the state have a common goal."). Factual allegations are required and "mere allegations of joint action or a conspiracy do not demonstrate that the defendants acted under color of state law and are not sufficient to survive a motion to dismiss." *Scott*, 2022 WL 1421500, at *6, *quoting Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019).

The complaint contains no factual allegation of a "meeting of the minds." More than that, the Counties disclaim any such agreement, instead portraying Hobo and the Counties as entirely

independent and dealing at arms-length or even in a somewhat adversarial manner. For example, the Counties allege:

- the "tax buyer is entirely responsible for their own conduct in obtaining a tax deed." Dkt #124, ¶ 2[1];

- Hobo "was the sole moving force behind seeking and obtaining a tax deed(s)." Dkt #124, ¶ 32;

- Hobo "compelled [the Counties] to violate the former property owners [sic] constitutional rights. Dkt #124, ¶ 36;

- "The Third Party Defendants [including Hobo] are solely responsible for the alleged takings and excessive fines claims against" the Counties[.] Dkt #124, ¶ 40;

- "The Class Third Party Defendants [including Hobo] are the sole moving force behind all the statutorily mandated steps prior to obtaining a tax deed." Dkt #124, ¶ 45; and

- "All acts that violated the former property owners' civil rights as alleged in the present suit were conducted and initiated by the Class Third Party Defendants [including Hobo]." Dkt #124, ¶ 48.

Not only must the Counties' allegations be understood to deny any agreement with Hobo, but their brief further makes clear that they could not make such an allegation. Far from conspiring with the Counties, they say, Hobo "invoked judicial authority that compelled the Counties to act[.]" Dkt #159, p. 3. *See also* Dkt #159, p. 5 (the county clerks "are obligated to act"). The Counties further reject any possibility of a conspiracy or joint action with Hobo when they assert that the process of obtaining a tax deed was "entirely Hobo's to direct." Dkt #159, p. 4.

Having demonstrated through their allegations that they did not reach "a meeting of the minds" with Hobo that amounted to an "understanding . . . to deny" the former property owners' constitutional right (*see Scott*, 107 F.4th 752, 758 (7th Cir. 2024)), the Counties' are left with little more than the contention that Hobo was "wielding state power" (Dkt #159, p. 5), and thereby

---

[1] Hobo takes as true all well-pleaded facts in the Counties' third-party complaint only for purposes of the motion to dismiss. *See Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016).

became a state actor for purposes of § 1983 merely by invoking a state-created procedure – that is, by applying to the state court for relief as provided by statute. Dkt #159, p. 3. The Counties rely upon *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922 (1982), in that respect (Dkt #159, p. 5) but it does not support their argument. *Lugar* involved a system "whereby state officials will attach property on the *ex parte* application of one party to a private dispute[.]" *Lugar*, 457 U.S. at 942. No such system is involved here. The *Lugar* Court explicitly stated that "we do not hold today that 'a private party's mere invocation of state legal procedures constitutes 'joint participation' or 'conspiracy' with state officials satisfying the § 1983 requirement of action under color of law. The holding today, as the above analysis makes clear, is limited to the particular context of prejudgment attachment." *Lugar*, 457 U.S. at 938 n. 21. This Court has acknowledged this limitation in *Spiegel v. McClintic,* 2017 WL 4283727 at *7 (N.D. Ill. Sept. 9, 2017) ("the Supreme Court's *Lugar* decision 'is limited to the particular context of prejudgment attachment.'"), *aff'd* 916 F.3d 611 (7th Cir. 2019). *See, American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 58 (1999) (The U.S. Supreme Court itself, in emphasizing that the language of *Lugar* "must not be torn from the context out of which it arose," declined to extend *Lugar* to defendants that made "no effort to seize the plaintiffs' property "by an *ex parte* application to a state official").

      The Counties allege that Hobo independently "obtained court orders compelling the transfer of title[.]" Dkt #159, p. 5. If that is enough to make a private party a state actor, then any private entity that seeks and obtains a court order directing a county official to take some action is subject to being treated as a state actor. "Of course, merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co–conspirator or a joint actor with the judge." *Dennis*, 449 U.S. at 28. "After all, our entire adversarial judicial system relies exclusively on private parties' efforts to get the wheels of justice turning. That however does not (and cannot)

4

mean that every court-granted motion can be considered state action by the litigant." *Christopher LaSalle & Co., Inc. v. Heller Fin., Inc.*, 731 F.Supp. 279, 284 (N.D. Ill. 1990). *See also Tulsa Prof'l Collection Servs. v. Pope*, 485 U.S. 478, 485 (1988) ("Private use of state-sanctioned private remedies or procedures does not rise to the level of state action").

