IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICOLE BJERKE, *et al.*, <br><br> Third-Party Plaintiffs, <br><br> v. <br><br> DG ENTERPRISES, LLC, *et al.*, <br><br> Third-Party Defendants. | No. 23-cv-15838 <br><br> Judge Sara L. Ellis |

**THIRD-PARTY DEFENDANT ATTORNEY GENERAL RAOUL'S
REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

**INTRODUCTION**

Former property owners in various counties have filed a lawsuit alleging that the counties' tax deed process unconstitutionally deprives them of their equity interests in real property. Dkt. 158 at 1. The treasurers and clerks of Peoria, Will, Carroll, Boone, and Kane counties, in turn, have filed this third-party complaint against Attorney General Raoul in his official capacity, asserting claims pursuant to the Fifth Amendment.[1] *Id.* As established in the Attorney General's motion to dismiss, Third-Party Plaintiffs' claims against him fail for at least three threshold reasons. *First*, as political subdivisions of Illinois, Third-Party Plaintiffs lack standing to bring their Takings Clause claims against the Attorney General. *Second*, the Eleventh Amendment bars the claims against the Attorney General, and he is not subject to suit under Section 1983. *Third*, because the complaint does not allege any imminent injury fairly traceable to the Attorney General and redressable by the requested relief, it should be dismissed for lack of standing. Third-Party Plaintiffs' response fails to refute these points, confirming that their complaint should be dismissed for lack of jurisdiction and failure to state a claim.

---

[1] The complaint also references the Illinois Constitution and Section 1983, but Third-Party Plaintiffs disavow any such claims in their response brief. *See* Part II, *infra*.

**ARGUMENT**

**I.    Third-Party Plaintiffs' claims against the Attorney General are barred by the political subdivision standing doctrine.**

As established in the Attorney General's motion to dismiss, the political subdivision standing doctrine bars Third-Party Plaintiffs' Fifth Amendment Takings Claims against him in his official capacity. Dkt. 162 at 4, citing *City of Trenton v. New Jersey*, 262 U.S. 182, 188 (1923). Third-Party Plaintiffs acknowledge that "the political subdivision standing doctrine bars [them] from asserting constitutional claims against the state," but say that they "merely seek declaratory relief." Dkt. 172 at 4. They suggest that the political standing doctrine does not apply to claims for declaratory relief. *Id.*

Third-Party Plaintiffs are incorrect. As an initial matter, they misunderstand the function of the Declaratory Judgment Act, 28 U.S.C. § 2201, which provides a remedy but not an independent cause of action. *See, e.g.*, *Chaney v. Chi. Hous. Auth.*, No. 23-cv-3278, 2024 U.S. Dist. Lexis 11674, at *6 (N.D. Ill. Jan. 23, 2024). To the extent that Third-Party Plaintiffs intend to assert a "Declaratory Judgment" claim (see Count I, Dkt. 128 at 4), it should be dismissed for the simple reason that there is no such claim. *Id.* (claim for "Declaratory Judgment" dismissed because the Declaratory Judgment Act is "not a cognizable independent cause of action"). Conversely, if Third-Party Plaintiffs intend to assert a claim for declaratory relief against Attorney General Raoul "under…the Fifth Amendment," as the first paragraph of their complaint indicates, Dkt. 128 at ¶ 1, the claim should be dismissed because it is barred by the political subdivision standing doctrine. Dkt. 162 at 4.

Contrary to Third-Party Plaintiffs' position, courts have not recognized an exception to the political subdivision standing doctrine for claims predicated on substantive constitutional rights (here, the Fifth Amendment) that seek declaratory relief. Third-Party Plaintiffs do not cite any

2

cases from the Seventh Circuit, or any other jurisdiction, finding an exception for such claims, and the relevant case law shows that there is no such exception. For example, Third-Party Plaintiffs ignore *City of Green Bay v. Bostelmann*, cited in the Attorney General's opening brief. Dkt. 162 at 4, citing No. 20-cv-479, 2020 U.S. Dist. Lexis 53554 (E.D. Wisc. Mar. 27, 2020). There, Green Bay sued members of the Wisconsin Election Commission, asserting a Fourteenth Amendment equal protection claim and seeking declaratory and injunctive relief. *Id.* at *2-3. The Court held that the political subdivision standing doctrine barred the claim, adding that "the Declaratory Judgment Act is not an independent source of federal jurisdiction." *Id.* at *10, quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960).

