**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MICHEL SHARRITT, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 23 C 15838 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| GWEN HENRY, in her capacity as Treasurer ) | |
| of DuPage County, Illinois, et al., ) | |
| ) | |
| Defendants. ) | |
| GWEN HENRY, in her capacity as ) | |
| Treasurer of DuPage County, Illinois, et al., ) | |
| ) | |
| Third-Party Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| STATE OF ILLINOIS, et al., ) | |
| ) | |
| Third-Party Defendants. ) | |

**OPINION AND ORDER**

Plaintiffs Michel Sharritt, Melody Cannon, Maurice Cross, Christopher Meyer, Dareios Little, and Karl Lee sued Winnebago, Peoria, Will, Carroll, Boone, DuPage, Lake, and Kane Counties, as well as each of the individual Counties' respective treasurers and clerks (collectively, "Defendants"), alleging that Defendants' use of the Illinois tax sales procedures contained in the Illinois Property Tax Code ("PTC"), 35 Ill. Comp. Stat. 200 *et seq*., violates Plaintiffs' rights to fair compensation for takings pursuant to the Fifth and Fourteenth Amendments and the Illinois Constitution and to be free from excessive fines under the Eighth and Fourteenth Amendments and the Illinois Constitution. The Court allowed these claims to proceed past the pleadings stage, Doc. 105, and denied Defendants' request to certify an interlocutory appeal, Doc. 117.

Two sets of Defendants then filed third-party complaints.[1] The DuPage and Lake County Defendants (collectively, the "DuPage Third-Party Plaintiffs") filed a third-party complaint against the State of Illinois (the "State"), Illinois Attorney General Kwame Raoul, and two tax buyers, Scribe Holdings, LLC ("Scribe") and Hobo Investments, LLC ("Hobo"). The DuPage Third-Party Plaintiffs bring a declaratory judgment claim against the State and Raoul; a contribution claim against the State, Raoul, Scribe, and Hobo; and implied indemnity and unjust enrichment claims against Scribe and Hobo. The Peoria, Will, Carroll, Boone, and Kane County Defendants (collectively, the "Peoria Third-Party Plaintiffs," and with the DuPage Third-Party Plaintiffs, the "Third-Party Plaintiffs") filed a third-party complaint against Raoul and several tax buyers: DG Enterprises, LLC-Xprop, LLC ("DG Enterprises"), Cortezz, LLC ("Cortezz"), and Realtax Developers, LTD ("RealTax"). The Peoria Third-Party Plaintiffs bring a declaratory judgment claim, as well as contribution and unjust enrichment claims against DG Enterprises, Cortezz, and RealTax. The Third-Party Plaintiffs essentially contend that, to the extent that the Court finds them liable to Plaintiffs, they have merely followed the PTC and so the State and/or the tax buyers are ultimately the ones responsible for remedying any violations of Plaintiffs' constitutional rights. Five Third-Party Defendants—the State, Raoul, Scribe, Hobo, and DG Enterprises—have moved to dismiss the third-party complaints. Because the Third-Party Plaintiffs cannot pursue claims against the State and Raoul in light of the political subdivision doctrine and they either cannot bring or have not sufficiently alleged their contribution,

---

[1] The Winnebago County Defendants do not join the other Defendants' third-party complaints or separately bring any third-party claims.

2

indemnity, and unjust enrichment claims against the tax buyers, the Court dismisses the third-party complaints without prejudice.[2]

**BACKGROUND**[3]

### I.     Illinois Tax Sales

Illinois counties assess taxes on real property every year in accordance with the PTC.  If a property owner fails to pay their property taxes, the property becomes delinquent and the county places a first-priority lien on the property for the unpaid amounts, which accrue interest.  If the owner fails to timely satisfy their tax burden, then a state court issues a judgment for nonpayment.  After receiving this judgment, Illinois law requires the county treasurer to offer the amount of unpaid taxes (the "Tax Amounts") at an annual tax sale.  At a tax sale, potential buyers, who are often corporations and LLCs, but occasionally individuals, bid on the interest rate they will charge the property owner to redeem the property.  The buyer that bids the lowest interest rate wins and immediately pays the county the Tax Amounts.  In exchange, the buyer

---

[2] To the extent the arguments raised by the moving Third-Party Defendants apply equally to the non-appearing Third-Party Defendants, the Court extends its decision to include all Third-Party Defendants because the Third-Party Plaintiffs had an adequate opportunity to respond to the arguments.  *See Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 2011) (court may *sua sponte* enter judgment in favor of additional non-moving defendants if motion by one defendant is equally effective in barring claim against other defendants and plaintiff had adequate opportunity to respond to the motion); *Roberts v. Cendent Mortg. Corp.*, No. 11 C 1438, 2013 WL 2467996, at *5 (S.D. Ind. June 7, 2013) (although the defendants had not entered appearances and it was not clear if they had been served, court could impute arguments made by one defendant to all defendants and dismiss claims against all of them).  For this reason, although the Court granted the Carroll County Third-Party Plaintiffs' motion for a default order against RealTax, Doc. 194, the Court now vacates that order in light of this Opinion.