The Counties do not allege an agreement with Hobo in their pleading and their briefing eliminates any possibility that they could make such an allegation. Without that, they cannot establish joint action.

**B.     Hobo did not perform traditionally exclusive public functions**

While a private entity may be a state actor when it is performing an action that is "traditionally the exclusive prerogative of the State" (*Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353 (1974)), that "test is rarely met." *Listecki v. Official Committee of Unsecured Creditors*, 780 F.3d 731, 740 (7th Cir. 2015), *citing Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 824 n. 11 (7th Cir. 2009). The Counties cannot meet it here.

The third-party complaint is far from clear in identifying an exclusive State function that Hobo allegedly performed, but in their response brief, the Counties assert that "Hobo clearly performed a traditional, exclusive State function when it perfected a taking by recording its deed and transferring property to itself." Dkt #159, p. 6. The Counties thereby identify two acts that they evidently rely upon as traditionally exclusive State functions: (1) recording a deed; and (2) "transferring property to itself." But their contention cannot withstand scrutiny.

First, the Counties do not cite any authority to support the proposition that recording a deed is a traditional, exclusive government function. Certainly, actually entering a deed into the county's records is such a function (*see* 55 ILCS 5/3-5010), but that is not what the Counties mean.

5

The act of presenting a deed to the county to be recorded – which is all that Hobo could be alleged to have done – is usually undertaken by private parties.

Second, Hobo did not, and indeed could not, transfer property to itself. *See Kovilic v. City of Chicago*, 351 Ill.App.3d 139, 145 (1st Dist. 2004) (a transferee of property can never obtain a greater interest in the property than the person conveying the property has the power to convey). The property was transferred by virtue of a tax deed which, in this case, was prepared by DuPage County, signed by the DuPage County Clerk, and presented to Hobo by DuPage County. Dkt #124, ¶¶ 8, 24, and 47. As the Counties eventually concede, it was not Hobo, but "the Clerks" that executed "deeds transferring ownership." Dkt #159, p. 7.

Failing to find any traditionally exclusive State function in anything Hobo is alleged to have done, the Counties shift gears and try to attribute to Hobo some of the actual public functions involved in this case. In that regard, they settle on the general assertion that "tax collection [is] a function historically administered with a high degree of exclusivity by state and municipal governments." Dkt #159, p. 6. But "tax collection" is not what Hobo is alleged to have done. The Counties' complaint does not allege that Hobo collected any taxes, but that the Counties did. *See* Dkt #124, ¶¶ 17-20. Hobo was on the opposite end of the process. In order to obtain a tax deed, Hobo had to **pay** the taxes due, not collect them. *See* 35 ILCS 200/21-240.

If the Counties' point is that the overall tax collection process traditionally proceeds without the involvement of private entities as purchasers at tax sales, then they are incorrect as a matter of law and history. The system of selling delinquent property taxes in Illinois to private individuals or entities stretches back around 200 years, to at least the 1820s. *See, e.g., Garrett v. Doe ex dem. Wiggins*, 2 Ill. 335 (1837) (property sold for taxes on January 17, 1829, pursuant to the Revenue Law of 1827). Private tax purchasers are separate and distinct from the government,

but they are vital to the system long established in Illinois. "Sections of the Revenue Act which provide for certificates of purchase and for issuance of tax deeds are legislative means to encourage buyers at tax sales, increase collection of tax revenue by taxing authorities and free land to once again enter the stream of commerce and bear its aliquot share of the tax burden." *City of Chicago v. City Realty Exchange, Inc.*, 127 Ill.App.2d 185, 189 (1st Dist. 1970), *citing Cherin v. R. & C. Co.*, 11 Ill.2d 447, 452 (1965). Hobo's participation in the tax sale process, like that of generations of tax buyers before it, was a business decision and not the exercise of any exclusive governmental power. *See United States v. Bebris*, 4 F.4th 551, 560–62 (7th Cir. 2021) (no state action where private party acts for private purposes or to "further its own ends"); *Hinman v. Lincoln Towing Serv., Inc.*, 771 F.2d 189, 193 (7th Cir. 1985) ("That a private entity performs a function which services the public does not make its acts state action"); *San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.*, 483 U.S. 522, 544 (1987) (same).