As another example, in *City of Hugo v. Nichols*, 656 F.3d 1251 (10th Cir. 2011), the Tenth Circuit applied the doctrine to affirm dismissal of claims seeking a declaration that certain Oklahoma laws were unconstitutional under the dormant commerce clause. *Id.* at 1254. The Tenth Circuit found a "complete absence of appellate cases involving any type of claim by a political subdivision against its parent state based on a substantive provision of the constitution." *Id.* at 1258 n.6; *see also id.* at 1257 ("The parties have not identified, and this court has not found, a single case in which the Supreme Court or a court of appeals has allowed a political subdivision to sue its parent state under a substantive provision of the Constitution."). It made no difference that the plaintiffs sought declaratory relief. *Id.* at 1255-63; *see also City of Alpine v. Abbott*, 730 F. Supp. 2d 630, 632-36 (W.D. Tex. 2010) (applying doctrine to dismiss claims brought by city against Governor of Texas seeking a declaratory judgment that certain provisions of the Texas Open Meetings Act violate the First Amendment).[2]

---

[2] Unlike the Third-Party Plaintiffs in *Henry v. State of Illinois, et al.* (also before this Court in 23-cv-15838), Third-Party Plaintiffs here do not appear to argue for an exception to the political subdivision standing doctrine for Supremacy Clause claims. As discussed in the State Defendants' reply brief in *Henry*, some jurisdictions have recognized an exception for Supremacy Clause claims, but only to enforce federal

3

Third-Party Plaintiffs' only other argument is that *Trenton v. New Jersey*, 262 U.S. 182 (1923), is "inapposite and inapplicable." Dkt. 172 at 5. But their position is difficult to understand. In *Trenton*, a city sued New Jersey alleging that a state law violated the Contracts Clause and took private property without just compensation and due process in violation of the Fourteenth Amendment. 262 U.S. at 939. The Supreme Court held that the city could not invoke these constitutional provisions against its parent state. *Id.* at 943. And the same principle applies here: Third-Party Plaintiffs cannot assert a claim based on the Fifth Amendment Takings Clause against their parent state.

According to Third-Party Plaintiffs, in *Trenton*, the Supreme Court "still acknowledged that a subordinate state agency may look to the courts when different state enactments impose conflicting duties." Dkt. 172 at 5. But we have been unable to locate any such statement in the Court's opinion (either at the cited page 188, or anywhere else). In any event, Third-Party Plaintiffs do not allege a conflict between "different state enactments," nor would such a conflict support federal jurisdiction. *Trenton* and its progeny confirm that the political subdivision standing doctrine bars Third-Party Plaintiffs' Fifth Amendment claim against Attorney General Raoul in his official capacity. Dkt. 162 at 4.

## II. Third-Party Plaintiffs' claims against Attorney General Raoul should be dismissed on state sovereign immunity and Eleventh Amendment grounds.

Third-Party Plaintiffs' claims against Attorney General Raoul are additionally barred by state sovereign immunity and the Eleventh Amendment. As an initial matter, Third-Party Plaintiffs

---

statutory rights intended to protect political subdivisions. *See* Dkt. 173 at 2-4, citing *City of Hugo*, 656 F.3d at 1255-63; *see also City of Alpine*, 730 F. Supp. 2d at 632 (distinguishing cases in which a political subdivision claims that a state law violates the Supremacy Clause "because it is inconsistent with a law passed by Congress"). Here, Third-Party Plaintiffs' claim is barred by the political subdivision standing doctrine because it is ultimately based on the Fifth Amendment, a substantive constitutional provision protecting individual rights.