[3] The Court takes the facts in the background section from the Third-Party Plaintiffs' third-party complaints and presumes them to be true for the purpose of resolving the motions to dismiss.  *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).  The Court also incorporates facts from the background section of its October 18, 2024 Opinion and Order to describe Illinois' tax sales procedures.  Doc. 105.

3

receives (1) the right to collect the Tax Amounts from the property owner, plus the winning interest rate, and (2) a lien on the property.

After the buyer receives a lien, Illinois law requires it to provide the property owner with "reasonable notice of the sale and the date of expiration of the period of redemption." Ill. Const. art. IX, § 8(e). The redemption period—the time during which the property owner must repay the buyer the Tax Amounts plus the winning interest rate—is usually thirty months. If the property owner redeems the property within the redemption period, then the buyer's lien is void. However, if the property owner fails to redeem the property, then the buyer can petition a state court for ownership of and the right to evict any current tenants occupying the property. If the state court accepts the buyer's petition, then the county clerk issues a tax deed that transfers ownership of the property from the original owner to the buyer.

Counties maintain "indemnity funds" to compensate eligible parties who have suffered losses from tax sales. *See* 35 Ill. Comp. Stat. 200/21-295. Petitioners who assert injuries springing from the Illinois tax sale procedures can petition a state court for an indemnity. If the petitioner seeks an award of $99,000 or less, then the reviewing court may grant the petition if "in the discretion of the [petitioned] Court, the equities warrant the action." 35 Ill. Comp. Stat. 200/21-305(1). If the petitioner seeks to recover more than $99,000, then the court may only grant such an award if the petitioner shows "the loss of his . . . property was not attributable to his . . . own fault or negligence." *Id.* Plaintiffs in the underlying suit allege that Defendants routinely challenge petitioners who seek to recover their losses that result from the Illinois tax sale procedures from the indemnity funds to prevent such recoveries.

4

## II.   Third-Party Plaintiffs and Defendants

The Third-Party Plaintiffs are not home rule units,[4] meaning they only have powers granted by law.  Ill. Const. art. VII, § 7 (stating that "[c]ounties and municipalities which are not home rule units shall have only powers granted to them by law and the powers" to perform six specific enumerated actions).  Consequently, the PTC governs the Third-Party Plaintiffs' collection of property taxes, and they do not have discretion to deviate from the procedures and requirements set forth in the PTC.  Consistent with the PTC's procedures and requirements, the Third-Party Plaintiffs conducted tax sales and collected the Tax Amounts.[5]

The State enacted the PTC.  Raoul, as chief law enforcement officer of Illinois, enforces and defends the constitutionality of Illinois law, including the PTC.  Scribe, Hobo, and DG Enterprises (the "Tax Buyers") are tax buyers that obtained a tax deed for properties located in the Third-Party Plaintiffs' counties.

## III.   Procedural History

The Third-Party Plaintiffs, who are Defendants in the underlying case, previously moved to dismiss Plaintiffs' amended complaint, raising numerous threshold immunity and standing arguments, challenging the sufficiency of Plaintiffs' allegations under Federal Rule of Civil Procedure 12(b)(6), and contending that Plaintiffs failed to sue all necessary parties under Rule

---

[4] The Illinois Constitution states that home rule units include: (1) a county "which has a chief executive officer elected by the electors of the county," (2) a municipality "which has a population of more than 25,000," and (3) a municipality that "elect[ed] by referendum" to become a home rule unit.  Ill. Const. art. VII, § 6.

[5] The amended complaint in the underlying suit does not contain allegations concerning any named plaintiff owning real property, owing delinquent taxes, or experiencing a tax sale in Lake, Kane, or Will Counties.  Although the Lake, Kane, and Will County Defendants asserted that such a failure to allege any relevant injury means Plaintiffs lack standing to represent a class of property owners that includes their counties, the Court rejected this argument at the motion to dismiss stage.  Doc. 105 at 16–21.  The Court therefore declines to distinguish between counties for purposes of resolving the Third-Party Defendants' motions to dismiss.

5

19, including every tax buyer who took title to Plaintiffs' former properties. The Court agreed that Plaintiffs failed to state a substantive or procedural due process claim and so dismissed those claims. But the Court allowed the remainder of Plaintiffs' claims to proceed.