Furthermore, "[i]t is not enough that the federal, state or local government exercised the function in the past, or still does. … Rather, to qualify as a traditional, exclusive public function within the meaning of [Supreme Court] precedents, the government must have traditionally *and* exclusively performed the function." *Manhattan Community Access Corp. v. Halleck,* 587 U.S. 802, 809 (2019) (emphasis in the original).

The Counties do not point to any historical evidence that tax collection generally, let alone property tax collection, was traditionally the exclusive job of the government. And, in any case, Hobo has presented evidence to the contrary right here in the State of Illinois.

The Counties cite three decisions in support of their contentions, but none is helpful here. The facts and circumstances of *Marsh v. State of Alabama*, 326 U.S. 501 (1946), bear no relationship to this case. The Court's passing comment in *Flagg Bros., Inc. v. Brooks*, 436 U.S.

7

149 (1978), that "tax collection" is a function to "have been administered with a greater degree of exclusivity by States and municipalities than has the function of so-called 'dispute resolution'" (*Id.* at 163) provides no meaningful guidance for this case. Finally, *Continental Resources v. Fair*, 317 Neb. 391 (2024), is a Nebraska Supreme Court decision addressing Nebraska's tax certificate sale process. It is neither binding on this Court, nor persuasive because it deals with a different statutory scheme. Moreover, *Fair* explicitly did not decide whether a tax buyer's participation in the tax sale process means that it performs a traditionally exclusive State function. *Id.* at 408 ("We find that we need not determine whether [the tax buyer] is a state actor under the public function test, because we find that it qualifies as a state actor on the basis of its joint action with governmental entities.").

Hobo did not carry out a traditionally exclusive public function, but one that has been performed by private entities for a very long time. There is no basis there to find Hobo to be a State actor.

**C.  Hobo and the Counties are not entwined**

To properly plead this theory, the Counties need to show that they and Hobo "are interdependent 'to the point of largely overlapping identity.'" *Scott*, 107 F.4th at 758, *quoting Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 303 (2001). The third-party complaint is silent as to any such overlapping identity. The Counties' brief goes even further, showing without doubt that there could be no allegation of interdependence.

As noted above, the third-party complaint not only fails to allege facts and circumstances to show entwinement, but could hardly be more clear that there was complete separation between Hobo and the Counties. *See, e.g.*, Dkt #124, ¶¶ 2, 19, 24, 32, 36, 40, 45 and 48. As the Counties further describe it in their brief, Hobo's role was to petition for and obtain a court order that

"obligates the County Treasurers and Clerks to act." Dkt #159, p. 8. Far from a situation in which the parties are "interdependent" with "largely overlapping identity," the Counties are describing an entirely arms-length relationship, in which Hobo needed to secure a court order to move forward with the process and the Counties acted with no discretion (Dkt #124, ¶ 17) only in response to the order. *See also* Dkt #159, p. 8-9 ("Hobo actively invoked a statutory process that **required** the Clerk to" act (emphasis added)).

The Counties' attempt to allege complete separation and simultaneously argue for "entwinement" on those same allegations must fail. They cannot show a "largely overlapping identity" with Hobo.

## II.     The Counties cannot assert contribution or indemnity in this § 1983 action

### A.     Contribution is not permitted in § 1983 actions

The Counties notably fail to cite even a single decision by a federal court in Illinois applying contribution in a § 1983 case. At the same time, they do not address the many Illinois cases decided since *Northwest Airlines, Inc. v. Transport Workers Union of America, AFL-CIO*, 451 U.S. 77, 90 (1981), that have held that contribution is not available in § 1983 actions. *See Piercy v. Whiteside County, Illinois*, 2016 WL 1719802 at *5 (N.D. Ill. Apr. 29, 2016) (noting that the majority of district courts that have addressed the issue have concluded that there is no right of contribution). Illinois federal district court decisions holding that there is no right of contribution include: *Piercy*, 2016 WL 1719802 at *5 (there is no right of contribution under § 1983); *Burris v. Cullinan*, 2009 WL 3575420 at *8 (C.D. Ill. Oct. 23 2009) ("This Court has held that § 1983 does not authorize a right to contribution."); *Perks v. County of Shelby*, 2009 WL 2985859 at *3 (C.D. Ill. Sep. 15, 2009) (Congress did not intend to include a right of contribution in § 1983 and no such right exists under federal common law); *Estate of Carlock v. Williamson*, 2009 WL