4

appear to abandon any claim against the Attorney General based on the Illinois Constitution. The first paragraph of their complaint states that they "bring this action pursuant to the Illinois Constitution," as well as federal law. Dkt. 128 at ¶ 1. But as the Attorney General noted, the Eleventh Amendment bars any state-law claims against him, Dkt. 162 at 5, citing *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 106 (1984), as does state sovereign immunity, *id.*, citing 745 ILCS 5/1. Third-Party Plaintiffs concede that "*Pennhurst* bars federal courts from ordering state officials to comply with state law," and they do not address state sovereign immunity at all. Dkt. 172 at 7. Rather, they say that that they "invoke federal law, namely the Takings Clause of the Fifth Amendment" and "do not seek enforcement of any state law duty." Dkt. 172 at 7. Thus, according to Third-Party Plaintiffs' response, they do not intend to assert any state-law claim against the Attorney General. And in any event, both the Eleventh Amendment and state sovereign immunity bar such claims.

This leaves Third-Party Plaintiffs' Fifth Amendment Takings Clause claim[3] against Attorney General Raoul in his official capacity, which is also barred by the Eleventh Amendment, regardless of the relief sought. Dkt. 162 at 5-7. That is because Third-Party Plaintiffs have not adequately alleged that Attorney General Raoul has "some connection" to the enforcement of the Property Tax Code, as required for the *Ex Parte Young* exception to Eleventh Amendment immunity. *Id.* at 5, citing *Ex Parte Young*, 209 U.S. 123, 155-57 (1908). Nor have they adequately alleged that the Attorney General has enforced or threatened to enforce the Property Tax Code against them, which is also fatal to their claim. *Id.* at 5-7.

---

[3] The first paragraph of the complaint also references Section 1983, but Third-Party Plaintiffs indicate in their response that they are not asserting a "direct section 1983 claim against the state." Dkt. 172 at 3; *see also* Dkt. 162 at 7 (explaining that the Attorney General in his official capacity is not a "person" subject to suit under Section 1983); *Barbara Z. v. Obradovich*, 937 F. Supp. 710, 722 (N.D. Ill. 1996) (political subdivisions cannot sue under Section 1983).

In their response, Third-Party Plaintiffs claim that the Attorney General is a proper defendant because he is "the State's chief legal officer, charged with enforcing the laws of Illinois" and "the appropriate representative of the state's interests in defending the validity of its laws." Dkt. 172 at 6, 9. But as set forth in the Attorney General's motion to dismiss, such generic allegations do not satisfy the *Ex Parte Young* exception to his Eleventh Amendment immunity. Dkt. 162 at 5-6. In *Ex Parte Young* itself, the Supreme Court emphasized that an attorney general is not a proper defendant in a case challenging state legislation merely by virtue of his or her position. *See* 209 U.S. 123, 157 (1908) (explaining that an attorney general may not be sued in federal court based on the theory that they "might represent the state in litigation involving the enforcement of its statutes"). The Seventh Circuit reiterated this point in *Doe v. Holcomb*, explaining that a "general duty to enforce state laws" is not enough and that "[a]n attorney general cannot be sued simply because of his duty to support the constitutionality of a challenged state statute." 883 F.3d 971, 976-78 (7th Cir. 2018).

Most recently, the Court in *Scholl v. Ill. State Police* confirmed that allegations analogous to those here do not pierce the Attorney General's Eleventh Amendment immunity. No. 24-cv-4435, 2025 U.S. Dist. Lexis 60496, at *14-15 (N.D. Ill. Mar. 31, 2025) (dismissing claims against Attorney General on Eleventh Amendment grounds despite allegations that he serves as "the chief law enforcement of officer of the state" and is "responsible for enforcing and defending" its laws); *see also Ruiz v. Pritzker*, No. 22-cv-7177, 2024 U.S. Dist. Lexis 53683, at *9-11 (N.D. Ill. Mar. 26, 2024) (dismissing claims against Attorney General on Eleventh Amendment grounds; neither his "broad power to enforce state law" nor his ability to "support[] the constitutionality" of a state statute make him a proper defendant).