Relevant here, the Court specifically rejected Defendants' assertion that the Eleventh Amendment shields county clerks and treasurers from liability because state court orders and state statutes control their related duties, including issuing a tax deed and administering tax sales, respectively. The Court explained that Plaintiffs "are not suing the [county] officials for any act they performed that state law compelled them to do," but rather for discretionary actions they failed to take after the tax sale procedure (*i.e.*, rendering just compensation to Plaintiffs for equity they owned in their properties greater than the Tax Amounts after the tax buyers obtained the tax deed). Doc. 105 at 10. The Court found that Plaintiffs plausibly alleged that their losses of excess value in their respective properties to tax buyers constituted a taking within the meaning of the Fifth Amendment, relying on *Tyler v. Hennepin County*, 598 U.S. 631 (2023). *Id.* at 23–25. The Court also rejected Defendants' contention that Plaintiffs must join every tax buyer who took title to their former properties under Rule 19 because Plaintiffs only seek just compensation for the alleged constitutional violations, attorneys' fees, and declaratory relief, not anything recoverable from the tax buyers, such as the return of their former properties. *Id.* at 36.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule

12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

Five Third-Party Defendants separately filed motions to dismiss. The Court organizes the five motions by separating the Third-Party Defendants into two groups: (1) the State and Raoul and (2) the Tax Buyers.

## I.      State and Raoul

Although the DuPage Third-Party Plaintiffs named both the State and Raoul as Third-Party Defendants and the Peoria Third-Party Plaintiffs named only Raoul, "[a] suit against an official in his official capacity is actually a suit against the government entity," *Levin v. Madigan*, 697 F. Supp. 2d 958, 973 (N.D. Ill. 2010). "Where the plaintiff names the government entity as a defendant in the suit, the claim against the individual in [his] official capacity is redundant." *Id.* The Court therefore jointly considers the allegations against the State and Raoul and their arguments for dismissal.

The Third-Party Plaintiffs allege that they follow the requirements set forth in the PTC and have no discretion to provide additional compensation to former property owners, even if *Tyler* or the Court requires it. As such, the Third-Party Plaintiffs ask this Court to declare that if they have violated Plaintiffs' constitutional rights, then the violation results from the structure of the PTC, which the State—and not the Third-Party Plaintiffs—has the ability to remedy. The

DuPage Third-Party Plaintiffs also bring a contribution claim against the State and Raoul, requesting that they "contribute their *pro rata* share of the damages which Third Party Plaintiffs are ordered to pay in the present suit to any and all former property owners." Doc. 124 ¶ 39. The State and Raoul move to dismiss the Third-Party Plaintiffs' claims, arguing that (1) the political subdivision standing doctrine bars the claims, (2) the Eleventh Amendment bars the claims, (3) the Third-Party Plaintiffs lack standing, and (4) neither the State nor Raoul in his official capacity are persons subject to suit under § 1983. The Court need only address the first argument.

As the Seventh Circuit has recognized, the political subdivision doctrine prevents municipalities from filing suit against their state.[6] *City of S. Bend v. S. Bend Common Council*, 865 F.3d 889, 892 (7th Cir. 2017) ("[A] state cannot sue one of its cities, because as far as the national government is concerned a state and all of its creatures is a unit. That goes for cities suing their states, too."); *see Williams v. Mayor of Baltimore*, 289 U.S. 36, 40 (1933) ("A municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of its creator."); *City of Trenton v. New Jersey*, 262 U.S. 182, 188, 192 (1923) (specifically holding that municipalities cannot invoke the Contract Clause or the Fourteenth Amendment against the State, further stating that "constitutional restraints . . . do not apply as against the state in favor of its own municipalities"); *City of Green Bay v. Bostelmann*, No. 20-C-479, 2020 WL 1492975, at *2 (E.D. Wis. Mar. 27, 2020) (concluding that the political subdivision doctrine prevented a city

---

[6] While courts have often referred to this as a standing doctrine, the Court agrees with the Tenth Circuit that the doctrine more appropriately falls under Rule 12(b)(6) and involves whether a plaintiff has identified a basis for pursuing its claims against the State. *See Kerr v. Polis*, 20 F.4th 686, 692–96 (10th Cir. 2021) (considering the history of the political subdivision doctrine and explaining why it should be viewed under Rule 12(b)(6) instead of Rule 12(b)(1)).

and its officials from maintaining an equal protection claim against members of the state election commission, the governor, and the secretary of the state department of health services). The Third-Party Plaintiffs acknowledge that the political subdivision doctrine prevents a municipality from asserting its own constitutional claims against the State. *See* Doc. 158 at 2–3; Doc. 172 at 4. But they argue that they do not seek to vindicate their own rights under the Fifth and Fourteenth Amendments but rather to "resolve a conflict between state and federal law." Doc. 158 at 3; *see also* Doc. 172 at 4 ("[T]he County Defendants do not assert that their own constitutional rights are at risk. To the contrary, the County Defendants seek declaratory relief to clarify their obligations under the [PTC], which plaintiffs' amended complaint cast[s] as unconstitutional."). The Third-Party Plaintiffs try to frame their claim as one involving the Supremacy Clause and conflict preemption, maintaining that to the extent that the PTC conflicts with *Tyler*, the Third-Party Plaintiffs face an impossible situation that the Court must resolve.