9

1708088 at *4 (C.D. Ill. Jun. 12, 2009) ("there is no right to contribution between joint tortfeasors in § 1983 cases").

Neither the U. S. Supreme Court nor the Seventh Circuit Court of Appeals has answered whether a right of contribution under § 1983 can be found through § 1988. *Piercy*, 2016 WL 1719802, at *5; *Fox v. Barnes*, 2013 WL 2111816 at *2 (N.D. Ill. May 15, 2013); *Perks*, 2009 WL 2985859, at *1. An analysis of § 1988 shows that contribution should not be permitted in this instance.

Application of § 1988 involves a three-step process:

> First, it is to be determined whether federal civil rights law is deficient in that it fails to furnish a particular rule; if it is deficient, the most closely analogous state law may fill the vacuum only if it is consistent with the meaning and purpose of constitutional and federal statutory law. If state law is inconsistent, it must be disregarded in favor of the federal common law.

*Bass v. Wallenstein*, 769 F.2d 1173, 1188 (7th Cir. 1985).

Here, § 1983 does not contain a contribution provision. The Illinois Joint Tortfeasor Contribution Act [740 ILCS 100/1, *et seq*.] ("Illinois Act") may "fill the vacuum," but only if it is found to be "consistent with the meaning and purpose" of § 1983. The question under the *Bass* analysis then becomes whether the Illinois Act is "consistent with the meaning and purpose" of § 1983.

The purposes behind § 1983 include the "compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law." *Robertson v. Wegmann*, 436 U.S. 584, 591 (1978). In *Burris*, the district court analyzed at some length whether the Illinois Act is consistent with the meaning and purpose of constitutional and federal statutory law, concluding that the "Illinois Act is . . . inconsistent with the federal policy underlying § 1983, and fails to meet the § 1988 test." *Burris*, 2009 WL 3575420, at *9. A different

10

district court commented that the "majority of courts have concluded that § 1988 does not permit borrowing state laws on contribution, because doing so would conflict with the policies underlying § 1983, including deterrence of conduct that violates constitutionally protected rights." *Bulfin v. Rainwater*, 2021 WL 2915057 at *4 (E.D. Mo. Jul. 12, 2021) (citing numerous decisions of federal district courts in several states).

When state law does not appropriately "fill the vacuum," then the *Bass* analysis instructs the district court to disregard state law in favor of federal common law. *Bass*, 769 F.2d at 1188. "[A] cause of action for contribution may have become a part of the federal common law through the exercise of judicial power to fashion appropriate remedies for unlawful conduct." *Northwest Airlines,* 451 U.S. at 90. See also *Texas Indus. Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 638 (1981).

However, "only under the most narrow and specific of circumstances could a federal common law right to contribution be found." *Katka v. Mills*, 422 F.Supp.2d 1304, 1309 (N.D. Ga. 2006). *See generally Texas Indus.*, 451 U.S. 630 (declining to create a federal common law right to contribution under federal antitrust statutes); *Northwest Airlines*, 451 U.S. 77 (declining to create a federal common law right to contribution under the Equal Pay Act and Title VII). Courts have generally found such circumstances absent with respect to § 1983. "[W]hen Congress enacted § 1983, the common law generally prevented joint tortfeasors from seeking contribution." *Blair v. Marable*, 2022 WL 3588408 at *3 (N.D. Ala. Aug. 22, 2022), *citing Texas Indus.*, 451 U.S. at 634, and *Merryweather v. Nixan*, 101 Eng. Rep. 1337 (K. B. 1799). Most federal district courts that have examined the issue, including those within Illinois, have found that there is no federal common law right to contribution in § 1983 actions. *See, e.g., Burris*, 2009 WL 3575420, at *8. *See also Bulfin*, 2021 WL 2915057, at *4 ("Following *Northwest* and *Texas Industries*, district

11

courts have declined to find a common-law right to contribution under § 1983" and citing decisions of federal district courts in several states). The Court should follow the overwhelming weight of authority and find that the Counties cannot assert a right to contribution from Hobo.