Third-Party Plaintiffs cannot avoid this precedent. They ignore *Ex Parte Young* altogether, and they try to distinguish *Doe* by claiming that the plaintiff there sought "retrospective" relief. (Dkt. 172 at 6-7). In fact, the plaintiff in *Doe* sought forward-looking relief, specifically, a declaration that an Indiana name-change statute is unconstitutional and an injunction preventing state officials from enforcing it. 883 F.3d at 975. In any event, the Seventh Circuit's holding that the Eleventh Amendment barred the clams against the Attorney General was not based on the nature of the requested relief, as Third-Party Plaintiffs suggest, but rather on the fact that the Attorney General was not sufficiently connected to the enforcement of the challenged statute, which is the case here too. 883 F.3d at 974-977.

Third-Party Plaintiffs' attempt to distinguish *Scholl* is equally puzzling. They say that "unlike the plaintiffs in *Scholl*," they are challenging a legislative enactment, and claim that the plaintiffs in *Scholl* "made no efforts" to satisfy *Ex Parte Young*'s "some connection" requirement. Dkt. 172 at 7. To start with the obvious, the fact that Third-Party Plaintiffs are challenging the constitutionality of a state statute does *not* mean that they can pursue a claim against the Attorney General without showing that he has "some connection" to the statute they challenge. *See Ex Parte Young*, 209 U.S. at 157; *Doe*, 888 F.3d at 976-78. Also, Third-Party Plaintiffs misdescribe *Scholl*: the plaintiffs there *did* challenge a legislative enactment (Illinois' Expressway Camera Act), and they *did* try to meet the "some connection" requirement—in fact, they made allegations almost identical to those of Third-Party Plaintiffs in this case. *Scholl*, 776 F. Supp. 3d at 712. The Court found those allegations insufficient to state a claim against the Attorney General, *id.* at 712-13, and the same is true here.

In sum, authority from the United States Supreme Court, the Seventh Circuit, and the Northern District confirms that the claims against Attorney General Raoul are barred by the

7

Eleventh Amendment because Third-Party Plaintiffs have not alleged that he has a sufficient connection to the enforcement of the Property Tax Code. Third-Party Plaintiffs do not identify a single case suggesting otherwise. While they cite *Indiana Protection and Advocacy Services v. Indiana Family and Social Services Administration*, 603 F.3d 365 (7th Cir. 2010), the Attorney General was not even a party in that case, and the Court did not address *Ex Parte Young*'s "some connection" requirement. *Id.*

Moreover, even if Third-Party Plaintiffs could establish that Attorney General Raoul had some connection to the enforcement of the Property Tax Code, their claims against him would still be barred because they have not alleged that he has enforced or threatened to enforce the Property Tax Code against them. Dkt. 162 at 6-77; *Doe*, 883 F.3d at 997, citing *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996). Third-Party Plaintiffs do not address this point. It is therefore undisputed that their complaint does not allege any threat of enforcement by Attorney General Raoul, which is an additional reason why the claims against him should be dismissed.

The claims against the Attorney General fail *regardless* of the relief sought. Third-Party Plaintiffs say that they are not seeking "damages, restitution, or any payout from the state's treasury," Dkt. 172 at 6, but this does not save their claims. While there is an exception to the Eleventh Amendment for suits seeking only prospective injunctive relief for an ongoing violation of federal law, the named official still must have "some connection" to the enforcement of the act and "threaten" enforcement. Dkt. 162, citing *Ex Parte Young*, 209 U.S. at 155-57. Neither requirement is met here, so the claims are barred.

8

### III. Third-Party Plaintiffs do not assert any "contribution" claim against the Attorney General, nor could they.

One additional point regarding the Eleventh Amendment is in order. In their response, Third-Party Plaintiffs say that their "request for contribution does transform this case into an action for retrospective damages that is prohibited under the Eleventh Amendment." Dkt. 172 at 8. But this reference to "contribution" is confusing, because Third-Party Plaintiffs have *not* brought any such claim against the Attorney General. Their sole claim against the Attorney General appears in Count I, which does not request "contribution;" rather, it seeks a declaratory judgment regarding the constitutionality of the Property Tax Code. Dkt. 128 at ¶¶ 16-28; *see also* Dkt. 172 at 5-6. Third-Party Plaintiffs' request for "contribution" appears in Count II, which is brought against the tax buyers, not Attorney General Raoul. Dkt. 128 at ¶¶ 29-39 (Count II is brought against the "tax buyers" and alleges that if Third-Party Plaintiffs are held liable, they are "entitled to contribution from the tax buyers").