Some Circuits have recognized an exception to the political subdivision doctrine for municipalities' claims against the State pursuant to the Supremacy Clause. *See Ocean Cnty. Bd. of Comm'rs v. Att'y Gen.*, 8 F.4th 176, 180–81 (3d Cir. 2021) ("[A] political subdivision may sue its creator state in federal court under the Supremacy Clause."); *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 77–78 (2d Cir. 2019) (concluding that a political subdivision could bring a Supremacy Clause claim based on a conflict between a state statute and federal law); *City of Hugo v. Nichols*, 656 F.3d 1251, 1256–57 (10th Cir. 2011) (allowing a municipality to bring a Supremacy Clause claim against the state based on "right under some *other* federal law, which trumps a contrary state law by operation of the Supremacy Clause"); *Rogers v. Brockette*, 588 F.2d 1057, 1070–71 (5th Cir. 1979) (finding a school district could sue the state under the Supremacy Clause to challenge a state statute it claimed conflicted with federal statutes and

9

regulations).  *But see Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1363–64 (9th Cir. 1998) (refusing to recognize an exception to the political subdivision doctrine for Supremacy Clause claims).  But at least some courts in these same Circuits have not allowed "a political subdivision to sue its parent state under a substantive provision of the Constitution," even where a conflict is asserted.  *Hugo*, 656 F.3d at 1257–58 ("[C]ourts have allowed such suits only when Congress has enacted statutory law specifically providing rights to municipalities. . . . Because the claims at issue here are based on a substantive provision of the Constitution, and because the Supreme Court has made clear that the Constitution does not contemplate the rights of political subdivisions as against their parent states, Hugo lacks standing[.]"); *see also Bd. of Levee Comm'rs v. Huls*, 852 F.2d 140, 142–43 (5th Cir. 1988) (concluding that, under *City of Trenton*, a political subdivision of the state "cannot sue the state for an uncompensated taking of property"); *City of Alpine v. Abbot*, 730 F. Supp. 2d 630, 632 (W.D. Tex. 2010) (explaining that *Rogers* "distinguished between cases where a subdivision brings a claim based on the constitution alone, and those in which a subdivision claims that a particular state law violates the Supremacy Clause of the constitution because it is inconsistent with a law passed by Congress," with "only the later present[ing] viable claims").  Further, courts have generally disallowed contribution claims brought by a political subdivision against its state.  *Stanley v. Darlington Cnty. Sch. Dist.*, 84 F.3d 707, 716 (4th Cir. 1996) ("It would be an unfathomable intrusion into a state's affairs—and a violation of the most basic notions of federalism—for a federal court to determine the allocation of a state's financial resources.  The legislative debate over such allocation is uniquely an exercise of state sovereignty."); *see also Moore v. Tangipahoa Parish Sch. Bd.*, 507 F. App'x 389, 394 (5th Cir. 2013) (finding a school board could not pursue a disguised contribution claim against the state because doing so would

10

violate Eleventh Amendment immunity); *DeKalb Cnty. Sch. Dist. v. Schrenko*, 109 F.3d 680, 689–90 (11th Cir. 1997) (stating that a grant of relief on a third-party claim for contribution by a political subdivision against a state "would be a serious violation of the most elementary notions of federalism and comity"); *Harris v. Angelina Cnty.*, 31 F.3d 331, 339 (5th Cir. 1994) ("[W]e can think of few greater intrusions on state sovereignty than requiring a state to respond, in federal court, to a claim for contribution brought by one of its own counties.").

Here, the DuPage Third-Party Plaintiffs admit that the Seventh Circuit has not recognized an exception to the political subdivision doctrine for Supremacy Clause claims. Although the Court has found one court in this district that did, the Court does not find its reasoning applies here to claims involving constitutional, not statutory, rights. *See Bd. of Educ. v. Ill. State Bd. of Educ.*, No. 85 C 8349, 1989 WL 106610, at *6 (N.D. Ill. Sep. 11, 1989) (concluding that because the political subdivision doctrine "does not necessarily extend to a municipality's ability to sue the state or its political subdivisions for violations of federal *statutes*," a claim against the state based on federal funding statutes, but not the Fourteenth Amendment, could proceed). The Court, therefore, finds that, under Seventh Circuit precedent, the Third-Party Plaintiffs cannot proceed on their claims against the State or Raoul. *See City of S. Bend*, 865 F.3d at 892.

But even assuming that the Seventh Circuit would recognize an exception for certain claims against the State under the Supremacy Clause, the Court agrees with the Tenth Circuit that such an exception would be limited to federal statutes that "specifically provid[e] rights to municipalities." *Hugo*, 656 F.3d at 1257–58. Here, the Third-Party Plaintiffs' claims would not fall within such an exception. Because the Supremacy Clause "is not the source of any federal rights," *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324 (2015) (citation omitted) (internal quotation marks omitted), the Court must consider the underlying basis for the Third-