**B.      The third-party complaint eliminates the possibility of implied indemnity**

Here again, the Counties do not cite any authority holding that a right to indemnity is available in a § 1983 case. Section 1983 does not include a right to indemnification. *Allen v. City of Los Angeles*, 92 F.3d 842, 845 n. 1 (9th Cir. 1996) (overruled on other grounds) ("There is no federal right to indemnification provided in 42 U.S.C. § 1983."). Therefore, consistent with the analysis with respect to contribution (*Mortgages, Inc. v. U.S. Dist. Court for Dist. of Nev. (Las Vegas)*, 934 F.2d 209, 212 n. 3 (9th Cir. 1991)), a right to indemnification must be found, if at all, in state law.

Hobo and the Counties agree that implied indemnity exists in Illinois only in instances where the parties have a pre-tort relationship. *See* Dkt #142, p. 8 and Dkt #159, p. 11. *See also Jinwoong, Inc. v. Jinwoong, Inc.*, 310 F.3d 962, 965 (7th Cir. 2002) ("the function of the doctrine of implied indemnity is to fill out the parties' contract; it is not to create a contract where none existed"). As to the requisite pre-tort relationship in this case, the Counties assert only that the relevant "relationship between the Counties and Hobo arises directly from the" Property Tax Code. Dkt #159, pp. 11-12. According to the Counties, the nature of that relationship is a "statutory framework in which Hobo's initiation of the tax deed process compels action by the Counties." Dkt #159, p. 12.

"In Illinois, the '[c]lassic pretort relationships which have given rise to a duty to indemnify include: lessor and lessee; employer and employee[;] owner and his lessee; [and] master and servant." *Jordan v. Jewel Food Stores, Inc.*, 83 F.Supp.3d 761, 772 (N.D. Ill. 2015), *quoting Van*

12

*Slambrouck v. Econ. Baler Co.*, 105 Ill.2d 462, 469-70 (1985) (citations omitted). And Illinois courts have generally refused to expand the set of qualifying pre-tort relationships. *Jordan*, 83 F.Supp.3d at 772-73. The Counties do not cite any authority that would support finding a pre-tort relationship under the sole circumstance upon which they rely – namely, that both parties are subject to the same "statutory framework." So, they have not, and cannot, allege the required pre-tort relationship to support an indemnity claim.

They fail on a second critical requirement as well. Implied indemnity can arise "only where one party is in some sense 'at fault,' and the other party is blameless though liable – typically because of strict liability, respondeat superior, implied warranty, or some other legal principle that imposed liability regardless of fault." *UIRC–GSA Holdings Inc. v. William Blair & Co., L.L.C.*, 289 F.Supp.3d 852, 861 (N.D. Ill. 2018), *quoting Mizuho Corp. Bank (USA) v. Cory & Assoc., Inc.*, 341 F.3d 644, 652 (7th Cir. 2003). Here, the Counties assert that they may be liable "solely from operation of statute or legal duty" (by which they mean the Property Tax Code) because they "performed a function compelled by court order and statute[.]" Dkt #159, p. 13. But the Counties are missing a crucial piece of the puzzle. They do not point to any part of the Property Tax Code that imposes upon them "liability regardless of fault." *See UIRC–GSA*, 289 F.Supp.3d at 861. Thus, even if the Counties had a pre-tort relationship with Hobo, they have not pleaded how they could be found liable regardless of fault so as to invoke indemnity.