Nor could Third-Party Plaintiffs bring such a claim against the Attorney General. As the Seventh Circuit explained, the Eleventh Amendment apples where "the action is in essence one for recovery of money from the state." *MSA Realty Corp. v. Ill.*, 990 F.2d 288, 291 (7th Cir. 1993) (noting that "declaratory relief should not be awarded where the eleventh amendment bars an award of monetary and injunctive relief" and that "[t]he Supreme Court has never approved an order requiring a state to provide monetary relief to specific plaintiffs"); *see also Council 31 of the Am. Fed'n of State, County & Mun. Employees v. Quinn*, 680 F.3d 875, 881-84 (7th Cir. 2012) (Eleventh Amendment barred claims for declaratory and injunctive relief that would "force the defendants, acting in their official capacities, to extract funds from the State's treasury for the ultimate benefit of the plaintiffs").

9

Moreover, any contribution claim based on Illinois law would be barred under *Pennhurst*, 465 U.S. at 106, and as to any federal claim, the Attorney General adopts and incorporates the other defendants' arguments that Sections 1983 and 1988 do not allow contribution claims. Dkts. 137 at 10-11, 142 at 6-8, 168 at 9-10, 169 at 9-11.

### IV. Third-Party Plaintiffs' claims against the Attorney General should be dismissed for lack of standing.

Finally, Third-Party Plaintiffs' claims against the Attorney General also should be dismissed for lack of standing. Dkt. 162 at 7-8. Third-Party Plaintiffs claim that the State "compel[s] local government to implement a statutory scheme that, if *Tyler* applies, effects an uncompensated taking in violation of the Fifth and Fourteenth Amendments." Dkt. 172 at 10. But as this Court previously explained, Plaintiffs in the underlying lawsuit "are not suing the [county] officials for any act they performed that state law compelled them to do." Dkt. 105 at 10. Moreover, Third-Party Plaintiffs must demonstrate standing as to each defendant, *Murthy v. Missouri*, 603 U.S. 43, 61 (2024), and they allege no facts showing any imminent injury fairly traceable to Attorney General Raoul. Dkt. 140 at 8. To the contrary, they assert that any injury they sustain is "traceable to the state's legislative system," Dkt. 172 at 3, as opposed to any action taken by Attorney General Raoul.

While Third-Party Plaintiffs argue that the Attorney General may defend the Property Tax Code's constitutionality, the Attorney General's ability to intervene in a case to defend a state statute does not make it proper to name him as a defendant. Dkt. 162 at 6. As with the Eleventh Amendment, standing does not depend on whether the Attorney General may defend the constitutionality of a statute, but on whether he will *enforce* it against the plaintiffs in a way that injures them. *Cf. Ruiz*, 2024 U.S. Dist. Lexis 53683, at *11 (supporting the constitutionality of a statute is "distinct from" enforcing it).

The law is clear. To establish standing as to Attorney General Raoul, Third-Party Plaintiffs must adequately allege an "actual or imminent" injury that is "fairly traceable" to him. Dkt. 162 at 6. They have not done so, and therefore their claims against the Attorney General should be dismissed for lack of standing.

## CONCLUSION

For the reasons above and in the Attorney General's motion to dismiss (Dkt.162), Third-Party Plaintiffs' claims against him should be dismissed.

Dated: September 19, 2025

/s/ *Michael T. Dierkes*
Michael T. Dierkes
General Law Bureau/Government Representation Division
Office of the Illinois Attorney General
115 South LaSalle Street
Chicago, IL 60603
Telephone: (312) 814-3672
Facsimile: (312) 814-4425
michael.dierkes@ilag.gov

*Attorney for State Defendants*