11

Party Plaintiffs' claims of a conflict between state and federal law, *Hugo*, 656 F.3d at 1263. In this case, the Third-Party Plaintiffs' claims against the State and Raoul arise from an alleged conflict between the PTC and the Takings Clause, as interpreted by the Supreme Court in *Tyler*, not between a federal statute that affords rights to political subdivisions and a state statute. As such, the Supremacy Clause exception does not apply. *See Kerr*, 20 F.4th at 696 ("[W]e must determine whether the political subdivision's cause of action rests on a substantive constitutional provision; if so, the claim cannot proceed."); *City of El Cenizo v. Texas*, No. SA-17-CV-00404, 2025 WL 4475735, at *10 (W.D. Tex. Sep. 15, 2025) ("[B]ecause the protections in the bill of rights are only enforceable against the states via the Fourteenth Amendment, a creature of the state cannot sue its creator to enforce any of the first ten amendments to the United States Constitution."). The Court therefore finds it appropriate to dismiss the Third-Party Plaintiffs' claims against the State and Raoul.[7]

## II.    The Tax Buyers

The Tax Buyers filed three separate motions to dismiss. *See* Docs. 137, 142, 154. Yet each Tax Buyer advances similar arguments for dismissal and incorporates each other's arguments into their motions, and so the Court considers them together. First, the Tax Buyers argue that the Court should dismiss the Third-Party Plaintiffs' claims because the Tax Buyers are not state actors and so the Third-Party Plaintiffs cannot pursue claims under § 1983 against them. Alternatively, the Tax Buyers argue that, even assuming that they qualify as state actors, the Third-Party Plaintiffs' contribution, implied indemnity, and unjust enrichment claims fail as a matter of law. The Tax Buyers also raise a good faith reliance defense to any § 1983 claim and contend that the third-party complaints are untimely.

---

[7] Because the Court finds that the political subdivision doctrine applies, it does not address the remainder of the State and Raoul's arguments for dismissal.

The parties spend a considerable amount of their briefing focused on the state actor question. But the Court questions the necessity of resolving this thorny question in light of the Third-Party Plaintiffs' indication that they do not assert any direct federal claims against the Tax Buyers and that their claims instead ultimately rest on Illinois state law.[8] Moreover, even assuming that the Tax Buyers functioned as state actors, as set forth below, the Third-Party Plaintiffs have not pleaded a basis for finding that a contribution, indemnity, or unjust enrichment claim against the Tax Buyers is available to them.[9] The Court, thus, skips the state actor question and proceeds directly to the Tax Buyers' arguments concerning the sufficiency of the Third-Party Plaintiffs' claims.

---

[8] The Court also questions whether the Third-Party Plaintiffs would have standing to assert a takings claim. Although the parties do not address this issue, the Court hesitates to see how the Third-Party Plaintiffs, as municipalities and not private property owners, could allege a direct Fifth Amendment takings claim against the Tax Buyers. The statutory scheme at issue allegedly deprives the underlying Plaintiffs of their property without just compensation. The Third-Party Plaintiffs do not own any properties at issue, nor have the Tax Buyers deprived them of any private property. Further, the Court questions whether the Third-Party Plaintiffs, who represent various municipalities, qualify as "other persons" entitled to maintain a suit under § 1983. *See City of E. St. Louis v. Cir. Ct. for the Twentieth Judicial Dist.*, 986 F.2d 1142, 1144 (7th Cir. 1993) ("Municipalities cannot challenge state action on federal constitutional grounds because they are not 'persons' within the meaning of the Due Process Clause. Because East St. Louis is not a 'person,' it cannot invoke the protection of the Fifth or Fourteenth Amendments, and therefore cannot bring a section 1983 claim." (citation omitted)); *Barbara Z. v. Obradovich*, 937 F. Supp. 710, 722 (N.D. Ill. 1996) (concluding that municipalities and other state political subdivisions cannot bring suit under § 1983, where doing so would "ignore[ ] the underlying purpose of the statute: the vindication of individual interests against state action"). If the Third-Party Plaintiffs wish to file an amended third-party complaint to include a takings claim, the Court cautions them to consider whether they have the ability to bring such a claim. If they decide they do, they should clarify their allegations concerning the Tax Buyers' actions as state actors, taking into account the Tax Buyers' arguments as to why they do not qualify as state actors.

[9] The Court notes that the Peoria Third-Party Plaintiffs' third-party complaint appears to include the Tax Buyers as parties to the declaratory judgment claim. Doc. 128 at 4–5. The allegations of that claim relate solely to the constitutionality of the PTC, with the Peoria Third-Party Plaintiffs contending that to the extent the PTC is unconstitutional under *Tyler*, the State has the responsibility to amend the PTC. Given that the declaratory judgment claim does not appear to seek any specific declaration with respect to the Tax Buyers and the parties do not separately address the viability of any declaratory judgment claim against the Tax Buyers, the Court dismisses the Tax Buyers from the claim.