**III.    The Counties have no basis to assert an unjust enrichment claim**

The Counties skip over the important point that in Illinois, unjust enrichment is not "a separate cause of action that, standing alone, will justify an action for recovery." *Ambrosius v. Chicago Athletic Clubs, LLC*, 2021 IL App (1st) 200893, ¶ 49, *citing Mulligan v. QVC, Inc.*, 382 Ill.App.3d 620, 631 (1st Dist. 2008). "In order for a cause of action for unjust enrichment to exist,

13

there must be some independent basis which establishes a duty on the part of the defendant to act and the defendant must have failed to abide by that duty." *Lewis v. Lead Indus. Ass'n, Inc.*, 342 Ill.App.3d 95, 105-06 (1st Dist. 2003), *citing Board of Education of City of Chicago v. A, C & S, Inc.*, 131 Ill.2d 428, 466 (1989). Accordingly, where an underlying breach of duty supporting unjust enrichment is absent or deficient, then the court should dismiss the unjust enrichment claim. *Ambrosius*, 2021 IL App (1st) 200893 at ¶ 49. The Counties have failed to plead the necessary duty.

Their complaint shows that Hobo owed the Counties no such duty. A "person is not entitled to compensation on the grounds of unjust enrichment if he receives from the other that which it was agreed between them the other should give in return." *La Throp v. Bell Federal Sav. & Loan Ass'n*, 68 Ill.2d 375, 391 (1977). The Property Tax Code requires that all tax purchasers, including Hobo, pay certain amounts to the county before obtaining a tax deed. *See* 35 ILCS 200/21-240. It is undisputed that Hobo paid the required amounts to DuPage County and otherwise fulfilled all legal requirements to obtain its tax deed. *See, e.g.*, Dkt #124, ¶¶ 17-20. As the Counties concede, there was no legal obligation for Hobo to pay to the Counties any additional amount. *See* Dkt #159, p. 14 ("The Counties received only the delinquent taxes owed. Whether the property had any excess value and who would benefit from it was unknown at the time of sale and ungoverned by any term."). The Counties then have no basis to assert that Hobo has been unjustly enriched at their expense.

**IV.     Hobo's good faith defense is a timely and appropriate basis for judgment in Hobo's favor**

The sole authority that the Counties cite with respect to Hobo's good faith defense – *Hoover v. Said*, 629 F.Supp.3d 826 (N.D. Ill. 2022) – relates to a good faith settlement finding pursuant to the Joint Tortfeasor Contribution Act and has no bearing on the issues of this case. The Counties

14

do not address any of the authority that Hobo cites. *See* Dkt #142, p. 10 n. 1. Nor do they attempt to square their insistence that a good faith defense "is not appropriate for resolution on a Rule 12(b)(6) motion" (Dkt #159, p. 15) with precedent showing that dismissals of § 1983 actions based on a good faith defense raised in a Rule 12(b)(6) motion have been affirmed on appeal in this and other circuits. *See, e.g., Mooney v. Illinois Educ. Ass'n*, 942 F.3d 368 (7th Cir. 2019) (the district court granted the defendants' motion to dismiss in part as a motion under Rule 12(b)(6) and in part construed as a motion for judgment on the pleadings under Rule 12(c)). *See also Diamond v. Pennsylvania State Educ. Ass'n*, 972 F.3d 262 (3d Cir. 2020); *Wholean v. CSEA SEIU Local 2001*, 955 F.3d 332 (2d Cir. 2020); *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386 (6th Cir. 2020).

The Court should recognize Hobo's good faith defense for the reasons set forth in its motion to dismiss, which the Counties have failed to address. The Court should either dismiss the claims against Hobo on that basis or convert the motion to one for judgment on the pleadings and enter judgment in Hobo's favor.

V. **Adoption of Scribe Holdings, LLC's arguments**

Hobo respectfully adopts and incorporates into its reply the arguments presented by Scribe Holdings, LLC, to the extent they apply to Hobo and are not inconsistent with its arguments.

    Respectfully submitted,

    /s/ Joseph D. Ryan
    Joseph D. Ryan
    Attorney for Third Party Defendant
    Hobo Investments, LLC

Joseph D. Ryan (ARDC No. 6192344)
Law Offices of Joseph D. Ryan, P.C.
1896 Sheridan Road, Suite 240
Highland Park, IL 60035
(847) 432-5971
jryan@ryanlawoffices.com

**CERTIFICATE OF SERVICE**

      I, Joseph D. Ryan, an attorney, state that, on August 15, 2025, this document has been electronically filed and served on the parties through the Court's E-Filing system in compliance with Local Rule 5.5, and by mail to anyone that is not a registered user of the system.

                                                   /s/Joseph D. Ryan
                                                   Joseph D. Ryan