A.    **Contribution**

The Court first turns to contribution, which all Third-Party Plaintiffs assert as a basis for obtaining a share of any judgment entered against them in the underlying case from the Tax Buyers.  The Tax Buyers argue that § 1983 does not authorize a contribution claim, nor does federal common law provide for a contribution claim in connection with a § 1983 claim. Although the Supreme Court and the Seventh Circuit have not addressed the question, the majority of courts have agreed with the Tax Buyers that no right to contribution exists under § 1983.  *See, e.g.*, *Piercy v. Whiteside Cnty.*, No. 14 CV 7398, 2016 WL 1719802, at *5 (N.D. Ill. Apr. 29, 2016); *Burris v. Cullinan*, No. 09-3116, 2009 WL 3575420, at *8 (C.D. Ill. Oct. 23, 2009); *Perks v. Cnty. of Shelby*, No. 09-3154, 2009 WL 2985859, at *1–2 (C.D. Ill. Sep. 15, 2009).  The Third-Party Plaintiffs nonetheless contend that they can obtain contribution under Illinois law by way of 42 U.S.C. § 1988, which allows for the use of state-law remedies where federal law does not "furnish suitable remedies" to the extent such remedies are "not inconsistent with the Constitution and laws of the United States."  42 U.S.C. § 1988.

The Third-Party Plaintiffs contend that "Illinois law expressly provides a statutory right of contribution among parties whose conduct jointly caused the same injury," citing the Illinois Joint Tortfeasor Contribution Act ("IJTCA"), 740 Ill. Comp. Stat. 100/0.01 *et seq.*  Doc. 157 at 10; Doc. 159 at 10; *see also* Doc. 167 at 10.  Under the IJTCA, "[a] cause of action for contribution among joint tortfeasors may be asserted by a separate action before or after payment, by counterclaim or by third-party complaint in a pending action."  740 Ill. Comp. Stat. 100/5.[10]  The Third-Party Plaintiffs argue that their allegations adequately state a contribution

---

[10] The Peoria Third-Party Plaintiffs incorrectly assert that they must bring their contribution claim in the pending action, relying on caselaw that was superseded by statute. *See* Doc. 167 at 11 (citing *Laue v. Leifheit*, 105 Ill. 2d 191, 196 (1984); *Clay v. Pepper Constr. Co.*, 205 Ill. App. 3d 1018, 1022 (1990)).

14

claim under the IJTCA because the Tax Buyers' conduct in executing the statutory process, specifically recording tax deeds to transfer property ownership, directly caused the property owners' injuries.

To determine whether the IJTCA can provide a right of contribution through § 1988, the Court first considers whether federal law provides a particular rule or remedy. *Bass by Lewis v. Wallenstein*, 769 F.2d 1173, 1188 (7th Cir. 1985). If no federal remedy exists, the Court considers whether the IJTCA is "consistent with the meaning and purpose of constitutional and federal statutory law." *Id.* If the IJTCA and § 1983 are consistent, then the Court may apply the IJTCA, but if they are inconsistent, the Court cannot. *Id.*

Here, the parties appear to agree that federal law does not provide a right to contribution, meaning that the Court turns to whether the IJTCA provides a remedy "consistent with the meaning and purpose" of § 1983. To do so, the Court looks not only at the statutes but also at their policies. *Robertson v. Wegmann*, 436 U.S. 584, 590 (1978). The Supreme Court has identified the "policies underlying § 1983 [to] include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law." *Id.* at 590–91; *see also Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."). The IJTCA seeks to ensure that "a plaintiff shall have only one satisfaction for an injury," *Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co.*, 522 F.3d 776, 788 (quoting *Pasquale v. Speed Prods. Eng'g*, 166 Ill. 2d 337, 368 (1995)), as well as to fairly apportion liability among jointly liable tortfeasors, 740 Ill. Comp. Stat. 100/2; *Va. Sur. Co. v. N. Ins. Co. of N.Y.*, 224 Ill. 2d 550, 557 (2007) ("The concept of contribution contemplates that each party whose fault contributed to

15

an injury should pay its *pro rata* share of the common liability."). A majority of other courts have concluded that a contribution claim conflicts with § 1983's goal of deterring constitutional violations. *See Bulfin v. Rainwater*, No. 4:20 CV 689, 2021 WL 2915057, at *4 (E.D. Mo. July 12, 2021) (collecting cases); *Burris*, 2009 WL 3575420, at *9 ("Indeed, the deterrent effects of § 1983 would be reduced by allowing state actors to seek contribution, and would thus frustrate one of the purposes behind the provision."). *But see Kohn v. Sch. Dist.*, No. 1:11-CV-109, 2012 WL 3560822, at *6 (M.D. Penn. Aug. 16, 2012) (allowing state law contribution claim under § 1988, finding "no inconsistency with the goal of deterrence if civil-rights violators are allowed to seek contribution" because "deterrence is served as long as the violators are aware that they may be liable in damages, even if they may lessen the impact by obtaining contribution from another party").[11] The Court agrees with these courts that a state law contribution claim would undermine the deterrent purpose of § 1983 because it would reduce the potential cost of a constitutional violation. Therefore, the Third-Party Plaintiffs have not asserted a viable basis to seek contribution from the Tax Buyers.[12]

**B.    Implied Indemnity**

The DuPage Third-Party Plaintiffs also bring an implied indemnity claim against Scribe and Hobo. Hobo initially argues that no such claim can exist for the same reasons that the

---

[11] The Third-Party Plaintiffs cite to *Hoffman v. McNamara*, 688 F. Supp. 830, 834 (D. Conn. 1988), as a case that allowed a contribution claim to proceed in a § 1983 action under § 1988. Doc. 157 at 11; Doc. 159 at 11; Doc. 167 at 10–11. But *Hoffman* dealt not with contribution but rather set-off, noting that Connecticut did not allow for contribution among joint tortfeasors. *Hoffman*, 688 F. Supp. at 833–34. As such, *Hoffman* has no relevance to the issues before the Court. The Court also rejects the Third-Party Plaintiffs' reliance on the court's statement in *Marine Bank of Champaign-Urbana v. United States* that § 1988 recognizes a right to contribution under state law, given that *Marine Bank* cited to *Hoffman* for this proposition. 739 F. Supp. 1257, 1259 (C.D. Ill. 1990).

[12] The Court does not consider whether any other basis exists for the Third-Party Plaintiffs' contribution claims, given that they do not make any other arguments in support of such a claim. *See Gross v. Town of Cicero*, 619 F.3d 697, 704 (7th Cir. 2010) ("[I]t is not this court's responsibility to research and construct the parties' arguments.").

16

contribution claim fails. *See Hoa v. Riley*, 78 F. Supp. 3d 1138, 1145 (N.D. Cal. 2015) ("[I]ndemnity and contribution are closely related; in a sense, 'indemnity is only an extreme form of contribution.' Thus, the analytical framework for determining the right of contribution has been extended to the right of indemnity." (quoting *Slattery v. Marra Bros.*, 186 F.2d 134, 138 (2d Cir. 1951))). The Court agrees and so dismisses the claim based on its analysis concerning the compatibility of a contribution claim with § 1983 above.

But even taking this analysis a step further, assuming that the DuPage Third-Party Plaintiffs could pursue an indemnity claim against Scribe and Hobo, the Court finds that they have not sufficiently alleged this claim. Equitable or implied indemnity based on tort principles of relative blameworthiness no longer exists in Illinois. *Truck Components, Inc. v. K-H Corp.*, No. 94 C 50250, 1995 WL 692541, at *11 (N.D. Ill. Nov. 22, 1995) (citing *Am. Nat'l Bank & Tr. Co. v. Columbus-Cuneo-Cabrini Med. Ctr.*, 154 Ill. 2d 347, 350–51 (1992)). Illinois, however, recognizes implied indemnity in the quasi-contractual context, as long as it is premised on vicarious liability. *Id.* "Implied indemnity generally rises where the parties have failed to include an indemnity provision in an agreement and there is reason for the court to read such a provision into the agreement." *Mizuho Corp. Bank v. Corey & Assoc., Inc.*, 341 F.3d 644, 652 (7th Cir. 2003) (citations omitted). "To establish [an implied indemnity] claim, [a plaintiff] must allege a pre-tort relationship with [the defendant] and a qualitative difference in their conduct in the occurrence." *Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*, No. 02 C 8800, 2004 WL 2108413, at *4 (N.D. Ill. Sep. 21, 2004) (citing *Frazer v. A.F. Munsterman, Inc.*, 123 Ill. 2d 245, 255 (1988)). Importantly, "implied indemnity actions lie only where one party is in some sense 'at fault,' and the other party is blameless though liable—typically

because of strict liability, respondeat superior, implied warranty, or some other legal principle that imposed liability regardless of fault." *Mizuho*, 341 F.3d at 652 (citations omitted).

Regarding the first element, Illinois courts generally recognize only a narrow number of pre-tort relationships that give rise to a duty to indemnify, including "lessor and lessee; employer and employee[;] owner and his lessee; [and] master and servant." *Van Slambrouck v. Econ. Baler Co.*, 105 Ill. 2d 462, 470 (1985) (citations omitted). Illinois courts have largely refused to expand implied indemnity beyond these qualifying relationships, including for business relationships. *See Jordan v. Jewel Food Stores, Inc.*, 83 F. Supp. 3d 761, 772–73 (N.D. Ill. 2015) (collecting cases). The DuPage Third-Party Plaintiffs do not suggest that their pre-tort relationship with the Tax Buyers falls within any of these narrow categories. They instead contend that "Illinois law recognizes pre-tort relationships based on statutory duties that structure the roles of private parties and public officials" and that their relationship with the Tax Buyers "arises directly from the PTC." Doc. 157 at 12; Doc. 159 at 12. But the only case that the DuPage Third-Party Plaintiffs cite to support this argument, *UIRC-GSA Holdings Inc. v. William Blair & Co., L.L.C.*, involved two parties that had a contractual agreement with an express indemnity provision. 289 F. Supp. 3d 852, 862 (N.D. Ill. 2018). And although the DuPage Third-Party Plaintiffs pull a quote from this case to suggest that "some other legal principle that impose[s] liability regardless of fault," such as a statutory duty in this case, can establish a pre-tort relationship, the *UIRC-GSA* court made this statement with respect to the second element of an implied indemnity claim, not the existence of a recognized pre-tort relationship. *Id.* at 861 ("Importantly, 'implied indemnity actions lie only where one party is in some sense at fault, and the other party is blameless though liable—typically because of strict liability, *respondeat superior*, implied warranty, or some other legal principle that imposed liability regardless of

18

fault." (quoting *Mizuho*, 341 F.3d at 652)). The DuPage Third-Party Plaintiffs, therefore, have not provided this Court with any basis to expand the set of qualifying pre-tort relationships for an implied indemnity claim, and this Court declines to expand it on its own. Because the DuPage Third-Party Plaintiffs have not alleged this required element of their implied indemnity claim, even were the Third-Party Plaintiffs able to pursue implied indemnity under § 1988, they cannot proceed with the claim as pleaded.

### C.     Unjust Enrichment

Finally, both third-party complaints allege an unjust enrichment claim against the Tax Buyers. Under Illinois law, "[u]njust enrichment is an equitable remedy." *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 886 (7th Cir. 2022) (citing *Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 604 (2005)). A plaintiff bringing a claim for unjust enrichment under Illinois law must allege that "the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160 (1989). The Tax Buyers raise several arguments for dismissal of this claim, but the Court need only address one: Hobo's argument that the Third-Party Plaintiffs are not entitled to any surplus based on the fundamental principles of justice, equity, and good conscience. As Hobo contends, while the Plaintiffs in the underlying suit—the former property owners—may be entitled to an alleged surplus, nothing in the third-party complaints plausibly suggests that the Third-Party Plaintiffs have such an entitlement.

Although the Third-Party Plaintiffs include conclusory allegations stating that the Tax Buyers "retained and received a sizable benefit and were enriched at the expense of the Third Party Plaintiffs," Doc. 124 ¶ 53, the Third-Party Plaintiffs admit that this alleged enrichment

19

resulted from "not paying the just compensation [to the former property owners]," *id.*; *see also* Doc. 128 ¶ 46 ("To the extent that the Plaintiffs are entitled to recover damages for the alleged retention of values in excess of the tax amounts due because the PTC is deemed unconstitutional and/or Plaintiffs are found to have standing to pursue such claims, said amounts are in the possession of the tax buyers."). The Third-Party Plaintiffs also acknowledge that the Tax Buyers "retained the surplus equity that rightful[ly] should have been paid to the former property owner[s]" if the PTC is unconstitutional. Doc. 124 ¶ 52. In other words, the Third-Party Plaintiffs received exactly what they bargained for with the Tax Buyers—the Tax Amounts— while the former property owners might have a claim to the surplus value that the Tax Buyers have retained. This means that if the Tax Buyers unjustly enriched themselves, it was at the former property owners' expense, not the Third-Party Plaintiffs' expense. *Cf. K-Stones, Inc. v. Ko*, 2025 IL App (2d) 230238, ¶ 70 ("[E]ven a defendant who acquires property of another nontortiously, through an intermediary, and without notice that it rightfully belongs to another is liable for unjust enrichment if, in equity and good conscience, she is not entitled to hold it against the true owner."). Nothing suggests, however, that "the Illinois Supreme Court intended to create a claim for unjust enrichment where a plaintiff claims damages that rightfully belong to a third party." *Asch v. Teller, Levit & Silvertrust, P.C.*, No. 00 C 3290, 2003 WL 22232801, at *7 (N.D. Ill. Sep. 26, 2003). Therefore, because the third-party complaints do not suggest that the Tax Buyers retained a benefit from the Third-Party Plaintiffs that should be returned to the Third-Party Plaintiffs, the unjust enrichment claim cannot proceed.[13] *C. Szabo Contracting, Inc. v. Lorig Constr. Co.*, 2014 IL App (2d) 131328, ¶ 24 ("Generally, to be entitled to the remedy of

---

[13] Because the Third-Party Plaintiffs represent that they do not bring a takings claim against the Tax Buyers, the Court does not address the Tax Buyers' good-faith defense arguments. Additionally, because the Court finds it appropriate to dismiss all of the third-party claims on other grounds, the Court need not address the statute of limitations at this time.

20

unjust enrichment in a quasi-contract action, a plaintiff must show that he or she furnished valuable services or materials and that the defendant received them under circumstances that would make it unjust to retain the benefit.").

## CONCLUSION

For the foregoing reasons, the Court grants the Third-Party Defendants' motions to dismiss [137, 139, 142, 154, 161].  The Court dismisses the third-party complaints [124, 128] without prejudice.  The Court vacates the default order entered against RealTax [194].

Dated: March 20, 2026

SARA L. ELLIS
United States District Judge